## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE SKANSKA USA CIVIL | § | |
| SOUTHEAST INC. AND | § | **ADMIRALTY RULE 9(H)** |
| SKANSKA USA, INC. AS | § | |
| OWNERS OF THE BARGE KS | § | **CIVIL ACTION NO.** |
| 5331, PRAYING FOR | § | **3:20-CV-05980 – RV/MJF** |
| EXONERATION | § | |
| FROM OR LIMITATION | § | **SENIOR DISTRICT JUDGE** |
| OF LIABILITY | § | |
| | § | **ROGER VINSON** |

**This Pleading Relates to Civil Action Nos.:**
**3:20-CV-05980-RV/MJF**
**3:20-CV-05981-RV/MJF**
**3:20-CV-05982-RV/MJF**
**3:20-CV-05983-RV/MJF**

## SUR-REPLY MEMORANDUM OF
## SKANSKA USA CIVIL SOUTHEAST INC. AND
## SKANSKA USA, INC. IN OPPOSITION TO MOTION TO DISMISS

I.   **This is a "quintessential" admiralty case.**

Before discussing the test established in *Sisson v. Ruby*, 497 U.S. 358 (1990)

and *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company*, 513 U.S.

527 (1995), it is important to note that *Executive Jet Aviation, Inc. v. Cleveland*,

409 U.S. 249 (1972) and its progeny were intended to keep a "class of odd cases

out," *Grubart*, 513 U.S. at 532, and that admiralty jurisdiction is the "norm when

the tort originates with a vessel in navigable waters." *Id.* at 547.  Accordingly,

"ordinarily" "every tort involving a vessel on navigable waters falls within the

1

scope of admiralty jurisdiction." *Germain v. Ficarra (In re Germain)*, 824 F.3d 258, 261 (2d Cir. 2016). The adverb "ordinarily" is an understatement, for since enactment of the Admiralty Extension Act, the Supreme Court has *never* held that jurisdiction did not exist where damage was caused by a vessel.

Here, breakaway barges allided with a bridge, and "[a]n allision is the quintessential maritime tort." *Apache Corp. v. Global Santa Fe Drilling Co.*, 832 F.Supp.2d 678, 693 (W.D. La.2010), *aff'd* 435 Fed.Appx. 322 (5th Cir. 2011), *cert. den.* 565 U.S. 1157 (2012). The federal courts routinely take jurisdiction in such cases. *See, e.g., In re Luhr Bros., Inc*., 2007 U.S. Dist. LEXIS 50540 (E.D. La. July 12, 2007); *Am. River Transp. Co. v. Paragon Marine Servs*., 213 F.Supp.2d 1035 (E.D. Mo. 2002), *aff'd* 329 F.3d 946 (8th Cir. 2003). The suggestion that this case is not within the admiralty jurisdiction is simply absurd.

## II. This case meets the *Sisson/Grubart test.*

*Sisson* established the following test for admiralty jurisdiction: (1) the tort must occur on navigable waters or be caused by a vessel on navigable waters, (2) the "general feature" of the incident must have a "potentially disruptive impact on maritime commerce", and (3) the "general character" of the "activity giving rise to the incident" must have a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. Claimants' Reply focuses on the third component, but their arguments are foreclosed by *Grubart* and lower court authorities.

2

### A.    *Claimants misquote and misapply* Grubart*.*

Claimants argue that Skanska's activity should be characterized as "constructing a bridge," and state that the Court in *Grubart* similarly characterized the activity there as "repair or maintenance work on a navigable waterway." Doc. 51 at 3. Claimants misquote *Grubart*; the Court actually said "the 'activity giving rise to the incident' in this suit . . . should be characterized as repair or maintenance work on a navigable waterway *performed from a vessel*." 513 U.S. at 540 (emphasis added). The Supreme Court has never concluded jurisdiction was absent in a case involving damage caused by a vessel.

Moreover, in *Grubart*, the Supreme Court rejected claimants' characterization of the activity as "repair or maintenance" or "pile driving near a bridge" as defeating the very purpose of the test:

> The city is, of course, correct that a tortfeasor's activity can be described at a sufficiently high level of generality to eliminate any hint of maritime connection, and if that were properly done *Sisson* would bar assertion of admiralty jurisdiction. But to suggest that such hypergeneralization ought to be the rule would convert *Sisson* into a vehicle for eliminating admiralty jurisdiction. . . . The test turns on the comparison of traditional maritime activity to the arguably maritime character of the tortfeasor's activity in a given case; the comparison would merely be frustrated by eliminating the maritime aspect of the tortfeasor's activity from consideration.

*Id.* Claimants' characterization of the activity here as "constructing a bridge" violates this mandate, since the characterization of Skanska's activity must include

3

its maritime aspects.  Accordingly, at the very least Skanska's activity must be described as "construction of a bridge over navigable waters by a fleet of vessels."[1]

In *Grubart*, the Court characterized the activity as "repair or maintenance work *on* a navigable waterway performed from a vessel." (Emphasis added). Substituting "construction" for "repair or maintenance," the Court's characterization mirrors the facts here. Significantly, the Court did not characterize the work as repair "of" or "to" a navigable waterway or place any importance on whether the work done by the vessel would aid navigation.  Instead, the mere fact that work was done on navigable waters by a vessel was sufficient to establish jurisdiction.

The Court stated that

> [d]escribed in this way, there is no question that the activity is substantially related to traditional maritime activity, for barges and similar vessels have traditionally been engaged in repair work similar to what Great Lakes contracted to perform here.

513 U.S. at 540.  The Court then cited cases that involved "traditional maritime activity" without mentioning any further relationship to maritime activity beyond the use of a vessel.

For instance, the Supreme Court characterized the activity in *Shea* v. *Rev-Lyn Contracting Co.*, 868 F. 2d 518 (1st Cir. 1989) as "bridge repair by crane-

---

[1] As will be discussed in section I.B, a better characterization would be "securing of a fleet of vessels in navigation for an anticipated storm."

carrying barge." While Claimants argue that the bridge was a drawbridge, the Supreme Court apparently thought this irrelevant, as it did not mention it.

In *In re P. Sanford Ross*, 196 F. 921 (1912), a barge was driving piles on the shore and not in navigable water, *id.* at 923, and there is no indication the work was otherwise related to maritime commerce. The Supreme Court characterized the activity as "pile driving from crane-carrying barge close to water's edge," 513 U.S. at 540, and considered that "traditional maritime activity."

In *The V-14813*, 65 F.2d 789 (5th Cir. 1933), a barge was used in building a bridge. The Supreme Court quoted the Fifth Circuit, saying "[t]here are many cases holding that a dredge, or a barge with a pile driver, employed on navigable waters, is subject to maritime jurisdiction," making no suggestion that some further maritime connection was required.

In none of these cases did the Supreme Court think it important to mention any maritime activity other than the involvement of a vessel. Accordingly, Claimants' argument that Skanska's activity did not bear a "substantial relationship to traditional maritime activity" because the principal objective of building the bridge was unrelated to maritime commerce is untenable given the Supreme Court's characterization of the activity in *Grubart* and of "traditional maritime activity" in earlier cases. And *In re Complaint of Orion Marine Construction, Inc.*, 2016 U.S. Dist. LEXIS 202718 (M.D. Fla. February 9, 2016), the court concluded

5

that *Grubart* and the cases it cited compelled the conclusion that the use of a vessel to build a bridge is traditional maritime activity.

Moreover, all these cases involved far less maritime involvement than is present here. All but *Orion* involved a single vessel, and none indicated vessel movement during the project. Here, a fleet of 55 vessels provided the only access to the work site. Doc. 46-1, ¶ 1. The material, equipment and workers were transported to the site by barge, and every barge involved in the project moved from one location to another, frequently multiple times a day. Doc. 46-2. As made clear in Keith Sabol's declaration attached as Exhibit "A," this project was maritime.

Furthermore, the incident itself here had a much "saltier" flavor than the cases cited by the Supreme Court as representing "traditional maritime activity." In at least two of the cases cited in *Grubart*, the accident was unrelated to any maritime aspects of the work. In *Shea*, "Shea's injury, caused by the improper use of the crane, could have happened in many different contexts, on land as well as at sea." *Id.* at 518. Similarly, *In re New York Dock Co*., 61 F.2d 777 (2d Cir. 1932), the incident arose out of the construction activities when a wedge fell because of vibration from the hammer blows on the piles. *Id.* at 778. Here, on the other hand, the incident involved vessels breaking their moorings in a hurricane, an incident that could only occur in a maritime context. The cases cited by the Supreme Court

confirm that the "activity giving rise to the incident" here, "construction of a bridge over navigable waters by a fleet of vessels," has a substantial connection to traditional maritime activity.

> **B.** **A better characterization would be *"securing of a fleet of vessels in navigation for an anticipated storm."***

While characterization of the relevant activity as "construction of a bridge over navigable waters by a fleet of vessels" satisfies the *Sisson* test for admiralty jurisdiction, this characterization is too general, since the relevant description is of "the activity giving rise to the incident." 513 U.S. at 539

In *Apache Corp. v. Global Santa Fe Drilling Co.*, 832 F. Supp. 2d 678 (W.D. La.2010), *aff'd* 435 Fed. Appx. 322 (5th Cir. 2011), *cert. den.* 565 U.S. 1157 (2012), the court rejected characterizing the activity as "oil and gas work" and characterized it as "securing of a vessel in navigation for an anticipated storm." 832 F. Supp. at 688.  In *In re Louisiana Crawfish Producers*, 772 F.3d 1026 (5th Cir. 2014), the Fifth Circuit explained why this was the correct characterization:

> That characterization was appropriate because the oil and gas activity did not "giv[e] rise to the incident." *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 364) (internal quotation marks omitted). The outcome would have been the same had the rig been, say, a fishing vessel.

*Id.* at 1030 n. 4.  Similarly, the breakaway of the barges was not caused by any construction activities, but by the inherently maritime activity of deciding where, how, and when to secure vessels in the face of an impending hurricane, and the

7

outcome would have been the same if Skanska had been a barge fleeting company operating in Pensacola Bay.  Accordingly, the proper characterization of the activity giving rise to this incident is "securing of a fleet of vessels in navigation for an anticipated storm."

Claimants erroneously argue that the reasoning in *Apache* "runs afoul of *Sisson*'s mandate that the description cannot be a description of the cause of the harm."  Doc. 51 at 5.  Had the court characterized the activity as "*negligent mooring of the rig in preparation for a storm,*" that criticism might have some merit.  But under *Grubart*, the characterization must include the maritime aspects of the activity so that can be compared with traditional maritime activity, and characterization of the activity in *Apache* as "oil and gas work," like Claimants' proposed characterization of Skanska's activity as "constructing a bridge," would have run afoul of this mandate.

Moreover, it is Claimants, not Skanska, that attempt to direct the Court's attention to the "cause of the harm" rather than the "general conduct from which the incident arose."  Claimants argue that "Skanska's [alleged] negligence is based on decisions made in the boardroom, not the wheelhouse."  However, delving into why the barges broke loose would require this Court to "decide to some extent the merits of the causation issue to answer the legally and analytically antecedent jurisdictional question," an inquiry expressly forbidden by *Sisson.*  497 U.S. at 365.

8

The "general conduct" was the securing of the fleet of vessels, an activity that could scarcely be more traditionally maritime in nature.

### C. Claimants misread *Louisiana Crawfish Producers*.

Claimants argue that the Fifth Circuit in *Louisiana Crawfish Producers* "reject[ed] an *Apache*-type analysis." This argument is wrong in view of the Fifth Circuit's express approval in *Louisiana Crawfish Producers* of the district court's reasoning in *Apache*. The court reached a different conclusion regarding admiralty jurisdiction because the defendants were not engaged in any maritime activity.

In *Louisiana Crawfish Producers*, the only defendants still in the case when it reached the Fifth Circuit were DIGC and Willbros. The plaintiffs alleged that DIGC had placed cement mats on exposed sections of an existing pipeline, impeding water flows and navigation. They alleged that Willbros built a pipeline on an existing spoil bank that it had leveled using bulldozers, obstructing gaps in the spoil bank and thereby impeding water flows and navigation. Importantly, neither DIGC nor Willbros used any vessels in these operations. 772 F.3d at 1028.

The plaintiffs argued that the proper characterization of the "general character of the activity giving rise to the incident" was "negligent/intentional construction activity resulting in the obstruction of navigable waters with spoil," while the defendants argued it was "pipeline construction and repair." *Id.* at 1030.

9

Neither of these characterizations suggested any use of vessels or any other maritime activity by the defendants.

The court rejected the plaintiffs' characterization focusing on "the causes of the harm" as precluded by *Sisson*. Accordingly, the plaintiffs' proposed characterization was obviously improper, and the court accepted the defendants' characterization.

As discussed above, *Grubart* requires the inclusion of any maritime activity on the part of the alleged tortfeasor for comparison with "traditional maritime activity." However, *Grubart* assumes that there is some maritime activity to include in the characterization, and in *Louisiana Crawfish Producers*, the alleged tortfeasors had not been engaged in anything that even hinted at a maritime connection -- no vessels were involved and all of the defendants' activities took place on land. Accordingly, the only characterization possible once one eliminated the immediate cause of the harm was "pipeline construction and repair." Had the defendants made use of vessels, *Grubart* would have required characterization of the relevant activity as "pipeline construction and repair by vessels," and a different result would have been required. Nothing in the decision suggests that the court "reject[ed] an *Apache*-type analysis."

> **D.** **Texaco v. Amclyde and its progeny do not support Claimants' position.**

Claimants continue to attempt to rely on *Texaco Exploration & Prod. v. Amclyde Engineered Prods.*, 448 F.3d 760 (5th Cir. 2006). This reliance is misplaced.

*Sisson* and *Grubart* make it clear that the "general character of the activity giving rise to the incident" is that of the defendant. In *Sisson*, the activity was described as "storage and maintenance of a vessel at a marina on navigable waters" by the vessel owner. 497 U.S. at 365. In *Grubart*, the Court characterized the activity as "repair or maintenance work on a navigable waterway performed from a vessel" by Great Lakes. 513 U.S. at 540. In neither case did the Court focus on the damage or the claimant's activities.

In *Texaco*, the Fifth Circuit focused on "Texaco's causes of action," which were related to oil and gas development. However, the defendants were the designers and manufacturers of a crane. A proper analysis applying *Sisson* and *Grubart* would have focused on whether the "activity giving rise to the incident" on the part of these entities showed a "substantial relationship to traditional maritime activity." This court's analysis is thus of little help with respect to how to properly apply the *Sisson/Grubart* test in this case.

Claimants also rely on *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211 (5th Cir. 2016), but as in *Texaco*, the Fifth Circuit focused on the

4091033-1

plaintiff's involvement with oil and gas development.  There, the defendant was the manufacturer of a chain that was a component of an offshore production facility.  *Id.* at 213.  While the court almost certainly decided the case correctly, since manufacturing a chain that was intended to form a part of a fixed production facility is scarcely "traditional maritime activity," the analysis (or lack thereof) sheds no light on whether a claim arising out the breakaway of a fleet of barges has a substantial relationship to tradition maritime activity.

Claimants also rely on *In re Katrina Canal Breaches Litigation*, 324 Fed. Appx. 370 (5th Cir. 2009).  This case is not authority for anything, since "the court . . . determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4," whereby such opinions are only precedential under the doctrines of res judicata, collateral estoppel or law of the case, none of which apply here.

*Apache* presented facts virtually identical to those presented here, and the court faithfully followed the approach mandated by *Sisson* and *Grubart*.  The district court was affirmed by the Fifth Circuit, and its reasoning was then expressly approved by the Fifth Circuit in *Louisiana Crawfish Producers*.  None of the cases cited by Claimants present any reason for this Court not to follow the reasoning of *Apache.*

III.   **Claimants' appeal to considerations of federalism was directly rejected by the Supreme Court in *Grubart*.**

In *Grubart*, the claimants argued that in cases "involving land based parties and injuries" admiralty jurisdiction should be limited to cases where

> the totality of the circumstances reflects a federal interest in protecting maritime commerce sufficiently weighty to justify shifting what would otherwise be state-court litigation into federal court under the federal law of admiralty.

513 U.S. at 543.  The claimants argued that the courts should therefore consider such factors as "the impact of the event on maritime shipping and commerce," "the desirability of a uniform national rule to apply to such matters," and "the need for admiralty 'expertise' in the trial and decision of the case."  *Id.* at 544.  Claimants make essentially the identical argument here.

The Supreme Court rejected this argument:

> It is worth recalling that the *Sisson* tests are aimed at the same objectives invoked to support a new multifactor test, the elimination of admiralty jurisdiction where the rationale for the jurisdiction does not support it. If the tort produces no potential threat to maritime commerce or occurs during activity lacking a substantial relationship to traditional maritime activity, *Sisson* assumes that the objectives of admiralty jurisdiction probably do not require its exercise, even if the location test is satisfied. If, however, the *Sisson* tests are also satisfied, it is not apparent why the need for admiralty jurisdiction in aid of maritime commerce somehow becomes less acute merely because land-based parties happen to be involved. Certainly Congress did not think a land-based party necessarily diluted the need for admiralty jurisdiction or it would have kept its hands off the primitive location test [in enacting the Admiralty Extension Act].

*Id.* at 545.   Claimants' argument that this Court should go beyond the straightforward application of the *Sisson/Grubart* test is thus foreclosed.

## IV. Skanska's positions in other cases are irrelevant to the issue of subject matter jurisdiction in this case.

Claimants argue that Skanska has taken inconsistent positions regarding admiralty jurisdiction in other cases.   Claimants cite no authority for the proposition that a legal argument in one case has any effect in a separate case, and none of the cases cited involve the issue presented here of whether the breakaway of barges resulting in an allision is a tort within the admiralty jurisdiction.

## V. Conclusion

This is a plain vanilla maritime allision case arising out of the breakaway of a fleet of barges in a hurricane, a "quintessential maritime tort."  The barges were engaged on navigable waters in building a bridge, an activity that the lower federal courts have consistently held is traditional maritime activity, a conclusion the Supreme Court confirmed in *Grubart*.  The motion should be denied.

4091033-1

*/s/ Derek A. Walker*
**DEREK A. WALKER**
**Admitted Pro Hac Vice**
**KENNETH H. TRIBUCH**
Florida Bar No. 986887
Harold. K. Watson, Esq.
Derek A. Walker, Esq.
Charles P. Blanchard, Esq.
Jon W. Wise, Esq.
**CHAFFE MCCALL, LLP**
801 Travis, Suite 1910
Houston, Texas 77002
Telephone:  (713) 546-9800
Facsimile:   (713) 546-9806

and

**SCOTT A. REMINGTON**
Florida Bar No. 122483
**JEREMY C. BRANNING**
Florida Bar No. 507016
**CLARK PARTINGTON**
P.O. Box 13010
Pensacola, FL  32591-3010
Telephone: (850) 434-9200
Facsimile: (850) 432-7340

***Attorneys for Skanska USA Civil Southeast***
***Inc. and Skanska USA, Inc.***

15

## <u>CERTIFICATE OF COMPLIANCE AS TO WORD COUNT</u>

I hereby certify that, as required by Local Rule 7.1(F), this Sur-reply

Memorandum contains 3,188 words, counted as provided in Local Rule 7.1(F).

*/s/Jeremy C. Branning*
**JEREMY C. BRANNING**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished to the following through the Court's CM/ECF electronic filing system on this 23rd day of April, 2021:

Brian Barr, Esq.
Christopher Paulos, Esq.
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502

Bryan F. Aylstock, Esq.
Justin G. Witkin, Esq.
Douglass A. Kreis, Esq.
Neil D. Overholtz, Esq.
Nathan C. Bess, Esq.
Bobby J. Bradford, Esq.
Stephen H. Echsner, Esq.
E. Samuel Geisler, Esq.
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Second Floor
Pensacola, FL 32502
Service E-Mail: Sgeisler@awkolaw.com
                nbess@awkolaw.com
                sallyteam@awkolaw.com

Thomas F. Gonzalez, Esq.
J. Nixon Daniel, III, Esq. Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, Florida 32502
Service Email: jnd@beggslane.com
                tfg@beggslane.com

*Attorneys for Claimants*

/s/Jeremy C. Branning
**JEREMY C. BRANNING**

17

4091033-1