UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| **IN RE SKANSKA USA CIVIL SOUTHEAST INC. AND SKANSKA USA, INC. AS OWNERS OF THE BARGE KS 5531, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | ADMIRALTY RULE 9(H)  CIVIL ACTION NO. 3:20-CV-05980  SENIOR DISTRICT JUDGE LACEY A. COLLIER |
| **This Pleading Relates to Civil Action Nos.:**  3:20-CV-05980-LC-HTC  3:20-CV-05981-LC-HTC  3:20-CV-05982-LC-HTC  3:20-CV-05983-LC-HTC | MAG. JUDGE HOPE THAI CANNON |

### SUR-REPLY MEMORANDUM OF CLAIMANTS IN OPPOSITION TO SKANSKA'S AMENDED 12(B)(6) MOTION

Echoing Fed. R. Civ. Proc. 8(a), Supplemental Rule F(5) merely requires that "[e]ach claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued." Claimants have far exceeded this standard, securing for Skanska requisite notice of their claims ahead of the upcoming trial over whether Skanska may secure exoneration or limitation of its liability—the core relief Skanska seeks in its Limitation of Liability Act Complaints. Exceeding this determination would endorse Skanska's impermissible attempt to wield the Limitation of Liability Act as a sword than as a shield as intended by Congress.

1

# ARGUMENT

**I.     The Parties Never Agreed that Skanska's 12(B)(6) Motion Should Be Resolved Prior to the Limitation Trial.**

Skanska conflates an agreed briefing schedule with the timing of the Court's disposition of the Motion.  **How and when this Court rules upon Skanska's Motion is up to this Court and this Court alone**.  A briefing schedule and oral argument setting does not change that fact.  Claimants shared their intention with the Court to respond substantively to Skanska's 12(b)(6) Motion to Dismiss while also requesting "that the resolution of that motion follow limitation" out of a concern that "deciding *Robins* so early would have the effect of denying these claimants their rights under the Savings to Suitors Clause."  ECF No. 1179, Ex. B at 30:13-31:9.  An agreed briefing schedule merely ensures that the underlying motion is fully briefed before it is decided by the Court.

Claimants have never taken a position that Skanska is entitled to a ruling on its Rule 12(b)(6) Motion prior to the trial intended to resolve whether Skanska is due exoneration or limitation of its liability.  Skanska's complaints, after all, face dismissal if the Court finds it lacks jurisdiction or that limitation or exoneration are inappropriate.  As Judge Vinson stated during the parties April 29, 2021 teleconference:

> With respect [to] the matter of law of whether all claimants who did not file in this limitation of liability proceeding are also barred <u>if Skanska is ultimately found either to not qualify under limitation of liability</u>

2

> protection, or perhaps I don't even have subject matter jurisdiction over the matter, **and it's dismissed and sent to wherever they used to be or everyone is free to file what they want.** I think that's pretty well established.

Ex. 1, Telephonic Conference, April 29, 2021, at 18:15-24.  Neither the Limitation of Liability Act nor Supplemental Rule F awards Skanska two layers of protection from liability.  Yet ruling on Skanska's Rule 12(b)(6) Motion to Dismiss prior to the Limitation of Liability Act trial risks securing Skanska double insulation from accountability at the high cost of Claimants' statutory rights under the Savings to Suitors Clause should Skanska lose the September 2021 trial and the Court dismiss Skanska's complaints.

**II.     Neither *Robins Dry Dock* or *East River* Applies to the Facts Before the Court.**

The Supreme Court left no room for confusion when it specifically stated in *East River Steamship Corp v. Transamerica Deleval, Inc.*:

> We do not reach the issue whether a tort cause of action can ever be stated in admiralty when the only damages are economic.

476 U.S. 858 at 871, n. 6 (1986).  Both *Robins Dry Dock* and *East River*, by their own terms, do not apply to the facts before this Court.  Accordingly, Skanska's arguments fail on this point as well.

**III.    While Claimants Have Alleged an Intentional Tort and Have Put Skanska on Notice of the Same, Justice Favors Granting Claimants Leave to Amend to Set Forth Their Intentional Tort Claim as a Separate, Labeled Count if Deemed Necessary by the Court.**

### a. Claimants have Alleged an Intentional Tort.

While Claimants expressly set forth negligence and gross negligence counts, Claimants were careful to methodically incorporate allegations of Skanska's intentional conduct to support not only their gross negligence count but also their prayer for punitive damages. *See* ECF 1171 No. 1171 at paras. 16-18. This more than sufficiently meets not only the requirement of Supplemental Rule F(5) that "[e]ach claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued," but also both Fed. R. Civ. P. 8 and 12(b)(6) standards, as well—to the extent the Court deems them applicable to Supp. Rule F(5) claims.[1] Having set forth the factual basis and elements of an intentional tort, Skanska cannot now deny that claimants afforded it fair notice of their claims and the grounds upon which each rests.

However, should the Court find that an intentional tort cannot be stated without setting it forth as a labeled count separate from the gross negligence count, Claimants respectfully request the opportunity to amend their master claims accordingly. If permitted, Claimants would do so expeditiously. After all, Fed. Rule of Civ. Proc. 15(a)(2) declares that "[t]he court should freely give leave [to amend]

---

[1] While few courts have discussed whether the sufficiency of a claim under Supp. Rule F(5), several courts have found Rule 8 and 12(b)(6) standards applicable. *See Matter of Horizon Dive Adventures, Inc. v. Sotis*, 17-100050, 2018 WL 6978636 at *4, n. 4. (S.D. Fla. Nov. 28, 2018).

when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). As stated in *Garcia v. McNeil*,

> This policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

No. 4:07CV474-SPM/WCS, 2010 WL 4823370, at *1 (N.D. Fla. Aug. 12, 2010), report and recommendation adopted, No. 4:07-CV-474-SPM WCS, 2010 WL 4818067 (N.D. Fla. Nov. 22, 2010) (citing *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)).

In *Dunham-Price Group, L.L.C. v. Port Aggregates, Inc.*, a district court unequivocally stated that "where the plaintiff asserts an intentional tort, the plaintiff's claim is taken 'out of *Robins Dry Dock* parameters,'" but Skanska wrongly claims that courts only recognize a limited exception to *Robins Dry Dock* for intentional interference with a contract. ECF No. 1179 at 9 (discussing *Dunham-Price*, No. 05-cv-2214, 2010 WL 2112953 (W.D. La. July 26, 2006). The *Dunham-Price* court found that the plaintiff had not yet pled an "intentional tort," despite asserting one in its briefing. Observing that Federal Rules of Civil Procedure 9(h) and 15 provide for liberal amendment of pleadings, the court permitted the plaintiff to amend the complaint to assert an intentional tort.

5

Justice would certainly require leave to amend Claimants' Supp. Rule F(5) claims should the Court find it necessary that Claimants set forth their intentional tort claim as a separate, labeled count. It bears emphasis that the **sole** amendment to the Master Bridge Impact Claim to date was limited to incorporate reference to the fifth construction barge that impacted the Pensacola Bay Bridge and that was <u>not disclosed by Skanska until after the claim deadline</u> (and before it responded to discovery), despite Claimants' repeated inquiries. *See* ECF. No. 1134 (describing the need to amend based on Skanska providing Claimants' counsel "with information sufficient to establish that construction barge 450020 impacted the Pensacola Bay Bridge" on May 3, 2021). While Claimants are confident that they have asserted factual support for an intentional tort, should this Court disagree, it should, like the *Dunham-Price* court, permit Claimants to amend their Complaint. Doing so would serve the interests of justice would facilitate the determination of claims on the merits.

**IV. As Claimants Allege, Any Reasonable Company in Skanska's Shoes Would Understand that the Bridge Outage was Substantially Certain to Arise from its Conduct.[2]**

    **a. Skanska Misstates Florida Law to Invent a Subjective Standard for Intentional Torts, where an Objective Standard Applies.**

---

[2] Inexplicably, Skanska cited not to the Amended Master Claim of Bridge Impact Claimants, ECF. No. 1138, filed prior to the filing of the instant Motion to Dismiss but instead to the original Master Claim, ECF. No. 60.

Skanska misstates the standard applicable to substantial certainty of intentional torts as a subjective test, rather than the objective standard long adopted by Florida courts to determine if the conduct at issue was substantially certain to result in the injury. To support its position, Skanska cites to a single Georgia state intermediate appellate court opinion from 1992. ECF No. 1179 at p. 5-6. Whether admiralty jurisdiction is found to exist or not, the Court may need to look to state law to determine the sufficiency of intentional tort allegations. *See* ECF. No. 1171 at 15. Skanska provides the Court no reason to supplant the Florida Supreme Court's adoption of an objective, *reasonable person* standard with a discussion taken from a Georgia appellate court's opinion.

### b. Claimants Adequately Pled that Skanska's Intentional Conduct was Substantially Certain to Result in the Bridge's Closure and Injury to Claimants.

When viewed in the light most favorable to Claimants, the Bridge Impact Master Claim contains more than adequate allegations to establish that Skanska's conduct was substantially certain to result in the Pensacola Bay Bridge's Closure and Claimants' having incurred their damages. The Court need only look beyond the allegations from the Bridge Impact Master Claim that Skanska cherry-picked to make its point. ECF No. 1179 at p. 6-7.

For example, Claimants pled that Skanska acted with a "conscious disregard of the consequences" having known (or reasonably should have known), that the

7

approaching storm that became Hurricane Sally constituted an "imminent or clear and present danger amounting to more than normal or usual peril." ECF No. 1138 at paras. 132-133. In doing so, Skanska "knowingly disregarded readily available information and its own policies." *Id*. at para. 8. Claimants went further, alleging that Skanska violated its Hurricane Plan by deliberately choosing to leave its construction equipment in the vicinity of the Pensacola Bay Bridge rather than moving it to "safe harbor." *Id*. at paras. 66 and 70. After all, "[a]ny reasonable design-build firm in Skanska's shoes would have foreseen the consequences of a Pensacola Bay Bridge outage if the Hurricane Preparedness Plan was not followed." *Id*. at para. 38. "Skanska knew or should have known of the crucial need to remove and secure Skanska construction barges so as to not jeopardize the bridge itself and surrounding property." *Id*. at para. 78. "Skanska fully understood the disruption that would follow an outage severing the central artery connecting Pensacola with Gulf Breeze and Pensacola Beach." *Id*. at para. 46.

In sum, Skanska knew the stakes of damage and closure to the bridge. It also understood and accepted the obligation to protect the site and surrounding community as served by compliance with its Hurricane Plan, which included the requirement to move construction barges to safe harbor, which Skanska understood was necessary to prevent storm-driven construction barges from impacting and damaging the Pensacola Bay Bridge's spans.

### V.  Skanska Misses the Most Applicable Takeaways from the Cases Claimants Cite.

#### a. Skanska only furthers Claimants' Arguments by Distinguishing Claimants' Supporting Case Law on Unrelated Grounds.

As Skanska implies, the facts before this Court differ largely from most cases that construe *Robins Dry Dock*.  This case, after all, centers on a Florida-based construction firm hired by the State of Florida and paid with Florida citizens' tax dollars to build a roadway and bridge in Florida, involving its alleged failure to secure its construction site that resulted in massive losses to Floridian municipalities, businesses, and employees.  On this basis alone, Skanska could distinguish nearly all cases construing *Robins Dry Dock*.  Still, these cases provide important direction on why *Robins Dry Dock* does not apply to the facts before this Court.

For example, Skanska cites to *Ferromet Resources, Inc. v. Chemoil Corp.*, suggesting that the court recognized the "intentional interference exception recognized in *Robins*."  ECF. No. 1179 at p.9 (discussing *Ferromet*, No. 91-4310, 1992 WL 142411 (E.D. La. June 9, 1992)).  Yet, the *Ferromet* court, like the *Dunham-Price* court discussed above, went beyond recognizing a narrow intentional interference exception, saying "however they might be characterized, Defendants' actions were not acts of negligence; they were acts of intent, intended to exert sufficient pressure to influence Plaintiffs to do things their way." *Id*. at *1.  Skanska

also overlooks the unequivocal direction provided by the court in *Showa Line, Ltd. V. Diversified Fuels, Inc.*, which stated that "fraud and an intentional tort by the P & C Interests have been alleged, taking the claims out of the *Robins Dry Dock* parameters as well. ECF. No. 1179 at p. 9 (citing Civ. A. Nos. 88-2421, 1991 WL 211527 at *1 (E.D. La. Oct. 1, 1991)). Courts do not apply *Robins Dry Dock* to cases alleging intentional maritime torts, whether or not it contains an intentional interference with a contract count.[3]

Skanska also misses an important takeaway from *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F.Supp. 1008 (E.D. La. 1993) by focusing on Sekco's ownership of an oil platform. Crucially, the *Sekco* court rejected the defendants' attempt to "straightjacket" it with an overly strict reading of *Robins Dry Dock* that would deny any recovery based on the absence of any physical injury to the claimant's property interest. *Id*. at 1011. This Court should similarly deny

---

[3] Claimants mistakenly cited *Kingston Shipping Co., Inc. v. Roberts*, 667 F. 2d 34 (11th Cir. 1982) as having made clear "its position that *Robins* applied to 'unintentional maritime torts.'" ECF. N. 1171 at p. 13. The quoted portion should have been attributed to *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 970 F. Supp. 2d 524, 528 (E.D. La. 2013), aff'd sub nom. *In re Deepwater Horizon*, 784 F.3d 1019 (5th Cir. 2015) ("The Mexican States are correct that *Testbank*'s holding was limited to cases of unintentional maritime tort.") (citing *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1020, n.1 (5th Cir. 1985)). *Kingston Shipping Co.*, however, did refer to "negligent acts causing economic loss" as the underlying claim was couched in negligence. 667 F. 2d at 35.

Skanska's attempt to "straightjacket" it with a strict reading of *Robins Dry Dock* that premises Claimants' recovery on whether they own the Pensacola Bay Bridge.

*Venore Transp. Co. v. M/V STRUMA* involved a ship charterer seeking recovery of damages arising from the loss of use of a ship damaged in a collision with another ship. 583 F.2d 708, 710 (4th Cir. 1978). While distinguishable on this basis, Skanska overlooks the crucial similarity of the facts to those in *Venore*. Like the *Venore* ship-owner, Skanska seeks to escape all liability to municipalities, businesses, and employees who suffered losses due to the bridge outage caused by Skanska. As in *Venore*, this Court should be similarly guided by the equities and that, while there is no risk of double recovery for claimants, there is a very real risk that Skanska escapes liability even if denied exoneration or limitation of its liability should the Court grant Skanska's Motion to Dismiss nearly 1000 claims of directly impacted entrepreneurs, businesses, and individuals.

### b. Skanska only rejects strict application of *Robins Dry Dock* if doing so advances its interest.

The only time Skanska rejected a strict reading of *Robins Dry Dock* is when doing so would run against its interest. For example, Skanska claims *Pennzoil Producing Co. v. Offshore Exp., Inc,* prohibits recovery for economic losses arising from the closure of the Pensacola Bay Bridge (ECF No. 1179 at p. 13-14), despite the fact that Claimant UMB (representing the interests of the Garcon Point Bridge bond holders) alleges that it unequivocally suffered physical damage to the Garcon

Point Bridge—in which it maintains a property interest—as a direct result of the same misconduct alleged of Skanska during the same storm. ECF No. 1171 at paras. 27-28.

The same is true of Skanska's position with regard to "work zone" claimants. These claimants allege an impaired property interest existing within the same, contiguous project site as the catastrophically damaged Pensacola Bay Bridge. *See* ECF. No. 1171 at p. 29. Skanska claims "there is no authority that would support these claims," ECF No. 1179 at 14, despite having spent the bulk of its briefing to argue that *Robins Dry Dock* requires bridge impact claimants to have alleged that they suffered a direct impact with a property interest—just as "work zone" claimants have done in this case. Skanska, then, has twisted *Robins Dry Dock* beyond any semblance of its original meaning and interpretation to stand for the wrongheaded proposition that it entitles Skanska to immunity from any responsibility to bridge impact claimants, no matter how egregious its conduct and substantially certain the resulting destruction.

## **CONCLUSION**

In Skanska's haste to elude responsibility for the undeniable harm it has caused the claimants it seeks to dismiss—largely entrepreneurs and employees—it never once cites to Supplemental Rule F(5), which merely requires that "[e]ach claim shall specify the facts upon which the claimant relies in support of the claim,

12

the items thereof, and the dates upon which the same accrued." Claimants have far exceeded this standard, setting forth the Bridge Impact claimants' claims with granularity, including the damages each sustained as a result not only of negligence and gross negligence, but also intentional conduct. Claimants therefore, respectfully request the Court determine first its jurisdiction over Skanska's Limitation of Liability Complaints before next deciding whether Skanska is able to secure exoneration or limitation of its liability. Claimants seek leave to amend their Bridge Impact Master Claim expeditiously if the Court finds the Bridge Impact Claims suffer from a curable pleading defect.

/s/ E. Samuel Geisler
E. SAMUEL GEISLER, FL Bar # 83817
BRYAN F. AYLSTOCK, FL Bar # 78263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Second floor
Pensacola, Florida 32502
Office: (850) 202-1010
Fax: (850) 916-7449
sgeisler@awkolaw.com
baylstock@awkolaw.com
sallyteam@awkolaw.com

and

/s/ Thomas F. Gonzalez
THOMAS F. GONZALEZ, FL Bar #173878
J. NIXON DANIEL, III, FL Bar # 228761
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, Florida 32502
Office: (850) 432-2451
tfg@beggslane.com

13

jnd@beggslane.com

and

*/s/ Brian H. Barr*
BRIAN H. BARR, FL Bar 493041
EMMANUELLA J. PAULOS, FL Bar 99010
Levin Papantonio Rafferty Proctor
Buchanan O'Brien Barr & Mougey, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Office: (850) 435-7000
bbarr@levinlaw.com
epaulos@levinlaw.com

Attorneys for Claimants

## CERTIFICATE OF SERVICE

**I HEREBY** CERTIFY that on this 11th day of June, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

/s/ E. Samuel Geisler