# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN THE MATTER OF IN RE SKANSKA USA CIVIL SOUTHEAST INC. AND SKANSKA USA, INC. AS OWNERS OF THE BARGE KS 5531 PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § ADMIRALTY RULE 9(H)  CIVIL ACTION NO. 3:20-CV-05980 – LC/HTC |

## DISCOVERY ORDER No. 2
### Re: DISCOVERY TO CLAIMANTS

Petitioner, Skanska USA Civil Southeast Inc. ("Skanska") has served a Request for Production of Documents, a First Set of Interrogatories, and an Amendment to Interrogatory Numbers 2 and 13 to Claimants. The parties have met and conferred regarding objections raised by Claimants, but were unable to resolve their disputes as to Interrogatories 3, 4, 6, 13, 15-18, 20-21 and Requests 1, 5, 13-16, 23-25, and 28.[1] The Court heard argument by counsel as to these interrogatories and requests and also allowed the parties to submit post-hearing written argument.[2] On

---

[1] The Court's notes for the June 16, status conference indicates that Skanska was withdrawing request number 25. However, it appears from Skanska's written submission that it is withdrawing request 28, rather than 25. Regardless, the Court will address both 25 and 28.
[2] Because of the weekly status conferences set before the undersigned in this matter to address discovery issues, the Court has not required the parties to file written motions to compel or

June 15, 2021, Skanska filed a Response to Objections (ECF Doc. 1188), and the Claimants and the United States submitted written letter briefs to the undersigned's chambers. Upon careful consideration of the relevant law and the parties' arguments, the Court finds as follows.

The starting point for any discovery dispute is whether the information sought is relevant. Federal Rule of Civil Procedure 26 defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information within the scope of discovery need not be admissible as evidence to be discoverable. *Id.* "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

The majority of the disputed discovery involves interrogatories or requests to produce information regarding what the Claimants or the United States did to prepare for Hurricane Sally and what they knew regarding the impact of Hurricane Sally.[3] Claimants and the United States argue the information sought is not relevant and not

---

protective orders. Thus, the Court construes the instant discovery dispute as an oral motion to compel responses by Skanska. *See* Fed. R. Civ. P. 37(a).

[3] Although Skanska's discovery requests at issue appear to be directed at all Claimants, in its written submission, Skanska states that it is willing to "limit the inquiry to Claimants with some connection to the waterfront and vessel owners."

proportional to the needs of this case. Skanska, on the other hand, argues the information is directly relevant to whether "Skanska is entitled to exoneration from liability for *force majeure.*" Specifically, Skanska argues whether its conduct was reasonable is informed by what "a prudent person familiar with the ways and vagaries of the sea" knew or did in anticipation of Hurricane Sally.

Because the accidents at issue involve a drifting barge striking stationary structures or land masses, Skanska is presumed to be liable unless it can show the barges drifted because of "an inevitable accident or a *vis major*, which human skill and precaution and a proper display of nautical skill could not have prevented." *Petition of U. S.*, 425 F.2d 991, 995 (5th Cir. 1970); *The Louisiana,* 70 U.S. 164, 173 (1865) ("A drifting vessel is presumptively liable for damages 'unless it can show affirmatively that the drifting was the result of an inevitable accident, or a *vis major,* which human skill and precaution and a proper display of nautical skill could not have prevented.'"). The burden of proving an inevitable accident or Act of God rests heavily upon the vessel asserting such defense." *See Boudin v. J. Ray McDermott & Company*, 281 F.2d 81, 88 (5th Cir. 1960); *The Lackawanna*, 210 F. 262 (2d Cir. 1913); *Massman-Drake v. Towboat M/V Hugh G. Blaske*, 289 F.Supp. 700 (E.D.La., 1968).

"The test for determining whether [Skanska is] free from fault is whether [it] took reasonable precautions under the circumstances as known or reasonably to be

anticipated." *Petition of U. S.*, 425 F.2d at 995. Skanska is correct that the "standard of reasonableness is that of prudent men familiar with the ways and vagaries of the sea." *See id.; The Louisiana*, 70 U.S. 164, 172, (1865) (" 'Where a collision takes place, when every prudent measure, consistent with ordinary seamanship, has been adopted, and carried into effect by the vessel proceeded against,' it is a case of inevitable accident."); *Bunge v. Freeport*, 3:97-cv-240-LC (N.D. Fla. Sept. 14, 1999), ECF Doc. 85 at 7. Skanska is incorrect, however, that this standard of reasonableness is measured against the conduct of the Claimants.

The fact that some of the Claimants may have owned one or more personal use watercrafts or lived on waterfront property does not necessarily make any of the Claimants "prudent men [or women] familiar with the ways and vagaries of the sea" or "other persons of nautical skill". *See Fischer v. S/Y NERAIDA,* 508 F.3d 586, 594 (11th Cir. 2007). The resources and abilities the Claimants had to address Hurricane Sally cannot be analogized to that of Skanska. The potential damage occurring if a personal watercraft went adrift or from not boarding up windows on private property is not the same as the damage which could be caused by a commercial barge carrying construction equipment. It is a stretch to equate the knowledge or actions of the Claimants to the knowledge and actions of a "world leading project development and construction group,"[4] responsible for an over $300 million contract and at least 55

---

[4] *See* https://www.skanska.com/

barges located in open waters, many of which were loaded with or capable of carrying construction equipment.

Likewise, Skanska's attempt to use what the United States Navy knew or did during Hurricane Sally to establish the reasonableness of its actions fares no better. The Navy did not own any barges and the Navy did not have any barges located near the Pensacola Bay Bridge. As the United States points out in its letter brief, there were only three significant seagoing vessels located at NAS Pensacola that could have been impacted by Hurricane Sally, all of which were crewed and fully capable of getting under way and none of which went adrift. Skanska's relevancy argument turns the language in *The Louisiana* on its head because even if one of the Claimants' watercrafts went adrift, it would not have done so "under the same circumstances." *The Louisiana,* 70 U.S. at 174 (finding negligence where "other persons of nautical skill-disinterested witnesses in this case-found no difficulty in securing their vessels at the same place, and under similar circumstances").

It is not the Claimants' or the US Navy's conduct that are at issue; it is Skanska's, and nothing in the cases relied upon by Skanska changes that fact. Indeed, in *Petition of U.S.*, *Fischer,* and *Bunger,* the courts determined whether the vessel owner was exonerated from liability based on a *vis major* by considering expert testimony about whether the vessel owners' conduct was reasonable. *See Petition of U.S.,* 425 F. 2d at 996 (a naval architect testified that it would take a wind force of at

least 168 m.p.h. to sever the vessel's anchor links); *Fischer,* 508 F.3d at 596 ("All of Siavrakas's experts' trial testimony went to show that the decision to leave the NERAIDA in Lake Worth with two anchors was at least as reasonable a course of action—if not more so—than attempting to move the boat elsewhere"); *Bunge*, 2:97-cv-240-LC, ECF Doc. 85 at 9 ("The Court is faced with two choices, either the weather was more severe than shown at trial or Hull No. 40 was not moored as well as Freeport's expert claims it was").

As the Eleventh Circuit stated in *Fischer,* an accident is "inevitable" or "unavoidable" if "the accident would have happened anyway regardless of what the *defendant* did." *See id.*, at 596 (emphasis added). The court went on to state that "it may be difficult to persuade the fact-finder that a storm was so fierce as to make an accident inevitable without first demonstrating that the *defendant* did everything in *his power* to prevent the accident." *Id.* (emphasis added). And, it simply cannot be said that what measures were reasonable for Skanska or what conduct was within Skanska's "power" was the same as those for the Claimants.

Claimants and the United States also ague Skanska's motion should be denied as to the disputed discovery because the discovery is not proportional to the needs of the case. Under Rule 26, in addition to relevance, the Court must also consider "the proportionality of the discovery requested to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b). Given "the minimal potential relevance of the requested [discovery]," the Court finds it "is not proportional to the needs of this case." *See TMH Med. Servs., LLC v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 2018 WL 6620880, at *1 (M.D. Fla. May 1, 2018)

Thus, the Court finds Skanska's motion to compel should be denied as to Interrogatory No. 6, other than as it relates to the drifting of a barge in Pensacola Bay, and also denied as to Interrogatory Numbers 15, 16, 17, 20, and 21, and Request for Production Numbers 13, 14, 15, 16, 23, 24 and 25.

Additionally, the Court finds the motion to compel should be denied as to Interrogatory Numbers 13 and 18 and Request for Production Number 28. This discovery relates to damages and will be part of Phase II of the trial in this matter.[5] *See* ECF Doc. 58 (Final Scheduling Order, setting a limitation trial on September 13, 2021, and "[if] Skanska is entitled to limit its liability, the parties will conduct damages discovery"). Thus, Skanska may re-issue those interrogatories and request upon the completion of the Phase I trial, as necessary.

---

[5] Although Skanska states in its written submission that Interrogatory No. 18 is intended to seek information necessary for Skanska to reconstruct the accidents, that information appears to be sought in Interrogatory No. 19, which is not in dispute, and specifically asks for the locations of any impact by construction equipment or a barge to any coastal structure, which would seem to include the fishing pier and Garcon Point Bridge. Interrogatory Number 18 asks for a description of the damage to the pier and bridge.

The Claimants, however, will be required to respond to Interrogatory Number 3, to the extent that Claimants must identify all persons with knowledge and all fact witnesses Claimants intend to call at trial, and Interrogatory Number 4. Claimant Escambia County will be required to respond to Request for Production Number 5.[6] The Court finds this discovery to be relevant as well as proportional.

Done this the 19th day of June 2021, Pensacola, Florida.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] In Skanska's written response, Skanska appears to refer to this request as request number 2. Based on the 6/15/2021 email from Claimants' counsel, Bill Barr, request number 2 is not at issue.