## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF IN RE SKANSKA USA CIVIL SOUTHEAST INC. AND SKANSKA USA, INC. AS OWNERS OF THE BARGE  KS 5531 PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § | ADMIRALTY RULE 9(H)  CIVIL ACTION NO. 3:20-CV-05980-LC/HTC |

## DISCOVERY ORDER No. 3
## Re:  ADDITIONAL DISCOVERY RELATING TO PRIOR STORMS

Prior to the District Judge's referral of discovery disputes to the undersigned, Claimants and Petitioner Skanska USA Civil Southeast, Inc. ("Skanska") agreed to an ESI protocol pursuant to which Skanska would run certain agreed-upon search terms on an ESI database and/or project server database.  Because the parties could not agree on the exact date range for the search terms to be run, the parties agreed, given the upcoming trial date, to focus their priorities initially on the date range of September 10 to September 30, 2020.[1]  In addition to the ESI discovery, Claimants

---

[1] This agreement was in no way intended to limit the Claimants' ability to ask for documents outside of that date range but was agreed upon solely for the purpose of facilitating discovery. Claimants have since indicated that they are willing to limit the search to a date range of September 10 to October 31, provided they can ask for specific documents outside that range upon a showing

also issued written discovery to Skanska, which the parties, after a meet and confer, agreed would include the production of certain information related to prior storms based on specific date ranges and utilizing specific search terms.[2]  *See* Exhibit 1.

Claimants now come to the Court seeking for Skanska to run the following additional searches in their ESI/project server database(s).  First, Claimants seek to have Skanska run three (3) additional search terms, **demob,** **remob,** and "01742361," on the "storm search" date ranges (i.e., date ranges related specifically to prior storms).  *See id* (for date ranges).  Second, Claimants seek to have Skanska conduct a search of ESI utilizing certain key terms for a period from July 29, 2016 (the date of the Skanska contract with the Florida Department of Transportation for the construction of the Pensacola Bay Bridge), to the date of the documents currently collected in the ESI and project serve databases.  *See* Exhibit 2.

Skanska has objected to these additional requests on two grounds: (1) relevance, and (2) burdensomeness or proportionality.  As to relevance, Skanska argues that what its hurricane plan was prior to the plan in place for Hurricane Sally and what it did relative to prior storm events is not relevant.  Skanska contends the

---

of necessity and relevance.  Skanska has not agreed to this proposal yet, as it needs to consider the burden and breadth of conducting this additional search for materials after September 30 and reviewing those documents for privilege.

[2] These agreed-upon terms appear to be limited to identifying documents related to Skanska's conduct or response during prior weather events.  Although Skanska has agreed to produce responsive documents utilizing these search terms, these documents have not yet been produced in light of Skanska prioritizing its production of cell phone data.

Case No. 3:20-cv-05980-LC-HTC

reasonableness of its conduct and its lack of privity and knowledge should be confined to what Skanska knew or had reason to know about Hurricane Sally, its barges, and what it did between the dates of September 10 and September 16, 2020. Claimants argue, on the other hand, that the conduct Skanska took regarding other storm events (both prior to and after Hurricane Sally) bears on the reasonableness of Skanska's conduct in the face of Hurricane Sally.

As an initial matter, the Court agrees with the Claimants that ***some*** information relating to Skanska's conduct concerning prior storms and why it changed its hurricane preparedness plan over the years is relevant. As set forth in the Court's Discovery Order #2, the Eleventh Circuit stated in *Fischer v. S/Y NERAIDA,* 508 F.3d 586, 594 (11th Cir. 2007), whether a vessel owner is exonerated from liability because of a *force majeure* is dependent on whether he did everything in his power to prevent the accident. In other words, the question is whether Skanska took all reasonable measures to prevent the allisions.

And, what Skanska did in response to prior storm events and what it knew or learned from prior storm events certainly must have informed its decision in September 2020. At a minimum, such information could bear on what Skanska was capable of doing. *See Matter of Francis*, 2017 WL 5495108, at *4 (S.D. Cal. Nov. 16, 2017) ("'Privity or knowledge' may be active or constructive; therefore in addition to showing lack of knowledge or the cause of the loss, the owner must also

demonstrate that it has avail[ed] itself of *whatever means of knowledge are reasonably necessary* to prevent conditions likely to cause a loss." (emphasis added)); *American Dredging Co. v. Lambert*, 81 F.3d 127, 129 (11th Cir. 1996) (looking at whether vessel owner had "foreknowledge" of events that resulted in collision or knowledge of the condition of the vessel prior to the accident).

Indeed, as the Claimants point out, in Skanska's amended response to Interrogatory #11, Skanska specifically explains that it "decided Rig 20 could safely remain on site driving piles during the day on Sunday, at the end of which it would be secured, centered between the bridge and fishing pier with anchors set and spuds down . . . [because] [t]his arrangement had been used successfully (no barge movement) in a prior storm in August 2020, so it was deemed safe based [on] the anticipated conditions." Skanska cannot rely on its action or inaction during prior events to explain its action or inaction during Hurricane Sally, while at the same time objecting to the Claimants having access to that same information.

Whether the information sought is relevant, of course, does not the end the analysis, as the Court must also consider whether the burden of the production is proportional to the needs of the case, and in particular here, whether it would result in an extension or delay of the September trial date. *See* Fed. R. Civ. P. 26(b). In considering the Claimants' additional requests, the Court finds that requiring Skanska to re-query its databases and review additional documents for production that have

*demob,* *remob,* and the associated cost code to not be proportional to the needs of this case.  In reviewing the emails Claimants have provided to support their request for this additional search, the Court notes that the emails appear to reference the demobilization or remobilization of equipment or construction activities before and after a weather or other event.  Likewise, in Skanska's amended response to Interrogatory No. 12, Skanska describes demobilization and remobilization as referencing when it would stop work on the project and restart work after a tropical event.

Thus, it seems to the Court that a query based on these additional terms is unlikely to result in documents relating to the specific conduct at issue, which is (1) why Skanska did not follow its Hurricane Preparedness Plan (if that is the case), and (2) whether the conduct Skanska took regarding the barges was reasonable or negligent.  Additionally, the Court notes that in Skanska's amended answer to Interrogatory No. 2, Skanska identified the dates it demobilized and remobilized as to all pertinent prior storm events and Hurricane Sally, and thus, to the extent that Claimants believe there is any issue as to that timing or the number of employees available to address the pertinent weather events, Claimant has the information it needs or can obtain the same more directly through deposition testimony.

As the United States interjected at the hearing held on June 22, 2021, and as argued by Skanska at the June 23, 2021 hearing, these terms are industry terms and

could produce mostly irrelevant documents.  Thus, the Court will not require Skanska to engage in an additional search for these terms.   Of course, the Court's determination does not preclude Claimants from seeking reconsideration once Claimants have reviewed all documents produced by Skanska should they determine that there is missing information that can be obtained only through this additional query.

Claimants' second request appears to be isolated to search terms designed to identify documents bearing on Skanska's hurricane preparedness plans in years prior to Hurricane Sally and also why Skanska may have altered or changed its plan.  The Court finds this second request is more likely to provide relevant information, and thus responsive documents should be produced.

As Skanska explains in its amended answer to Interrogatory No. 7, the hurricane preparedness plan is "not a static document."  Instead, it is modified "to address the status of the project, the amount of equipment deployed on the water, the status of construction activities in the pre-cast yard, etc."  While one of Claimants' claims of negligence is based on their allegation that Skanska did not follow the hurricane plan in place for Hurricane Sally, as the Court understands it, Skanska may argue that regardless of whether it followed the plan, its conduct was reasonable based on the known conditions.  Whether such conduct was reasonable could depend on why certain changes were made to the plan.  For example, if Skanska contends it

did not have to move the barges to East Bay, the question may then become why that was a part of the hurricane plan and when it got added.  Likewise, as stated above, what Skanska may have learned from prior iterations of the plan bears on what it did in response to Hurricane Sally.

However, in balancing the needs of the Claimants for this discovery with the extent of documents already produced by Skanska, as well as the limited issues set for trial in September, the Court finds it to appropriate to limit the search terms to a more manageable production to include only the following terms:   "incident management plan," "recovery plan," "emergency prepar*," and "preparedness plan." Skanska will need to run these terms from July 29, 2016 to October 31, 2020.  Once again, this determination does not preclude Claimants from seeking additional documents once they have reviewed Skanska's production and upon a showing of need.

DONE and ORDERED this 24th day of June 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

7

| PHASE 2 ESI SEARCH TERMS | | | |
|---|---|---|---|
| SEARCH SET #1 OF 3 | | | |
| **Date Range**: 08/17/2017-10/22/2017 OR 05/20/2018-06/10/2018 OR 08/30/2018-09/28/2018 OR 08/24/2019-09/15/2019 OR 10/13/2019-11/10/2019 OR 06/01/2020-06/27/2020 OR 08/19/2020-09/02/2020 | | | |
| **Date Field**: Family Date | | | |
| **Custodians**: Beddow, Tyler;Bender, William;Stephens, Sarah;Salamanca, Alvaro;Rubio, Eduardo;Project Server, Skanska;Rodgers, Robert;Mcglynn, Patrick;Johnson, Nicholas;Hill, Robert;Fulton, Tom;Francis, Dan;Demarco, Thomas;Benton, Ronnie | | | |
| **Total Count**: 3,372 **With Families**: 5,330 | | | |
| **Global Deduplication Applied** | | | |
| **Key Terms** | **Without Families** | **With Families** | **Total Unique Documents Per Term** |
| Hurricane* | 1969 | 3526 | 875 |
| Tropical | 1024 | 1801 | 175 |
| Weather* w/4 forecast* | 574 | 641 | 305 |
| Damage* w/2 (recover* OR assess*) | 267 | 613 | 51 |
| Storm* w/4 prepar* | 224 | 506 | 25 |
| "Risk Management" | 116 | 311 | 28 |
| Evacuate* | 87 | 286 | 8 |
| "Condition 1" | 58 | 90 | 11 |
| "Condition one" | 55 | 189 | 0 |
| "Condition 4" | 51 | 80 | 12 |
| "Condition three" | 45 | 92 | 1 |
| "Condition four" | 44 | 90 | 0 |
| "Condition two" | 44 | 90 | 0 |
| Break* w/2 free | 36 | 53 | 16 |
| "Condition 2" | 32 | 55 | 11 |
| Break* w/2 loose | 27 | 50 | 11 |
| "Condition 3" | 25 | 48 | 9 |
| Brok* w/2 loose | 18 | 36 | 1 |
| Butcherpen | 17 | 26 | 12 |
| Brok* w/2 free | 10 | 24 | 3 |
| Aground | 6 | 14 | 1 |
| "Butcher pen" | 0 | 0 | 0 |

**IN RE SKANSKA USA CIVIL SOUTHEAST INC.**
**CIVIL ACTION NO. 3:20-CV-05980**
**SEARCH TERMS AND METHODOLOGY - AT ISSUE**

| SEARCH SET #2 Hurricane Preparedness Terms | | | |
|---|---|---|---|
| **Date Range:**  07/29/2016-06/10/2021 | | | |
| **Date Field:**  Family Date | | | |
| **Custodians:** Beddow, Tyler;Bender, William;Stephens, Sarah;Salamanca, Alvaro;Rubio, Eduardo;Project Server, Skanska;Rodgers, Robert;Mcglynn, Patrick;Johnson, Nicholas;Hill, Robert;Fulton, Tom;Francis, Dan;Demarco, Thomas;Benton, Ronnie | | | |
| **Total Count:** 3,277 **With Families:** 6,482 | | | |
| **Global Deduplication Applied** | | | |
| **Key Terms** | **Total Docs** | **Total Docs with Families** | **Total Unique Documents Per Term** |
| Gale* | 717 | 1,361 | 459 |
| Landfall | 714 | 1347 | 338 |
| "Incident management plan" | 630 | 1418 | 455 |
| Boom* w/2 lower* | 578 | 1202 | 265 |
| "Recovery plan*" | 547 | 1134 | 312 |
| "Safe harbor" AND NOT (financ* OR stock* OR ERISA OR retir*) | 174 | 361 | 45 |
| "Emergency prepar*" | 166 | 435 | 29 |
| "Preparedness plan" | 154 | 399 | 54 |
| "pre hurricane" | 87 | 133 | 0 |
| Pre-Hurricane* | 87 | 133 | 0 |

| SEARCH SET #3 Post-September 2020 | | | |
|---|---|---|---|
| **Date Range:** 10/01/2020 to 06/10/2021 | | | |
| **Date Field:**  Family Date | | | |
| **Custodians:** Beddow, Tyler;Bender, William;Stephens, Sarah;Salamanca, Alvaro;Rubio, Eduardo;Project Server, Skanska;Rodgers, Robert;Mcglynn, Patrick;Johnson, Nicholas;Hill, Robert;Fulton, Tom;Francis, Dan;Demarco, Thomas;Benton, Ronnie | | | |
| **Total Count**: 6,034 **With Families:** 9,477 | | | |
| **Global Deduplication Applied** | | | |
| **Key Terms** | **Total Docs** | **Total Docs with Families** | **Total Unique Documents Per Term** |
| Sally* | 6034 | 9477 | -- |
| Note - I excluded email header and only included email subject in the search to reduce chances of hitting on a person's name - this accounts for the difference with the last search | | | |