## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF IN RE | § | |
| SKANSKA USA CIVIL | § | |
| SOUTHEAST INC. AND | § | |
| SKANSKA USA, INC. AS | § | **ADMIRALTY RULE 9(H)** |
| OWNERS OF THE BARGE KS | § | |
| 5531 PRAYING FOR | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **3:20-CV-05980-LC/HTC** |

---

### DISCOVERY ORDER No. 4
### Re:  WORK PRODUCT

This matter is before the Court on a dispute between the parties regarding the scope of work product protection.  Petitioner Skanska USA Civil Southeast, Inc. ("Skanska") has produced a privilege log identifying 150 documents, consisting of email communication and attachments, as being covered by the work product protection.  For the majority of the documents, Skanska described the basis of protection as "post-storm discussions at the direction of counsel."  According to Skanska, these documents are work product because Skanska anticipated litigation by *at least* September 18, 2020, two (2) days after Hurricane Sally made landfall, and these documents and communications were generated at the direction of in-counsel. *See* July 8, 2021 E. Billhimer Letter (attached).

Claimants disagree with Skanska's position and argue the descriptions provided by Skanksa simply do not support a work product determination. Skanska, thus, submitted the documents to the Court for *in camera* inspection. After reviewing each of the 150 documents at issue, the Court told Skanska that it appears Skanska used a wide blanket in what it sought to cover from disclosure as work product. The Court noted, for example, that Skanska sought to protect communications containing purely logistical information such as transportation arrangements. Such documents should never have been identified as either work product or attorney client privilege.

As the Court explained, not everything done at the direction of counsel is clothed with the work product protection. Moreover, Skanska produced no evidence, other than argument of counsel, that each communication at issue was made, or conducted at, the request of counsel for purposes of addressing anticipated litigation. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 92–93 (S.D.N.Y. 2019) (rejecting work product claim because plaintiff gave a "generic recitation of the law governing work product doctrine" without showing how the test applied to the documents at issue). However, to Skanska's benefit, rather than issuing an order requiring disclosure, the Court gave Skanska an opportunity to reconsider its designations and provide additional support for communications that Skanska maintained, upon a further review, were protected.

Subsequently, Skanska narrowed its designation to fifty-seven (57) of the 150 documents and provided slightly little more authority for its position. *See* attached Privilege Log (edited to remove irrelevant columns). Additionally, Skanska identified eight (8) text messages, which were also in dispute, and which Skanska provided to the Court on July 20, 2021. This Order addresses those sixty-five (65) documents. Skanska categorizes the documents it seeks to withhold as falling primarily in the following buckets: (1) documents related to "public relations," and (2) documents with insurers.

## I.   WORK PRODUCT DOCTRINE

The work product doctrine is codified in Rule 26 of the Federal Rules of Civil Procedure, which provides that a party is not entitled to obtain discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the party makes a showing of substantial  need "and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). The purpose of the work product rule is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

3

Under Rule 26(b)(3), the party asserting work product protection "bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (citing cases). The party asserting work-product protection must demonstrate the material at issue "'(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" *Allied Irish Banks, P.L.C.*, 252 F.R.D. at 173 (quoting *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007)).

Importantly, the materials to be protected "must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." *Wultz v. Bank of China Ltd*, 304 F.R.D. 384, 393–94 (S.D. NY 2015) (citation and internal quotation marks omitted). Thus, it is not enough to merely show that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather, the materials must result from the conduct of "investigative or analytical tasks to aid counsel in preparing for litigation." *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (citation omitted). "[D]elegating business functions to counsel to oversee does not provide work-product protection to the materials created for those business functions." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1244 (D. Or. 2017).

4

Similarly, simply designating in-house counsel to act as central point of contact to triage information after an incident does not give a party free reign to designate whatever it chooses as work product. Instead, it unnecessarily blurs the line between communications that were primarily made in anticipation of litigation and what would have been done in the ordinary business regardless of litigation. *See Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986) ("It is not the precepts of law that give rise to the difficulty in this case; instead, the difficulty exists because of plaintiffs' decision, immediately upon receiving notice of the fire, to employ attorneys to fulfill its ordinary business function of claims investigation."). Courts take assertions of work product protection and privilege seriously because they cannot unring the bell once disclosure is required; likewise, parties should take seriously the fact that privileges and work product protection are not to be indiscriminately applied to shield information one side simply does not like.

A.    Communications Regarding Publicity

Skanska has designated as work product several email communications it describes on the June 20, 2021 revised privilege log as "discussion of public relations to assist legal counsel in anticipation of litigation." Despite this designation, to be clear, the communications at issue are not to or from a public relations firm and do not include inside or outside counsel. In fact, only one communication even mentions a "PR firm." Instead, the communications Skanska seeks to protect are internal

communications between and among employees of Skanska regarding their thoughts on certain news articles or statements made by others and how Skanska might address some of those articles or statements.  Such communications are not work product.

"[T]he purpose of the [work product] rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *See Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).  Thus, documents created for public relations purposes are not protected.  *Gucci Am., Inc.*, 271 F.R.D. at 78 (noting work product doctrine was inapplicable to a "publicity strategy [that] was treated as a business concern"); *N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F. Supp. 2d 501, 517 (S.D.N.Y.2007) (determining "talking points" document prepared to aid in briefing officials to answer questions from the press was not work product under an exemption pursuant to the Freedom of Information Act because it "seem[ed] to have been drafted for public relations purposes"); *de Espana v. Am. Bureau of Shipping*, 2005 WL 3455782, at *3 (S.D.N.Y. Dec. 14, 2005) (concluding that notes from a meeting that "concern[ed] press and public relations strategies" were not work product because they would have been prepared "in the normal course of business without the threat of litigation").

The communications at issue bear on what senior management might do from a public relations or community standpoint.  There is no legal strategy or legal advice

6

discussed in any of the emails.  Moreover, while one of the emails relates to how Skanska should respond to a news media request for comment, it was not a request to respond to any ongoing or current litigation, and there is no indication or evidence that the drafted response came from in-house or outside counsel or even had input from counsel.  The emails are simply internal communications about what Skanska believes may be necessary to bolster its reputation with state and local public officials in light of the events surrounding Hurricane Sally, some of which were made the day Hurricane Sally made landfall.

Such communications fall outside of the work product protection.  *See Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("[I]t is obvious that as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3), Fed. R. Civ. P."); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 78–79 (S.D.N.Y. 2010) ("The documents reviewed *in camera* demonstrate that Gucci's publicity strategy was treated as a business concern and was handled almost exclusively by its in-house corporate communications department. Although the draft press statement may have been reviewed by Gucci's outside counsel, there is no indication that counsel drafted the statement or rendered legal advice in connection with such review."); *Zenith Ins. Co. v. Texas Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 173–74 (N.D. Tex. 2018) ("But TIFS has not shown that

7

Items 60, 62, and 63, while motivated by the existence of then-existing litigation, were created primarily to aid in then-existing litigation—as opposed to simply sharing between TIFS's personnel and/or director publicly available media coverage of the lawsuit filed against TIFS.").

In support of its position, Skanska relies on Magistrate Judge Jones' decision in *In re Abilify (Aripiprazole) Prod. Liab. Lit.*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017). Skanska's reliance on *In re Abilify* is misplaced. The issue before Judge Jones was whether the disclosure of privileged materials to a public relations firm constituted a waiver of the attorney-client privilege. *Id.* That is not the issue before this Court. Regardless, the analysis would be no different under *In re Abilify*. As Judge Jones noted, "The key is not whether the entity is a consultant but rather whether the function performed by the consultant related to assisting legal counsel in providing legal advice and strategy concerning the legal position of [the company] in the media coverage concerning the litigation." *Id.* The fact that the matters discussed in the emails, while bearing on public relations, may have also been helpful with the threatened litigation is of no consequence. *Calvin Klein Trademark Tr.*, 198 F.RD. at 55. ("It may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status.").

Case No. 3:20-cv-05980-LC/HTC

Thus, the Court finds that Skanska has not met its burden of establishing work product protection as to the documents identified on the privilege log as relating to public relations.  For the same reasons, the Court does not find the text messages identified by Skanska as bearing document id 33410, 33735, 33877, 34346, 34481, 35290, and 36240 to be protected work product.

B.    Communications with Insurers[1]

Skanska also seeks to protect certain emails containing communications with its insurers.  As an initial matter, the Court agrees with Skanska that communications with its insurers *can* be work product because a party's representative includes a "party's attorney, consultant, surety, indemnitor, insurer, or agent." *Jones v. Tauber & Balser, P.C.*, 503 B.R. 510, 515–17 (N.D. Ga. 2013).  However, not all communications with a party's insurers are work product.  Instead, just as with the public relations emails, it is the nature and content of the communications that is determinative.

Documents that were prepared in the ordinary course of business or would have been prepared even in the absence of a prospect of litigation are not protected.

---

[1] As an initial matter, these communications, while not protected for the reasons discussed below, also do not appear to be relevant to the first phase of these bifurcated proceedings dealing with Skanska's alleged negligence.  The Court has not been asked to weigh in on relevance and further understands the parties agreed in their ESI protocol that certain ESI documents would be produced via search terms without regard to relevance.  Presumably, these fall in that bucket.  The parties are reminded, once again, however, of their upcoming September trial date and that their failure to narrowly tailor their discovery will not be a basis for a continuance.

Case No. 3:20-cv-05980-LC/HTC

*See, e.g.*, *Benton v. Brookfield Properties Corp.*, 2003 WL 21749602, at *2 (S.D.N.Y. July 29, 2003) (citing *Ramsey*, 2002 WL 1402055, at *9–10 & n.9).  As set forth by the court in *Zenith Ins. Co.*:

> [A] document need not be generated in the course of an ongoing lawsuit to qualify for work product protection, but the primary motivating purpose behind the document's creation must be to aid in possible future litigation; materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision; and among the factors relevant to determining the primary motivation for creating a document are whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance, where, if the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.

*Zenith Ins. Co.*, 328 F.R.D. at 171–72; *see also Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982)).

Also, "to the extent that these documents merely consist of benign communications among the parties that contain neither statements to or from the underlying defendants nor opinions and legal strategies about the underlying litigation, they are not protected by the attorney-client privilege or the work-product doctrine, and their disclosure is proper.  *See, e.g.*, *Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 726 (N.D. W. Va. 2014), *aff'd*, 2014 WL 4199207 (N.D. W. Va. Aug. 22, 2014), and *aff'd*, 621 F. App'x 743 (4th Cir. 2015); *Republican Party of N. Carolina v. Martin*, 136 F.R.D. 421, 430 (E.D.N.C. 1991) ("[D]ocuments which

contain only compilations of facts, and are devoid of any legal analysis (and, apparently, any legal significance) . . . are . . . unprotected by the work product doctrine.").

The communications at issue between Skanska and its insurer, Zurich, do not contain any legal analysis. They do not contain legal strategy. They do not include counsel. They do not even contain a compilation of facts. Instead, they are "benign" communications regarding how reimbursements will be handled, whether a subcontractor should be hired to perform the salvage work, whether the insurer will pay for that work, and reviewing the contracts for the subcontractors. Skanska has not shown, despite being given the opportunity to do so, that the primary purpose of these communications were to address the Claimants' anticipated or threatened litigation, versus what would ordinarily be communicated between Skanska and its insurer in the normal course of business.

Likewise, communications between Skanska and DLS, an agent of its insurer Global Risk, including DLS's request for information, while described by Skanska in the privilege log as containing an "assessment of damages," is nothing more than information sought as part of a routine insurance investigation.[2]   In *Benton v. Brookfield Properties Corp.*, 2003 WL 21749602 (S.D. N.Y. July 29, 2003),

---

[2] The Court's decision herein, however, should not be interpreted as implying that the insurer's claims file, generally, would be discoverable.

Case No. 3:20-cv-05980-LC/HTC

defendants sought to protect as work product emails exchanged between employees of the company and a risk engineer for Zurich, its insurer, after an elevator accident, which resulted in two deaths. *Id.* at *2. The court found the work product protection did not apply because "the work was undertaken immediately following the assertedly insurable event in order to assist the insurer in determining whether to cover the expected claim." *See id.* ("When an accident occurred on a site assigned to [the engineer], his role was to start the investigative process, secure evidence, and determine, if possible, the cause of the accident.").

Skanska also seeks to protect internal emails regarding a renewal of insurance coverage. Skanska identifies these communications as "Discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on insurance renewal. Contains specific topics for legal assessment and advice to create a draft narrative for insurance narrative." Once again, counsel is not included on the emails and there is no indication the emails were sent at the direction of counsel. Instead, the emails contain purely business and financial information. There is no legal assessment contained in the emails. Also, the referenced "narrative" relates solely to operational and business matters. The Court does not find these emails to contain any work product. There is no indication the same emails and information would not have been sent in the ordinary course without regard to litigation.

12

As stated above, it is Skanska's burden to establish the work product protection, and the Court does not find that Skanska has met that burden as to those documents identified on the privilege log as communications with its insurers. *See Progressive Cas. Ins. Co. v. F.D.I.C.*, 302 F.R.D. 497, 502 (N.D. Iowa), *aff'd,* 49 F. Supp. 3d 545 (N.D. Iowa 2014) ("[T]he documents were provided for case updates pursuant to the reinsurance agreements, or in response to specific requests, and included the matter's history, its present posture, current activity, assessments of coverage and liability issues, amounts paid and reserve, and plans for future handling. Doc. No. 75 at 10. Those are all typical business purposes for the reinsurance industry. Progressive has not met its burden of showing that these documents were 'prepared or obtained because of the prospect of litigation.'").

Skanska also seeks to protect internal communications regarding the retention of a claims preparation professional, Aon.[3] The Court finds that while those emails do not necessarily fall in the category of work product for this litigation, they do qualify as work product with regard to any litigation or potential litigation Skanska may have with its insurers. Thus, the Court will not require those documents to be produced. The Court notes, however, that an email which, otherwise, is not protected, such as the DLS emails requesting information, is not made so simply because Aon

---

[3] The Court notes that not all instances of these emails in the production have been identified as protected. However, a waiver must be intentional and not inadvertent.

Case No. 3:20-cv-05980-LC/HTC

is mentioned or copied.  Thus, based on the Court's review, the only documents referencing Aon that are protected are documents bearing id numbers 158–160.

### C.   Other Documents

There are approximately eighteen (18) documents Skanska identifies on the privilege log that do not fall in either the public relations or insurer buckets.  Instead, these remaining communications deal with other litigation or are communications that involve in-house counsel and advice from counsel, which, arguably, qualify as legal rather than business advice.  The Court finds Skanska has established that those documents are covered by privilege or work product protection.

## II.   CONCLUSION

Once the documents related to public relations and communications with insurers are removed, the Court finds that the only communications that Skanska may properly withhold from litigation, as identified on the privilege log, on the grounds of work product protection or attorney client privilege, are those bearing document id numbers 1055, 1297, 1350, 2072, 2168–74, 2699, 2824, 2870, 3174, 3179, 5202, and 5203.

Finally, the parties have represented that the 150 documents and eight (8) text messages the Court laboriously reviewed are not the only purportedly privileged documents at issue.  As the Court stated in open court at the July 21, 2021 discovery status conference, it is the Court's hope that this Order will guide the parties to

14

conduct a more careful and discerning privilege review and to narrow the scope of any remaining disputes.

Accordingly, IT IS ORDERED:

1.      By **Monday, July 26, 2021**, Skanska shall produce to Claimants *all* documents originally identified as privileged of the 150 provided to the Court to review, except documents bearing document id numbers 158–160, 1055, 1297, 1350, 2072, 2169-–74, 2699, 2824, 2870, 3174, 3179, 5202, and 5203.

2.      By **Tuesday, July 27, 2021**, Skanska shall submit to the Court for *in camera* review any remaining documents that Skanska contends are privileged and to which Claimants disagree.  With the submission of documents, Claimants and Skanska should provide to the Court any additional authority any party wants the Court to consider as a basis for the privilege or their objections.

DONE and ORDERED this 22nd day of July 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**



Elizabeth C. Billhimer
Direct (850) 269-8853
Ebillhimer@clarkpartington.com

July 8, 2021

*VIA ELECTRONIC TRANSMISSION*
Magistrate Hope T. Cannon
United States District Court for the Northern District of Florida
United States Courthouse
One North Palafox Street
Pensacola, Florida 32502

      Re:     Submission of Documents for In Camera Review
             In the Matter of In Re Skanska USA Civil Southeast, Inc. and Skanska, Inc.
             as Owners of Barge KS 5531 Praying for Exoneration from or Limitation
             of Liability, Civil Action No. 3:20-CV-05980-LC/HTC

Dear Magistrate Judge Cannon:

We have delivered to your Chambers for in camera review documents from the initial privilege log prepared by Skanska that are currently challenged by Claimants. As requested, we provided the documents in hard copy as well as an electronic version. With regard to the electronic version, the documents are included on a flash drive that contains a .pdf with bookmarks that allows you to navigate between documents, as well as the native files. If you would prefer to be able to log on to a review platform, we can facilitate such access.

Rule 26(b)(3)(A) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party of its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). Fed. R. Civ. P. 26(b)(3)(A). This case is unique because the threat or anticipation of litigation was very real in the week after Hurricane Sally. The Assistant General Counsel of Skanska USA, Inc. ("Skanska"), Steve Lunsford, was quickly engaged to provide legal advice and legal services. In that regard, Mr. Lunsford, in his legal capacity, directed many activities of Skanska employees that occurred thereafter.

As early as September 18, 2020, word was publicly spreading that the law firm of Levin, Papantonio, which currently represents Claimants in this action, had filed or was preparing to file class action lawsuits against Skanska as a result of Hurricane Sally. *See* Skanska 00035682 attached hereto as Exhibit "A." On that same date, an article appeared on the local WEAR-TV website entitled "Lawsuits underway against Skanska Southeast after their barges damaged Three Mile Bridge" (the "Article"). *See* Exhibit "B" attached hereto. The Article quoted a partner from Levin, Papantonio and stated that the firm planned to file class action and individual lawsuits

against Skanska. *Id.* In addition, on September 20, 2020, another law firm, Zarzaur, publicly announced it was exploring class action litigation. On September 22, 2020, Escambia County noted in internal communications that the Levin, Papantonio law firm had "already filed a class action suit arising out of the damage to the Pensacola Bay Bridge." *See* Exhibit "C" (SKANSKA-PRR-EC_00000505) attached hereto.[1]

Here, the probability of litigation was very real, not speculative, and actually resulted in massive litigation. Accordingly, the communications and work of Skanska employees done at the direction of the Assistant General Counsel are entitled to work product protection. *See Savoie v. Am. Sec. Ins. Co.*, No. 3:05CV244/MCR/EMT, 2006 WL 1737189, at *1 (N.D. Fla. June 23, 2006) ("In order for material to have been prepared in anticipation of litigation, there must be a showing that litigation is more than a remote possibility.") citing *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 476 (S.D.N.Y.2003). "Instead, a 'substantial probability' of litigation must exist and the concern that litigation may occur must be real, not speculative." *Id.*

Moreover, some of the documents at issue for in camera review involve communications between Skanska, as insured, and its insurers or concerning communications with or requests from its insurers. In particular, the Vice President of Insurance, Mary Ann Krautheim, worked with and at the direction of Mr. Lunsford in connection with communications with Skanska's insurers. *See* Fed. R. Civ. P. 26(b)(A)(3) ("[D]ocuments and tangible things that are <u>prepared in anticipation of litigation</u> or for trial by or for another party of its representative (including the other party's attorney, consultant, surety, indemnitor, <u>insurer, or agent</u>); § 2024 The Work–Product Rule—Matters Protected by the Work–Product Rule, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) ("Thus, the rule made it clear that a report from the insured to the insurer is within the immunity as are statements obtained by investigators for the insurer.").

Finally, the spreadsheet that was sent to you last evening by Claimant's counsel contained additional information that was not previously furnished by Claimants to Skanska's counsel before last evening. The information contained herein is in response to this additional new information provided by Claimants. Separately, we will provide a response on Claimant's revised log to each entry.

Sincerely,

Elizabeth C. Billhimer

/ECB
Enclosures
cc: Claimants' Counsel

---

[1]   Escambia County produced these communications in response to a public records request.



# IOS IMESSAGE/SMS/MMS

| CHAT PARTICIPANTS | |
|---|---|
| Number of participants | 3 |
| Display names | +18502090536 |
| | Anthony Moore (+18502090536) |
| | Local User |
| Local user | |
| **CONVERSATION DETAILS** | |
| Number of messages | 1378 |
| First message sent date/time | 6/26/2020 2:03:10 PM |
| Last message sent date/time | 4/5/2021 11:11:12 PM |
| Case time zone | (UTC) Coordinated Universal Time |

**Anthony Moore (+18502090536)**

↔ Unknown direction
9/18/2020 11:48:13 PM

Levin law firm has filed a law suit against Skanska

**EXHIBIT "A"**

CONFIDENTIAL

SKANSKA_00035682

# Lawsuits underway against Skanska Southeast after their barges damaged Three Mile Bridge

by Renee Beninate
Friday, September 18th 2020





Volume 90%

*Lawsuit underway against Skanska Southeast after their barges damaged Three Mile Bridge. Source - WEAR*

EXHIBIT "B"



SANTA ROSA COUNTY, Fla. (WEAR) — Lawsuits are underway against Skanska Southeast, the builder of the Three Mile Bridge.

Several of their giant barges broke free during Hurricane Sally.

Volume 90%

*Lawsuit underway against Skanska Southeast after their barges damaged Three Mile Bridge. Source - WEAR*

Two of them knocked out the new span of the Three Mile Bridge over Pensacola Bay.

Now attorneys want Skanska Southeast to pay for it.

The Three Mile Bridge has large sections missing, a crane laying over the road, and eight barges went loose from the site.

Some crashing into people's backyards during the storm.

"Everyone was preparing, except for Skanska," said associate attorney from Levin Papantonio, Brenton Goodman. "You know the company that was supposed to safeguard our transportation and make all of our areas more accessible and make it easier for all of us to transport back and forth have made it more difficult by what they did. And, more what they didn't do by not securing these barges."

We asked Skanska Southeast why. They tell us they secured the barges and crane, preparing for 30 mile per hour winds. By the time they learned the conditions would be a lot worse, it was too late.

"If we had known a category 2 hurricane was physically coming, it literally takes 4 to 5 days to physically prepare for that, " said Brian Stiereitz, Executive Vice President of Skanska Southeast. "We would have to have begun that late last week and we simply- none of us had that information."

Levin Papantonio plans on filing class action and individual lawsuits against the company, representing businesses and people hurt emotionally and financially- because of what happened.

"If someone's dock was destroyed, if their house was destroyed because the barge came through," said Goodman. "Because they travel everyday using that bridge or they rely on that bridge to bring customers, or employees to their areas."

## Beth Haley

| | |
|---|---|
| **From:** | Alison A. Rogers |
| **Sent:** | Tuesday, September 22, 2020 10:27 AM |
| **To:** | Robert Bender; Janice P. Gilley |
| **Cc:** | Joy Jones; Robert K Turpin; Alain Espinosa; Alain Espinosa |
| **Subject:** | RE: Morning Briefing |

Anything in writing, just get it to me.

**From:** Robert Bender <RBENDER@myescambia.com>
**Sent:** Tuesday, September 22, 2020 10:25 AM
**To:** Janice P. Gilley <JanicePGilley@myescambia.com>
**Cc:** Alison A. Rogers <aarogers@co.escambia.fl.us>; Joy Jones <DJJONES@myescambia.com>; Robert K Turpin <RKTURPIN@myescambia.com>; Alain Espinosa <aespinosa@myescambia.com>
**Subject:** Re: Morning Briefing

We need quietwater rebuilt ASAP. We are ready to go. Joy is seeing if we have permitting yet.

RB

> On Sep 22, 2020, at 10:24 AM, Janice P. Gilley <JanicePGilley@myescambia.com> wrote:
>
> We have been working on this. I will have more to announce soon.
>
> Best,
>
> Janice P. Gilley
> County Administrator
> 221 Palafox Place
> Pensacola, Florida 32502

**From:** Alison A. Rogers <aarogers@co.escambia.fl.us>
**Sent:** Tuesday, September 22, 2020 10:23:15 AM
**To:** Janice P. Gilley <JanicePGilley@myescambia.com>; Joy Jones <DJJONES@myescambia.com>
**Cc:** Robert Bender <RBENDER@myescambia.com>; Robert K Turpin <RKTURPIN@myescambia.com>; Alain Espinosa <aespinosa@myescambia.com>
**Subject:** RE: Morning Briefing

Is there anyone, maybe Engineering, who could put together a proposal for ~~████████████████████~~
~~████████████████████~~

**From:** Janice P. Gilley <JanicePGilley@myescambia.com>
**Sent:** Tuesday, September 22, 2020 10:06 AM
**To:** Alison A. Rogers <aarogers@co.escambia.fl.us>; Stephen G. West <sgwest@myescambia.com>; Charlie Peppler <cpeppler@myescambia.com>
**Cc:** Robert Bender <RBENDER@myescambia.com>; Alain Espinosa <aespinosa@myescambia.com>
**Subject:** RE: Morning Briefing

1

**EXHIBIT "C"**

SKANSKA-PRR-EC_00000504

We also need ferries to get folks from the beach to downtown Pensacola. A two hour road trip is not an option for our residents and workers on the beach.

Best,

Janice P. Gilley
County Administrator
Escambia County Board of County Commissioners
221 Palafox Place
Pensacola, FL 32502
janicepgilley@myescambia.com
<image001.jpg>

**From:** Alison A. Rogers <aarogers@co.escambia.fl.us>
**Sent:** Tuesday, September 22, 2020 8:35 AM
**To:** Stephen G. West <sgwest@myescambia.com>; Charlie Peppler <cpeppler@myescambia.com>;
Janice P. Gilley <JanicePGilley@myescambia.com>
**Cc:** Robert Bender <RBENDER@myescambia.com>; Alain Espinosa <aespinosa@myescambia.com>
**Subject:** RE: Morning Briefing

Troy Rafferty is calling me back soon on this topic.  We also want ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓That is something I will ask about. ▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**From:** Stephen G. West <sgwest@myescambia.com>
**Sent:** Tuesday, September 22, 2020 8:15 AM
**To:** Alison A. Rogers <aarogers@co.escambia.fl.us>; Charlie Peppler <cpeppler@myescambia.com>
**Cc:** Beth A. Larrieu <balarrie@myescambia.com>
**Subject:** Morning Briefing

Two press conferences today.  One at 9 AM with the Florida Department of Economic Opportunity and another at 3 PM with the local officials.

Janice had a question for our office:  Apparently, Levin-Papantonio has already filed a class action suit arising out of the damage to the Pensacola Bay Bridge.  She wanted to know the plaintiffs/class characteristics and whether the County would be eligible to participate and, if so, what the damages would be.

SKANSKA-PRR-EC_00000505

| DOCID | PRIVILEGE | DESCRIPTION | GLOBAL CUSTODIAN | FAMILY DATE | Deficiency | Skanska Response |
|---|---|---|---|---|---|---|
| 158 | Work Product | Post storm discussion at direction of In-House Counsel  regarding Insurance | Fulton, Tom | 9/22/2020 9:14 | Not work product on face of entry. | Post storm communication at direction of In-House Counsel regarding legal advice and legal strategy for claims preparation, engagement of consultant in anticipation of litigation.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). |
| 159 | Work Product | Post storm discussion at direction of In-House Counsel  regarding Insurance | Fulton, Tom | 9/22/2020 9:14 | Not work product on face of entry.  Description appears to be inaccurate.  Describes a "discussion" but no metadata for to, from, cc. | Attachment to 158; pepared at direction of In-House Counsel, S. Lunsford regarding legal advice and legal strategy for claims preparation, engagement of consultant in anticipation of litigation.  See July 8, 2021 Letter to Magistrate Hope T. Cannon. |
| 160 | Work Product | Post storm discussion at direction of In-House Counsel  regarding Insurance | Fulton, Tom | 9/22/2020 9:14 | Not work product on face of entry.  Description appears to be inaccurate.  Describes a "discussion" but no metadata for to, from, cc. | Attachment to 158; pepared at direction of In-House Counsel, S. Lunsford regarding legal advice and legal strategy for claims preparation, engagement of consultant, in anticipation of litigation.  See July 8, 2021 Letter to Magistrate Hope T. Cannon |
| 232 | Work Product | Post storm discussion at the direction of In-House Counsel regarding site visit | Fulton, Tom | 9/21/2020 7:57 | Not work product on face of entry. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussion at direction of In-House Counsel, S. Lunsford regarding legal strategy for site visit.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  *See In re Abilify (Aripiprazole) Prod. Liab. Litig.* , No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 334 | Work Product | Post storm discussion at direction of In-House Counsel regarding legal strategy, outreach | Fulton, Tom | 9/16/2020 20:22 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussion at direction of In-House Counsel, S. Lunsford, regading legal strategy, outreach.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  *See In re Abilify (Aripiprazole) Prod. Liab. Litig.* , No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 700 | Work Product | Post storm discussion at direction of In-House Counsel  regarding resources | Ford, Mason Fulton, Tom | 9/18/2020 11:29 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). |
| 1055 | Work Product | Discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on outstanding claims | Fulton, Tom | 9/11/2020 11:44 | Not work product on face of entry | Discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on outstanding claims.  **This document relates to settlement of claims in connection with another legal matter and was prepared at direction of and involvement with inside and outside counsel.  See also Fed. R. Evid. 408; § 90.408, Fla. Stat.** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1282 | Work Product | Post storm discussion at direction of In-House Counsel regarding insurance and restoration | Fulton, Tom | 9/26/2020 14:04 | Not work product on face of entry. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). |
| 1297 | Work Product | Discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on outstanding claims | Fulton, Tom | 9/11/2020 11:18 | Not work product on face of entry. | Discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on outstanding claims.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **This document relates to settlement of claims in connection with another legal matter and was prepared at direction of and involvement with inside and outside counsel.  See also Fed. R. Evid. 408; § 90.408, Fla. Stat.** |
| 1322 | Work Product | Post storm discussion at direction of In-House Counsel S. Lunsford regarding | Fulton, Tom | 9/16/2020 20:04 | Incomplete description | Post storm discussion at direction of In-House Counsel, S. Lunsford regarding legal strategy, statement, outreach.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  *See In re Abilify (Aripiprazole) Prod. Liab. Litig., No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017)* ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 1350 | Work Product | Post storm discussion at direction of In-House Counsel, S. Lunsford regarding property damage plan | Fulton, Tom<br>Handler, Russ | 9/20/2020 9:00 | Not work product on face of entry. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Document makes specific reference that plan was developed with legal advice/input from In-House Counsel.  Prepared in anticipation of litigation.** |
| 1694 | Work Product | Post storm discussions at direction of In-House Counsel regarding Hurricane Sally insurance assessment | DeMarco, Thomas | 9/19/2020 15:09 | Not work product on face of entry.  Third parties present on communication. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Third party "DLS Marine" was engaged by insurer.  "Global Risk" is insurer.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  **Contains information regarding assessment of damages for legal advice and in anticipation of litigation.** |
| 1785 | Work Product; Attorney-Client | Post storm discussions at direction of In-House Counsel regarding insurance assessment | DeMarco, Thomas | 9/25/2020 6:08 | Not work product on face of entry.  Metadata issue - "To" recipients appears to be cut off.  Third party present on communication. | Added "Mary Ann" for her last name.  Metadata was correct based on data extracted and available.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Third party "Aon" is agent of insurer of insured Skanska.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  **Contains information regarding assessment of damages and in anticipation of litigation.** |
| 1798 | Work Product; Attorney-Client | Post storm discussions at direction of In-House Counsel regarding insurance assessment | DeMarco, Thomas | 9/26/2020 13:37 | Not work product on face of entry.  Third party present on communication. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Third party "Aon" is agent of insurer of insured Skanska.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  **Contains information regarding assessment of damages and in anticipation of litigation.** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1814 | Work Product; Attorney-Client | Post storm discussions at direction of In-House Counsel regarding insurance assessment | DeMarco, Thomas | 9/28/2020 11:00 | Not work product on face of entry. Third party present on communication. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Third party "Aon" is agent of insurer of insured Skanska.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  **Contains information regarding assessment of damages in anticipation of litigation.** |
| 2072 | AC+WP | Post storm discussion regarding information from Outside Counsel regarding outstanding invoices | DeMarco, Thomas | 9/25/2020 7:34 | Not privileged on face of entry.  Additional information needed.  Not work product on fce of entry. | In-House Counsel, S. Lunsford, on thread in this communication.  Communication also references information from outside counsel.  Communication concerns other legal matter.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Communication contains specific reference to seeking legal opinion from In-House Counsel.** |
| 2122 | Work Product | Post storm discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on article, strategy | Fulton, Tom | 9/21/2020 8:06 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on article, strategy |
| 2123 | Work Product | Post storm discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on statement, recovery, retrieval | Fulton, Tom | 9/21/2020 7:43 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussion at direction of In-House Counsel, S. Lunsford regarding legal advice on statement, recovery, retrieval.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  See In re Abilify (Aripiprazole) Prod. Liab. Litig., No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017)** ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions."). |
| 2168 | Work Product | Discussion at direction of In-House Counsel regarding legal advice on insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  **This document relates to settlement of claims in connection with another legal matter and was prepared at direction of and involvement with inside and outside counsel.  See also Fed. R. Evid. 408; § 90.408, Fla. Stat.** |
| 2169 | Work Product | Attached documents re discussion at direction of In-House Counsel  re: insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | Attachment to 2168.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf) |
| 2170 | Work Product | Attached documents re discussion at direction of In-House Counsel  re: insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | Attachment to 2168.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf) |
| 2171 | Work Product | Attached documents re discussion at direction of In-House Counsel  re: insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | Attachment to 2168.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf) |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2172 | Work Product | Attached documents re discussion at direction of In-House Counsel  re: insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | Attachment to 2168.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf) |
| 2173 | Work Product | Attached documents re discussion at direction of In-House Counsel  re: insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | Attachment to 2168.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf) |
| 2174 | Work Product | Attached documents re discussion at direction of In-House Counsel  re: insurance, claims | Fulton, Tom | 9/16/2020 9:25 | Not work product on face of entry. | Attachment to 2168.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf) |
| 2245 | Work Product | Post storm discussions at the direction of In-House Counsel regarding article, strategy | Fulton, Tom | 9/21/2020 7:07 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussions at the direction of In-House Counsel regarding legal advice on article, strategy.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  *See In re Abilify (Aripiprazole) Prod. Liab. Litig .*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 2587 | Work Product | Discussion at the direction of In-House Counsel, S. Lunsford regarding strategy | Fulton, Tom | 9/16/2020 20:21 | Not work product on face of entry. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  See In re Abilify (Aripiprazole) Prod. Liab. Litig ., No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries.").** |
| 2642 | Work Product | Discussion at direction of In-House Counsel, S. Lunsford, regarding media | Fulton, Tom | 9/18/2020 6:39 | Not work product on face of entry. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Discussion at direction of In-House Counsel, S. Lunsford, regarding legal strategy on media.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  *See In re Abilify (Aripiprazole) Prod. Liab. Litig .*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2696 | Work Product | Discussion at direction of In-House Counsel, S. Lunsford regarding strategy | Fulton, Tom | 9/20/2020 12:20 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Discussion of public relations to assist legal counsel in anticipation of litigation. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.,* No. 3:16-MD-2734, 2017 WL 6757558, at \*8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 2699 | Work Product | Post storm discussions at direction of In-House Counsel, S. Lunsford regarding insurance assessment | Fulton, Tom | 9/27/2020 11:38 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon. Post storm discussions at direction of In-House Counsel, S. Lunsford for legal advice on insurance assessment. **Contains information regarding assessment of damages in anticipation of litigation.** |
| 2727 | Work Product | Discussion at direction of In-House Counsel, S. Lunsford, regarding strategy, barge and damage | Francis, Dan Fulton, Tom Handler, Russ | 9/19/2020 12:54 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Discussion of public relations to assist legal counsel in anticipation of litigation. See In re Abilify (Aripiprazole) Prod. Liab. Litig., No. 3:16-MD-2734, 2017 WL 6757558, at \*8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 2824 | Work Product | Post storm discussion at direction of In-House Counsel  re: Insurance | Fulton, Tom Handler, Russ | 9/27/2020 15:08 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Post storm discussion at direction of In-House Counsel  regarding legal advice on insurance engagement in anticipation of litigation.** |
| 2870 | Attorney-Client | Post storm discussion with In-House Counsel, S. Lunsford regarding legal advice on barge, damage, strategy | Francis, Dan Fulton, Tom Handler, Russ | 9/19/2020 15:14 | Not work product on face of entry.  Metadata issue - "CC" recipients appear to be cut off | Added "Mary Ann" to her last name.  Metadata was correct based on data extracted and available.  Post storm discussion **with In-House Counsel, S. Lunsford regarding legal advice on barge, damage, strategy.**  See July 8, 2021 Letter to Magistrate Hope T. Cannon. |
| 3174 | AC+WP | Post storm discussion with In-House Counsel, S. Lunsford regarding strategy for new activities | Fulton, Tom | 9/16/2020 17:25 | Not work product on face of entry.  Additional information needed. | See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Post storm discussion with In-House Counsel, S. Lunsford providing legal advice on strategy for new activities** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3179 | AC+WP | Discussion with and at the direction of In-House Cousel, S. Lunsford and Outside Counsel regarding strategy other lawsuit | Fulton, Tom | 9/15/2020 12:49 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Outside counsel on thread, VLPlaw.  Outside counsel providing legla advice on activities regarding separate litigation.** |
| 3201 | Work Product | Post storm discusssion at the direction of In-House Counsel, S. Lunsford, regarding strategy, visit | Fulton, Tom | 9/21/2020 7:59 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Discussion of public relations to assist legal counsel in anticipation of litigation.  *See In re Abilify (Aripiprazole) Prod. Liab. Litig* ., No. 3:16-MD-2734, 2017 WL 6757558, at \*8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but neccessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 3235 | Work Product | Discussion at direction of In-House Counsel, S. Lunsford re: legal advice on insurance renewal | Ford, Mason Fulton, Tom | 9/11/2020 13:35 | Not work product on face of entry. | Discussion at direction of In-House Counsel, S. Lunsford  regarding legal advice on insurance renewal.  **Contains specific topics for legal assessment and advice to create a draft narrative for insurance narrative.** |
| 3236 | Work Product | Attachment to discussion at direction of In-House Counsel, S. Lunsford  re: Insurance | Ford, Mason Fulton, Tom | 9/11/2020 13:35 | Not work product on face of entry. | Attachment to 3235.  Prepared at direction of In-House Counsel, S. Lunsford to provide legal advice. |
| 3237 | Work Product | Attachment to discussion at direction of In-House Counsel, S. Lunsford  re: Insurance | Ford, Mason Fulton, Tom | 9/11/2020 13:35 | Not work product on face of entry. | Attachment to 3235.  Prepared at direction of In-House Counsel, S. Lunsford to provide legal advice. |
| 3238 | Work Product | Attachment to discussion at direction of In-House Counsel, S. Lunsford  re: Insurance | Ford, Mason Fulton, Tom | 9/11/2020 13:35 | Not work product on face of entry. | Attachment to 3235.  Contains legal advice regarding insurance; for use to provide legal advice. |
| 3328 | Work Product | Discussion at direction of In-House Counsel S. Lunsford re: insurance renewal. | Ford, Mason Fulton, Tom | 9/11/2020 17:19 | Not work product on face of entry. | Discussion at direction of In-House Counsel S. Lunsford regarding legal advice on insurance renewal.  **Contains specific topics for legal assessment and advice to create a draft narrative for insurance narrative.** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3359 | Work Product | Discussion at the direction of In-House counsel regarding insurance renewal | Fulton, Tom | 9/11/2020 16:57 | Not work product on face of entry. Metadata issue - "To" recipients appear oto be cut off. | Added "Mary Ann" to her last name.  Metadata was correct based on data extracted and available.  Discussion at the direction of In-House counsel regarding legal advice on insurance renewal.  **Contains specific topics for legal assessment and advice to create a draft narrative for insurance narrative.** |
| 5013 | Work Product | Post storm discussions at direction of In-House Counsel, S. Lunsford regarding insurance | ProjectServer, Skanska | 9/25/2020 8:16 | Not work product on face of entry.  Metadata Issue - "To" recipients appear to be cut off | Added "ine" to Catherine's name.  Metadata was correct based on data extracted and available.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussions at direction of In-House Counsel, S. Lunsford regarding legal advice on insurance.  **See Fed. R. Civ. P. 26(b)(3)(A); See also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  Contains information regarding assessment of damages, defenses, and in anticipation of litigation.** |
| 5024 | Work Product | Post storm discussion at direction of In-House Counsel, S. Lunsford  re: insurance | ProjectServer, Skanska | 9/25/2020 6:57 | Not work product on face of entry.  Third parties present on communication. | Added "ine" to Catherine's name.  Metadata was correct based on data extracted and available.  See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussions at direction of In-House Counsel, S. Lunsford regarding legal advice on insurance.  **Third party "Aon" is agent of insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  Contains information regarding assessment of damages in anticipation of litigation.** |
| 5148 | Work Product | Post storm discussion at the direction of In-House counsel regarding legal advice on insurance, damages. | ProjectServer, Skanska | 9/26/2020 13:37 | Not work product on face of entry.  Third party present on communication. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.  Post storm discussion with In-House Counsel, S. Lunsford regarding legal advice on insurance, damages.  **Third party "Aon" is agent of insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf).  Contains information regarding assessment of damages in anticipation of litigation.** |
| 5202 | AC+WP | Post storm discussion at the direction of and with In-House Counsel S. Lunsford regarding draft agreement | Rodgers, Robert | 9/24/2020 9:54 | Not work product on face of entry.  No page count. | See July 8, 2021 Letter to Magistrate Hope T. Cannon.   Post storm discussion at the direction of and with In-House Counsel S. Lunsford regarding legal advice on draft agreement.  **S. Lunsford on chain providing legal advice on draft contract.** |
| 5203 | AC+WP | Draft document preapred at the direction of and with In-House Counsel S. Lunsford regarding draft agreement | Rodgers, Robert | 9/24/2020 9:54 | Not work product on face of entry. | Attachment to 5202.  Prepared at directions of and input of In-House Counsel, S. Lunsford regarding draft contract. See July 8, 2021 Letter to Magistrate Hope T. Cannon.  **Draft contract containing edits of counsel.** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5327 | Work Product | Post storm discussion at direction of In-House Counsel re: Insurance | Rodgers, Robert | 9/26/2020 11:02 | Not work product on face of entry. Third party present on communication. Metadata issue - No "To" recipients listed | Added "ine" to Catherine's name. Metadata was correct based on data extracted and available. See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Third party "Aon" is agent of insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 5328 | Work Product | Post storm discussion at direction of In-House Counsel re: Insurance | Rodgers, Robert | 9/26/2020 13:17 | Not work product on face of entry | See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 5481 | Work Product | Post storm discussion at direction of In-House Counsel regarding insurance | Rodgers, Robert | 9/26/2020 13:44 | Not work product on face of entry. Third party included on communication. | See July 8, 2021 Letter to Magistrate Hope T. Cannon. Third party "Aon" is insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 5608 | Work Product | Post storm discussion at the direction of In-House counsel regarding insurance | Rodgers, Robert | 9/28/2020 11:00 | Not work product on face of entry. Third party present on communication. Metadata issue - "To" recipients appear ot be cut off. | Added "Mary Ann" for her last name. Metadata was correct based on data extracted and available. See July 8, 2021 Letter to Magistrate Hope T. Cannon. Third party "Aon" is insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 5609 | Work Product | Post storm discussion at direction of In-House Counsel re: insurance | Rodgers, Robert | 9/24/2020 18:07 | Not work product on face of entry. Third party present on communication. No page count. | See July 8, 2021 Letter to Magistrate Hope T. Cannon. Third party "Aon" is insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). |
| 5692 | Work Product | Post storm discussion at direction of In-House Counsel re: insurance | Rodgers, Robert | 9/28/2020 8:05 | Not work product on face of entry. Third party breaks privilege. No page count. | Page count added. See July 8, 2021 Letter to Magistrate Hope T. Cannon. Post storm discussion at direction of In-House Counsel S. Lunsford regarding legal advice on insurance, damages. Third party "Aon" is agent of insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 5735 | Work Product | Post storm discussion at direction of In-House Counsel regarding legal advice on insurance, damages | Rodgers, Robert | 9/26/2020 9:25 | Not work product on face of entry. Third parties present on communication. | Page count added. See July 8, 2021 Letter to Magistrate Hope T. Cannon. Post storm discussion with In-House Counsel S. Lunsford regarding legal advice on insurance, damages. Third party "Aon" is agent of insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6083 | Work Product | Post storm discussion at the direction of In-House counsel regarding insurance assessment | Rodgers, Robert | 9/25/2020 6:08 | Not work product on face of entry. Third party present on communication. No page count. | Page count added. See July 8, 2021 Letter to Magistrate Hope T. Cannon. Third party "Aon" is insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 6308 | Work Product | Post storm discussion at the direction of In-House counsel regarding insurance assessment | Rodgers, Robert | 9/26/2020 13:37 | Not work product on face of entry. Third parties present on communication. Metadata issue - "To" recipients appear to be cut off. | Added "Mary Ann" to her last name. Metadata was correct based on data extracted and available. See July 8, 2021 Letter to Magistrate Hope T. Cannon. Third party "Aon" is insurer of insured Skanska. See Fed. R. Civ. P. 26(b)(3)(A); see also Vann v. State, 85 So. 2d 133 (Fla. 1956) (included within the attorney-client privilege are communications the insured makes to the insurer for its use to fulfill its obligation to defend on the insured's behalf). **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 6474 | Work Product | Post storm discussion at the direction of In-House counsel regarding insurance assessment | Rodgers, Robert | 9/25/2020 8:16 | Not work product on fce of entry. Metadata issue - "To" recipients appear to be cut off. | Added "ine" to Catherine's name. Metadata was correct based on data extracted and available. See July 8, 2021 Letter to Magistrate Hope T. Cannon. **Contains information regarding assessment of damages for legal advice in anticipation of litigation.** |
| 32262 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations | Fulton, Tom | 9/17/2020 0:04 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations. **Discussion of public relations to assist legal counsel in anticipation of litigation. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at \*8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 33410 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on public relations | Fulton, Tom | 9/17/2020 12:55 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on public relations. **Discussion of public relations to assist legal counsel in anticipation of litigation. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at \*8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |
| 33735 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy regarding review of news report | Fulton, Tom | 9/17/2020 13:41 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations. **Discussion of public relations to assist legal counsel in anticipation of litigation. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at \*8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.").** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 33877 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy regarding review of news report | Fulton, Tom | 9/17/2020 13:41 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations. **Discussion of public relations to assist legal counsel in anticipation of litigation.** *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions."). |
| 34346 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on public relations | Fulton, Tom | 9/17/2020 12:55 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations. **Discussion of public relations to assist legal counsel in anticipation of litigation.** *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions."). |
| 34481 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations | Fulton, Tom | 9/17/2020 0:04 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on insurance, public relations. **Discussion of public relations to assist legal counsel in anticipation of litigation.** *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions."). |
| 35290 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on communications | Fulton, Tom | 9/29/2020 15:32 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on communications. **Discussion of public relations to assist legal counsel in anticipation of litigation.** See In re Abilify (Aripiprazole) Prod. Liab. Litig., No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions."). |
| 36240 | Work Product | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on communications | Fulton, Tom | 9/29/2020 15:32 | | Communication at direction of In-House Counsel, S. Lunsford regarding legal strategy on communications. **Discussion of public relations to assist legal counsel in anticipation of litigation.** *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. . . . In the world today . . . it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions."). |