# EXHIBIT 1

## Skanska Spoliation Timeline

**September 15, 2020**

- Skanska Assistant General Counsel Steve Lunsford begins coordinating directly with people on the ground in Pensacola. Counsel represented that Mr. Lunsford "was immediately managing the fallout as a result of Hurricane Sally and specifically directing the preservation of evidence."[1]

**September 16-18, 2020**

- Skanska "implemented an evidence retention and hold policy after Hurricane Sally which was communicated by in-house counsel to Skanska personnel verbally on September 16 & 17, 2020-while Sally's winds were still blowing."[2]

- "[O]n September 17 . . . Skanska also reminded its personnel of the standard operating procedure and protocol in the aftermath of such an event- to preserve all documents/data and not to discard or destroy any documents/ data . . . On September 17 . . . Messrs. Fulton, DeMarco and Rodgers held a post casualty meeting, at the Hilton Garden Inn because the Skanska office was without power and the area was flooded. At the meeting they reiterated to, and reminded employees, not to destroy or discard any documents."[3]

- "Skanska personnel were aware of preservation of evidence protocol in the event of a casualty. They were reminded of same as early as September 17, 2020."[4]

**September 17, 2020**

- Outside counsel Bradley Copenhaver is notified in anticipation of potential litigation.[5]

---

[1] Ex. 1-A, June 9, 2021 Discovery Hearing Transcript at 26:6-11; 38:10-13.
[2] Ex. 1-B, June 10, 2021 Skanska Response to Interrogatory No. 23
[3] Ex. 1-C, June 18, 2021 Skanska Amended and Supplemental Response to Interrogatory No. 23.
[4] Ex. 1-D, June 18, 2021 Skanska Amended and Supplemental Response to Request for Admission No. 11.
[5] Ex.1-E, July 23, 2021 30(b)(6) Deposition of Daniel Francis ("Francis 30b6 Transcript") at 97:21-98:1.

**October 14, 2020**

- Assistant General Counsel Scott Lunsford sends legal hold letter drafted by Outside Counsel Bradley Copenhaver to Pensacola Bay Bridge email list serv.[6]

**November 4, 2020**

- The first lawsuit is filed against Skanska for damages caused by the destruction of the Pensacola Bay Bridge following Hurricane Sally.[7]

**November 11, 2020**

- **Sarah Stephens**' iPhone is "reset"[8] by Skanska Business Manager Chris Erwin in her presence upon her last day working for Skanska, deleting all content.[9]

**December 24, 2020**

- **Will Bender** "resets" his iPhone "as a matter of practice" upon his last day working for Skanska, deleting all content.[10]

---

[6] Ex.1-F, Francis Ex. 11; Ex.1-G, Francis Ex. 12.

[7] *Bagelheads, Inc. v. Skanska USA Civil Southeast, Inc. and Eisman & Russo, Inc.*, 2020-CA-001461.

[8] "Resetting" or "restoring" a phone to factory settings "erases the information and settings" on the device and asks the individual resetting the phone, "Are you sure you want to restore the iPhone . . . All of your media and other data will be erased." https://support.apple.com/en-us/HT201252, published March 1, 2020; last accessed Aug. 1, 2021. If an individual resets the phone from the phone itself, and not a computer, it requires the user to select "Erase All Content and Settings." https://support.apple.com/en-us/HT201274, published June 7, 2019, last accessed Aug. 1, 2021.

[9] Ex.1-E, Francis 30b6 Transcript at 225:7-23.

[10] Ex.1-E, Francis 30b6 Transcript at 222:14-223:9.

**April 14, 2021**

- **Nicholas Johnson** works his last day at Skanska, leaving his iPhone behind. At some point, Mr. Johnson's phone became "disabled."[11] According to Counsel:

    Nick Johnson's phone was -- apparently becoming disabled in the process of trying to reset it on his last day of April 15th, 2021. He was not instructed to do it. He just knew it was part of what he was supposed to do, but he apparently is not very tech savvy.[12]

- At his deposition, Mr. Johnson denied ever attempting to reset his phone. Mr. Johnson reported that he left his phone on his desk on his last day but that he did not delete anything from his iPhone and did not reset his iPhone. Mr. Johnson stated that he does not recall ever being asked for his password. He was never informed that his iPhone was "disabled" and did not personally disable his phone.[13]

**April 20, 2021**

- Claimants serve discovery, including Requests for Production of text messages relating to Skanska Southeast's activities with respect to the Pensacola Bay Bridge Project surrounding Hurricane Sally.[14]

---

[11] An iPhone becomes disabled when a user enters the wrong passcode too many times. According to Apple, "[i]f you can't remember your passcode, you'll need to erase your iPhone, which deletes your data and settings, including the passcode." https://support.apple.com/en-gb/HT204306, Published December 18, 2020, last accessed Aug. 1, 2021. Mr. Johnson reports that he has never been asked for his passcode and did not disable his phone.

[12] Ex.1-E, Francis 30b6 Transcript at 223:12-22.

[13] Ex 1-H, July 20 Deposition of Nicholas Johnson Deposition - Rough Draft ("Johnson Deposition Transcript – Rough") at 22:22-23:5.

[14] Claimants also served discovery on Skanska in the state court litigation on Nov. 13, 2020, which also included requests for text messages. See Ex 1-I, Nov. 23, 2020 Notice of Service of Discovery to Skanska.

3

**May 4, 2020**

- Skanska identifies 28 "key custodians" as "those expected to have generated or maintained the most critical, discoverable ESI." The list includes the individuals whose cell phone data had been destroyed.[15]

**May 5, 2021**

- **Pat McGlynn** is terminated from his employment with Skanska and is required to contemporaneously turn over his phone.[16] At some point, all text messages are deleted from Mr. McGlynn's cell phone.

**May 23, 2021**

- **Eduardo Rubio** allegedly loses his phone overboard a barge.[17]

- Skanska personnel is informed the same day.[18]

**June 1, 2021**

- Skanska represents that it *"has complied, and will continue to comply, with its discovery and evidentiary obligations including 'legal hold' and preservation of evidence."*[19]

- Skanska represents that it "*implemented an evidence retention and hold policy post Sally*."[20]

---

[15] Ex 1-J, May 4, 2021 Skanska Proposed Revisions to ESI Order at 12-13. Note this was not the ESI order that was ultimately entered in this litigation, but rather was a draft prepared by Skanska.

[16] Ex.1-E, Francis 30b6 Transcript at 254:17-255:10.

[17] *Id.* at 262:12-16; 263:2-15. Skanska has produced no witnesses to corroborate Mr. Rubio's accounts. *Id.* at 263:16-10.

[18] *Id.* at 264:17-23.

[19] Ex 1-K, June 1, 2021 Skanska Response to Interrogatory No. 23.

[20] *Id.*

**June 2, 2021**

- Skanska represents to the Court and Claimants for the first time that *"there were issues with a minority number of cell phones"* but that *"we do have cell phone data for the 13 custodians."*

    MS. BILLHIMER: … It's my understanding we do have -- I can't tell you how many it is, but we do have cell phone data for the 13 custodians. It's just identifying which ones we're missing and where we are in that process.

    THE COURT: So I'm sorry. So what do you mean you have cell phone data for them?

    MS. BILLHIMER: So that's being ingested into the servient data. It kind of sits in a -- I don't want to say it's a separate place, but we focused on reviewing the ESI first. And then the cell phone data will be cued up at -- it's kind of in parallel, but our goal was to get yesterday's production out for that email data.

    THE COURT: So you have -- you have culled together the text messages from or cell phone data from 13 custodians. And those are sitting in some sort of -- or that just needs to be reviewed. Is that-

    MS. BILLHIMER: That's our -- that's kind of our next kind of line item to do is to review the cell phone data.

    THE COURT:· Okay. But it's there and waiting to be reviewed.

    MS. BILLHIMER:· And, Your Honor, I don't think we have all 13. I think there were issues with a minority number of them. I can't tell you which ones they are as we stand here, but I do understand that we have collected cell phone data. It is being cued up for review. And we intend to put that in the line of rolling productions that we're making.[21]

**June 7-8, 2021**

- Full images of all available cell phones are submitted from Xact to Servient for processing.[22]

---

[21] Ex 1-L, June 2, 2021 Discovery Conference Transcript at 15:21-17:15.

[22] July 9, 2020 meet and confer among Parties' ESI vendors.  Claimants have doubts that Skanska was not aware of the destroyed cell phone data on at least June 7-8,

5

**June 10, 2021**

- Skanska represents that it "*has complied, and will continue to comply, with its discovery and evidentiary obligations including 'legal hold' and preservation of evidence*."[23]

- Skanska represents that it "*implemented an evidence retention and hold policy after Hurricane Sally which was communicated by in-house counsel to Skanska personnel verbally on September 16 & 17, 2020-while Sally's winds were still blowing*."[24]

- Skanska represents that "*No documentation relating to Skanska's storm preparations or efforts has been deleted or destroyed*."[25]

**June 13, 2021**

- Counsel first "became aware" that cell phone data for Mr. Bender, Mr. Johnson, Mr. Rubio, and Ms. Stephens was destroyed.[26]

**June 16, 2021**

- Counsel Mr. Blanchard reports to the Court for the first time that Mr. Rubio lost his phone overboard sometime after Sally, Mr. McGlynn has not yet provided a password, Skanska is having trouble "simply opening the phone" of Mr. Johnson, and Mr. Bender and Ms. Stephens' phones have been wiped. Mr. Blanchard reports that "[i]t's Skanska's ordinary course of business and practice that when an individual leaves, his phone is gathered locally. His or her data is removed from that

---

2021, when Xact sent full images of all available cell phones to Servient for processing, or June 2, the date that Skanska represented to the Court that "there were issues with a minority number of" cell phones.

[23] Ex. 1-B, June 10, 2021 Skanska 2nd Amended Response to Interrogatory No. 23.
[24] *Id.*
[25] *Id.*
[26] Ex.1-E, Francis 30b6 Transcript at 223:8-9 (MR REMINGTON: "Counsel became aware there was an issue with the cell phone on or about June the 13th.").

phone, and it's repurposed to another user. And that's what happened with William Bender and Sarah Stephens."[27]

- Counsel Mr. Branning clarifies with respect to Mr. Bender and Ms. Stephens' phones:

MR. BRANNING: [B]oth phones were turned in in the ordinary course of business. The clerk who received those two phones, unfortunately, operated by normal protocols and ***by all accounts wiped the phones*** and reissued them. We have only just discovered this, and we are trying to find alternate sources to access that data, including any information that the carrier may have, the cell phone carrier may have in the way of any data that we can obtain and provide . . .

THE COURT: When were their phones wiped clean?

MR. BRANNING: I don't know, Your Honor.

THE COURT: When were they no longer with the company?

MR. BRANNING: I don't know when either of them resigned. All I know is post Sally.

THE COURT: Okay. So I guess maybe I misunderstood what Mr. Blanchard was saying. I thought he said that it was pulled off and then maintained centrally and that they were trying to now access that data. It sounds like unless there's a backup somewhere, any communications on those phones are gone.

MR. BRANNING: Your Honor, it was described -- yes is the direct answer.

THE COURT: Okay.

MR. BRANNING:· It was described to us as these phones are another tool that Skanska gives to its employees similar to, you know, a safety jacket and a hammer and whatever they operated within their discipline. And these two, unfortunately, got treated in the ordinary course of ***business as opposed to complying with the lit hold***.[28]

---

[27] Ex 1-M, June 16 Discovery Conference Transcript at 8:20-10:12.
[28] *Id.* at 32:13-34:13 (emphasis added).

7

**June 18, 2021**

- Skanska represents that "*all of Skanska's electronic information, documents, things, and other submissions related to the PBB Replacement Project were preserved from September 16, 2020, to the present,*" but noted "*the status of certain cell phone data is being investigated.*" [29]

- Skanska represents that it "*maintained and preserved project records, as required pursuant to its contract with FDOT regarding audit rights and document preservation per clause # 3-8 (Audit of Contractors records)*" and that "*there was pre-existing document retention as part of contractual standard operating procedure.*"[30]

- Skanska represents that it "*has complied, and will continue to comply, with its discovery and evidentiary obligations including 'legal hold' and preservation of evidence*."[31]

- Skanska represents that it "*reminded its personnel of the standard operating procedure and protocol in the aftermath of such an event- to preserve all documents/data and not to discard or destroy any documents/ data*" over several days on September 17 and 18.[32]

- Skanska represents that it is "*unaware of any document intentionally discarded or destroyed*."[33]

**June 30, 2021**

- Skanska is advised by Xact that Mr. McGlynn's text messages have been deleted and cannot be recovered.[34]

---

[29] Ex 1-D, June 18, 2021 Skanska Reponses to Request for Admission No. 10.
[30] Ex 1-N, June 18, 2021 Skanska Supplemental and Amended Response to Interrogatory No. 23.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] Ex.1-E, Francis 30b6 Transcript at 257:6-258:11.