# EXHIBIT 2

In Re: Skanska USA Civil Southeast, Inc.

Hearing before:

JUDGE HOPE CANNON

July 21, 2021



PHIPPS REPORTING

*Raising the Bar!*

Judge Hope Cannon
July 21, 2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO. 3:20-cv-5980-LC-HTC

IN RE SKANSKA USA CIVIL SOUTHEAST,
INC., AND SKANSKA USA, INC.,
AS OWNERS OF THE BARGE KS 5531,
PRAYING FOR EXONERATION
FROM LIMITATION OF LIABILITY.

_____/

TRANSCRIPT OF HEARING PROCEEDINGS

DESCRIPTION OF PROCEEDINGS
Status conference on outstanding matters

DATE TAKEN:          Wednesday, July 21, 2021

TIME:                10:06 a.m. - 11:42 a.m.

PLACE:               United States District Courthouse
                     Courtroom 3 North
                     One North Palafox Street
                     Pensacola, Florida 32502

BEFORE:              Hon. Hope T. Cannon
                     United States Magistrate Judge

     This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:

                David A. Deik, CP, CPE

Job No. 192490

Judge Hope Cannon
July 21, 2021

Page 2

```
 1    APPEARANCES:

 2    ON BEHALF OF VARIOUS CLAIMANTS:

 3                  AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
                    17 East Main Street, #200
 4                  Pensacola, Florida 32502

 5                  BY:  D. NICOLE GUNTNER, ESQUIRE
                    850-202-1010
 6                  nguntner@awkolaw.com

 7                          - and -

 8                  BY:  E. SAMUEL GEISLER, ESQUIRE
                    850-202-1010
 9                  sgeisler@awkolaw.com

10                          - and -

11                  BY:  STEPHEN H. ECHSNER, ESQUIRE
                    850-202-1010
12                  sechsner@awkolaw.com

13                          - and -

14                  BY:  HANNAH R. PFEIFLER, ESQUIRE
                    850-202-1010
15                  hrodgers@awkolaw.com

16                            - - -

17                  BEGGS & LANE
                    501 Commendencia Street
18                  Pensacola, Florida 32502

19                  BY:  THOMAS F. GONZALEZ, ESQUIRE
                    850-469-3309
20                  tfg@beggslane.com

21                            - - -

22                  VERNIS & BOWLING OF NORTHWEST FLORIDA
                    315 South Palafox Street
23                  Pensacola, Florida 32502

24                  BY:  JEFFREY P. GILL, ESQUIRE
                    850-433-5461
25                  jeffgill7@yahoo.com
```

Judge Hope Cannon
July 21, 2021

Page 3

```
 1   ON BEHALF OF VARIOUS CLAIMANTS (continued):

 2               UNITED STATES DEPARTMENT OF JUSTICE
                 BY:  ROBERT KELLY, ESQUIRE
 3               BY:  ROBB HYDE, ESQUIRE

 4                         - - -

 5   ON BEHALF OF SKANSKA:

 6               CLARK PARTINGTON
                 125 East Intendencia Street
 7               Pensacola, Florida 32502

 8               BY:  ELIZABETH C. BILLHIMER, ESQUIRE
                 850-269-8853
 9               ebillhimer@clarkpartington.com

10                       - and -

11               BY:  DANIEL E. HARRELL, ESQUIRE
                 850-269-8853
12               dharrell@clarkpartington.com

13                         - - -

14               BY:  CHARLES BLANCHARD, ESQUIRE
                 BY:  HAROLD WATSON, ESQUIRE
15

16

17

18

19

20

21

22

23

24

25
```

Judge Hope Cannon
July 21, 2021

Page 4

```
 1              (Proceedings began at 10:06 a.m.)
 2         THE COURT:  Good morning, everyone.
 3         So we are here for our status -- weekly
 4    status conference in In Re Skanska, 3:20-cv-5980.
 5         Let me just make sure everybody can hear us
 6    on the phone and that we've got everybody and
 7    didn't miss anybody during the roll call.
 8         We've got Mr. Blanchard representing
 9    Skanska.
10         MR. BLANCHARD:  Yes, Your Honor.
11         THE COURT:  We've got Mr. Watson
12    representing Skanska.
13         MR. WATSON:  Yes, Your Honor.
14         THE COURT:  Okay.  Mr. Watson, I think this
15    is your first time, at least in front of me; is
16    that correct?
17         MR. WATSON:  That is correct.
18         THE COURT:  Okay.
19         And then Mr. Kelly for the United States.
20         MR. KELLY:  Yes, Your Honor.  Good morning.
21         THE COURT:  Good morning.
22         And then Mr. Hyde for the United States as
23    well.
24         MR. HYDE:  Good morning, Judge.
25         THE COURT:  Good morning.
```

Judge Hope Cannon
July 21, 2021

```
 1         Do I have anyone else on the line that
 2    hasn't responded?  I think we thought we might
 3    have heard a couple of extra clicks.  Was
 4    somebody going to say something?
 5         MR. KELLY:  Judge, I believe one of
 6    those -- one of those was me.
 7         THE COURT:  Okay.
 8         MR. KELLY:  I somehow -- my cell, so I had
 9    to call back.
10         THE COURT:  Well, that was Mr. Kelly.
11    Okay.  So --
12         MR. KELLY:  Yes, yes.
13         THE COURT:  We -- I guess the one thing --
14    I guess a couple things that we had scheduled for
15    today was, we need to go over the 10/1 10/31.
16         I did not get a chance -- I know, Ms.
17    Billhimer, you said something to me this morning.
18    I didn't get a chance to look at it because we
19    had a misdemeanor docket this morning at 8:30,
20    and so I've been in that.
21         And then -- so I'll just ask you to give me
22    a synopsis and see where we are on that.  So
23    that's one thing we were going to go over.
24         We were also obviously going to deal with
25    the privilege issues.  That was one thing we had
```

Judge Hope Cannon
July 21, 2021

1   specifically set from the last time.

2        And then I know when y'all were here, Mr.

3   Geisler, there was some discussion about whether

4   or not there would be some issues with regard to

5   some requests for admissions as well.

6        MR. GEISLER:  Well, that's Mr. Gonzalez.

7        MR. GONZALEZ:  Yes, Your Honor.  Tom

8   Gonzalez, Beggs & Lane, on behalf of the

9   claimants.

10       I filed a motion last night.  I've talked

11   to --

12       THE COURT:  Okay.

13       MR. GONZALEZ:  -- counsel about it.  And we

14   weren't going to discuss it substantively today,

15   since he's not available.

16       THE COURT:  Okay.

17       MR. GONZALEZ:  If the Court has time this

18   week or later --

19       THE COURT:  You did a motion to compel?

20       MR. GONZALEZ:  I did a motion to compel

21   for --

22       THE COURT:  Okay.

23       MR. GONZALEZ:  -- more sufficient answers.

24       THE COURT:  And that's just as to the RFAs,

25   Mr. Gonzalez?

Judge Hope Cannon
July 21, 2021

```
 1          MR. GONZALEZ:  Just to the RFAs --

 2          THE COURT:  Okay.

 3          MR. GONZALEZ:  -- and Selected RFAs.  It's

 4   docket number 1209.

 5          THE COURT:  And then we are -- so, Mr.

 6   Geisler, no issues with any of the -- any other

 7   written discovery, right?  We can close that?

 8          MR. GEISLER:  Very, very, very close, Your

 9   Honor.

10          THE COURT:  Okay.

11          MR. GEISLER:  We have -- with co-counsel,

12   we have narrowed it really to just at this point

13   to a request for production that really kind of

14   deals with the same issue of insurance, and

15   communications with insurance that conveyed

16   factual information.  That's an objection that

17   Skanska has maintained.

18          Other than that, we've been able to resolve

19   and narrow the issues, including some this

20   morning.

21          THE COURT:  Okay.  And so is there anything

22   else that we need to cover today, other than what

23   I just went through, just for agenda purposes?

24          MS. GUNTNER:  Yes, Your Honor.  I do have

25   two more issues to raise with respect to the cell
```

Judge Hope Cannon
July 21, 2021

Page 8

1    phone data.

2           THE COURT:  Okay.

3           MR. HYDE:  And, Your Honor, this is Robb

4    Hyde.

5           Although I don't think it's appropriate to

6    speak on the issues today, Skanska has just a

7    moment ago sent you a motion asking you to compel

8    us to file a motion to quash.  They sent you a

9    letter just now.

10          We don't -- we don't intend to file a

11   motion because we think that what -- what they're

12   trying to do is already the law of the case, and

13   it -- it doesn't need to be argued, and they

14   don't need a third bite at the apple.  But if

15   Your Honor orders us to do so, we can do so.  I

16   guess we can take that up last, if you so choose.

17          THE COURT:  Okay.  And is that Mr. Hyde

18   that was speaking?

19          MR. HYDE:  Yes, ma'am.

20          THE COURT:  Okay.

21          Yes.  That's fine, Mr. Hyde.  I'm sorry.  I

22   did have that also.  I did see the email

23   exchanges from Mr. -- I guess I got an initial

24   email from Mr. Kelly and then a response from Mr.

25   Remington.  So we can address that as well at the

Judge Hope Cannon
July 21, 2021

Page 9

1    end.

2        So we've got the text messages, some new

3    issues there.  We've got the privilege log.  And

4    then we've got anything that we need to deal with

5    in regard to the RFAs.  Is that all that we need

6    to discuss today?

7        MS. BILLHIMER:  The 10/1 to 10/31.

8        THE COURT:  I'm sorry.  10/1, 10/31.

9        MS. BILLHIMER:  Yep.

10       THE COURT:  Okay.  So where do y'all want

11   to start?  Do y'all want to start with the

12   privilege log or the . . .

13       MS. GUNTNER:  Your Honor, whatever your

14   preference is.

15       THE COURT:  Okay.

16       MS. GUNTNER:  We're happy to start wherever

17   you'd like to begin.

18       THE COURT:  So on the privilege log, let me

19   just make sure I am clear where everybody is on

20   this.

21       So at the last hearing when we talked

22   about -- the last status conference when we

23   talked about the work-product protections, I

24   think I made it clear that when I went through

25   the 150 documents that were provided for

Judge Hope Cannon
July 21, 2021

Page 10

1   in-camera inspection, I was concerned that what
2   had occurred was a sort of blanket attempt to
3   protect any information that basically occurred
4   after 7/16 or even -- I'm sorry.  Not 7/16 but on
5   9/16 and a couple of instances where there were
6   communications even prior to 9/16.
7        And that a lot of the communications that I
8   reviewed appeared to be more logistical and
9   ordinary-course-of-business-type communication
10  versus things that I would really consider to be
11  work-product protection.
12       And so before issuing an order as to those
13  documents, I wanted to give Skanska's counsel an
14  opportunity to review those work-product
15  documents again and withdraw any -- any work --
16  any documents that have been identified as work
17  product that, upon a second review, they did not
18  believe to be work product.
19       I know I got an email from Ms. Guntner with
20  what appeared to be maybe a June 29th response
21  from Skanska on the specific -- on the
22  spreadsheet that the claimants have provided.
23       So I started going through those.  And I
24  notice that there were some that were on the
25  original 150 that were not in that larger

Judge Hope Cannon
July 21, 2021

1    spreadsheet, and then some that obviously had

2    been added since I have looked at the 150.

3         Then I got another email from Ms.

4    Guntner -- Ms. Billhimer.  And I think that that

5    may be where we are now, is that the spreadsheet,

6    Ms. Billhimer, that you provided -- I guess there

7    are a couple.

8         One was about text messages that had not

9    been addressed before.  And then the other was

10   going through that 150 and trying to identify

11   what Skanska really thought should fall under the

12   privilege; is that correct?

13        MS. BILLHIMER:  Yes, Your Honor.

14        So we have -- we went back, and we did

15   reassess the documents in light of the comments

16   that you made at the last hearing.  And we have

17   withdrawn designations for a large portion of the

18   documents, but we have kept 65 under work-product

19   protection.

20        And we provided a new log last evening that

21   just identifies those 65.  So makes it nice and

22   clean.  Those are the 65 that we're talking

23   about.  We plan to produce the ones where we have

24   withdrawn the designation to the claimants.

25        I would say that the bucket falls primarily

Judge Hope Cannon
July 21, 2021

Page 12

```
 1   into two categories.  One relates to
 2   communications with the insurer.  And those are
 3   in anticipation of litigation.  They're protected
 4   by Rule 26(b)(3)(a) with respect to work product.
 5        And the other bucket of information, Your
 6   Honor, relates to public relations.  And we did
 7   cite some authority for that, the In Re Abilify
 8   case, to support our withholding those as work
 9   product.
10        THE COURT:  Okay.  And then -- and just so
11   I'm -- I want to make sure that that is the world
12   of work-product issues that the Court needs to
13   address because, like I said, it looks like there
14   was a pretty large group that had been identified
15   by the claimants.
16        And so I just want to make sure your 65
17   addresses all of the ones that they've raised,
18   not just the 150 that the Court reviewed
19   in-camera.
20        MS. BILLHIMER:  So the 65 addresses the
21   in-camera.  I believe claimants, what they were
22   looking at, there is a larger volume of documents
23   that are marked attorney-client, some
24   attorney-client and work product.
25        Many of them have counsel present on the
```

Judge Hope Cannon
July 21, 2021

Page 13

1    emails, a much kind of different view than the

2    work product, the other set.  So they were kind

3    of separated out.

4         MS. GUNTNER:  Yes, Your Honor.

5         THE COURT:  But some of the 150 was in your

6    spreadsheet, too, right, Ms. Guntner?

7         MS. GUNTNER:  Right, Your Honor.

8         So initially Skanska sent us over a master

9    privilege log that included, I think, 519

10   documents from the time period of September 10th

11   through 30th that they logged as either

12   attorney-client privilege, work product or both

13   at the same time, so Your Honor having

14   considering just a discrete issue of emails that

15   Skanska contended were communications at the

16   direction of counsel where counsel was not

17   present.  So Your Honor was considering for

18   in-camera review a smaller subset of those

19   documents.

20        Ms. Billhimer last night, I believe,

21   submitted to the Court that Skanska was going to

22   withdraw some of those and produce them.  That

23   issue still remains from my July 19th letter.

24        Skanska was given the opportunity to

25   perhaps revise their log entries to provide more

Judge Hope Cannon
July 21, 2021

Page 14

1    clarity with respect to the remaining documents.
2    And for most of them, they merely added the words
3    "legal advice" which claimants contend are
4    insufficient in order to, number one, establish
5    that these documents were privileged -- are
6    privileged or, number two, provide a basis upon
7    which we can analyze those.  So we do have two
8    separate issues.
9         And if it would be easier on Your Honor if
10   perhaps claimants could add to that spreadsheet
11   maybe a column saying "withdrawn by Skanska,"
12   whatever you think is easier, but those
13   additional documents do need analysis because we
14   still contend that they're not properly withheld.
15        THE COURT:  Okay.  So let -- so Ms.
16   Guntner, your . . . let me see.
17        MS. GUNTNER:  I do have a copy of the
18   correspondence, if that would help.
19        THE COURT:  I have it here.  Just to make
20   sure I'm . . . your . . . what date?  Monday's
21   chart, then, has everything that is of issue.
22        MS. GUNTNER:  Yes, Your Honor.
23        THE COURT:  And that includes some of the
24   150 that have since been withdrawn; is that
25   correct?

Judge Hope Cannon
July 21, 2021

Page 15

1         MS. GUNTNER:  Yes, Your Honor.  All of the

2    150 was also included in this, what I'll call,

3    maybe a master . . .

4         THE COURT:  Okay.

5         MS. GUNTNER:  . . . spreadsheet.

6         THE COURT:  Okay.  There were some that

7    were not on the 150.

8         MS. GUNTNER:  That's right.

9         THE COURT:  There were some on the 150 that

10   were not on your spreadsheet.  So I just want to

11   make sure.  Did y'all end up withdrawing some?

12        MS. GUNTNER:  No, Your Honor.  So the issue

13   there, I think, is because Skanska subsequently

14   gave us a privilege log for productions 14 and

15   15, which were not included on that initial

16   master spreadsheet.

17        THE COURT:  Okay.

18        MS. GUNTNER:  So there is a small number

19   from productions 14 and 15 that are not on that

20   spreadsheet I sent today.

21        THE COURT:  Okay.  So what -- I think what

22   would be helpful -- so let me say this as an

23   initial matter:  I don't know if some of the

24   issues that are -- that the claimants have raised

25   outside of the 150 are also similar to the issues

Judge Hope Cannon
July 21, 2021

Page 16

1    that are in the 150.

2        And if they are, I think what would be

3    helpful is, I will issue an order as to the 65

4    that remain.  And then I think y'all take that

5    order.  And if there are other ones based on that

6    order that you need to withdraw, then you do

7    that.  And then, Ms. Guntner, if you will provide

8    me with a revised spreadsheet just as to what's

9    remaining.

10        MR. GUNTNER:  Yes, Your Honor.

11        THE COURT:  So take off the -- anything

12    that they've agreed to produce out of that 150,

13    and then anything else that you're able to had

14    withdraw.

15        I did see -- and the reason that I -- you

16    know, I think work product and attorney-client is

17    something that I like to be pretty cautious about

18    because it is -- you know, once the -- the bell

19    can't be unrung, right, if you produce something

20    or the parties produce something that maybe is

21    privileged?  Which is why I wanted to give

22    Skanska an opportunity to go over it.

23        That being said, I do think that y'all took

24    way too broad of an approach with regard to the

25    work product.  And so what I said before at the

Judge Hope Cannon
July 21, 2021

Page 17

1    last status conference was, I really wanted you

2    to address a few things.  The insurance claims

3    was one.  But also, more importantly to me, when

4    something is not just ordinary course of

5    business.

6         MS. BILLHIMER:  Mm-hmm.

7         THE COURT:  And then third, I think, Ms.

8    Billhimer, what you were saying is insurance and

9    then public relations stuff, right?

10        MS. BILLHIMER:  It's really those two

11   buckets.

12        There are some that are included on there.

13   If you look in the emails, there actually -- Mr.

14   Lunsford, in-house counsel, is on some of the

15   emails that you have for in-camera review.  It's

16   just not on the top one.  He's further down,

17   involved in the conversation.  So those -- that's

18   kind of another reason why they ended up on the

19   log.  But it is primarily those two.

20        And with respect to --

21        THE COURT:  And then I was saying the third

22   may be other litigation.

23        MS. BILLHIMER:  Yes.

24        And those -- those fell in.  The reason

25   they fell in, under the ordinary course, we would

Judge Hope Cannon
July 21, 2021

Page 18

1    have likely marked those nonresponsive.

2         But under the structure we had, the agreed

3    ESI protocol, there were a bucket of documents

4    where we were not allowed to mark them

5    nonresponsive.  They were presumptively

6    responsive.

7         That's how they ended up on -- in the

8    production and then on the log.  But work

9    product, whether it relates to this litigation or

10   a prior litigation, it's still protected.

11        THE COURT:  And so when I looked at the 65

12   that you -- that are still at issue -- and those

13   are agreed those are sort of the three categories

14   that they seem to fall under -- I don't have

15   any -- I think that when it relates to other

16   litigation, that, to me, isn't relevant anyway.

17   I don't think it's work product for this case.

18        But I do think that it's not relevant, and

19   it would have been work product or

20   attorney/client communications for another case.

21   So I don't have -- and you'll see when I do the

22   order that that I think I agree with you on.

23        I don't necessarily -- I don't agree,

24   though, as to the items that you've identified as

25   public relations and insurance claims.

Judge Hope Cannon
July 21, 2021

Page 19

1          Again, on the insurance claims,

2    communications with an insurer can be if they are

3    dealing with the litigation.  But there are

4    several cases that indicate just communications

5    with an insurer as to nonstrategy, nonlitigation

6    type matters isn't necessarily going to just be

7    protected by work product.  And that's where I

8    have a hard time.

9          For example, regardless of whether there is

10   litigation, if you are -- if Skanska would have

11   operated the same way in terms of sending certain

12   information to the insurers, maximizing whatever

13   claims it can -- this isn't a case where there's

14   litigation between Skanska and the insurer.  The

15   insurers agreed to cover some of these

16   property-damage issues in terms of the salvage

17   and stuff.

18          So I don't -- I did not read a lot of those

19   emails.  And that's really what I was hoping that

20   you would clarify for me more so than this, hey,

21   this is just a communication with an insurer

22   relating to property damage.  I wanted to see how

23   that is different from what Skanska would do and

24   communicate with these insurers regardless of any

25   litigation.  And that's really what, when I read

Judge Hope Cannon
July 21, 2021

Page 20

```
 1   the cases, that they look at.
 2        MS. BILLHIMER:  So, Your Honor, if I may, I
 3   can kind of explain kind of the uniqueness of
 4   this case.
 5        I think we've established that there were
 6   news reports and communications flowing around
 7   that litigation was certain in this case very
 8   early on.
 9        In an ordinary case where you submit
10   something to an insured, it may not be
11   privileged.  But here, it's functionally
12   different.
13        While you have some property claims like
14   Skanska property and a claim to the insurer to
15   cover, at the very same time, you have claims by
16   third parties related to those very same issues.
17        So it's all kind of inter -- inextricably
18   intertwined.  It's not two separate events.  It's
19   all one event.  They have a duty to defend
20   Skanska, and they are defending.  So part of the
21   claims process, it is privilege, and it does go
22   to the insurer's ability to defend.
23        THE COURT:  And, again, I don't -- I think
24   the issue is not necessarily that that type of
25   communication would not be privileged.
```

```
 1            It's the content of the communication.  So

 2    it's what you're communicating to your insurer.

 3    So if your communication with your insurer is, we

 4    want to use this company to do this work, how is

 5    that work product?  How is that not something you

 6    would do regardless of the litigation?

 7            So, I mean, I'm looking at a case.  The

 8    privilege does not apply to documents prepared in

 9    the regular course of the company's business

10    rather than specifically for litigation, even if

11    it's apparent that a party may soon resort to

12    litigation.

13            So you're just focusing solely on the

14    anticipation of litigation piece and not the

15    content of what is being communicated.

16            How is that content -- there's no strategy

17    in these emails, these communications.  There's

18    no -- nothing to do with, hey, this is -- nothing

19    to do with even posturing for their case.  It's

20    very logistical type of communications.

21            MS. BILLHIMER:  I think -- I think I'm

22    recalling the email that you may be -- and I

23    believe those were draft agreements for

24    subcontractors for the insurers to consider.  So

25    not the final ones, just draft.  So for purposes
```

Judge Hope Cannon
July 21, 2021

Page 22

1   of legal advice, that's more -- that's more what

2   I was looking at.

3          So we took out the ones where it was

4   scheduling people to come, you know, when they

5   were going to be there, when a boat would be

6   available.  We removed the designations on those,

7   but --

8          THE COURT:  But even who's going to pay for

9   what?  I mean, like, do we need to hire a

10  subcontractor for this?  Yes or no.

11         MS. BILLHIMER:  So I think -- I think on

12  some of those communications, if you scroll all

13  the way to the bottom of the email, you will see

14  the same emails, right?  The genesis of the

15  correspondence, basically.

16         And those are the ones that are -- you

17  know, that seek information in order for the

18  insurer to defend.  So I believe if you look down

19  all the way to the bottom of the string, you see

20  some of the same emails.

21         THE COURT:  You do.  There's a --

22         MS. BILLHIMER:  Maybe different --

23  different chains.

24         THE COURT:  -- list of -- a list of

25  questions on, here's what we need or, hey, is

Judge Hope Cannon
July 21, 2021

Page 23

1    there a point of contact?

2          Again, I don't see how those type of

3    emails, which contain no strategy, no discussion

4    about the litigation, not even results of an

5    investigation.  It's not even an investigative

6    report.  It's . . .

7          MS. BILLHIMER:  I --

8          THE COURT:  I think that you would have

9    exchanged regardless things that the -- that the

10   insurer would need to know regardless of whether

11   there was any anticipated or other litigation

12   that would sort of be in the normal course.

13         MS. BILLHIMER:  So I think we took a

14   different view of it, Your Honor, that this is --

15   was part of their investigation, and what they

16   were doing, and how they were conducting it, all

17   as part of how they would defend their insured,

18   which we believe is protected by work product.

19   The way, the manner in which they were going to

20   conduct their investigation.

21         THE COURT:  Okay.

22         MS. BILLHIMER:  Because it relates to both,

23   not just the damage to Skanska's property, but it

24   also relates to the claims by third parties.

25         And I think those communications do bear

Judge Hope Cannon
July 21, 2021

Page 24

1    that out, that there is concern about the claims

2    of third parties that -- and that kind of goes to

3    the anticipation of litigation part of it.

4         But they kind of had a two-pronged -- it

5    wasn't just solely communications that related to

6    the insurance of our property or Skanska's

7    property.  It related to the claims that were

8    coming.

9         THE COURT:  Some of them do.

10         MS. BILLHIMER:  Yeah.

11         THE COURT:  And not all.

12         Again, looking at another case, we've got,

13    to the extent documents -- and these are

14    insurance cases -- or cases dealing with

15    insurance files.

16         To the extent these documents merely

17    consists of Bay Nine communications among the

18    parties that contain either statements to or from

19    the underlying defendants for opinions of legal

20    strategies about the underlying litigation, they

21    are not protected by the work product, and their

22    disclosure is proper.

23         The contents of the communication -- I

24    would agree if you -- if you were exchanging

25    communications with your insurer related to these

Judge Hope Cannon
July 21, 2021

Page 25

```
 1   claims, whether it's a fact investigation, you
 2   know, what they found, those type of -- what you
 3   found, maybe that would be a closer call.
 4        But where it is just, who's going to pay
 5   for this?  Are we going to use this contract?
 6   That, to me, falls in the line of these sort of
 7   Bay Nine communications, because they aren't
 8   disclosing anything of -- about the litigation
 9   strategy or -- and even if you're looking at
10   draft contracts, just because they're drafts, in
11   the ordinary course counsel may not and your
12   business may not be looking at those drafts.
13        And that seems to me to be -- to be more
14   of, hey, here are contracts forwarded to the
15   insurer to see if they approve them; not, hey,
16   there is what I want to see in this contract or
17   we need to take this out of this contract -- you
18   see what I'm saying?
19        MS. BILLHIMER:  I think there -- I think
20   there is at least one where Mr. Lunsford is on
21   the email string somewhere where he's providing
22   advice on what could go -- what should go in the
23   contract.  I can't remember --
24        THE COURT:  Okay.
25        MS. BILLHIMER:  -- off the top of my head
```

Judge Hope Cannon
July 21, 2021

Page 26

1    if it's the same contract that was then forwarded

2    on to the insurer.

3         THE COURT:  Okay.

4         So I'll look back at those, but that's my

5    concern.  And that's why I wanted you guys to

6    really say, you know, in your response, this was

7    done only or primarily motivated by the

8    anticipation -- by litigation.  It would not have

9    been done in the ordinary course, something like

10   that, because even emails where Mr. Lunsford is

11   copied on, in some cases his role seems to be

12   more of giving business advice, and it really is,

13   in terms of legal advice.  And I think that's

14   where you run into when you have in-house counsel

15   who probably likely played more than one role in

16   a company.

17        MS. BILLHIMER:  Right.

18        THE COURT:  In terms of the public

19   relations stuff, the Abilify case doesn't -- I

20   mean, it stands for the general proposition that

21   you quoted, which is, yes, and as an extension of

22   a party, a public relations consultant can

23   absolutely be included in a work product.  And

24   disclosure to them isn't necessarily going to

25   weigh or break that chain.

Page 27

1        But a lot of these communications that

2    y'all are trying to protect don't really fall in

3    that category.  They're -- a lot of them don't

4    have anything -- don't even mention a public

5    relations consultant or include a public

6    relations consultant.

7        Some of them are just emails that the --

8    you know, the people in the company felt needed

9    to be changed or said or done.  And so I didn't

10   really -- I have a hard time finding that it fits

11   in that.  And here's where I was looking at.

12       The purpose -- and so looking at another

13   case dealing with public relations information:

14   The purpose of the rule is to provide a zone of

15   privacy for strategizing about the conduct of

16   litigation itself, not for strategizing about the

17   effects of the litigation on the clients,

18   customers, the media, or the public generally.

19       Documents created for public relations

20   purposes are not protected.  Work-product

21   doctrine was inapplicable to public strategy --

22   publicity strategy that was treated as a business

23   concern.  Talking-points documents was not work

24   product under exemption.

25       Pursuant to the Freedom of Information Act,

Judge Hope Cannon
July 21, 2021

Page 28

 1    it would have been drafted for public relations

 2    purposes.  Notes from a meeting that concerned

 3    press and public relations strategies was not

 4    work product because it would have been prepared

 5    in the normal course of business without the

 6    threat of litigation.

 7        MS. BILLHIMER:  So, Your Honor, I think

 8    what complicates this case is the early

 9    anticipation of litigation, the involvement of

10    Mr. Lunsford very early on in this particular

11    project, and his kind of directions.

12        I think part of it is, I think, the Abilify

13    case does refer to it is proper for legal counsel

14    to engage in kind of a media strategy that

15    relates to anticipation of litigation, not

16    necessarily just to the ordinary course of

17    business.

18        And I think that's what puts this case kind

19    of in a different footing is, you have an event

20    that occurred very early on.  The general

21    counsel -- the assistant general counsel, Mr.

22    Lunsford, was tasked to get involved in that, not

23    just from a business sense but the anticipation

24    of litigation, it -- it appeared very quickly,

25    Your Honor.

Judge Hope Cannon
July 21, 2021

```
 1          THE COURT:  And I do -- so I'm -- here's my
 2    concern with the way Skanska's treating that:
 3    Because your position is that Mr. Lunsford was
 4    involved, you seem to want to use that in order
 5    to protect anything that happened 9/16 forward.
 6          And the Abilify case does -- and your quote
 7    is, so long as the role of the consultant to
 8    assist legal counsel.
 9          The communications, again that you're
10    trying to protect, one, none of -- those don't
11    involve Mr. Lunsford.  Two, they don't involve
12    any public relations consultant.
13          They are communications internally about
14    how we want to respond, which falls more into,
15    hey, this is how we want to, regardless of any
16    litigation that happened.
17          So I think it's -- I don't think you can
18    just say, okay, Mr. Lunsford was -- immediately
19    they thought there was going to be litigation.
20    He was involved in 9/16.  And now we're just
21    going to protect everything that happened that we
22    don't like in terms of email that have been sent
23    by the company, because your letter to me says
24    9/18 was the earliest day, because I think you
25    referenced in that letter an article maybe from
```

Page 30

1    some statement that the Levin firm made about the

2    fact that they either filed or had planned to

3    file litigation.

4         We also have this issue here -- and I think

5    y'all have to be careful because you take this

6    9/16 approach that that's when we knew litigation

7    was imminent, was going to happen.  And so we

8    want to protect all this stuff.

9         And you've got this issue where there

10   wasn't a document-preservation hold until maybe

11   October.  And then you've got boats that go

12   missing.

13        So I have a hard time allowing Skanska to

14   just say, well, we engaged counsel.  And now that

15   means all we have to say on all of these is,

16   counsel directed us to do this.

17        MS. BILLHIMER:  Yep.  So, Your Honor, I

18   think one point worthy of making is, we have

19   produced tens of thousands of documents between

20   the period 9/10 to 9/30 that we have not taken a

21   work-product issue.

22        So it's not true that we have, you know,

23   kind of stopped to cloak everything that was

24   done.  Like I said, tens of thousands of

25   documents have been produced in that vein.  So we

Judge Hope Cannon
July 21, 2021

Page 31

 1    haven't really taken this blanket approach.

 2         We did appreciate the Court's content --

 3    comments at the last hearing.  And that's why we

 4    have whittled down the pot of documents where we

 5    were seeking protection to a much smaller one.

 6    And we will release those other ones.

 7         But we believe these ones kind of fit.  And

 8    I think you said it at the beginning of the

 9    hearing.  Once you -- you can't unring the bell

10    once you kind of let it out.  And that's why

11    we're seeking protection for this -- for the 65.

12    It isn't --

13         THE COURT:  However --

14         MS. BILLHIMER:  It isn't -- it's more --

15    much more of a narrow issue of the ones where Mr.

16    Lunsford directed activities that happened.

17         He didn't -- we didn't take a position that

18    he directed every activity that happened on the

19    bridge after Sally made landfall.

20         THE COURT:  But for every one of these --

21    and I think the concern that I have is, I

22    think -- and I don't agree necessarily with all

23    the 65, but I think that's where you should

24    have -- that's where it should have been to begin

25    with.

Judge Hope Cannon
July 21, 2021

Page 32

    1           I do feel that Skanska took a way too broad

    2    of an approach at the very beginning of this.

    3    And so the Court had to take its time in going

    4    through those 150.

    5           And then, as I said, as I was going

    6    through, it just -- just before doing the

    7    research and reading it based on my practice, I

    8    could only identify, you know, a handful or so

    9    that I thought, yes, this makes sense that it's

   10    work product.

   11           And what I -- while the bell can't be

   12    unrung, you know, the work product is also not to

   13    be used as both a sword and a shield.  And so you

   14    can't just pull back things that don't -- you

   15    know, because somebody said something that now in

   16    retrospect maybe you don't like, that doesn't

   17    mean you get to pull that back and just say, oh,

   18    it's 9/16 or later.  And so we had already

   19    engaged Lunsford at that time, because all of

   20    these say done at the direction of Lunsford.

   21    And I'm not sure how -- what it -- what does --

   22    what does the Court have or what do the claimants

   23    even have that indicates all of these

   24    communications, every single one of them, before,

   25    you know, one of the employees at Skanska sent

Page 33

1    this email out, it was specifically at the

2    direction of Lunsford.

3          And what you're going to end up going into

4    is to get there, what else do they do, other than

5    depose every single person that's on this email

6    to say that, yes, each of these were done at the

7    direction of Lunsford.  I just think it's a way

8    too broad of an approach.

9          But I will review -- and so I just want to

10   be clear.  The insurance is both for Skanska's --

11   what they were going to cover for Skanska, as

12   well as.  So there were some pieces that were

13   just pure damage claim that Skanska's insurers

14   have agreed to cover, right?

15         MS. BILLHIMER:  I don't know.  I -- I saw

16   references, Your Honor.  And I can't off the top

17   of -- parse the documents.  But I saw references

18   in there to not only the claims about damage to

19   Skanska property but damage to -- that resulted

20   from our property, like from the barge, for

21   instance, the claimants, right?

22         THE COURT:  Yes.

23         MS. BILLHIMER:  Where it ended up.  So

24   there's -- it's both, and --

25         THE COURT:  And depending on the email,

Judge Hope Cannon
July 21, 2021

Page 34

1    that's right.

2          MS. BILLHIMER:  Right.

3          THE COURT:  But I'm just trying to make

4    clear, there were some that relate -- that the

5    insurer's role here is that they have agreed to

6    cover some of just the Skanska's damages in terms

7    of equipment damage, things of that sort, right?

8          And then there is the other piece where

9    they were asking for information about some of

10   the -- what I'll call the property damage and the

11   salvage piece.

12         MS. BILLHIMER:  Right.  And I think there's

13   some that have both of those --

14         THE COURT:  Because of the --

15         MS. BILLHIMER:  -- components, too.

16         THE COURT:  -- string in which it's done.

17         MS. BILLHIMER:  Yes.  They have both

18   components to it.  So it may have at the top been

19   talking about just the equipment, the property,

20   you know, the Skanska equipment claim.  But if

21   you look below, I believe there's references to

22   both of those.

23         THE COURT:  Okay.  Okay.  So I will -- just

24   given the timing of when I got this, I did take

25   your chart and put it -- combine it with mine so

Judge Hope Cannon
July 21, 2021

Page 35

 1    I could see what your explanation was.

 2         I've indicated that was one of the reasons

 3    I wanted to give y'all an opportunity to be able

 4    to -- I know Mr. Remington in his email from

 5    yesterday mentioned wanting to ensure that y'all

 6    create a record.  And that was why I wanted --

 7    part of why I wanted to do that, to allow you to

 8    have the opportunity for that.

 9         So I will issue an order on the privilege.

10    Once that goes out, you know, within, you know,

11    24 hours, 48 hours, y'all try to figure out what

12    is remaining.

13         MS. BILLHIMER:  Okay.

14         THE COURT:  And then we'll do that.  And

15    I'll try to get that order out to y'all probably

16    before the end of the week.

17         MS. BILLHIMER:  Okay.

18         MS. GUNTNER:  Yes, Your Honor.

19         THE COURT:  And then whatever's left we'll

20    address, whether that's attorney-client or the

21    other.  But I wanted to let you know those are my

22    concern in terms of what I saw in the documents.

23         MS. BILLHIMER:  Yes.

24         THE COURT:  And based on the -- and based

25    on the research that I did about it.

Judge Hope Cannon
July 21, 2021

 1          MS. BILLHIMER:  Okay.

 2          And, Your Honor, there are a few, I

 3     believe.  So the top email may not have Mr.

 4     Lunsford on them.

 5          But if you look further down the chain

 6     where it kind of -- he is on some of those

 7     emails.  And I pulled -- I think I made those

 8     clear.  There's a -- there's one or two where an

 9     outside law firm is actually included.  I think

10     those other --

11          THE COURT:  That were -- those were those

12     other litigation --

13          MS. BILLHIMER:  Yes.

14          THE COURT:  -- is what those were.

15          And I did -- I did -- you did, Ms.

16     Billhimer, indicate where Mr. Lunsford may have

17     been on a chain.  And I identified him in those

18     areas --

19          MS. BILLHIMER:  Okay.

20          THE COURT:  -- as well.

21          MS. BILLHIMER:  Okay.

22          THE COURT:  It's just -- I want to make

23     clear that just because something is directed by

24     counsel or just because counsel is on it doesn't

25     necessarily mean the content itself is going to

Judge Hope Cannon
July 21, 2021

1  be protected.  It depends on what that content

2  is.

3          MS. BILLHIMER:  Sure.

4          THE COURT:  Okay.  So that's the privilege

5  issue.

6          Can we -- I know y'all -- I don't think I

7  have told y'all when I'm going to do that order,

8  at the end of the week, but I guess what I'd like

9  to do is, I know I was trying not have these as

10  much.

11          So once I do the order, I'll just put in

12  there the timing on getting the rest of it

13  resolved in terms of your meet and confers and

14  then getting to meet on your remaining issues.

15          MS. GUNTNER:  Yes, Your Honor.

16          THE COURT:  It would be helpful as well, I

17  guess, just in terms of, again, creating the

18  record and providing me with sort of

19  justifications for what you're doing.

20          Once y'all -- as to the ones you can't

21  agree on, if each side could just tell me whether

22  it's -- in just a letter brief -- what the legal

23  arguments are as to why you think it's protected

24  and why, on the claimants' side, you don't think

25  it's protected, other than just "not on its face"

Judge Hope Cannon
July 21, 2021

Page 38

1    or, you know, something a little bit more

2    in-depth than the -- what y'all have on the

3    charts.

4              MS. GUNTNER:  Yes, Your Honor.

5              THE COURT:  And that way I can just make a

6    decision from that.

7              I just don't want anyone to -- what I don't

8    want is for y'all to raise an argument, you know,

9    on an objection that you haven't had the

10   opportunity to raise here with me in terms of

11   before I make the decision.  So that's privilege.

12             And then text messages then.

13             MS. GUNTNER:  Yes, Your Honor.  We also

14   have the issue of the search terms as well.  If

15   you . . . do you want to go to the cell phone

16   data first?

17             THE COURT:  Yeah, let's go to cell phone

18   data.

19             MS. GUNTNER:  So, Your Honor, we spoke at

20   length about the cell phone data on Monday, but

21   claimants do have two additional issues to raise

22   regarding claims that have been made by Skanska's

23   counsel with respect to the cell phone date.

24             THE COURT:  Mm-hmm.

25             MS. GUNTNER:  The first is, as you know, we

Judge Hope Cannon
July 21, 2021

Page 39

1    are faced with destroyed or otherwise unavailable

2    cell phone date from 6 out of 13 of Skanska's

3    custodians.

4         So first, I want to address --

5         THE COURT:  6 out of 13 are not available?

6         MS. GUNTNER:  Yes, Your Honor.

7         So first I want to address Skanska's claim,

8    which it has made several times in Court, that

9    the fact that the cell phone data from these

10   custodians has been destroyed is essentially

11   harmless error because we can get those text

12   messages from other custodians.

13        So to evaluate that claim, we ran an

14   analysis of the production to determine each time

15   the custodians with destroyed cell phone data

16   were senders or recipients of text messages in

17   the production.

18        I would like to update Your Honor on the

19   results of that analysis that show Skanska's

20   claim is demonstrably false, if I can go through

21   the numbers.

22        THE COURT:  Okay.  I'll give you a chance,

23   Ms. Billhimer, to respond.

24        MS. BILLHIMER:  Yes.

25        THE COURT:  Unless there's something that

Judge Hope Cannon
July 21, 2021

Page 40

1    you want to say.

2         MS. BILLHIMER:  No.  This is the first I'm

3    hearing.  I mean, we previous have provided some

4    numbers and everything, but, you know, we

5    certainly could compare our two data sets on how

6    we arrived at the numbers, and -- because I think

7    I had shared with the Court that with respect to

8    Mr. Rubio, for instance, there were quite a

9    number that were included in the productions we

10   made from other phones that were available.  And

11   so this may be something that we can work out

12   or --

13        THE COURT:  So I think what --

14        MS. BILLHIMER:  -- figure out why the

15   numbers are different.

16        THE COURT:  It sounds to me -- and I'm

17   going to -- y'all -- you guys did provide the

18   numbers, and you provided them for Mr. McGlynn as

19   well in terms of --

20        MS. BILLHIMER:  Uh-huh.

21        THE COURT:  -- how many emails or text

22   messages were in other folks' text messages to

23   him.  And so I think the claimants do get the

24   opportunity just to --

25        MS. BILLHIMER:  Sure.

Judge Hope Cannon
July 21, 2021

Page 41

1      THE COURT:  -- respond to that -- to those

2   allegations or that information that you provided

3   to them.  It sounds like that's what they're

4   trying to do.

5      MS. GUNTNER:  Yes, Your Honor.

6      If I may.

7      THE COURT:  Uh-huh.

8      MS. GUNTNER:  For Will Bender, cell number

9   1-850-281-0698, he sent four text messages in the

10  production and received four text messages in the

11  production, for a total of eight text messages.

12      For Nick Johnson, phone number

13  1-850-723-2486, he sent zero text messages in the

14  production, received four text messages in the

15  production, for a total of four text messages.

16      For Eduardo Rubio, phone number

17  1-850-294-6862, he sent 138 text messages in the

18  production, received 80 text messages in the

19  production, for a total of 218 text messages.

20      For Patrick McGlynn, phone number

21  1-757-417-5122, he sent 61 text messages in the

22  production, received 63 text messages in the

23  production, for a total of 124 text messages.

24      For Sarah Stevens, phone number

25  1-850-516-2058, she sent 7 text messages in the

Judge Hope Cannon
July 21, 2021

Page 42

```
1    production, received 5 text messages in the
2    production, for a total of 12 text messages in
3    the production.
4         And finally, for Rob Hill, whom Skanska
5    represented did not have a cell phone, his cell
6    phone number was, in fact, 1-850-428-7417.  He
7    sent one text message in the production for a
8    total of one text messages.  And, Your Honor,
9    that is the second issue I want to raise, is Mr.
10   Hill's cell phone.
11        MS. BILLHIMER:  Your Honor, it's my
12   understanding he didn't have a work phone where
13   he texted from, so I don't know if that is his
14   personal phone.  I don't -- I don't know the
15   answer to that.  We certainly can look into it.
16        THE COURT:  Okay.  So, Ms. Guntner --
17        MS. GUNTNER:  I --
18        THE COURT:  No.  Go ahead, Ms. Guntner.
19        MS. GUNTNER:  I was going to say, I do -- I
20   am prepared to speak on Mr. Hill as well, unless
21   you want to address these numbers first.
22        THE COURT:  Okay.  So tell me what --
23   what -- what is the claimants' position with
24   regard to these missing custodians?
25        MS. GUNTNER:  Yes, Your Honor.  With
```

Judge Hope Cannon
July 21, 2021

Page 43

```
 1   respect to these numbers in particular, Skanska
 2   had this cell phone data, plus more data that was
 3   not produced from cell phones, and for that run
 4   this exact same analysis and reported these exact
 5   same numbers for the Court, but instead has
 6   reported that these cell phone text messages can
 7   be found in other phones and other messages that
 8   were produced.
 9        Not only has Skanska's representations been
10   inaccurate, but the lack of critical text message
11   data for nearly half of the custodians in this
12   case is materially prejudicing claimants for the
13   ability to adequately prepare for and litigate
14   this case, especially in light of the issue with
15   Mr. Hill, which I would like to provide more
16   detail on.
17        THE COURT:  Okay.
18        MS. GUNTNER:  If I may, Your Honor.
19        THE COURT:  Mm-hmm.
20        MS. GUNTNER:  Your Honor, with respect to
21   Mr. Hill, on repeated occasions in this
22   courtroom, counsel has represented to this
23   Court -- to this Court and to claimants that Rob
24   Hill did not have a cell phone.
25        He was one of the lead tugboat captains.
```

Judge Hope Cannon
July 21, 2021

Page 44

1    But last night we discovered that this was

2    untrue.  In fact, Mr. Hill did have a cell phone,

3    and he texted on that cell phone.

4         Your Honor, with respect to this particular

5    message that I presented to the Court, you can

6    see from the metadata on the second page that the

7    local user is Tom Fulton.  So he's also the

8    custodian of the document.

9         His document shows that Rob Hill and Tom

10   Fulton sent at least 10 text messages back and

11   forth between September 10th at 10:40 p.m. at

12   UTC, which converts to 5:40 p.m. Central, and

13   September 21st at 8:58 p.m. UTC, which converts

14   to 3:58 p.m. Central.

15        And we did some further analysis on the

16   actual number in this document associated with

17   Rob Hill.  We confirmed this is the same number

18   that Skanska has provided in multiple iterations

19   of the hurricane plan as the number for reaching

20   Captain Rob Hill.

21        So Skanska reviewed and produced this text

22   message.  Skanska has full images of the phone,

23   so presumably had at least the nine other

24   messages in this thread for Mr. Hill.  Skanska

25   had every iteration of the hurricane plan.  That

Judge Hope Cannon
July 21, 2021

 1    included Mr. Hill's cell phone number.

 2         And, Your Honor, it's claimants' position

 3    that this really proves two things or three

 4    things, rather.  Number one, Mr. Hill did, in

 5    fact, have a cell phone, that Skanska's

 6    representation about that were inaccurate.

 7         That, number two, Mr. Hill used his cell

 8    phone in his role working for Skanska on the

 9    Pensacola Bay Bridge Project, and that it was

10    provided to all Skanska Pensacola -- excuse me --

11    Pensacola Bay Bridge employees as the method in

12    which he was to be contacted to perform his

13    responsibilities under the hurricane plan.

14         And, number three, Your Honor, whether

15    Skanska, in fact, knew this or not, they should

16    have, based upon the information that they had.

17         What we do know, however, is that when I

18    asked Skanska's 30(b)(6) representative Mr.

19    DeMarco in his deposition whether Captain Hill

20    communicated as part of his roles and

21    responsibilities as lead captain with a cell

22    phone, Skanska counsel -- Skanska counsel

23    objected to this question as outside of the

24    scope, which, as Your Honor knows and which we've

25    raised in Court before, in that deposition was

Judge Hope Cannon
July 21, 2021

1   consistently used as shorthand for instructing

2   the witness not to answer.

3          So you've heard Mr. Geisler say this

4   several times now.  These text messages are by

5   far the most crucial, critical evidence in this

6   case.  They outline the most important events in

7   this case to help us establish negligence,

8   privity and knowledge.

9          So leading up to our September trial, we've

10  made every effort to complete discovery, to

11  prepare for a trial that we know, we have been

12  directed, will not be pushed.

13         Your Honor has been made available at the

14  drop of a hat sometimes multiple times a week to

15  bring this case to trial, but this process can

16  only work if the parties and the Court can rely

17  on the representations of counsel.

18         I would respectfully request this Court not

19  to allow the trial date to be weaponized any

20  further as an attempt to justify withholding or

21  obstructing evidence.

22         I'm not submitting this example as a basis

23  for a continuance.  That's not what we're asking

24  for, but claimants submit that this evidence for

25  the proposition that the world's fifth largest

Page 47

1  construction company, Skanska, must no longer be

2  able to hide from its obligations on the basis

3  they don't have the resources to complete

4  discovery in a compliant, forthcoming manner.

5       Claimants have been materially prejudiced

6  in our ability to prosecute and prepare for this

7  case as a result of Skanska's material

8  misrepresentations with respect to discovery.

9       Claimants request entry of a show-cause

10 order showing why Skanska should not be held in

11 contempt and subject to sanctions for its

12 misrepresentations to claimants and to this

13 Court, in defiance of its discovery obligations.

14      We also ask that Skanska be required to

15 produce cell phone data not only for Mr. Hill but

16 also for five additional custodians to make up

17 for the missing cell phones within no less than

18 one week.

19      THE COURT:  So let me just make sure I'm

20 clear, Ms. Guntner, on what you're asking for the

21 Court.  So you want Mr. Hill's cell phone data.

22      MS. GUNTNER:  Yes, Your Honor.

23      THE COURT:  I'm assuming some of the

24 argument that you're making you want to also use

25 to support the arguments on the text messages

Judge Hope Cannon
July 21, 2021

Page 48

1   generally . . .

2        MS. GUNTNER:  Yes, Your Honor.

3        THE COURT:  . . . in the way that they're

4   produced.  And what I think Mr. Geisler had

5   raised at the last hearing, just on the text

6   messages, that the conversations start the day --

7   one day after, right?

8        MS. GUNTNER:  Yes, Your Honor.

9        THE COURT:  The hit term.

10       And then you want five other additional

11  custodians.  And who are they?

12       MS. GUNTNER:  Your Honor, we need to

13  analyze the data.  Like I said at the beginning,

14  we literally got these results from our vendor

15  last night, but I was able to analyze and then

16  come prepared today.

17       We have ranked sort of in order of number

18  of text messages sent and received, so we can

19  perhaps pull a representative sample of that,

20  individuals that we know did send and receive a

21  lot of text messages during the critical time

22  period.

23       THE COURT:  So given, as Ms. Billhimer

24  indicated, they have not had an opportunity to

25  respond to that and because you guys are moving

Page 49

 1  orally -- and I'm happy to accept oral motions

 2  because of the time schedule we're on.  And,

 3  obviously, we have a court reporter, so we are

 4  creating a record.

 5       I will want to give them, because you're

 6  asking for sanctions, an opportunity for them to

 7  respond.  And then if you want to do a written

 8  reply, we can.  And then we'll address that.

 9       So I will tell you, with regard to the text

10  messages, I know I said I was going to get you an

11  order on that.  And I will, as well, before the

12  end of the week.

13       On that issue, it's . . . when I did some

14  of the research -- and so I do think -- obviously

15  I'm going to give Skanska an opportunity to

16  respond to these allegations.

17       But I do consider the fact that there are

18  missing cell phone data, that it does make it the

19  more -- more important, I guess, or raises a

20  level of importance in terms of the manner in

21  which the production is being made.

22       One thing that I will give you guys an

23  opportunity to address, and it has -- because I

24  want to get that order out on the text messages

25  this week, is in my research, I tried to find

Judge Hope Cannon
July 21, 2021

Page 50

1    cases dealing specifically with the production of

2    text messages.

3        So -- and it's going to be a simultaneous

4    production.  It's not going to be a reply.  By

5    noon tomorrow.  If y'all have any additional

6    authority on just the production of text messages

7    and what the courts have said.

8        But from Skanska's -- for Skanska's

9    knowledge, when I looked it up, here's what I

10    found to be persuasive to me in terms of the text

11    messages, is that there is a case out of the

12    Southern District -- Central District of

13    California from 2020 which states that case law

14    supports the proposition that messages -- and

15    they are talking about text messages -- should be

16    provided in a manner that provides a complete

17    record, as opposed to scattershot text.

18        Now, there are several different ways to do

19    that.  Spreadsheet way, which I think is what

20    Skanska is sort of looking at, is one way to

21    produce that.

22        But in that same case -- I think it's the

23    same case -- there's also a discussion about the

24    fact that when a party producing text messages

25    decides on the format in which that text message

Page 51

1    is going to produce, without consulting the other

2    side, that the producing party takes the risk

3    that that production is not going to be

4    considered to be in readily usable format.

5        And so we talked about that in the last

6    meeting that we held is, you know, there was no

7    discussion here.  Skanska did make that decision.

8        And so I'll give y'all till noon.  I wanted

9    to let you know where -- what I'm thinking with

10   that and what authority I found.  But, you know,

11   I haven't looked through all the cases.  And so I

12   want to give y'all an opportunity, if there are

13   additional cases you want to provide, to provide

14   that by noon before I get the order out.

15       But based on what I'm looking at in terms

16   of the case law, I think of two things.  One is,

17   I feel like, based on Mr. Wilson's testimony the

18   other day, that there was an opportunity for

19   Skanska to produce this in a different format,

20   and that Skanska chose not to do that.

21       Now, I do think, based on the case that I'm

22   looking at, that that means that Skanska should

23   have discussed that with opposing counsel before

24   the production was made.

25       And while we are short on production time,

Judge Hope Cannon
July 21, 2021

Page 52

1    that doesn't mean that you get to do it and then

2    say, we don't have the time now to make this

3    production.

4         But the other thing that I'm thinking about

5    in terms of just their argument about it being

6    visually more acceptable or easier to use with

7    witnesses is also, what is going to facilitate

8    the trial of this case?

9         So what for the Court will make it more

10   readily usable in terms of looking at these text

11   messages, and how difficult will it be for both

12   either the Court or at some point, depending on

13   where y'all go with this, if you get in front of

14   a jury, for a jury to look at these text messages

15   and be able to figure out what they are?  I think

16   to me that's what readily usable means.

17        And what I don't want to happen is that

18   they run those same sort of criteria that you're

19   asking them to run, and then you say, oh, you

20   just didn't run it right.  Here, you would have

21   found this message.

22        What I think they get is to have those text

23   messages so that if there are holes in those,

24   they can easily identify those and they can

25   easily question the witnesses about those.

Judge Hope Cannon
July 21, 2021

1           And then you guys can say, yes, there was a

2    response or no there was not a response.  But

3    just in looking at the cases, since our last

4    hearing, it does seem to me that those cases do

5    contemplate a production that puts those

6    conversations in some sort of order that makes it

7    readily usable.

8           MS. BILLHIMER:  Yes.

9           So, Your Honor, I think that the point you

10   heard from the expert vendors on the phone is

11   that the time that the production was run there

12   were two options within the Magnum Axiom

13   software.

14          And one was the full thread.  So back to

15   the beginning of time to the end of time.

16   Everything.  Some of these phones are 30, 40, 50

17   gigs worth of data that you have to pull down.

18          The other option that was available was

19   single-message threads.  The only way to apply a

20   date range was to use the single-message threads.

21          And it -- it just defies logic that using

22   something in a forensic program that allows for

23   single message -- text messages would render it

24   unusable.  It was an option available.

25          Now, I hear what you're saying in terms

Judge Hope Cannon
July 21, 2021

Page 54

```
1    of -- I think what Mr. Cramer had said at our
2    Monday hearing was, in the phone itself as the
3    messages are stored, they're stored as single
4    messages.  That's the way they are rendered on
5    the device itself.
6         The phone itself has an app that lets you
7    see the bubble back and forth.  And I think the
8    one thing Mr. Wilson had said, there may be a way
9    to take the conversations and put them in bubble
10   form.  But it would require creating a program
11   that doesn't exist.  But it could be --
12   technically it could be done.
13        So it's -- it's having to go out and write
14   a script -- an expert vendor write a script to
15   put it in that order.  And so that's -- that's
16   one of the issues, Your Honor.
17        It -- it -- by producing it in
18   single-message thread, when that's what's
19   available within the forensic program doesn't
20   render the data unusable.
21        You can read the text messages.  We did
22   provide the chat ID which allows you to group
23   them.  So it shows you conversations between the
24   same two people.  So we do stand on the fact that
25   it is usable data.
```

Judge Hope Cannon
July 21, 2021

Page 55

1        It looks a little different than what
2   you're used to when you pick up your phone and
3   you see it, but the text of the conversation and
4   the order of the conversation is there.
5        THE COURT:  I think when they said
6   difficult in this particular situation -- and,
7   again, in looking at the case that I referenced
8   where it indicated, it is the -- you -- Skanska
9   took that risk by both deciding it was going to
10  produce it in single file.
11       I think that was a conversation.
12  Obviously, y'all have had conversations.  Y'all
13  were communicating about a million other things
14  relating to ESI.
15       I don't know why there wasn't a
16  conversation about, hey, our vendor says this is
17  the only way we can do it, or if we have to do it
18  a different way, it's going to take 20 hours of
19  programming time, because I think what Mr. Wilson
20  indicated is that he has produced in both ways,
21  and that usually that is the result of a
22  discussion.
23       The problem is, that discussion did not
24  take place.  We were talking about text messages
25  with the Court.  And no one mentioned, hey, this

Judge Hope Cannon
July 21, 2021

Page 56

```
 1    is the only way we can do it.  Let's make a
 2    decision before the production gets made.
 3          The other issue is, then you take out
 4    things in the conversation that you determine not
 5    to be relevant.  And it may or may very well not
 6    be relevant.
 7          But when you do that on top of producing it
 8    in a single message -- single message instead of
 9    a thread, I think it becomes more difficult for
10    the claimants to figure out what got taken out
11    and whether or not it should have gotten taken
12    out.
13          And when I combine that with the way that I
14    see the privilege logs having been done as well,
15    it gives me a lot of pause on -- and I think form
16    the claimants' perspective, what they've
17    expressed before is, they have a lot of pause
18    based on these productions on whether or not
19    there was something that was pulled out that
20    shouldn't have been pulled out.  So I think it
21    just becomes escalated.  But what I really don't
22    understand is why that issue wasn't raised or --
23    and why Skanska just chose to make those
24    unilateral decisions.
25          MS. BILLHIMER:  So, Your Honor, it's
```

Judge Hope Cannon
July 21, 2021

Page 57

 1  similar to an email review, that the the

 2  claimants asked us to apply text messages to the

 3  data for the period 9/10 to 9/30.

 4        The forensic vendor extracted the data by

 5  date range and applied the text messages.

 6  Lawyers then reviewed them and put them in

 7  context, provided not just the text messages that

 8  had a hit.

 9        THE COURT:  Right.

10        MS. BILLHIMER:  Like you do in email.  We

11  didn't do that.

12        THE COURT:  I know, but -- but you got --

13  but your side made the decision as to what that

14  context is and when that conversation should

15  begin or end, and what you felt was appropriate

16  for that context.

17        And so if you look at the emails, in the

18  ESI protocol it says that you're not going to

19  redact anything that is an ESI document.  So

20  there's going to be truly not -- probably y'all

21  don't -- you're not going to agree as to what an

22  ESI document is.

23        Is it the individual, single message or is

24  it the conversation?  And so I feel like there

25  were so many things.  This wasn't going to be

Page 58

1   just like the email where you could go look at

2   your protocol and say yes or no, because you made

3   the decision then, okay, I'm going to be able to

4   redact these because I'm going to consider each

5   single message an ESI document, and assuming that

6   they would agree with you.

7          So that's why -- before I issue the order,

8   if there's some authority -- and I'm, you know,

9   really prior to making many of my decisions, I do

10  want to see what other courts have done.

11         I feel like this isn't the only time this

12  issue has come up.  And so when I did the

13  research, that's what I found, is that most

14  courts are saying, you need to do this in a

15  conversation context so that the whole context --

16  and the courts also go on to say, okay.  If

17  there's an email in there about going to get a

18  Whataburger, yeah, take it out.  I mean, why take

19  it out?  That's sort of a Bay Nine.  It doesn't

20  do anything, but at least it still gives the

21  person getting it the full context.

22         So is a text message considered like a

23  phone conversation, where you are just going to

24  redact pieces within that phone conversation, or

25  is it considered an each document?

Judge Hope Cannon
July 21, 2021

1        MS. BILLHIMER:  Well, that's -- I guess
2    that begs the question.
3        If you're applying a search term, and
4    there's one search term on a conversation that
5    lasted two years, do you produce two years' worth
6    of data?
7        THE COURT:  I mean --
8        MS. BILLHIMER:  I mean, that's the point,
9    is --
10        THE COURT:  No.  I don't --
11        MS. BILLHIMER:  -- what's --
12        THE COURT:  The --
13        MS. BILLHIMER:  -- what is it that they
14    were -- you know.
15        THE COURT:  But that's -- I think, Ms.
16    Billhimer, that's -- that's -- that's what the
17    reason we're here I feel like now is because
18    those were all questions I assume Skanska had
19    during -- when it was doing the production.  You
20    know, how far do we go?
21        But at no point did Skanska come to the
22    Court, despite how many of these hearings we've
23    had and how much the Court has been available, to
24    say they want a search term.  Here's the issue or
25    to even run it by them and figure out, is this

Judge Hope Cannon
July 21, 2021

Page 60

1    going to be agreeable.

2         Because at the end of the day, you might

3    come in before the production and say, it's going

4    to cost us this amount of money.  We can do it in

5    an Excel spreadsheet.  Give it to them.  They can

6    sort it.  And that's how they need to do it.

7         And if they want to do it, they pay for the

8    cost, or however it was.  But those discussions

9    were never made.  And so the only thing I'm

10   hearing now is, we've done the production.  We

11   don't want to have to redo it.  It's going to be

12   X amount of dollars and X amount of time to redo

13   it.  And, oh, by the way, if you want to make the

14   September 21 trial date, you're not going to make

15   that if we have to reproduce this.

16        MS. BILLHIMER:  So, Your Honor, the issue

17   of context, that was raised at a hearing.  I did

18   raise the fact that we put not just the text

19   message that had the term in it.  We had lawyers

20   go through and add context.

21        THE COURT:  You did, after the production

22   was made in explaining the production.  You

23   absolutely did, Ms. Billhimer.  You indicated to

24   the Court that Skanska went above and beyond what

25   they really had to do, because instead of just

Judge Hope Cannon
July 21, 2021

Page 61

1    identifying a single text message with a hit, you

2    tried to identify within that conversation.  That

3    was after the production was done.

4         And before -- I think it was right when the

5    production may have been made -- and I don't know

6    if even at that point in time the claimants had

7    gone through that and were able to see, do I get

8    the context or do I not get the context?

9         I think after that, they were in here

10   arguing that they couldn't figure out how to sort

11   these.  So -- and then you didn't give them the

12   chat ID overlay until just a -- you know, a

13   little while ago, so --

14        MS. BILLHIMER:  So, Your Honor, with

15   respect to the chat ID, it wasn't until we had a

16   conversation between the vendors where that issue

17   came up.  And our vendor was able to take that

18   data and provide it.

19        That was not something that was hidden.  We

20   didn't choose to not provide it.  We didn't have

21   it in our production.  We used the sort order,

22   which we had provided to the other side.  That's

23   how we reviewed the conversations.

24        There was a suggestion that text messages

25   are missing, like in a chain.  I -- I haven't --

Judge Hope Cannon
July 21, 2021

Page 62

1    are there any that have been identified?  There

2    was one that Mr. Geisler put in a presentation, I

3    guess, and he said, there was no response to this

4    email.

5         I guess it was an employee that had said,

6    had you followed the hurricane plan that I used,

7    you wouldn't be in this problem.  Call me --

8         THE COURT:  That was after, I think.

9         MS. BILLHIMER:  Call me if you need a job.

10        Your Honor, I -- I personally wouldn't have

11   responded to it because it wouldn't have been a

12   very nice response.

13        THE COURT:  There --

14        MS. BILLHIMER:  I mean --

15        THE COURT:  There -- there may not -- I

16   mean, I think, again, the issue is because of the

17   way the production was made, which really, given

18   how much we talked about text messages, had

19   been -- is what's causing a lot of the delay

20   here.

21        They don't know whether there are text

22   messages missing or not.  I think they were

23   raising that as a, look, this doesn't seem to

24   make sense to us now that we've been able to sort

25   these.

Judge Hope Cannon
July 21, 2021

Page 63

1          But I think that's -- again, that is --
2      some of that is based on the fact that you guys
3      did say you did take out some.  So they don't
4      know what you've taken out or not taken out.  And
5      when you're reviewing it is different because you
6      know what you've taken out.
7          So if there is -- if y'all have some
8      authority as to, you know -- that helps your
9      position in terms of, hey, text messages produced
10     in a single thread was totally acceptable in this
11     case, and, you know, there was a motion to
12     compel, and it was denied or whatever, and then
13     if y'all have some additional cases about the
14     production of text messages both in content and
15     also as a single thread versus in what the user
16     is -- is more -- is used to seeing, because,
17     again, not only are we talking about what you
18     guys understand and can decipher, but whether a
19     witness can figure out and decipher that, and
20     whether the Court, when they're looking at those
21     messages or a jury, is going to be able to
22     understand what you're doing.  But I just want to
23     raise those cases to your attention.
24         I mean, again, I'm going to get the order
25     out before the end of the week, but I just want

Judge Hope Cannon
July 21, 2021

Page 64

1    to give you an opportunity, Ms. Billhimer and

2    Skanska, to give me additional authority that I

3    haven't otherwise found that you think is going

4    to help your position on those text messages.

5            MS. BILLHIMER:  And, Your Honor --

6            THE COURT:  And, again, I do want to give

7    you -- and I don't know if I set a time.  I'll

8    take an oral motion for sanctions and the

9    request.  I want to give you an opportunity to

10   respond to that before the Court addresses it.

11   So, what . . .

12           MS. BILLHIMER:  Well, Your Honor, there was

13   no meet and confer or anything.  They didn't

14   raise any of this with us prior to.  This is the

15   first we're hearing it.  And they're seeking

16   sanctions.

17           We would ask for a meet and confer.  We

18   would ask it be put in a motion, especially when

19   they're representing that the data with respect

20   to how many messages.

21           Our data is different.  So there's a reason

22   for that.  We would like an opportunity to meet

23   and confer about the numbers of text messages.

24   They're saying that we're making

25   misrepresentations to the Court.

Judge Hope Cannon
July 21, 2021

Page 65

```
 1            They may very well be making
 2    misrepresentations themselves.  So we would like
 3    an opportunity to meet and confer.  We would like
 4    them to provide it in writing what they had so we
 5    can respond to each issue that they've raised, so
 6    . . .
 7            THE COURT:  And I don't have -- I mean,
 8    obviously, again -- I think I told them before,
 9    too, that if there's going to be a spoliation
10    issue, that is something that they're going to
11    need to raise sooner rather than later.
12            And I think the impetus for raising some of
13    this, again, is we've been talking about text
14    messages.  And -- and while they didn't have
15    numbers until now, you have known their position
16    has been that they think there is not enough
17    information in these text messages, that they
18    don't think it's -- that they do think that
19    things are getting pulled out.  And they've
20    obviously expressed concern over the missing
21    custodians for quite some time now.
22            But, you know, after this, if y'all have
23    time, why don't y'all meet and confer about
24    those?  Provide those numbers specifically to Ms.
25    Billhimer.  I mean, there have been numbers that
```

Judge Hope Cannon
July 21, 2021

Page 66

1    y'all have thrown out that they've had to jot

2    down and haven't been in formal -- you know, in

3    formal documents as well, so -- and then --

4         MS. BILLHIMER:  But, Your Honor, we weren't

5    seeking sanctions.  It's . . . I take offense.

6    That's all.  So I'd like an opportunity to be

7    able to address each and every allegation that

8    they're making.

9         THE COURT:  And so, you know, that's up to

10   you guys if you want to file a formal motion, if

11   you want to stand on the motion that -- again,

12   there is a record of it.  If you want to stand on

13   your oral motion for sanctions and just give them

14   the time to respond and you a time to reply, we

15   can do it that way.

16        If you resolve it at your meet and confer,

17   you resolve it, and there's not going to be an

18   issue.  But I want to go ahead and put some

19   time -- some times in there.

20        MS. GUNTNER:  Your Honor, if I may.

21        THE COURT:  Uh-huh.

22        MS. GUNTNER:  So that is why we asked for

23   an order to show cause, so that they could

24   respond to this.  And then we could, of course,

25   respond if necessary.

Judge Hope Cannon
July 21, 2021

Page 67

```
 1              I'm happy to meet and confer this evening.
 2    I sent maybe four different emails throughout the
 3    course of the day yesterday with no response,
 4    which is unfortunately typical course of business
 5    with the way we communicate over email.  I
 6    usually don't get responses.  And, frankly --
 7              MS. BILLHIMER:  I object, Your Honor.  I
 8    responded to your emails.  I'm sorry.
 9              THE COURT:  Well, why don't we do this:
10    And, again, y'all are here.  If you -- you know,
11    I don't know if y'all had something planned after
12    this.  If you could at least just talk about
13    where you're -- how you're getting those numbers
14    so that Ms. Billhimer can go back and run those
15    same queries, and, you know, y'all communicate
16    again by phone.
17              But what we'll do is, I'll enter the order
18    to show cause today for that, and then setting it
19    out, I guess, again, because we don't -- I don't
20    want to push these.  If you -- and in order to
21    make sure that y'all meet and confer, do a
22    response deadline.  Can you respond to them by
23    noon on Friday?
24              MS. BILLHIMER:  I have another hearing in
25    another matter, Your Honor.  It's a motion to
```

Judge Hope Cannon
July 21, 2021

Page 68

```
 1   dismiss in Okaloosa County.
 2          THE COURT:  So what -- what --
 3          MS. BILLHIMER:  And I am sole counsel now
 4   on the case.
 5          THE COURT:  How much time do you think you
 6   need, Ms. Billhimer, assuming y'all can't resolve
 7   this?
 8          MS. BILLHIMER:  Monday, Your Honor.
 9          THE COURT:  Okay.  So if you respond --
10   if -- if -- the show cause order will address --
11   you need to respond on Monday, and then up to --
12   it will shorten your time, because it looks like
13   I guess we will be back on Wednesday.  If you can
14   respond by close of business on Tuesday.
15          MS. GUNTNER:  Yes, Your Honor.
16          MR. GEISLER:  Absolutely.
17          THE COURT:  And then we'll address it on
18   Wednesday.
19          And then for the other stuff, though, for
20   the text messages themselves, the issue that
21   you've already addressed before, that -- can you
22   do that by noon today if you have additional
23   authority?  Or noon -- I'm sorry -- noon
24   tomorrow?  Noon today is about to come.  Noon
25   tomorrow.
```

Judge Hope Cannon
July 21, 2021

Page 69

```
 1          MS. BILLHIMER:  Noon tomorrow.
 2          THE COURT:  Okay.  Because I'd like to try
 3    to get that out by end of Thursday or Friday
 4    morning.
 5          So -- and then -- and then I will give you
 6    a time line on the privilege log when I issue the
 7    order on the -- on the 65.  So y'all are going to
 8    meet this afternoon.  And then I'll enter the --
 9          MS. BILLHIMER:  What time would you like us
10    to meet?
11          MR. GEISLER:  Meet right afterwards.
12          MS. GUNTNER:  Yeah.  We could just maybe go
13    in that room really quick and briefly . . .
14          MS. BILLHIMER:  Sure.
15          MS. GUNTNER:  . . . go over everything.
16          THE COURT:  So order to show cause I'll
17    issue today, giving you a response Monday.  Close
18    of business Monday?
19          MS. BILLHIMER:  Yeah.
20          THE COURT:  Okay.  Close of business Monday
21    for Skanska.  And then Tuesday, response close of
22    business.  Okay.
23          So I think that takes care of the text
24    messages, then?
25          MS. GUNTNER:  Yes, Your Honor.
```

Judge Hope Cannon
July 21, 2021

Page 70

```
 1          THE COURT:  Okay.
 2          And then on the October date, as I said,
 3    Ms. Billhimer I did not get a chance to look at
 4    your letter, so can you give me the upshot of it?
 5          MS. BILLHIMER:  Sure.
 6          So the original search terms, which were
 7    the ones that were applied to the 9/10 to 9/30,
 8    that generated 14,500 documents, which is an even
 9    larger sum than what was for the September time
10    period.
11          We narrowed the scope of that list of terms
12    to include terms that we thought would capture
13    documents that looked back.  Those terms included
14    hurricane, Sally, storm, tropical, landfall,
15    trigger, safe harbor, condition three, condition
16    one, condition four, condition two.  Those all
17    come out of the hurricane preparedness plan.
18          Preparedness plan, broke within two of
19    loose, broke within two of free, condition four,
20    recovery plan, incident management plan,
21    condition two, condition one, emergency prepare,
22    and condition three.
23          That generated 4,723 documents with
24    families.  We sent that over to the other side.
25    They would not agree to the 4,723, and they
```

Judge Hope Cannon
July 21, 2021

Page 71

1   sought to add additional terms.

2        Those included barge, damage, line,

3   weather, wind, tug, spud, rope, anchor, mooring,

4   demob, surge, Albert within two of pike, aground,

5   stop, work, safe harbor, break within two of

6   free, break within two of loose.  And that

7   generated double the amount of documents, 9,586

8   families.

9        Your Honor, a lot of -- in October of 2020,

10  the focus at the project was construction,

11  ongoing construction and repair of what had

12  happened.

13       We're concerned that these additional terms

14  that are blowing up the number of documents,

15  they're more general contract construction terms

16  that will pull in activities, daily activities.

17       They use barges.  They use lines, anchors,

18  spuds.  All of that's used in regular

19  construction.  Our concern is that it's almost

20  10,000 documents that are not going to yield

21  responsive information.

22       And we believe that the list that we

23  created with the hurricane, Sally, tropical kind

24  of would -- although it might get other items in

25  there, it -- it would more focus on collecting

Judge Hope Cannon
July 21, 2021

Page 72

 1    things -- documents that may bear on the issues

 2    for trial.

 3         THE COURT:  So do you -- then does Skanska

 4    have an objection to the 4,723?

 5         MS. BILLHIMER:  No, Your Honor.  We have

 6    asked Servient to start preparing those

 7    documents.  And we will review them and produce

 8    them.

 9         We are not, however, going to do the

10    presumptive responsiveness.  We'll do a regular

11    responsive, nonresponsive review, since it's a

12    different set of terms.

13         THE COURT:  Okay.  Ms. Guntner.

14         MS. GUNTNER:  Yes, Your Honor.

15         So as Ms. Billhimer stated initially, we

16    started with the -- a larger set of search terms.

17    These were the search terms that were used for

18    the September 10th through 30th data set.

19         Skanska then eliminated 43 of those search

20    terms, leaving only one-third of the total terms

21    that were the agreed-upon product of negotiations

22    between Skanska and claimants, and were, at the

23    time of the September 10th through 30th search

24    terms, designed to elicit relevant responsive

25    documents from that time period.  So Skanska

Judge Hope Cannon
July 21, 2021

Page 73

1    returned a much smaller list.

2         We responded, agreeing to remove some terms

3    from this list.  But like Mr. -- or like Ms.

4    Billhimer stated we do believe that certain of

5    these terms need to come back.  Barge, for

6    example.  I mean, it's unheard of that barge

7    would not be a search term during this date

8    range.

9         But, Your Honor, you know, we stand by our

10   argument that these search terms are designed to

11   elicit relevant responsive documents relating to

12   the claims and issues in this case.

13        However, I think one was mentioned was

14   demob.  Given Your Honor's previous rulings on

15   that issue, we would be happy to remove that one.

16        However, we do believe that the remainder

17   of the terms are necessary to elicit relevant

18   responsive documents.  And even with demob in

19   there, we only had a total doc count of 7,110

20   with families.  9,586.  That is a -- honestly,

21   not a problem for us to review.  And it's just

22   not a huge data set, especially considering the

23   importance of this time period.

24        THE COURT:  Okay.  So let me look at Ms.

25   Billhimer's letter, then, that she sent, I guess,

Judge Hope Cannon
July 21, 2021

Page 74

1    July 20th, yesterday.

2         And it looks like the search terms were

3    broken down in there.  The highlights appear to

4    be the ones that the -- that the claimants want

5    to add that.

6         MS. BILLHIMER:  Yes, Your Honor.

7         THE COURT:  And so if you're saying with

8    demob removed, that that is a little over 7,000

9    documents.

10        MS. GUNTNER:  So with demob in there, you

11   get 7,110 all-doc total count.  With families,

12   9,586.

13        THE COURT:  Okay.  So your numbers are the

14   same.

15        MS. GUNTNER:  Right.  Well, those were the

16   numbers provided by Ms. Billhimer.

17        THE COURT:  Okay.

18        MS. GUNTNER:  But presumably removing demob

19   may remove additional documents.

20        MS. BILLHIMER:  There's only 12 unique.

21        MS. GUNTNER:  Yep, you're right.

22        MS. BILLHIMER:  Yeah.

23        So that would remove --

24        MS. BILLHIMER:  A dozen.

25        MS. GUNTNER:  12 documents.

Judge Hope Cannon
July 21, 2021

Page 75

```
 1          MS. BILLHIMER:  Doesn't move the needle.
 2          THE COURT:  So y'all are fine with the
 3    4,723.
 4          MS. BILLHIMER:  Yes.
 5          THE COURT:  It's with these additional
 6    terms that are highlighted back here:  Barge,
 7    damage, line, weather, wind, spud.  Those are the
 8    terms that you want to add back in that's going
 9    to create the 9,586 with families.
10          MS. GUNTNER:  Yes, Your Honor.
11          If I may add one more thing.
12          THE COURT:  Okay.
13          MS. GUNTNER:  So Skanska did agree to broke
14    within two of three, and broke within two of
15    loose, but did not agree to break within two of
16    three, and break within two of loose.  So that's
17    only four additional unique hits.  So I just
18    wanted to bring that to both Skanska and this
19    Court's attention.
20          THE COURT:  And, again, Ms. Billhimer,
21    that's because you're looking back, and so broke
22    would be past tense.  And so that's something
23    that might have occurred on the site past -- past
24    Hurricane Sally?
25          MS. BILLHIMER:  Right.
```

Judge Hope Cannon
July 21, 2021

Page 76

1          THE COURT:  Okay.  So I'll issue an order

2    on that, and this today as well when we're going

3    to --

4          MS. GUNTNER:  Yes, Your Honor.

5          THE COURT:  -- to do the other -- other

6    orders.

7          And, Ms. Billhimer, what's the projection

8    on the 4,723 documents in terms of review and

9    production?

10         MS. BILLHIMER:  So, Your Honor Servient

11   is -- they're processing that to put it in the

12   review platform.  I have to -- I do have the word

13   out to try to get our review team back together.

14   I should know later today how many dedicated

15   reviewers . . .

16         THE COURT:  Okay.

17         MS. BILLHIMER:  . . . that I have so we can

18   make an estimate.

19         THE COURT:  So just to kind of recap in

20   terms of the document production, because that's

21   one thing, you know, we want to close, I know

22   y'all are doing the ESI on Friday.  So there may

23   be some issues that come up as a result of that.

24   If there are, then we can all get to talk about

25   them on Wednesday.

Judge Hope Cannon
July 21, 2021

Page 77

```
 1          So be prepared both sides.  Obviously, if
 2     y'all can talk beforehand, that would be great,
 3     and -- and not -- so that, you know, you guys
 4     have the time to respond.
 5          But the search -- the cell phone data, if
 6     the Court requires it to be produced differently,
 7     will be an additional document -- additional
 8     production that will need to be made.
 9          And then this 4,723.  Does that, then -- is
10     that everything, then, that would be in terms of
11     document production that's either left or needing
12     to be -- I know we've gone through over and over
13     about the notes that may still be out there.
14          MS. BILLHIMER:  We've produced those.
15          THE COURT:  Okay.
16          MS. GUNTNER:  Yes, Your Honor, I think that
17     covers everything.
18          I will note that Skanska made a production
19     last night, I think around 10:30, of notes for
20     Mr. Beddow, whose deposition is today.
21          THE COURT:  Okay.
22          MS. GUNTNER:  It's going on right now.  And
23     they provided this over PDF.  But there was
24     something in -- and I don't have the email in
25     front of me right now, but I think it noted
```

Judge Hope Cannon
July 21, 2021

Page 78

```
1   document retention in the subject of the email,
2   that there were documents related to document
3   retention that I presume would be related to
4   Friday's deposition.
5        I've asked our vendor to expedite that, but
6   I think if there's any way counsel could provide
7   anything -- and I have requested this over email
8   two times.
9        If counsel could provide to us over email
10  any documents that will be produced for Friday's
11  deposition, that -- it's necessary at this point
12  because if we get in a load file, I'm not going
13  to have it in time.
14       MS. BILLHIMER:  Yeah.  I think you can open
15  the -- use the password and open the production
16  and see them.  I mean, I think you can see the
17  documents.  I think our -- our -- our ESI person
18  last night did send the notes to -- with regard
19  to Mr. Beddow.
20       But even Mr. Barr has sat here in this
21  court and said that he's opened it before and
22  looked at individual documents.  I think they're
23  accessible.  They are readily accessible.  Not in
24  their review platform, but you can access them
25  and print them, look at them individually.
```

Judge Hope Cannon
July 21, 2021

Page 79

```
 1          THE COURT:  Are you just asking for
 2     anything additional that --
 3          MS. GUNTNER:  Yes, Your Honor.
 4          THE COURT:  -- they have?
 5          MS. GUNTNER:  For Friday's deposition, we
 6     did include a document request.  And I've asked
 7     counsel twice now to provide any documents --
 8          MS. BILLHIMER:  And we --
 9          MS. GUNTNER:  -- they intend to --
10          MS. BILLHIMER:  -- made a --
11          MS. GUNTNER:  -- produce --
12          MS. BILLHIMER:  -- production.
13          MS. GUNTNER:  -- by Friday.
14          MS. BILLHIMER:  -- We --
15          MS. GUNTNER:  And I -- I -- we went and
16     got --
17          MS. BILLHIMER:  We -- I mean --
18          MR. GUNTNER:  If I could continue what I'm
19     saying, I would appreciate it.
20          I have not gotten a response as to whether
21     they do intend to produce any documents.  Only an
22     email last night at 10:30 that said document
23     retention in the subject.  So I don't know the
24     answer to my questions.
25          THE COURT:  I think what Ms. Guntner is
```

Judge Hope Cannon
July 21, 2021

Page 80

```
 1   just asking, Ms. Billhimer, is that if you

 2   could -- if there are documents that have not

 3   been produced for the ESI depo, if you can

 4   produce those in advance.  Is that being done

 5   remotely?

 6          MS. GUNTNER:  Yes, Your Honor.

 7          THE COURT:  Especially if it's going to be

 8   done remotely so they can load it on the computer

 9   screens.  So if there are --

10          MS. BILLHIMER:  These --

11          THE COURT:  If it's on -- And they are

12   ready to be produced.

13          MS. BILLHIMER:  I think some of what

14   relates to Friday was produced last night, so --

15          THE COURT:  And I don't think Ms. Guntner

16   is saying --

17          MS. BILLHIMER:  Yeah.

18          THE COURT:  She says she hasn't gone

19   through that.  I think what --

20          MS. BILLHIMER:  Yeah.

21          THE COURT:  -- all she's saying is if there

22   is --

23          MS. BILLHIMER:  Any --

24          THE COURT:  -- anything else . . .

25          MS. BILLHIMER:  Yeah.
```

Judge Hope Cannon
July 21, 2021

```
 1           THE COURT:  . . . if you can do that I
 2   guess maybe by the close of business on -- well,
 3   by noon on Thursday probably, if you got to load
 4   it into her -- the computer and all that for the
 5   witness.
 6           MS. GUNTNER:  Yes, Your Honor.  We just
 7   have to provide it -- provide everything to the
 8   trial tech ahead of time so he could be prepared.
 9           THE COURT:  And there may not be anything
10   else.  But I think that's all Ms. Guntner is
11   asking.
12           Okay.  So that takes -- so then we should
13   be done with document production, other than
14   maybe what may be in the RFAs, but that's just a
15   response.
16           MS. GUNTNER:  Yes, Your Honor.
17           THE COURT:  You have filed that, Mr.
18   Gonzalez, you've indicated?
19           MR. GONZALEZ:  Yes, Your Honor.  The RFA
20   motion was filed last night.  I've spoken with
21   Mr. Walker about it.  He and I -- he actually
22   just exchanged email with me now.
23           I noticed in the conversations regarding
24   the Navy's discovery, that you had offered time
25   frames of either tomorrow at 10:00 for them to
```

Page 82

1    have their hearing.  I didn't know whether they

2    were available for that.  Or Monday.

3          I heard you just say that we might have

4    another one of these hearings on Wednesday.  I

5    will be in depositions of a tugboat captain on

6    Wednesday.

7          So if the Court is available tomorrow at

8    10:00 for a half hour or an hour, Mr. Walker and

9    I are both available for that RFA discussion.

10          THE COURT:  Okay.  So as long as you guys

11    are available, and Mr. Walker doesn't feel like

12    he doesn't have time to respond to your written

13    motion, that would be the only thing.

14          I mean, if -- if -- if -- to the extent

15    Mr. -- isn't he on the phone or is he not?

16          MR. GONZALEZ:  He's not.

17          THE COURT:  Oh.

18          MR. WATSON:  This is Hal Watson.  Mr.

19    Walker is preparing for a trial that starts on

20    Monday.

21          THE COURT:  So it --

22          MR. WATSON:  So I don't know --

23          THE COURT:  -- sounds like --

24          MR. WATSON:  -- what his availability --

25          THE COURT:  -- he's available.

Page 83

1          MR. GONZALEZL:  Well, okay.  So Mr. Walker

2    and I discussed it last night.  He asked me to

3    ask the Court for this 10:00 hearing tomorrow.

4          THE COURT:  Okay.

5          THE GONZALEZ:  The email I received from

6    him during this hearing was essentially, Tom,

7    what do you envision for a written reply?  Do you

8    want that before a hearing tomorrow at 10:00, or

9    would you want the hearing and then have a

10   written reply?

11         I said, I would envision having you reply

12   before the hearing, and I would assume the Court

13   would as well.  But that I would ask you today on

14   the timing of that reply.

15         THE COURT:  I do.  I would rather have a

16   reply.  And so what I don't know from what Mr.

17   Walker is relating to you is if he'll be able to

18   do that reply prior to the hearing, or was he

19   just anticipating doing a hearing, having some

20   sort of just informal hearing and then

21   opportunity to brief it after?

22         So if he -- it's fine.  Y'all just let us

23   know.  We can do it tomorrow.  But if he's going

24   to do a reply, I'd like him to do it by the end

25   of business today so I can look at it.

Page 84

1          MR. GONZALEZ:  I'll let him know.  And so

2    that it's not -- so that I'm not saying anything

3    wrong, Mr. Walker's question to me was, after

4    some pleasantries about getting power back in New

5    Orleans, QUESTION:  Will my written reply to the

6    motion be expected for the conference tomorrow or

7    will my reply be during the conference,

8    parenthetical, and after based on the conference,

9    what do you envision?

10          THE COURT:  So let him know I'd like it

11    before.

12          MR. GONZALEZ:  Okay.

13          THE COURT:  And if that means he needs more

14    time and we can't do it on Monday, that's fine.

15          MR. GONZALEZ:  Okay.

16          THE COURT:  We'll -- we'll just -- I mean,

17    can't do it tomorrow.  We can try to do it maybe

18    Monday or schedule a different time . . .

19          MR. GONZALEZ:  Yes, Your Honor.

20          THE COURT:  . . . since you're going to be

21    out on Wednesday, Mr. Gonzalez.  But I do want to

22    give Mr. Walker an opportunity to file a

23    written -- written response.

24          MR. GONZALEZ:  Perfect.  Thank you.

25          THE COURT:  So y'all just let -- just email

Judge Hope Cannon
July 21, 2021

Page 85

 1    us and let us know after you talk to him.

 2         MR. GONZALEZ:  Will do, Your Honor.

 3         THE COURT:  Okay.  So then that's the RFAs.

 4    And then just the -- Mr. Hyde, during the

 5    depositions.  So how does the -- have subpoenas

 6    gone out?  That's not how I read your letter, Mr.

 7    Kelly.

 8         MR. KELLY:  No.  No.  There were notices

 9    sent out kind of in response to our letter to

10    Skanska.  So I -- I sent the -- I sent the letter

11    to Skanska yesterday morning.

12         And in response, Mr. Walker sent me eight

13    notices.  All of -- all of those people are

14    listed in the letter.  And we object to producing

15    them because . . . and -- and -- and I didn't

16    want -- want to argue this, and I don't want to

17    argue this in front of the Court now, Your Honor,

18    because it's not fair without Mr. Walker, Mr.

19    Remington, and Mr. Branning here.

20         But they recently sent you a letter saying

21    that they would like you to order the United

22    States to file a formal motion to quash or for a

23    protective order.

24         I don't think that's necessary, Your Honor,

25    because everything in our letter is based on your

Judge Hope Cannon
July 21, 2021

Page 86

1    ruling.  It's based on the law of the case, and

2    it's based on Judge Collier's application of your

3    ruling.

4         So what . . . what relevant evidence was

5    it, if they -- Captain Cocella, the CO of Naval

6    Air Station Pensacola could give regarding

7    Skanska's liability is almost nothing.  They know

8    that, and we know that.

9         And now they are asking again to depose

10   Navy eyewitnesses regarding their valuation of

11   weather and to what extent Sally would impact

12   Pensacola.

13        You've already ruled on that, Your Honor.

14   I don't think I need to do another motion to

15   quash.  I think this can be handled informally.

16   I -- I believe that they're going to dump another

17   set of witnesses on us, to which we will also

18   object.  And I think I would like to reaffirm

19   that your ruling stands.

20        THE COURT:  So . . . I mean, I guess there

21   are a couple of issues.

22        MR. WATSON:  Well, I --

23        THE COURT:  I'm sorry.  Go ahead.  Who's --

24   I don't know who's trying to talk.

25        MR. WATSON:  I'm sorry.  This is Hal

Judge Hope Cannon
July 21, 2021

Page 87

1    Watson, Your Honor, and I can address this issue.

2          THE COURT:  Okay.  Go ahead.

3          MR. WATSON:  Yeah.  I -- I -- I don't want

4    to address the substance.

5          But the procedure normally when someone --

6    when a deposition is noticed and the counsel for

7    the deponent doesn't want to even produce the

8    witness, the procedure is to file a motion for a

9    protective order.

10          This is an important issue in the case.  We

11    think we need to have a good, clean record on

12    this that's not -- not informal letters, et

13    cetera, but a motion, responses, and a ruling.

14          And the best way to do that would be for

15    the United States to file a motion for a

16    protective order that we can then respond to, and

17    then have a hearing on it.

18          THE COURT:  So the -- and Mr. Watson, I

19    know you haven't been participating in these

20    status conferences, but, you know, the Court's

21    instruction to the parties have been to try to

22    raise issues with the Court sooner rather than

23    later, so that if there is a way to resolve it

24    sooner, we can do that.

25          You know, typically motions require -- they

Judge Hope Cannon
July 21, 2021

Page 88

```
 1    have 14-day response deadlines, unless the Court
 2    orders otherwise.  And even with regard to some
 3    of the depositions, I instructed the claimants
 4    that if they were getting push-back or if there
 5    were issues with who they wanted to raise those
 6    issues so that we could address it -- and so
 7    that, I expect, is one reason why the government
 8    is raising it this way.
 9         It sounds to me also, as Mr. Hyde is
10    interpreting the Court's order as already
11    settling the issue as to what is relevant in
12    terms of the Navy.
13         All that being said, I'm not going to
14    prevent you guys from making a record if you want
15    to.  As I've told y'all over and over again,
16    you're not going to get, as far as I know, any
17    extensions.
18         And so I think -- well, a couple of other
19    things, too.  Typically, I guess at the time that
20    the government wrote the letter, there wasn't a
21    need to file a motion for protective order
22    because they just had a request for depos.
23         And now I guess the notices -- I don't even
24    know if the notices have dates on them, but
25    typically notices without dates really have no
```

Judge Hope Cannon
July 21, 2021

Page 89

```
 1   force and effect either, but --
 2          MR. WATSON:  They do -- they do have dates,
 3   Your Honor.
 4          THE COURT:  What's the first date?
 5          MR. WATSON:  I believe the first date is
 6   August 6th.
 7          THE COURT:  Okay.  So Mr. Hyde or Mr.
 8   Kelly, it doesn't have to be anything, you know,
 9   too extensive or formal.
10          I mean, you can rely on the record that has
11   already been established by this hearing, in
12   terms of what your position is.  But if you want
13   to file anything more extensive you can, and file
14   a motion for protective order as to these
15   notices.
16          You can -- you can draft it however you
17   want.  You can call it a motion for compliance
18   with -- with the Court's prior order as well.
19          You can also -- you know, typically with
20   motions for protective order when they are filed,
21   any discovery motions, as you guys know from the
22   rules, the Court actually says that the Court
23   shall or must impose sanctions or attorney's fees
24   if there was no -- if the motion or the response
25   was not substantially justified.
```

Judge Hope Cannon
July 21, 2021

1          So I do want to keep you guys . . . alert

2    you to that as well in the rules and what has

3    been this Court's practice as well when those are

4    asked for.

5          So if Mr. Hyde or Mr. Kelly, sort of

6    similar to what the claimants did here, if you

7    want to stand on the record that's before you,

8    what I can do is enter just an order for an

9    expedited response and take what you have

10   submitted to the Court and what you've said on

11   the record as an oral motion for protective order

12   or compliance with the Court's order.

13         Tell me how you want to do it.  Do you want

14   to submit something in writing, or do you want me

15   just to do an order to show cause with a response

16   date?

17         MR. WATSON:  I -- I -- I would prefer an

18   order to show cause, Your Honor.  This is -- this

19   is Skanska's attempt to take a fourth bite at the

20   apple.  And we -- we're just -- we've covered

21   these issues.  And you've ruled on them.  And if

22   you look at -- if you look at my letter of

23   yesterday, all I simply do is rely on your

24   ruling, and -- and make common-sense objections

25   to producing people who solely took a picture of

Judge Hope Cannon
July 21, 2021

Page 91

1    a barge sitting on sand.

2         THE COURT:  So I did look at the letter,

3    and -- but, again, I -- I think that Skanska

4    should have an opportunity to respond.  If they

5    want to do it that formally, I'll give them an

6    opportunity to do that formally.

7         I will say, however, that, you know, if

8    you're issuing discovery requests that are not in

9    compliance with the Court's prior orders, that --

10   you know, that would be something that would be

11   sanctionable conduct because it could be

12   considered abuse of discovery.

13        If you are trying to get the Court to

14   reconsider its prior orders, then you obviously

15   have an ability to file a motion to reconsider,

16   if that's what you're doing.

17        But I'm just letting you guys know, Mr.

18   Watson, that if you are issuing discovery in

19   contravention of any orders that have already

20   been issued by the Court, that isn't going to be

21   looked upon favorably by the Court.

22        So I'll issue that order to show cause.

23   And Mr. Remington is not here, so I don't know

24   how long he needs to be able to respond to that,

25   but in order to get the issue resolved, again, I

 1    don't want any depositions being put on hold

 2    because you guys are waiting for Court action.

 3    So I'll just set that for the same thing, which

 4    is a response deadline of close of business

 5    Monday.

 6         To the extent, Mr. Hyde or Mr. Kelly, the

 7    government wants to file any response, they can

 8    do it, again, by the close of business on

 9    Tuesday, and we'll address it on Wednesday.

10         MR. WATSON:  So thank you very much, Your

11    Honor.  And that -- those -- those time -- that

12    timing is fine for us to file something.

13         The order -- the form of the order to show

14    cause will be what?

15         THE COURT:  I'm sorry?  I'm not sure I

16    understood that, what you were asking me.

17         MR. WATSON:  Well, you're -- you're --

18    you're -- you're -- you say you're going to issue

19    an order to show cause?

20         THE COURT:  Well, it's going to be more of

21    a brief -- I guess a briefing order to show cause

22    why the depositions should not -- should not

23    be -- based on what Mr. Hyde is representing or

24    Mr. Kelly is representing, it will be for Skanska

25    to show cause why the depositions should --

Judge Hope Cannon
July 21, 2021

Page 93

1  should proceed and are not in contravention of

2  the Court's prior order, taking . . . accepting

3  Mr. Hyde's representation at an oral motion to

4  the Court.

5        MR. WATSON:  And I take it from what you

6  said earlier, Your Honor, that you would

7  entertain a motion to read into that a motion to

8  reconsider the prior order.

9        THE COURT:  I'm not saying I would -- I'm

10  not saying that I would entertain one.  I'm just

11  saying that if you're trying to get the Court to

12  reconsider something, that the proper procedure

13  for that is to file a motion to reconsider, not

14  to issue discovery in contravention of an order

15  before getting that order vacated.  That's my

16  point on the motion to reconsider.

17        MR. WATSON:  Okay.  Thank you very much,

18  Your Honor.

19        THE COURT:  Okay.

20        MR. HYDE:  Your Honor, if I could just

21  point out Watson I think.  That you haven't read

22  their letter yet, but just on the face of their

23  letter, they are -- they are attempting to

24  conduct discovery on things that you've already

25  ruled are irrelevant.

Judge Hope Cannon
July 21, 2021

Page 94

```
1        So I would ask the Court to -- and I'm sure
2   you will, Your Honor.  It's just a formality.
3   But look at their letter and -- and -- and you
4   can -- you can tell right away that they're just
5   trying to keep the fight up.  And -- and we had
6   thought it was over.
7        And without Mr. Branning or Mr. Remington
8   or Mr. Walker, I think it would be unfair for me
9   to say anymore, Your Honor.
10       THE COURT:  And, again, I don't -- I'm not
11  taking a position one way or another, Mr. Hyde,
12  on whether they are or not.
13       I'm giving them the -- I will give them the
14  opportunity to respond.
15       My only point to them is that if it is in
16  contravention of the order, then they
17  obviously -- that can be considered an abuse of
18  the discovery process, which would result in
19  sanctions against Skanska or potential sanctions
20  against Skanska, so -- but without -- you know,
21  without you guys going into the merits of what
22  Mr. Remington may say he wants to ask about
23  something else, I don't know what he's going to
24  say.
25       But if they want the opportunity to
```

Judge Hope Cannon
July 21, 2021

Page 95

1    preserve the record and feel they need to do

2    that, I am going to give them an expedited

3    opportunity to do that.

4        MR. HYDE:  Thank you.  Thank you, Your

5    Honor.

6        THE COURT:  Okay.  So I think that takes

7    care of everything that we had for today, right?

8        Okay.  So Mr. Gonzalez -- I'm sorry.  Ms.

9    Guntner.

10        MS. GUNTNER:  I was just going to say yes,

11    Your Honor.

12        THE COURT:  Okay.

13        And then, Mr. Gonzalez, just let the Court

14    know about what you want to do with the RFAs,

15    since you're not going to be here on Wednesday.

16        MR. GONZALEZ:  Right away.

17        THE COURT:  All right.  Thank you, guys.

18        (Hearing concluded at 11:42 a.m.)

19

20

21

22

23

24

25

Judge Hope Cannon
July 21, 2021

Page 96

 1

 2

 3                    CERTIFICATE OF REPORTER

 4

 5

 6    STATE OF FLORIDA      )
                            )
 7    COUNTY OF ESCAMBIA    )

 8

 9          I, DAVID A. DEIK, CP, CPE, Professional

10    Stenographer, certify that I was authorized to and did

11    stenographically report the foregoing proceedings, and

12    that the transcript is a true and complete record, to

13    the best of my ability, of my stenographic notes.

14

15          Dated this 21st day of July 2021.

16

17

18

19

20

21    _____
      DAVID A. DEIK, CP, CPE
22    Professional Stenographer

23

24

25

**1**

1-757-417-
5122   41:21
1-850-281-
0698   41:9
1-850-294-
6862   41:17
1-850-428-
7417   42:6
1-850-516-
2058   41:25
1-850-723-
2486   41:13
10   44:10
10,000
71:20
10/1   5:15
9:7,8
10/31   5:15
9:7,8
10:00
81:25 82:8
83:3,8
10:06   4:1
10:30
77:19
79:22
10:40
44:11
10th   13:10
44:11
72:18,23
11:42
95:18
12   42:2
74:20,25
1209   7:4
124   41:23
13   39:2,5
138   41:17
14   15:14,
19
14,500
70:8
14-day
88:1
15   15:15,
19

**2**

150   9:25
10:25
11:2,10
12:18 13:5
14:24
15:2,7,9,
25 16:1,12
32:4
19th   13:23

**2**

20   55:18
2020   50:13
71:9
20th   74:1
21   60:14
218   41:19
21st   44:13
24   35:11
26(b)(3)(a)
12:4
29th   10:20

**3**

30   53:16
30(b)(6)
45:18
30th   13:11
72:18,23
3:20-cv-
5980   4:4
3:58   44:14

**4**

4,723
70:23,25
72:4 75:3
76:8 77:9
40   53:16
43   72:19
48   35:11

**5**

5   42:1
50   53:16
519   13:9
5:40   44:12

**6**

6   39:2,5
61   41:21
63   41:22
65   11:18,
21,22
12:16,20
16:3 18:11
31:11,23
69:7
6th   89:6

**7**

7   41:25
7,000   74:8
7,110
73:19
74:11
7/16   10:4

**8**

80   41:18
8:30   5:19
8:58   44:13

**9**

9,586   71:7
73:20
74:12 75:9
9/10   30:20
57:3 70:7
9/16   10:5,
6 29:5,20
30:6 32:18
9/18   29:24
9/30   30:20
57:3 70:7

**A**

a.m.   4:1
95:18
Abilify
12:7 26:19
28:12 29:6
ability
20:22
43:13 47:6

91:15
able   7:18
16:13 35:3
47:2 48:15
52:15 58:3
61:7,17
62:24
63:21 66:7
83:17
91:24
absolutely
26:23
60:23
68:16
abuse
91:12
94:17
accept
49:1
acceptable
52:6 63:10
accepting
93:2
access
78:24
accessible
78:23
action
92:2
activities
31:16
71:16
activity
31:18
actual
44:16
additional
14:13
38:21
47:16
48:10 50:5
51:13
63:13 64:2
68:22
71:1,13
74:19
75:5,17
77:7 79:2
address
8:25 12:13
17:2 35:20

39:4,7
42:21
49:8,23
66:7
68:10,17
87:1,4
88:6 92:9
addressed
11:9 68:21
addresses
12:17,20
64:10
adequately
43:13
admissions
6:5
advance
80:4
advice
14:3 22:1
25:22
26:12,13
afternoon
69:8
agenda
7:23
agreed
16:12
18:2,13
19:15
33:14 34:5
agreed-upon
72:21
agreeing
73:2
agreements
21:23
aground
71:4
ahead
42:18
66:18 81:8
86:23 87:2
Air   86:6
Albert
71:4
alert   90:1
all-doc
74:11
allegation
66:7

allegations
41:2 49:16
allow 35:7
46:19
allowed
18:4
allowing
30:13
allows
53:22
54:22
amount
60:4,12
71:7
analysis
14:13
39:14,19
43:4 44:15
analyze
14:7
48:13,15
anchor
71:3
anchors
71:17
anticipated
23:11
anticipating
g 83:19
anticipation
n 12:3
21:14 24:3
26:8 28:9,
15,23
app 54:6
apparent
21:11
appear
74:3
appeared
10:8,20
28:24
apple 8:14
90:20
application
86:2
applied
57:5 70:7
applying
59:3

approach
16:24 30:6
31:1 32:2
33:8
appropriate
8:5 57:15
approve
25:15
areas
36:18
argue
85:16,17
argued
8:13
arguing
61:10
argument
38:8 47:24
52:5 73:10
arguments
37:23
47:25
arrived
40:6
article
29:25
assist
29:8
assistant
28:21
associated
44:16
assuming
47:23 58:5
68:6
attempt
10:2 46:20
90:19
attempting
93:23
attention
63:23
75:19
attorney's
89:23
attorney-
client
12:23,24
13:12
16:16
35:20

attorney/
client
18:20
August
89:6
authority
12:7 50:6
51:10 58:8
63:8 64:2
68:23
availabilit
y 82:24
available
6:15 22:6
39:5 40:10
46:13
53:18,24
54:19
59:23
82:2,7,9,
11,25
Axiom
53:12

_____

B

barge
33:20 71:2
73:5,6
75:6 91:1
barges
71:17
Barr 78:20
basis 14:6
46:22 47:2
Bay 24:17
25:7 45:9,
11 58:19
bear 23:25
72:1
Beddow
77:20
78:19
Beggs 6:8
beginning
31:8 32:2
48:13
53:15
begs 59:2
bell 16:18
31:9 32:11

Bender
41:8
beyond
60:24
Billhimer
5:17 9:7,9
11:4,6,13
12:20
13:20
17:6,8,10,
23 20:2
21:21
22:11,22
23:7,13,22
24:10
25:19,25
26:17 28:7
30:17
31:14
33:15,23
34:2,12,
15,17
35:13,17,
23 36:1,
13,16,19,
21 37:3
39:23,24
40:2,14,
20,25
42:11
48:23 53:8
56:25
57:10
59:1,8,11,
13,16
60:16,23
61:14
62:9,14
64:1,5,12
65:25 66:4
67:7,14,24
68:3,6,8
69:1,9,14,
19 70:3,5
72:5,15
73:4 74:6,
16,20,22,
24 75:1,4,
20,25
76:7,10,17
77:14
78:14

79:8,10,
12,14,17
80:1,10,
13,17,20,
23,25
Billhimer's
73:25
bite 8:14
90:19
Blanchard
4:8,10
blanket
10:2 31:1
blowing
71:14
boat 22:5
boats
30:11
bottom
22:13,19
Branning
85:19 94:7
break
26:25
71:5,6
75:15,16
bridge
31:19
45:9,11
brief
37:22
83:21
92:21
briefing
92:21
briefly
69:13
bring
46:15
75:18
broad
16:24 32:1
33:8
broke
70:18,19
75:13,14,
21
broken
74:3
bubble
54:7,9

bucket
  11:25 12:5
  18:3
buckets
  17:11
business
  17:5 21:9
  25:12
  26:12
  27:22
  28:5,17,23
  67:4 68:14
  69:18,20,
  22 81:2
  83:25
  92:4,8

_____

C

California
  50:13
captain
  44:20
  45:19,21
  82:5 86:5
captains
  43:25
capture
  70:12
care  69:23
  95:7
careful
  30:5
categories
  12:1 18:13
category
  27:3
cautious
  16:17
cell  5:8
  7:25
  38:15,17,
  20,23
  39:2,9,15
  41:8 42:5,
  10 43:2,3,
  6,24 44:2,
  3 45:1,5,
  7,21
  47:15,17,
  21 49:18
  77:5

Central
  44:12,14
  50:12
cetera
  87:13
chain
  26:25
  36:5,17
  61:25
chains
  22:23
chance
  5:16,18
  39:22 70:3
chart
  14:21
  34:25
charts
  38:3
chat  54:22
  61:12,15
choose
  8:16 61:20
chose
  51:20
  56:23
cite  12:7
claim
  20:14
  33:13
  34:20
  39:7,13,20
claimants
  6:9 10:22
  11:24
  12:15,21
  14:3,10
  15:24
  32:22
  33:21
  38:21
  40:23
  43:12,23
  46:24
  47:5,9,12
  56:10 57:2
  61:6 72:22
  74:4 88:3
  90:6
claimants'
  37:24

42:23 45:2
  56:16
claims
  17:2 18:25
  19:1,13
  20:13,15,
  21 23:24
  24:1,7
  25:1 33:18
  38:22
  73:12
clarify
  19:20
clarity
  14:1
clean
  11:22
  87:11
clicks  5:3
clients
  27:17
cloak
  30:23
closer
  25:3
co-counsel
  7:11
Cocella
  86:5
collecting
  71:25
Collier's
  86:2
column
  14:11
combine
  34:25
  56:13
comments
  11:15 31:3
common-
sense
  90:24
communicate
  19:24
  67:5,15
communicate
d  21:15
  45:20

communicati
ng  21:2
  55:13
communicati
on  10:9
  19:21
  20:25
  21:1,3
  24:23
communicati
ons  7:15
  10:6,7
  12:2 13:15
  18:20
  19:2,4
  20:6
  21:17,20
  22:12
  23:25
  24:5,17,25
  25:7 27:1
  29:9,13
  32:24
company's
  21:9
compare
  40:5
compel
  6:19,20
  8:7 63:12
complete
  46:10 47:3
  50:16
compliance
  89:17
  90:12 91:9
compliant
  47:4
complicates
  28:8
components
  34:15,18
computer
  80:8 81:4
concern
  24:1 26:5
  27:23 29:2
  31:21
  35:22
  65:20
  71:19

concerned
  10:1 28:2
  71:13
concluded
  95:18
condition
  70:15,16,
  19,21,22
conduct
  23:20
  27:15
  91:11
  93:24
conducting
  23:16
confer
  64:13,17,
  23 65:3,23
  66:16
  67:1,21
conference
  4:4 9:22
  17:1 84:6,
  7,8
conferences
  87:20
confers
  37:13
confirmed
  44:17
consider
  10:10
  21:24
  49:17 58:4
considered
  51:4
  58:22,25
  91:12
  94:17
considering
  13:14,17
  73:22
consistentl
y  46:1
consists
  24:17
constructio
n  47:1
  71:10,11,
  15,19

consultant
26:22
27:5,6
29:7,12
consulting
51:1
contacted
45:12
contain
23:3 24:18
contemplate
53:5
contempt
47:11
contend
14:3,14
contended
13:15
content
21:1,15,16
31:2 36:25
37:1 63:14
contents
24:23
context
57:7,14,16
58:15,21
60:17,20
61:8
continuance
46:23
contract
25:5,16,
17,23 26:1
71:15
contracts
25:10,14
contraventi
on 91:19
93:1,14
94:16
conversatio
n 17:17
55:3,4,11,
16 56:4
57:14,24
58:15,23,
24 59:4
61:2,16

conversatio
ns 48:6
53:6 54:9,
23 55:12
61:23
81:23
converts
44:12,13
conveyed
7:15
copied
26:11
corresponde
nce 14:18
22:15
cost 60:4,
8
count
73:19
74:11
County
68:1
course
17:4,25
21:9 23:12
25:11 26:9
28:5,16
66:24
67:3,4
Court's
31:2 75:19
87:20
88:10
89:18
90:3,12
91:9 93:2
courtroom
43:22
courts
50:7
58:10,14,
16
cover 7:22
19:15
20:15
33:11,14
34:6
covered
90:20
covers
77:17

Cramer
54:1
create
35:6 75:9
created
27:19
71:23
creating
37:17 49:4
54:10
criteria
52:18
critical
43:10 46:5
48:21
crucial
46:5
custodian
44:8
custodians
39:3,10,
12,15
42:24
43:11
47:16
48:11
65:21
customers
27:18

_____
   D
_____
daily
71:16
damage
19:22
23:23
33:13,18,
19 34:7,10
71:2 75:7
damages
34:6
data 8:1
38:16,18,
20 39:9,15
40:5 43:2,
11 47:15,
21 48:13
49:18
53:17
54:20,25
57:3,4

59:6 61:18
64:19,21
72:18
73:22 77:5
dates
88:24,25
89:2
deadline
67:22 92:4
deadlines
88:1
deal 5:24
9:4
dealing
19:3 24:14
27:13 50:1
deals 7:14
decides
50:25
deciding
55:9
decipher
63:18,19
decision
38:6,11
51:7 56:2
57:13 58:3
decisions
56:24 58:9
dedicated
76:14
defend
20:19,22
22:18
23:17
defendants
24:19
defending
20:20
defiance
47:13
defies
53:21
delay
62:19
Demarco
45:19
demob 71:4
73:14,18
74:8,10,18

demonstrabl
y 39:20
denied
63:12
depending
33:25
52:12
depends
37:1
depo 80:3
deponent
87:7
depos
88:22
depose
33:5 86:9
deposition
45:19,25
77:20
78:4,11
79:5 87:6
depositions
82:5 85:5
88:3 92:1,
22,25
designation
11:24
designation
s 11:17
22:6
designed
72:24
73:10
despite
59:22
destroyed
39:1,10,15
detail
43:16
determine
39:14 56:4
device
54:5
differently
77:6
difficult
52:11 55:6
56:9
directed
30:16
31:16,18

Judge Hope Cannon
July 21, 2021

36:23
46:12
**direction**
13:16
32:20
33:2,7
**directions**
28:11
**disclosing**
25:8
**disclosure**
24:22
26:24
**discovered**
44:1
**discovery**
7:7 46:10
47:4,8,13
81:24
89:21
91:8,12,18
93:14,24
94:18
**discrete**
13:14
**discuss**
6:14 9:6
**discussion**
6:3 23:3
50:23 51:7
55:22,23
82:9
**discussions**
60:8
**dismiss**
68:1
**District**
50:12
**doc** 73:19
**docket**
5:19 7:4
**doctrine**
27:21
**document-
preservatio
n** 30:10
**documents**
9:25
10:13,15,
16 11:15,
18 12:22

13:10,19
14:1,5,13
18:3 21:8
24:13,16
27:19,23
30:19,25
31:4 33:17
35:22 66:3
70:8,13,23
71:7,14,20
72:1,7,25
73:11,18
74:9,19,25
76:8 78:2,
10,17,22
79:7,21
80:2
**dollars**
60:12
**double**
71:7
**dozen**
74:24
**draft**
21:23,25
25:10
89:16
**drafted**
28:1
**drafts**
25:10,12
**drop** 46:14
**dump** 86:16
**duty** 20:19

———————
**E**
———————
**easily**
52:24,25
**Eduardo**
41:16
**effect**
89:1
**effects**
27:17
**effort**
46:10
**eight**
41:11
85:12
**elicit**

72:24
73:11,17
**eliminated**
72:19
**email**
8:22,24
10:19 11:3
21:22
22:13
25:21
29:22
33:1,5,25
35:4 36:3
57:1,10
58:1,17
62:4 67:5
77:24
78:1,7,9
79:22
81:22 83:5
84:25
**emails**
13:1,14
17:13,15
19:19
21:17
22:14,20
23:3 26:10
27:7 36:7
40:21
57:17
67:2,8
**emergency**
70:21
**employee**
62:5
**employees**
32:25
45:11
**ended**
17:18 18:7
33:23
**engage**
28:14
**engaged**
30:14
32:19
**ensure**
35:5
**enter**
67:17 69:8

90:8
**entertain**
93:7,10
**entries**
13:25
**entry** 47:9
**envision**
83:7,11
84:9
**equipment**
34:7,19,20
**error**
39:11
**escalated**
56:21
**ESI** 18:3
55:14
57:18,19,
22 58:5
76:22
78:17 80:3
**especially**
43:14
64:18
73:22 80:7
**essentially**
39:10 83:6
**establish**
14:4 46:7
**established**
20:5 89:11
**estimate**
76:18
**et** 87:12
**evaluate**
39:13
**evening**
11:20 67:1
**event**
20:19
28:19
**events**
20:18 46:6
**everybody**
4:5,6 9:19
**evidence**
46:5,21,24
86:4
**exact** 43:4
**example**
19:9 46:22

73:6
**Excel** 60:5
**exchanged**
23:9 81:22
**exchanges**
8:23
**exchanging**
24:24
**excuse**
45:10
**exemption**
27:24
**exist**
54:11
**expect**
88:7
**expected**
84:6
**expedite**
78:5
**expedited**
90:9 95:2
**expert**
53:10
54:14
**explain**
20:3
**explaining**
60:22
**explanation**
35:1
**expressed**
56:17
65:20
**extension**
26:21
**extensions**
88:17
**extensive**
89:9,13
**extent**
24:13,16
82:14
86:11 92:6
**extra** 5:3
**extracted**
57:4
**eyewitnesse
s** 86:10

**F**

face 37:25
93:22
faced 39:1
facilitate
52:7
fact 25:1
30:2 39:9
42:6 44:2
45:5,15
49:17
50:24
54:24
60:18 63:2
factual
7:16
fall 11:11
18:14 27:2
falls
11:25 25:6
29:14
false
39:20
families
70:24 71:8
73:20
74:11 75:9
far 46:5
59:20
88:16
favorably
91:21
feel 32:1
51:17
57:24
58:11
59:17
82:11 95:1
fees 89:23
fell
17:24,25
felt 27:8
57:15
fifth
46:25
fight 94:5
figure
35:11
40:14

52:15
56:10
59:25
61:10
63:19
file 8:8,
10 30:3
55:10
66:10
78:12
84:22
85:22
87:8,15
88:21
89:13
91:15
92:7,12
93:13
filed 6:10
30:2
81:17,20
89:20
files
24:15
final
21:25
finally
42:4
finding
27:10
firm 30:1
36:9
first 4:15
38:16,25
39:4,7
40:2 42:21
64:15
89:4,5
fit 31:7
fits 27:10
five 47:16
48:10
flowing
20:6
focus
71:10,25
focusing
21:13
folks'
40:22

followed
62:6
footing
28:19
force 89:1
forensic
53:22
54:19 57:4
formal
66:2,3,10
85:22 89:9
formality
94:2
formally
91:5,6
format
50:25
51:4,19
forth
44:11 54:7
forthcoming
47:4
forwarded
25:14 26:1
found
25:2,3
43:7 50:10
51:10
52:21
58:13 64:3
four 41:9,
10,14,15
67:2
70:16,19
75:17
fourth
90:19
frames
81:25
frankly
67:6
free 70:19
71:6
Freedom
27:25
Friday
67:23 69:3
76:22
79:13
80:14

Friday's
78:4,10
79:5
front 4:15
52:13
77:25
85:17
full 44:22
53:14
58:21
Fulton
44:7,10
functionall
y 20:11
further
17:16 36:5
44:15
46:20

**G**

Geisler
6:3,6 7:6,
8,11 46:3
48:4 62:2
68:16
69:11
generally
27:18 48:1
generated
70:8,23
71:7
genesis
22:14
gigs 53:17
gives
56:15
58:20
giving
26:12
69:17
94:13
goes 24:2
35:10
Gonzalez
6:6,7,8,
13,17,20,
23,25 7:1,
3 81:18,19
82:16 83:5
84:1,12,
15,19,21,

24 85:2
95:8,13,16
GONZALEZL
83:1
gotten
56:11
79:20
government
88:7,20
92:7
group
12:14
54:22
Guntner
7:24 9:13,
16 10:19
11:4 13:4,
6,7 14:16,
17,22
15:1,5,8,
12,18
16:7,10
35:18
37:15
38:4,13,
19,25 39:6
41:5,8
42:16,17,
18,19,25
43:18,20
47:20,22
48:2,8,12
66:20,22
68:15
69:12,15,
25 72:13,
14 74:10,
15,18,21,
25 75:10,
13 76:4
77:16,22
79:3,5,9,
11,13,15,
18,25
80:6,15
81:6,10,16
95:9,10

**H**

Hal 82:18
86:25

half  43:11
  82:8
handful
  32:8
handled
  86:15
happy  9:16
  49:1 67:1
  73:15
harbor
  70:15 71:5
hard  19:8
  27:10
  30:13
harmless
  39:11
hat  46:14
he'll
  83:17
head  25:25
hear  4:5
  53:25
hearing
  9:21 11:16
  31:3,9
  40:3 48:5
  53:4 54:2
  60:10,17
  64:15
  67:24 82:1
  83:3,6,8,
  9,12,18,
  19,20
  87:17
  89:11
  95:18
hearings
  59:22 82:4
help  14:18
  46:7 64:4
helpful
  15:22 16:3
  37:16
helps  63:8
hey  19:20
  21:18
  22:25
  25:14,15
  29:15
  55:16,25
  63:9

hidden
  61:19
hide  47:2
highlighted
  75:6
highlights
  74:3
Hill  42:4,
  20 43:15,
  21,24
  44:2,9,17,
  20,24
  45:4,7,19
  47:15
Hill's
  42:10 45:1
  47:21
hire  22:9
hit  48:9
  57:8 61:1
hits  75:17
holes
  52:23
honestly
  73:20
Honor's
  73:14
hoping
  19:19
hour  82:8
hours
  35:11
  55:18
huge  73:22
hurricane
  44:19,25
  45:13 62:6
  70:14,17
  71:23
  75:24
Hyde  4:22,
  24 8:3,4,
  17,19,21
  85:4 88:9
  89:7 90:5
  92:6,23
  93:20
  94:11 95:4
Hyde's
  93:3

─────────
    I
─────────
ID  54:22
  61:12,15
identified
  10:16
  12:14
  18:24
  36:17 62:1
identifies
  11:21
identify
  11:10 32:8
  52:24 61:2
identifying
  61:1
images
  44:22
immediately
  29:18
imminent
  30:7
impact
  86:11
impetus
  65:12
importance
  49:20
  73:23
important
  46:6 49:19
  87:10
importantly
  17:3
impose
  89:23
in-camera
  10:1
  12:19,21
  13:18
  17:15
in-depth
  38:2
in-house
  17:14
  26:14
inaccurate
  43:10 45:6

inapplicabl
e  27:21
incident
  70:20
include
  27:5 70:12
  79:6
includes
  14:23
including
  7:19
indicate
  19:4 36:16
indicated
  35:2 48:24
  55:8,20
  60:23
  81:18
indicates
  32:23
individual
  57:23
  78:22
individuall
y  78:25
individuals
  48:20
inextricabl
y  20:17
informal
  83:20
  87:12
informally
  86:15
initial
  8:23
  15:15,23
initially
  13:8 72:15
inspection
  10:1
instance
  33:21 40:8
instances
  10:5
instructed
  88:3
instructing
  46:1
instruction
  87:21

insufficien
t  14:4
insurance
  7:14,15
  17:2,8
  18:25 19:1
  24:6,14,15
  33:10
insured
  20:10
  23:17
insurer
  12:2 19:2,
  5,14,21
  20:14
  21:2,3
  22:18
  23:10
  24:25
  25:15 26:2
insurer's
  20:22 34:5
insurers
  19:12,15,
  24 21:24
  33:13
intend
  8:10 79:9,
  21
inter
  20:17
internally
  29:13
interpretin
g  88:10
intertwined
  20:18
investigati
on  23:5,
  15,20 25:1
investigati
ve  23:5
involve
  29:11
involved
  17:17
  28:22
  29:4,20
involvement
  28:9

Judge Hope Cannon
July 21, 2021

8

**irrelevant**
93:25
**issue** 7:14
13:14,23
14:21
15:12 16:3
18:12
20:24
30:4,9,21
31:15 35:9
37:5 38:14
42:9 43:14
49:13
56:3,22
58:7,12
59:24
60:16
61:16
62:16
65:5,10
66:18
68:20
69:6,17
73:15 76:1
87:1,10
88:11
91:22,25
92:18
93:14
**issued**
91:20
**issues**
5:25 6:4
7:6,19,25
8:6 9:3
12:12 14:8
15:24,25
19:16
20:16
37:14
38:21
54:16 72:1
73:12
76:23
86:21
87:22
88:5,6
90:21
**issuing**
10:12
91:8,18

**items**
18:24
71:24
**iteration**
44:25
**iterations**
44:18

———————

J

**job** 62:9
**Johnson**
41:12
**jot** 66:1
**Judge** 4:24
5:5 86:2
**July** 13:23
74:1
**June** 10:20
**jury** 52:14
63:21
**justificati
ons** 37:19
**justified**
89:25
**justify**
46:20

———————

K

**Kelly**
4:19,20
5:5,8,10,
12 8:24
85:7,8
89:8 90:5
92:6,24
**kept** 11:18
**known**
65:15

———————

L

**lack** 43:10
**landfall**
31:19
70:14
**Lane** 6:8
**large**
11:17
12:14

**larger**
10:25
12:22 70:9
72:16
**largest**
46:25
**lasted**
59:5
**law** 8:12
36:9 50:13
51:16 86:1
**lawyers**
57:6 60:19
**lead** 43:25
45:21
**leading**
46:9
**leaving**
72:20
**left** 35:19
77:11
**legal** 14:3
22:1 24:19
26:13
28:13 29:8
37:22
**length**
38:20
**letter** 8:9
13:23
29:23,25
37:22 70:4
73:25
85:6,9,10,
14,20,25
88:20
90:22 91:2
93:22,23
94:3
**letters**
87:12
**level**
49:20
**Levin** 30:1
**liability**
86:7
**light**
11:15
43:14
**line** 5:1
25:6 69:6

71:2 75:7
**lines**
71:17
**list** 22:24
70:11
71:22
73:1,3
**listed**
85:14
**literally**
48:14
**litigate**
43:13
**litigation**
12:3 17:22
18:9,10,16
19:3,10,
14,25 20:7
21:6,10,
12,14
23:4,11
24:3,20
25:8 26:8
27:16,17
28:6,9,15,
24 29:16,
19 30:3,6
36:12
**load** 78:12
80:8 81:3
**local** 44:7
**log** 9:3,
12,18
11:20
13:9,25
15:14
17:19 18:8
69:6
**logged**
13:11
**logic**
53:21
**logistical**
10:8 21:20
**logs** 56:14
**long** 29:7
82:10
91:24
**longer**
47:1

**looked**
11:2 18:11
50:9 51:11
70:13
78:22
91:21
**loose**
70:19 71:6
75:15,16
**lot** 10:7
19:18
27:1,3
48:21
56:15,17
62:19 71:9
**Lunsford**
17:14
25:20
26:10
28:10,22
29:3,11,18
31:16
32:19,20
33:2,7
36:4,16

———————

M

**ma'am** 8:19
**Magnum**
53:12
**maintained**
7:17
**management**
70:20
**manner**
23:19 47:4
49:20
50:16
**mark** 18:4
**marked**
12:23 18:1
**master**
13:8 15:3,
16
**material**
47:7
**materially**
43:12 47:5
**matters**
19:6

maximizing
 19:12
Mcglynn
 40:18
 41:20
media
 27:18
 28:14
meet
 37:13,14
 64:13,17,
 22 65:3,23
 66:16
 67:1,21
 69:8,10,11
meeting
 28:2 51:6
mention
 27:4
mentioned
 35:5 55:25
 73:13
merely
 14:2 24:16
merits
 94:21
message
 42:7 43:10
 44:5,22
 50:25
 52:21
 53:23 56:8
 57:23
 58:5,22
 60:19 61:1
messages
 9:2 11:8
 38:12
 39:12,16
 40:22
 41:9,10,
 11,13,14,
 15,17,18,
 19,21,22,
 23,25
 42:1,2,8
 43:6,7
 44:10,24
 46:4 47:25
 48:6,18,21
 49:10,24

50:2,6,11,
 14,15,24
 52:11,14,
 23 53:23
 54:3,4,21
 55:24
 57:2,5,7
 61:24
 62:18,22
 63:9,14,21
 64:4,20,23
 65:14,17
 68:20
 69:24
metadata
 44:6
method
 45:11
million
 55:13
mine   34:25
misdemeanor
 5:19
misrepresen
tations
 47:8,12
 64:25 65:2
missing
 30:12
 42:24
 47:17
 49:18
 61:25
 62:22
 65:20
Mm-hmm
 17:6 38:24
 43:19
moment   8:7
Monday
 38:20 54:2
 68:8,11
 69:17,18,
 20 82:2,20
 84:14,18
 92:5
Monday's
 14:20
money   60:4
mooring
 71:3

morning
 4:2,20,21,
 24,25
 5:17,19
 7:20 69:4
 85:11
motion
 6:10,19,20
 8:7,8,11
 63:11
 64:8,18
 66:10,11,
 13 67:25
 81:20
 82:13 84:6
 85:22
 86:14
 87:8,13,15
 88:21
 89:14,17,
 24 90:11
 91:15
 93:3,7,13,
 16
motions
 49:1 87:25
 89:20,21
motivated
 26:7
moving
 48:25
multiple
 44:18
 46:14

_____

        N

narrow
 7:19 31:15
narrowed
 7:12 70:11
Naval   86:5
Navy   86:10
 88:12
Navy's
 81:24
nearly
 43:11
necessarily
 18:23 19:6
 20:24
 26:24

28:16
 31:22
 36:25
needing
 77:11
needle
 75:1
negligence
 46:7
negotiation
s   72:21
new   9:2
 11:20 84:4
news   20:6
nice   11:21
 62:12
Nick   41:12
night   6:10
 13:20 44:1
 48:15
 77:19
 78:18
 79:22
 80:14
 81:20 83:2
nine   24:17
 25:7 44:23
 58:19
nonlitigati
on   19:5
nonresponsi
ve   18:1,5
 72:11
nonstrategy
 19:5
noon   50:5
 51:8,14
 67:23
 68:22,23,
 24 69:1
 81:3
normal
 23:12 28:5
normally
 87:5
note   77:18
noted
 77:25
notes   28:2
 77:13,19
 78:18

notice
 10:24
noticed
 81:23 87:6
notices
 85:8,13
 88:23,24,
 25 89:15
number   7:4
 14:4,6
 15:18 40:9
 41:8,12,
 16,20,24
 42:6
 44:16,17,
 19 45:1,4,
 7,14 48:17
 71:14
numbers
 39:21
 40:4,6,15,
 18 42:21
 43:1,5
 64:23
 65:15,24,
 25 67:13
 74:13,16

_____

        O

object
 67:7 85:14
 86:18
objected
 45:23
objection
 7:16 38:9
 72:4
objections
 90:24
obligations
 47:2,13
obstructing
 46:21
occasions
 43:21
occurred
 10:2,3
 28:20
 75:23
October
 30:11 70:2

Judge Hope Cannon
July 21, 2021

71:9
**offense**
66:5
**offered**
81:24
**Okaloosa**
68:1
**once** 16:18
31:9,10
35:10
37:11,20
**one-third**
72:20
**ones** 11:23
12:17 16:5
21:25
22:3,16
31:6,7,15
37:20 70:7
74:4
**ongoing**
71:11
**open**
78:14,15
**opened**
78:21
**operated**
19:11
**opinions**
24:19
**opportunity**
10:14
13:24
16:22
35:3,8
38:10
40:24
48:24
49:6,15,23
51:12,18
64:1,9,22
65:3 66:6
83:21
84:22
91:4,6
94:14,25
95:3
**opposed**
50:17
**opposing**
51:23

**option**
53:18,24
**options**
53:12
**oral** 49:1
64:8 66:13
90:11 93:3
**orally**
49:1
**orders**
8:15 76:6
88:2 91:9,
14,19
**ordinary**
17:4,25
20:9 25:11
26:9 28:16
**ordinary-
course-of-
business-
type** 10:9
**original**
10:25 70:6
**Orleans**
84:5
**outline**
46:6
**outside**
15:25 36:9
45:23
**overlay**
61:12

_____
**P**
_____

**p.m.**
44:11,12,
13,14
**page** 44:6
**parenthetic
al** 84:8
**parse**
33:17
**part** 20:20
23:15,17
24:3 28:12
35:7 45:20
**participati
ng** 87:19
**particular**
28:10 43:1

44:4 55:6
**parties**
16:20
20:16
23:24
24:2,18
46:16
87:21
**party**
21:11
26:22
50:24 51:2
**password**
78:15
**Patrick**
41:20
**pause**
56:15,17
**pay** 22:8
25:4 60:7
**PDF** 77:23
**Pensacola**
45:9,10,11
86:6,12
**Perfect**
84:24
**perform**
45:12
**period**
13:10
30:20
48:22 57:3
70:10
72:25
73:23
**person**
33:5 58:21
78:17
**personal**
42:14
**personally**
62:10
**perspective**
56:16
**persuasive**
50:10
**phone** 4:6
8:1 38:15,
17,20,23
39:2,9,15
41:12,16,

20,24
42:5,6,10,
12,14
43:2,6,24
44:2,3,22
45:1,5,8,
22 47:15,
21 49:18
53:10
54:2,6
55:2
58:23,24
67:16 77:5
82:15
**phones**
40:10
43:3,7
47:17
53:16
**pick** 55:2
**picture**
90:25
**piece**
21:14
34:8,11
**pieces**
33:12
58:24
**pike** 71:4
**place**
55:24
**plan** 11:23
44:19,25
45:13 62:6
70:17,18,
20
**planned**
30:2 67:11
**platform**
76:12
78:24
**played**
26:15
**pleasantrie
s** 84:4
**plus** 43:2
**portion**
11:17
**position**
29:3 31:17
42:23 45:2

63:9 64:4
65:15
89:12
94:11
**posturing**
21:19
**pot** 31:4
**potential**
94:19
**power** 84:4
**practice**
32:7 90:3
**prefer**
90:17
**preference**
9:14
**prejudiced**
47:5
**prejudicing**
43:12
**prepare**
43:13
46:11 47:6
70:21
**prepared**
21:8 28:4
42:20
48:16 77:1
81:8
**preparednes
s** 70:17,18
**preparing**
72:6 82:19
**present**
12:25
13:17
**presentatio
n** 62:2
**presented**
44:5
**preserve**
95:1
**press** 28:3
**presumably**
44:23
74:18
**presume**
78:3
**presumptive**
72:10

presumptively 18:5
pretty
  12:14
  16:17
prevent
  88:14
previous
  40:3 73:14
primarily
  11:25
  17:19 26:7
print
  78:25
prior 10:6
  18:10 58:9
  64:14
  83:18
  89:18
  91:9,14
  93:2,8
privacy
  27:15
privilege
  5:25 9:3,
  12,18
  11:12
  13:9,12
  15:14
  20:21 21:8
  35:9 37:4
  38:11
  56:14 69:6
privileged
  14:5,6
  16:21
  20:11,25
privity
  46:8
probably
  26:15
  35:15
  57:20 81:3
problem
  55:23 62:7
  73:21
procedure
  87:5,8
  93:12
proceed
  93:1

proceedings
  4:1
process
  20:21
  46:15
  94:18
processing
  76:11
produce
  11:23
  13:22
  16:12,19,
  20 47:15
  50:21
  51:1,19
  55:10 59:5
  72:7
  79:11,21
  80:4 87:7
produced
  30:19,25
  43:3,8
  44:21 48:4
  55:20 63:9
  77:6,14
  78:10
  80:3,12,14
producing
  50:24 51:2
  54:17 56:7
  85:14
  90:25
product
  10:17,18
  12:4,9,24
  13:2,12
  16:16,25
  18:9,17,19
  19:7 21:5
  23:18
  24:21
  26:23
  27:24 28:4
  32:10,12
  72:21
production
  7:13 18:8
  39:14,17
  41:10,11,
  14,15,18,
  19,22,23
  42:1,2,3,7

49:21
50:1,4,6
51:3,24,25
52:3 53:5,
11 56:2
59:19
60:3,10,
21,22
61:3,5,21
62:17
63:14
76:9,20
77:8,11,18
78:15
79:12
81:13
productions
  15:14,19
  40:9 56:18
program
  53:22
  54:10,19
programming
  55:19
project
  28:11 45:9
  71:10
projection
  76:7
proper
  24:22
  28:13
  93:12
properly
  14:14
property
  19:22
  20:13,14
  23:23
  24:6,7
  33:19,20
  34:10,19
property-
damage
  19:16
proposition
  26:20
  46:25
  50:14
prosecute
  47:6

protect
  10:3 27:2
  29:5,10,21
  30:8
protected
  12:3 18:10
  19:7 23:18
  24:21
  27:20
  37:1,23,25
protection
  10:11
  11:19
  31:5,11
protections
  9:23
protective
  85:23
  87:9,16
  88:21
  89:14,20
  90:11
protocol
  18:3 57:18
  58:2
proves
  45:3
provide
  13:25 14:6
  16:7 27:14
  40:17
  43:15
  51:13
  54:22
  61:18,20
  65:4,24
  78:6,9
  79:7 81:7
provided
  9:25 10:22
  11:6,20
  40:3,18
  41:2 44:18
  45:10
  50:16 57:7
  61:22
  74:16
  77:23
provides
  50:16
providing

25:21
37:18
public
  12:6 17:9
  18:25
  26:18,22
  27:4,5,13,
  18,19,21
  28:1,3
  29:12
publicity
  27:22
pull
  32:14,17
  48:19
  53:17
  71:16
pulled
  36:7
  56:19,20
  65:19
pure 33:13
purpose
  27:12,14
purposes
  7:23 21:25
  27:20 28:2
Pursuant
  27:25
push 67:20
push-back
  88:4
pushed
  46:12
put 34:25
  37:11
  54:9,15
  57:6 60:18
  62:2 64:18
  66:18
  76:11 92:1
puts 28:18
  53:5

_____

Q

quash 8:8
  85:22
  86:15
queries
  67:15

quick
  69:13
quickly
  28:24
quite  40:8
  65:21
quote  29:6
quoted
  26:21

---

**R**

raise  7:25
  38:8,10,21
  42:9 60:18
  63:23
  64:14
  65:11
  87:22 88:5
raised
  12:17
  15:24
  45:25 48:5
  56:22
  60:17 65:5
raises
  49:19
raising
  62:23
  65:12 88:8
ran  39:13
range
  53:20 57:5
  73:8
ranked
  48:17
reaching
  44:19
readily
  51:4
  52:10,16
  53:7 78:23
reaffirm
  86:18
reasons
  35:2
reassess
  11:15
recalling
  21:22

recap
  76:19
receive
  48:20
received
  41:10,14,
  18,22 42:1
  48:18 83:5
recipients
  39:16
reconsider
  91:14,15
  93:8,12,
  13,16
record
  35:6 37:18
  49:4 50:17
  66:12
  87:11
  88:14
  89:10
  90:7,11
  95:1
recovery
  70:20
redact
  57:19
  58:4,24
redo
  60:11,12
refer
  28:13
referenced
  29:25 55:7
references
  33:16,17
  34:21
regard  6:4
  9:5 16:24
  42:24 49:9
  78:18 88:2
regarding
  38:22
  81:23
  86:6,10
regardless
  19:9,24
  21:6 23:9,
  10 29:15
regular
  21:9 71:18

72:10
relate
  34:4
related
  20:16
  24:5,7,25
  78:2,3
relates
  12:1,6
  18:9,15
  23:22,24
  28:15
  80:14
relating
  19:22
  55:14
  73:11
  83:17
relations
  12:6 17:9
  18:25
  26:19,22
  27:5,6,13,
  19 28:1,3
  29:12
release
  31:6
relevant
  18:16,18
  56:5,6
  72:24
  73:11,17
  86:4 88:11
rely  46:16
  89:10
  90:23
remain
  16:4
remainder
  73:16
remaining
  14:1 16:9
  35:12
  37:14
remains
  13:23
Remington
  8:25 35:4
  85:19
  91:23
  94:7,22

remotely
  80:5,8
remove
  73:2,15
  74:19,23
removed
  22:6 74:8
removing
  74:18
render
  53:23
  54:20
rendered
  54:4
repair
  71:11
repeated
  43:21
reply  49:8
  50:4 66:14
  83:7,10,
  11,14,16,
  18,24
  84:5,7
report
  23:6
reported
  43:4,6
reports
  20:6
representat
ion  45:6
  93:3
representat
ions  43:9
  46:17
representat
ive  45:18
  48:19
represented
  42:5 43:22
representin
g  4:8,12
  64:19
  92:23,24
reproduce
  60:15
request
  7:13 46:18
  47:9 64:9
  79:6 88:22

requested
  78:7
requests
  6:5 91:8
require
  54:10
  87:25
required
  47:14
requires
  77:6
research
  32:7 35:5
  49:14,25
  58:13
resolve
  7:18
  66:16,17
  68:6 87:23
resolved
  37:13
  91:25
resort
  21:11
resources
  47:3
respect
  7:25 12:4
  14:1 17:20
  38:23 40:7
  43:1,20
  44:4 47:8
  61:15
  64:19
respectfull
y  46:18
respond
  29:14
  39:23 41:1
  48:25
  49:7,16
  64:10 65:5
  66:14,24,
  25 67:22
  68:9,11,14
  77:4 82:12
  87:16
  91:4,24
  94:14
responded
  5:2 62:11

Judge Hope Cannon
July 21, 2021                                                                                    13

67:8 73:2
**response**
8:24 10:20
26:6 53:2
62:3,12
67:3,22
69:17,21
79:20
81:15
84:23
85:9,12
88:1 89:24
90:9,15
92:4,7
**responses**
67:6 87:13
**responsibil
ities**
45:13,21
**responsive**
18:6 71:21
72:11,24
73:11,18
**responsiven
ess** 72:10
**rest** 37:12
**result**
47:7 55:21
76:23
94:18
**resulted**
33:19
**results**
23:4 39:19
48:14
**retention**
78:1,3
79:23
**retrospect**
32:16
**returned**
73:1
**review**
10:14,17
13:18
17:15 33:9
57:1 72:7,
11 73:21
76:8,12,13
78:24

**reviewed**
10:8 12:18
44:21 57:6
61:23
**reviewers**
76:15
**reviewing**
63:5
**revise**
13:25
**revised**
16:8
**RFA** 81:19
82:9
**RFAS** 6:24
7:1,3 9:5
81:14 85:3
95:14
**risk** 51:2
55:9
**Rob** 42:4
43:23
44:9,17,20
**Robb** 8:3
**role**
26:11,15
29:7 34:5
45:8
**roles**
45:20
**roll** 4:7
**room** 69:13
**rope** 71:3
**Rubio** 40:8
41:16
**rule** 12:4
27:14
**ruled**
86:13
90:21
93:25
**rules**
89:22 90:2
**ruling**
86:1,3,19
87:13
90:24
**rulings**
73:14
**run** 26:14
43:3

52:18,19,
20 53:11
59:25
67:14

_____

**S**

_____

**safe** 70:15
71:5
**Sally**
31:19
70:14
71:23
75:24
86:11
**salvage**
19:16
34:11
**sample**
48:19
**sanctionabl
e** 91:11
**sanctions**
47:11 49:6
64:8,16
66:5,13
89:23
94:19
**sand** 91:1
**Sarah**
41:24
**sat** 78:20
**scattershot**
50:17
**schedule**
49:2 84:18
**scheduled**
5:14
**scheduling**
22:4
**scope**
45:24
70:11
**screens**
80:9
**script**
54:14
**scroll**
22:12
**search**
38:14

59:3,4,24
70:6
72:16,17,
19,23
73:7,10
74:2 77:5
**second**
10:17 42:9
44:6
**seek** 22:17
**seeking**
31:5,11
64:15 66:5
**Selected**
7:3
**send** 48:20
78:18
**senders**
39:16
**sending**
19:11
**sense**
28:23 32:9
62:24
**separate**
14:8 20:18
**separated**
13:3
**September**
13:10
44:11,13
46:9 60:14
70:9
72:18,23
**Servient**
72:6 76:10
**sets** 40:5
**setting**
67:18
**settling**
88:11
**shared**
40:7
**shield**
32:13
**short**
51:25
**shorten**
68:12
**shorthand**
46:1

**show-cause**
47:9
**showing**
47:10
**shows** 44:9
54:23
**side**
37:21,24
51:2 57:13
61:22
70:24
**sides** 77:1
**similar**
15:25 57:1
90:6
**simply**
90:23
**simultaneou
s** 50:3
**single**
32:24 33:5
53:23 54:3
55:10 56:8
57:23 58:5
61:1
63:10,15
**single-
message**
53:19,20
54:18
**site** 75:23
**sitting**
91:1
**situation**
55:6
**Skanska**
4:4,9,12
7:17 8:6
10:21
11:11
13:8,15,
21,24
14:11
15:13
16:22
19:10,14,
23 20:14,
20 30:13
32:1,25
33:11,19
34:20 42:4

43:1
44:18,21,
22,24
45:8,10,
15,22
47:1,10,14
49:15
50:20
51:7,19,
20,22 55:8
56:23
59:18,21
60:24 64:2
69:21
72:3,19,
22,25
75:13,18
77:18
85:10,11
91:3 92:24
94:19,20
**Skanska's**
10:13
23:23 24:6
29:2
33:10,13
34:6 38:22
39:2,7,19
43:9 45:5,
18 47:7
50:8 86:7
90:19
**small**
15:18
**smaller**
13:18 31:5
73:1
**software**
53:13
**sole** 68:3
**solely**
21:13 24:5
90:25
**somebody**
5:4 32:15
**sooner**
65:11
87:22,24
**sort** 10:2
18:13
23:12 25:6

34:7 37:18
48:17
50:20
52:18 53:6
58:19 60:6
61:10,21
62:24
83:20 90:5
**sought**
71:1
**sounds**
40:16 41:3
82:23 88:9
**Southern**
50:12
**speak** 8:6
42:20
**speaking**
8:18
**specific**
10:21
**specificall
y** 6:1
21:10 33:1
50:1 65:24
**spoke**
38:19
**spoken**
81:20
**spoliation**
65:9
**spreadsheet**
10:22
11:1,5
13:6 14:10
15:5,10,
16,20 16:8
50:19 60:5
**spud** 71:3
75:7
**spuds**
71:18
**stand**
54:24
66:11,12
73:9 90:7
**stands**
26:20
86:19
**start**
9:11,16

48:6 72:6
**started**
10:23
72:16
**starts**
82:19
**stated**
72:15 73:4
**statement**
30:1
**statements**
24:18
**states**
4:19,22
50:13
85:22
87:15
**Station**
86:6
**status**
4:3,4 9:22
17:1 87:20
**Stevens**
41:24
**stop** 71:5
**stopped**
30:23
**stored**
54:3
**storm**
70:14
**strategies**
24:20 28:3
**strategizin
g** 27:15,16
**strategy**
21:16 23:3
25:9
27:21,22
28:14
**string**
22:19
25:21
34:16
**structure**
18:2
**stuff** 17:9
19:17
26:19 30:8
68:19

**subcontract
or** 22:10
**subcontract
ors** 21:24
**subject**
47:11 78:1
79:23
**submit**
20:9 46:24
90:14
**submitted**
13:21
90:10
**submitting**
46:22
**subpoenas**
85:5
**subsequentl
y** 15:13
**subset**
13:18
**substance**
87:4
**substantial
ly** 89:25
**substantive
ly** 6:14
**sufficient**
6:23
**suggestion**
61:24
**sum** 70:9
**support**
12:8 47:25
**supports**
50:14
**surge** 71:4
**sword**
32:13
**synopsis**
5:22

———————
**T**
———————
**takes** 51:2
69:23
81:12 95:6
**Talking-
points**
27:23

**tasked**
28:22
**team** 76:13
**tech** 81:8
**technically**
54:12
**tens**
30:19,24
**tense**
75:22
**term** 48:9
59:3,4,24
60:19 73:7
**terms**
19:11,16
26:13,18
29:22 34:6
35:22
37:13,17
38:10,14
40:19
49:20
50:10
51:15
52:5,10
53:25 63:9
70:6,11,
12,13
71:1,13,15
72:12,16,
17,20,24
73:2,5,10,
17 74:2
75:6,8
76:8,20
77:10
88:12
89:12
**testimony**
51:17
**text** 9:2
11:8 38:12
39:11,16
40:21,22
41:9,10,
11,13,14,
15,17,18,
19,21,22,
23,25
42:1,2,7,8
43:6,10

44:10,21
46:4 47:25
48:5,18,21
49:9,24
50:2,6,10,
15,17,24,
25 52:10,
14,22
53:23
54:21
55:3,24
57:2,5,7
58:22
60:18
61:1,24
62:18,21
63:9,14
64:4,23
65:13,17
68:20
69:23
**texted**
42:13 44:3
**thing**
5:13,23,25
49:22 52:4
54:8 60:9
75:11
76:21
82:13 92:3
**third** 8:14
17:7,21
20:16
23:24 24:2
**thousands**
30:19,24
**thread**
44:24
53:14
54:18 56:9
63:10,15
**threads**
53:19,20
**threat**
28:6
**three**
18:13
45:3,14
70:15,22
75:14,16
**thrown**

66:1
**Thursday**
69:3 81:3
**till** 51:8
**times** 39:8
46:4,14
66:19 78:8
**timing**
34:24
37:12
83:14
92:12
**Tom** 6:7
44:7,9
83:6
**top** 17:16
25:25
33:16
34:18 36:3
56:7
**total**
41:11,15,
19,23
42:2,8
72:20
73:19
74:11
**totally**
63:10
**treated**
27:22
**treating**
29:2
**trial**
46:9,11,
15,19 52:8
60:14 72:2
81:8 82:19
**trigger**
70:15
**tropical**
70:14
71:23
**true** 30:22
**truly**
57:20
**Tuesday**
68:14
69:21 92:9
**tug** 71:3

**tugboat**
43:25 82:5
**twice** 79:7
**two** 7:25
12:1 14:6,
7 17:10,19
20:18
29:11 36:8
38:21 40:5
45:3,7
51:16
53:12
54:24 59:5
70:16,18,
19,21
71:4,5,6
75:14,15,
16 78:8
**two-pronged**
24:4
**type** 19:6
20:24
21:20 23:2
25:2
**typical**
67:4
**typically**
87:25
88:19,25
89:19

——————

**U**

**unavailable**
39:1
**underlying**
24:19,20
**unfair**
94:8
**unfortunate
ly** 67:4
**unheard**
73:6
**unilateral**
56:24
**unique**
74:20
75:17
**uniqueness**
20:3
**United**

4:19,22
85:21
87:15
**unring**
31:9
**unrung**
16:19
32:12
**untrue**
44:2
**unusable**
53:24
54:20
**update**
39:18
**upshot**
70:4
**usable**
51:4
52:10,16
53:7 54:25
**user** 44:7
63:15
**UTC** 44:12,
13

——————

**V**

**vacated**
93:15
**valuation**
86:10
**vein** 30:25
**vendor**
48:14
54:14
55:16 57:4
61:17 78:5
**vendors**
53:10
61:16
**versus**
10:10
63:15
**view** 13:1
23:14
**visually**
52:6
**volume**
12:22

——————

**W**

**waiting**
92:2
**Walker**
81:21
82:8,11,19
83:1,17
84:22
85:12,18
94:8
**Walker's**
84:3
**wanting**
35:5
**Watson**
4:11,13,
14,17
82:18,22,
24 86:22,
25 87:1,3,
18 89:2,5
90:17
91:18
92:10,17
93:5,17,21
**ways** 50:18
55:20
**weaponized**
46:19
**weather**
71:3 75:7
86:11
**Wednesday**
68:13,18
76:25
82:4,6
84:21 92:9
95:15
**week** 6:18
35:16 37:8
46:14
47:18
49:12,25
63:25
**weekly** 4:3
**weigh**
26:25
**Whataburger**
58:18

**whatever's**
  35:19
**whittled**
  31:4
**Wilson**
  54:8 55:19
**Wilson's**
  51:17
**wind** 71:3
  75:7
**withdraw**
  10:15
  13:22
  16:6,14
**withdrawing**
  15:11
**withdrawn**
  11:17,24
  14:11,24
**withheld**
  14:14
**withholding**
  12:8 46:20
**witness**
  46:2 63:19
  81:5 87:8
**witnesses**
  52:7,25
  86:17
**word** 76:12
**words** 14:2
**work-
product**
  9:23
  10:11,14
  11:18
  12:12
  27:20
  30:21
**working**
  45:8
**world**
  12:11
**world's**
  46:25
**worth**
  53:17 59:5
**worthy**
  30:18
**write**
  54:13,14

**writing**
  65:4 90:14
**written**
  7:7 49:7
  82:12
  83:7,10
  84:5,23
**wrong** 84:3
**wrote**
  88:20

———————
        **Y**
———————

**y'all** 6:2
  9:10,11
  15:11
  16:4,23
  27:2 30:5
  35:3,5,11,
  15 37:6,7,
  20 38:2,8
  40:17 50:5
  51:8,12
  52:13
  55:12
  57:20
  63:7,13
  65:22,23
  66:1
  67:10,11,
  15,21 68:6
  69:7 75:2
  76:22 77:2
  83:22
  84:25
  88:15
**years'**
  59:5
**Yep** 9:9
  30:17
  74:21
**yield**
  71:20

———————
        **Z**
———————

**zero** 41:13
**zone** 27:14