# EXHIBIT 10

In Re: Skanska USA Civil Southeast, Inc

Hearing before:

Judge Hope Thai Cannon

June 22, 2021

**Vol 1**



PHIPPS REPORTING

*Raising the Bar!*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO.:  3:20-cv-5980-LAC-HTC

IN RE:

SKANSKA USA CIVIL SOUTHEAST, INC.
and SKANSKA USA, INC.,
_____/


TRANSCRIPT OF PROCEEDINGS

DISCOVERY HEARING - ESI MATTERS

VOLUME 1 (Pages 1 - 88)


DATE TAKEN:  June 22, 2021
TIME:        3:30 p.m. - 5:15 p.m.
PLACE:       United States District Courthouse
             One North Palafox Street
             Pensacola, Florida 32502
BEFORE:      Hope Thai Cannon, United States
             Magistrate Judge


    This cause came on to be heard at the time and place
aforesaid, when and where the following proceedings were
stenographically reported by:


         Connie L. Morse, Stenographic Reporter


Job No.:  195002

Judge Hope Thai Cannon
June 22, 2021

Page 2

```
 1    APPEARANCES:

 2

 3    On behalf of Skanska:

 4         Clark Partington
           125 East Intendencia Street
 5         Pensacola, Florida 32502

 6         BY:  ELIZABETH BILLHIMER, ESQ.
           ebillhimer@clarkpartington.com
 7
           BY:  SCOTT A. REMINGTON, ESQ.
 8         sremington@clarkpartington.com

 9         BY:  JEREMY C. BRANNING, ESQ.
           jbranning@clarkpartington.com
10

11
           Chaffe McCall
12         2300 Energy Centre
           1100 Poydras Street
13         New Orleans, Louisiana 70163

14         BY:  CHARLES P. BLANCHARD, ESQ.
           (Via Telephone)
15         blanchard@chaffe.com

16

17
      On behalf of Claimants:
18
           Aylstock, Witkin, Kreis & Overholtz
19         17 East Main Street
           Suite 200
20         Pensacola, Florida 32502

21         BY:  E. SAMUEL GEISLER, ESQ.
           sgeisler@awkolaw.com
22
           BY:  D. NICOLE GUNTNER, ESQ.
23         nguntner@awkolaw.com

24

25
```

Judge Hope Thai Cannon
June 22, 2021

Page 3

```
 1          U.S. Department of Justice
            P.O. Box 14271
 2          Washington, DC 20044

 3          BY:  ROBB HYDE, ESQ.
            (Via Telephone)
 4          robb.hyde@usdoj.gov

 5

 6    Also Present:

 7        Christine Moore

 8

 9

10
      Certificate of Reporter        Page 88
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Judge Hope Thai Cannon
June 22, 2021

1    Proceedings began at 3:30 p.m.:

2                COURT SECURITY OFFICER:  All rise.  This

3        honorable court is back in session.  Be seated,

4        please.

5                THE COURT:  All right.  Good afternoon.  So

6        we are here for, I guess, a hearing on certain,

7        we'll just call it some ESI issues in the Skanska

8        case, Case No. 3:20-cv-5980/LC.  And so I know I've

9        got Mr. Blanchard on the phone representing Skanska,

10       and then I also have Ms. Billhimer and Mr. Remington

11       representing Skanska as well.  And then representing

12       the claimants are Mr. Geisler and Ms. Guntner.

13               So, Ms. Guntner, do you want to start in

14       terms of the issues that remain outstanding that

15       y'all wanted to address today?

16               MS. GUNTNER:  Yes, Your Honor.  So I think

17       first I'll go ahead and list the issues, and then

18       just let us know the order in which you prefer that

19       we address them.

20               MR. HYDE:  Excuse me, Your Honor.

21               THE COURT:  Yes, Mr. Blanchard.

22               MR. HYDE:  I'm sorry.  This is Robb Hyde.

23       Sorry to interrupt.  I just wanted to let you know

24       that I'm here, too.

25               THE COURT:  Yeah, I don't think we knew

Judge Hope Thai Cannon
June 22, 2021

Page 5

1   that you were going to be joining us.  So Mr. Hyde

2   is also here on the telephone for the United States.

3           MR. HYDE:  Sorry to interrupt you.

4           THE COURT:  That's okay.

5           MS. GUNTNER:  Your Honor, so first are

6   issues that remain with respect to ESI production

7   outside of September 10th through 30th.  First

8   involves production of documents after September

9   30th that Mr. Geisler is prepared to speak on.

10          THE COURT:  Okay.

11          MS. GUNTNER:  Second is the storm search

12  methodology that the parties have agreed to.  Within

13  the scope of that search, only two issues remain

14  with respect to that.  Number one, there are some

15  additional terms that we laid out in our letter that

16  we would like to include, and second, additional

17  date ranges surrounding Hurricanes Zeta and Delta.

18  That's all with respect to the issue of production

19  outside of September 10th through 30th.

20          THE COURT:  Okay.

21          MS. GUNTNER:  In addition -- let's see.  So

22  we did start to talk about the ESI order last time,

23  but I think now that we have Your Honor's ruling on

24  the RFPs, we're going to need to probably discuss

25  that.  I'm happy to discuss Skanska's last red-line

Judge Hope Thai Cannon
June 22, 2021

```
 1   today if we need to, but it was returned prior to

 2   your order.  So the parties probably still need to

 3   meet and confer on that.

 4              THE COURT:  Okay.

 5              MS. GUNTNER:  The document preservation

 6   issue still remains, so we would like to speak on

 7   that.  A couple of new matters.  First, the use of

 8   iPads.  And these have been -- I did raise this

 9   yesterday afternoon or evening rather around

10   6 o'clock with Skanska, first being the use of iPads

11   and second being a file path that we've located

12   where all Hurricane Sally related information was to

13   be saved by Skanska, and finally, the DeMarco

14   deposition.

15              THE COURT:  Okay.  So why don't we start

16   with some of the older matters because some of these

17   newer ones it might be -- I guess it depends, and we

18   can talk a little bit since most of the folks that

19   are at tomorrow's conference are here, too, whether

20   any of that can be tabled for tomorrow.

21              MS. GUNTNER:  Okay.

22              THE COURT:  So let's start with -- and I

23   agree with you, Ms. Guntner.  Unless, Ms. Billhimer

24   or Mr. Remington, y'all disagree, I think it would

25   make sense for y'all to talk and confer again about
```

Judge Hope Thai Cannon
June 22, 2021

Page 7

1  the ESI protocol given the order on what the Court

2  determined was going to be relevant from the

3  claimants.

4           MS. BILLHIMER:  Yes, Your Honor, I agree.

5           THE COURT:  Okay.  So we'll table that one.

6  So why don't we start -- Ms. Billhimer, do you have

7  a specific order in which you want to discuss it?

8  We can do the storm search terms first because it's

9  shorter, I think, or we can just go ahead and go to

10  the outside September 30th time frame.

11          MS. BILLHIMER:  I think the storm search

12  methodology, that's fine.  Those two, they're kind

13  of the oldest matters, so it probably makes the most

14  sense to start there.

15          THE COURT:  Okay.  So it's my

16  understanding -- and I'm just taking this from the

17  letter that Ms. Guntner sent on June 15th, 2021 to

18  chambers, which indicated that you guys from the

19  claimants want to add, I guess, three search terms,

20  the demob and the remob and then the cost code that

21  was assigned to that, which was 0174236.  So let's

22  talk about that before we go to the Zeta, Delta.

23  And so for those y'all want it searched on the, I

24  guess what we would call the project-specific

25  search, the step 2?  You want to add those to step

Judge Hope Thai Cannon
June 22, 2021

Page 8

```
1    2?
2              MS. GUNTNER:  So, Your Honor, this was
3    attached towards the end of our papers that we
4    submitted.
5              THE COURT:  Okay.
6              MS. GUNTNER:  It's the second-to-last page,
7    Skanska storm search methodology.  So this is to be
8    reviewed.  It's not a two-step process like the
9    others just to be run and then fully reviewed for
10   privilege, confidentiality and responsiveness over
11   certain date ranges.  So this is sort of separate
12   from those initial -- the two-step process that we
13   had for the 10th through the 30th.
14             THE COURT:  You want to run these search
15   terms on what?
16             MS. GUNTNER:  Against both the project
17   server and the relevant custodial sources.
18             THE COURT:  And for what time period?
19             MS. GUNTNER:  So the time period set out in
20   the storm search methodology that we attached on the
21   second-to-last page.  I can read them out loud if
22   you want, but essentially what the parties did is we
23   met and conferred on the date ranges surrounding
24   prior tropical storms or hurricanes, and we set up
25   sort of start and end dates surrounding those
```

Judge Hope Thai Cannon
June 22, 2021

Page 9

1   storms.  So it's not a straight beginning to end.

2   It's multiple beginning to ends surrounding those

3   storms.  Would you like me to read them into the

4   record?

5            THE COURT:  Yeah, do that.

6            MS. GUNTNER:  Okay.  So the agreed-upon

7   dates are August 17th, 2017 through --

8            THE COURT:  August what?  I'm sorry.

9            MS. GUNTNER:  August 17th, 2017 through

10  October 22nd, 2017.

11           THE COURT:  Okay.

12           MS. GUNTNER:  Then we have May 20th, 2018

13  through June 10th, 2018.  Next is August 30th, 2018

14  through September 28th, 2018.  Next is August 24th,

15  2019 through September 15th, 2019.  Next is October

16  13th, 2019 through November 10th, 2019.  Next is

17  June 1st, 2020 through June 27th, 2020.  Next is

18  August 19th, 2020 through September 2nd, 2020.  And

19  those are all the agreed-upon dates.  As I mentioned

20  earlier, claimants also propose that we add date

21  ranges for Hurricanes Zeta and Delta, which occurred

22  in October of 2020.

23           THE COURT:  So for the Zeta and Delta ones,

24  are you wanting to do these search terms to cover

25  the date ranges for the Zeta and Delta storms?

Judge Hope Thai Cannon
June 22, 2021

Page 10

```
 1              MS. GUNTNER:  Yes, Your Honor.  So the
 2    search terms that we've agreed upon, which is in the
 3    attached methodology, and then plus, we would
 4    propose to add demob, remob and that identification
 5    number.  And then there's also -- actually, never
 6    mind.  Excuse me, Your Honor.
 7              THE COURT:  Okay.  So, Ms. Billhimer, let
 8    me, I guess, start with what is the objection to
 9    that?  And then I'll get Ms. Guntner to respond and
10    tell me what the relevance of it is.
11              MS. BILLHIMER:  So, Your Honor, with
12    respect to kind of the backward-looking ranges that
13    we had previously agreed to, adding the terms, I
14    think our biggest concern, Your Honor, is the creep
15    of how many more.  It's like a death by a thousand
16    cuts.  How many more will there be added, like how
17    many times will we go back and by saying that we'll
18    do it, it's opening the door for more?  So do they
19    just each week add new terms to those ranges?
20    That's our biggest concern with specifically the
21    demob, remob and that cost code for the prior
22    periods.  And then it's a separate issue when you're
23    looking forward, so past September 30th.
24              Your Honor, it's our position that what
25    the company did for the storms in October of 2020
```

Judge Hope Thai Cannon
June 22, 2021

1    wouldn't be relevant to the issues that are going to

2    be tried in September.  I think in terms of

3    admissibility, if there were any changes made, those

4    subsequent remedial measures would not be admissible

5    in evidence.

6         THE COURT:  And let me just make sure I

7    understand your respective positions.  With regard

8    to the date ranges that you guys have already agreed

9    on, the ranges that were identified by Ms. Guntner

10   and that are in the storm search methodology, is

11   there an objection, Ms. Billhimer, to running the

12   demob, remob and cost code on those date ranges on

13   the project server and the relevant custodian

14   databases?  Are you contending that those are not

15   relevant, that they are not likely to produce

16   anything relevant, that they're not proportional to

17   the needs of the case or that just at some point

18   we've got to stop and you can't continue to add

19   search terms?

20        MS. BILLHIMER:  Right.  Your Honor, I think

21   with respect to some of these, it's going to go back

22   to they may be duplicative of what's already being

23   pulled into the review set.  But it does take a lot

24   of effort to run the terms and then sort out if it's

25   material that has already been reviewed, if there's

Judge Hope Thai Cannon
June 22, 2021

Page 12

1   additional review that has to be done.  It's really

2   the proportional to the burden that we have.  I

3   don't have the numbers or what hits on those terms.

4   We haven't gone that far because our vendor has been

5   extremely busy on the cell phone data making sure

6   that all gets pushed out.  But it really is the,

7   when do we stop, when do we stop like just searching

8   for information that is either duplicative, so they

9   should already have it, or it's just not

10  proportional?

11          THE COURT:  So, Ms. Guntner, how did y'all

12  identify, you know, that these are necessary terms?

13  I think, you know, one thing that Ms. Billhimer

14  stated that I do think is a convincing argument is

15  whether or not you're going to really get any

16  additional documents by using these three terms that

17  you maybe don't already have.  And so I guess we

18  start with where are you guys on reviewing the data

19  that has been provided, what, I think, approximately

20  a little over 11,000 documents that were Skanska

21  original documents, right?  I think y'all were at

22  2,000 or something the last time we were here.

23          MS. GUNTNER:  Yes, Your Honor.  Now we have

24  reviewed 6,614, and this accounts for production up

25  to production 8.  We recently got production 8

Judge Hope Thai Cannon
June 22, 2021

1    loaded in.  Skanska made additional productions

2    today, so that will obviously affect our

3    calculations.

4            Also, with respect to the question of how

5    we determined those terms were yielding relevant and

6    responsive documents, during the course of our

7    review of these documents, some of our most highly

8    relevant and responsive documents include the words

9    "demob" or "demobilization" or "remob" or

10   "remobilization."  It's a term of art that we

11   learned that Skanska uses for the timing and the

12   process within which they secure the site for a

13   storm and then resume operations for a storm.  You

14   know, that's my terminology.  I'm sure I'm not

15   quoting from anything Skanska official that counsel

16   has explained to us what those terms mean.

17           So we learned during the course of the

18   review that those are highly relevant and responsive

19   documents.  And because it is a term of art that,

20   frankly, I had never heard before, I would never

21   have known to include that in the search term

22   methodology.

23           With respect to counsel's argument that

24   this may involve some duplication or duplicated

25   efforts, number one, the documents are being

Judge Hope Thai Cannon
June 22, 2021

Page 14

1    deduplicated under the ESI protocol.  The process

2    for determining whether a document has already been

3    reviewed and produced is a programatic process.

4    It's not a manual process.  A vendor can necessarily

5    do that whenever they are preparing the data set for

6    review and for production.

7              THE COURT:  Is the deduplication done prior

8    to it going into -- prior to it being searched?

9              MS. BILLHIMER:  It's part of the search

10   methodology.

11             THE COURT:  Okay.  So you run these search

12   terms, and then from those -- from the results of

13   those search terms then you dedup?

14             MS. BILLHIMER:  Do they dedup from prior

15   productions?

16             MS. MOORE:  They can determine what is in

17   review currently versus --

18             MS. BILLHIMER:  Right.  So they can do

19   that, but it's an extra added step in the process.

20   It isn't, as counsel suggests, just a push the

21   button and it happens.  It is programatic to some

22   degree, but it is an extra layer of complexity to

23   the process.

24             THE COURT:  So if you ran these additional

25   terms, do you end up having to run it on the entire

Judge Hope Thai Cannon
June 22, 2021

Page 15

1  database, and that would include things that have

2  already been produced?

3          MS. BILLHIMER:  Yes, potentially.  And so

4  that's kind of the concern that we have is they want

5  to go back to all the custodians for these

6  particular date ranges and then back to the project

7  server for these particular date ranges and then

8  dedup that against what's been produced.

9          THE COURT:  So there's no way for you to

10 run these additional search terms just on what has

11 not been produced?

12         MS. BILLHIMER:  So that's more complicated.

13 I certainly can address it with Servient and bring

14 it back to the Court.  I can actually figure out

15 what the number might be if they can do it or

16 exactly explain the process that they have to go

17 through to exclude.  So all the data is sitting in

18 there, and it's not like it's segregated necessarily

19 by, this has all been reviewed, this has all been

20 produced.

21         THE COURT:  Right.

22         MS. BILLHIMER:  It's kind of tagged.  Each

23 document is tagged in a particular manner.

24         THE COURT:  So let's just assume, for

25 example, that you can't just run it against what has

Judge Hope Thai Cannon
June 22, 2021

Page 16

1    not been produced.  If you ran it against the entire

2    database, how would you then identify which of these

3    documents involving these three search terms have

4    already been produced?  Is that a matter of a

5    program that you would use to do that determination?

6            MS. BILLHIMER:  They can build a query to

7    extract out of all of the productions that we've

8    made to date to take those out.

9            THE COURT:  Okay.

10           MS. BILLHIMER:  Well, there's also the

11   issue of -- well, they would be nonresponsive

12   anyway.  I'm not sure if Ms. Guntner is suggesting

13   that if it has the term "demob" in it then it has to

14   be produced.  Is that a responsive call?  I believe

15   that's what you said, right, it's responsive?

16           THE COURT:  And that would go to, I guess,

17   whether you consider this to be the step 2 type

18   search where they were really only reviewing it for

19   privilege.  But I don't think so for the --

20           MS. GUNTNER:  No, Your Honor.  We're

21   proposing that Skanska can review those documents

22   fully for privilege, confidentiality and

23   responsiveness exactly like the agreed-upon storm

24   search methodology.

25           THE COURT:  I think it would be helpful,

Judge Hope Thai Cannon
June 22, 2021

Page 17

1   Ms. Billhimer, if you could get that additional

2   information.  So I hear, Ms. Guntner, and I think it

3   sounds like to me that the claimants are concerned

4   given what they're finding in terms of the more

5   critical documents, the use of these terms in those

6   more critical documents, that there is a chance that

7   there were documents that only contained these terms

8   that they did not otherwise pick up.  And I think

9   that's a valid argument, but I do think we have to

10  weigh it against all the stuff that they're already

11  doing.

12          And if there is a way for us to determine,

13  you know, the time that would be needed for that and

14  also what that world looks like, then I would be

15  better able to say, yeah, it's worth doing it.  I

16  also think that for us to kind of get there, too, I

17  would need to know -- you guys, I think, would need

18  to be further along in your own review because it

19  might very well be that you've gotten, you know, the

20  documents, and anything else that might have these

21  terms might not necessarily result in, you know, a

22  significantly greater number of documents or more

23  information than what maybe you already have, if

24  that makes sense.

25          So if Ms. Billhimer can get that for us,

Judge Hope Thai Cannon
June 22, 2021

Page 18

1    and then we can kind of see what that looks like.

2    So, one, whether they can run it and how long it

3    would take them to run these three terms just on the

4    documents that have not already been produced.  And

5    then if they can't do it that way, then sort of the

6    same thing.  How long would it take them to run it

7    on the entire database and then to dedup that from

8    what has already been produced.  The dedupping is

9    something that y'all do on your end; is that right,

10   that Servient does?

11           MS. BILLHIMER:  Servient.

12           THE COURT:  But you guys are doing that

13   before production?

14           MS. BILLHIMER:  Yes.

15           MS. GUNTNER:  Your Honor, if I may address

16   the speed of review for claimants.  So I want to

17   make sure I'm clear in the way I'm explaining it.

18   Whenever I say we have 6,614 reviewed, I mean coded

19   as reviewed.  However, claimants have been

20   prioritizing certain subsets of that data, so

21   certain dates, e-mails, for example, documents

22   containing certain terms to make sure we are

23   reviewing what we feel is probably going to be the

24   key documents earliest.

25           And second, because that number only

Judge Hope Thai Cannon
June 22, 2021

 1  reflects what has coded, it doesn't really fully

 2  reflect the full scope of the review.  For example,

 3  Mr. Geisler and myself often will go into the

 4  productions and review documents without manually

 5  coding to get a good sense of what's in the

 6  production, for example.  So I just wanted to assure

 7  the Court we are constantly working on this, and we

 8  are working with our reviewers to ensure each

 9  document is physically coded as well.

10          THE COURT:  Okay.  And I think -- so it

11  would be helpful -- and it's hard, I guess, to prove

12  a negative if you don't know what's in there.  But I

13  don't know if from what you're seeing in the

14  documents if there's something that leads you to

15  believe, other than just the use of the words, that

16  there would be other documents out there that aren't

17  incorporated.  Do you know if that's the case?  Can

18  you like give an example?

19          MS. GUNTNER:  Your Honor, we have seen

20  documents that only included the word "demob" or

21  "remob" where we didn't notice other terms, for

22  example.

23          THE COURT:  But how did those get picked up

24  then because they would have to be based on some

25  term that they ran, right?

Page 20

1              MS. GUNTNER:  Right.  So those came up --

2    well, whenever I say don't include another term,

3    we've gotten a lot of documents from not only

4    Skanska's ESI production but also nonresponsive

5    materials, public records requests, things like

6    that.  I'm happy to go to our vendor and see if we

7    can maybe run some type of report to see how many

8    instances we are seeing where there's just those

9    words and maybe not another term.  So we can look

10   into it on our end as well.

11             THE COURT:  Okay.  That would be great.

12   That, I think, Ms. Billhimer, would help me.

13             MS. BILLHIMER:  Sure.

14             THE COURT:  Some of this may not be that

15   big of an issue if you're able to run it and the

16   world of those documents just isn't very much.  If

17   you run it and the world of those documents is

18   pretty significant, that, of course, would lend more

19   credence to the claimants' position that, look,

20   there are going to be -- and it doesn't sound to me

21   necessarily that anyone is disagreeing that these

22   terms provide relevant information.

23             So I think that they would get that if

24   there's no dispute at least over the relevancy.  It

25   is just a matter of trying to prioritize and manage

 1   the production in such a way that y'all would be

 2   able to go to trial in September.  So is there

 3   anything else that y'all want to say on that point?

 4   That, I guess, isn't going beyond the September 30th

 5   date, though, right, because those --

 6         MS. GUNTNER:  Those are for the date ranges

 7   that I read into the record surrounding the storms.

 8         THE COURT:  Right.  I know, Ms. Billhimer,

 9   you had referenced in your argument going past the

10   September 30th, and that is dealing with the Zeta,

11   Delta storms, right?

12         MS. BILLHIMER:  Right.

13         THE COURT:  So y'all want to do specific

14   queries for the Zeta, Delta based on those time

15   periods that occurred in October?

16         MS. GUNTNER:  Your Honor, what we propose

17   is that for this storm search methodology that

18   includes all the past storms that we also -- we have

19   not discussed specific dates, but reach an agreement

20   on dates for those two storms as well.  And the

21   reason why -- one reason why claimants request this

22   is in interrogatory No. 12 claimants ask Skanska to

23   identify all other weather events that required

24   Skanska to stop work and/or secure equipment while

25   working on the Pensacola Bay Bridge prior to

Judge Hope Thai Cannon
June 22, 2021

Page 22

1    Hurricane Sally.

2         So Skanska had initially set out those two

3    storms and what they allege are the demob and remob

4    dates for those two storms in their initial

5    interrogatories.  They were later amended and

6    removed.  That's sort of what initially drew our

7    attention to that issue.  Your Honor, Mr. Geisler is

8    prepared -- I think this kind of goes hand in hand

9    with his arguments and Ms. Billhimer's arguments

10   about post September 30th to discuss, you know, why

11   we believe those are relevant.

12        THE COURT:  Okay.  And then before we get

13   there, is there still a dispute as to going back to

14   July?  I know that -- to the contract date.  I know

15   that y'all had mentioned before that that was also

16   an issue.  Is that something that we need to address

17   today as well?

18        MS. GUNTNER:  Yes, Your Honor.  So, again,

19   part of this storm search methodology is that -- not

20   the storm search methodology.  Excuse me.  Another

21   methodology that we had been discussing involved the

22   date range we proposed of July 29th, 2016, which was

23   the beginning of the project, to June -- to present,

24   essentially.  So we probably need to discuss both

25   the start date and the end date.

Judge Hope Thai Cannon
June 22, 2021

Page 23

 1              THE COURT:  And is that for the search set
 2   No. 2?

 3              MS. GUNTNER:  Yes, Your Honor.

 4              THE COURT:  So what is that search set No.
 5   2 is what you would like to run on that time frame?

 6              MS. GUNTNER:  Yes, Your Honor.  The reason
 7   why we set out the beginning of the project is that,
 8   number one, we believe documents related to these
 9   hurricane preparedness terms in particular.  We have
10   seen there was a 2016 hurricane plan that was
11   created in 2016.  We found that in the production.
12   That was what appears to be the first version of the
13   hurricane plan that we can locate.  So, you know, we
14   believe the origin of the hurricane plan,
15   discussions surrounding the hurricane plan, those
16   documents and communications are relevant and
17   responsive.

18              THE COURT:  Are claimants taking the
19   position that -- I know y'all argued before and in
20   some of your submissions that there's -- that you
21   believe that Skanska was negligent in not following
22   the hurricane plan that was in place for Hurricane
23   Sally.  But are you -- why do these prior hurricane
24   plans matter?  Are you arguing also that what they
25   had in place for Hurricane Sally, in and of itself

Judge Hope Thai Cannon
June 22, 2021

Page 24

1    that the hurricane plan was deficient?

2              MS. GUNTNER:  Yes, Your Honor.

3              THE COURT:  Okay.

4              MS. GUNTNER:  Not only is the hurricane

5    plan itself deficient but Skanska's following or not

6    following of that plan.

7              THE COURT:  And so you want to show through

8    these other hurricane plans if there were changes

9    that maybe these changes shouldn't have been made?

10             MS. GUNTNER:  Perhaps, Your Honor.  Really,

11   I think the issue here is that the duty to create an

12   appropriate plan arose at the start of the time

13   where they created that first plan.  I think Mr.

14   Geisler has something to say on that as well.

15             THE COURT:  Okay.  Mr. Geisler, was that

16   plan approved by the FDOT?  How are you going to

17   take the position that that plan in and of itself

18   wasn't sufficient if that's the relevance of these

19   other plans?

20             MR. GEISLER:  Sure.  It's unclear as of yet

21   if it required -- if it was required to be signed

22   off or agreed as far as our review.  Certainly in

23   the underlying contract there was an obligation

24   evidenced that management plan for events,

25   specifically including hurricanes.  But we would go

Judge Hope Thai Cannon
June 22, 2021

Page 25

1    so far back not only just to see the development of

2    a hurricane plan and how there were changes made in

3    it but also in their understanding of the obligation

4    that was owed to the project as they understood

5    through the underlying contract with Florida

6    Department of Transportation.

7           Now, that's not because we are asserting

8    third-party beneficiary doctrine.  It's because it

9    goes into the knowledge, the notice and the

10   understanding that Skanska had as to its obligation

11   to protect the project site, to protect surrounding

12   properties as well as the community's safety, you

13   know, with regards to having an obligation to keep

14   those construction barges from going all over the

15   bay like they did.

16          THE COURT:  So why wouldn't it be

17   sufficient just to get the hurricane plans, you

18   know, all hurricane plans that were in place from

19   the start of the contract through to -- I know y'all

20   have the plan that's in place for Hurricane Sally --

21   instead of running all these search terms?

22          MR. GEISLER:  Sure.  I think we could

23   discuss limiting the search terms somewhat to drill

24   down into what Skanska's understanding of its

25   obligation under the plan is and also in

Page 26

1    constructing a plan.

2            THE COURT:  So you think there may be some

3    communications with regard to these other plans that

4    might have some relevance to what Skanska's

5    knowledge may be going into the hurricane plan that

6    was in place for Sally?

7            MR. GEISLER:  That's right.  That's right.

8    Not just the specific plan in place in Hurricane

9    Sally but, again, the underlying obligations, the

10   underlying duties and knowledge of those duties that

11   were in place even before the first piece of ground

12   was broken.

13           THE COURT:  And do we know how many

14   hurricane plans existed between -- from the contract

15   date through, I guess, Hurricane Sally, which would

16   be September 2020?

17           MS. GUNTNER:  Your Honor, we found plans

18   from 2016, '17, 2020 and then a second from 2020

19   that occurred -- seems to have been drafted after

20   Sally or revised after Sally.  That's what we found

21   in the production.  I think that's probably more of

22   a question for Skanska, though.

23           THE COURT:  Okay.  I didn't know if y'all

24   had asked just for, you know, give me a copy of all

25   the hurricane preparedness plans in place from --

Judge Hope Thai Cannon
June 22, 2021

Page 27

1    you know, since contract inception date and if

2    that's been produced and what that might have told

3    you.

4           MR. GEISLER:  Certainly contemplated in the

5    requests served.  Like Ms. Guntner indicated, we

6    have hurricane plans going back to October 2016, so

7    we would expect that those have been produced or

8    will be.

9           THE COURT:  Okay.  And then just to

10   understand what this document is, Ms. Guntner, what

11   does the total unique documents per term mean?

12          MS. GUNTNER:  So a unique hit on a term is

13   when the document only contains that term and none

14   of the other proposed terms.

15          THE COURT:  Okay.  So this is from the

16   prior production?

17          MS. GUNTNER:  No, Your Honor.  This is for

18   this proposed search.  These numbers were given to

19   us by Skanska.

20          THE COURT:  I'm sorry.  I was wondering how

21   you knew it.  That makes sense.  I was like, if

22   you've already gotten it, how did you already know

23   this?

24          MS. GUNTNER:  No.  Wish we could do that.

25          THE COURT:  Got you.  So anything else, Mr.

Judge Hope Thai Cannon
June 22, 2021

Page 28

1    Geisler, then on going back to the contract date?

2          MR. GEISLER:  No, I think that's it.

3          THE COURT:  Okay.  And then --

4          MR. GEISLER:  That covers it.

5          THE COURT:  Let me see what Ms. Billhimer,

6    Mr. Remington has to say, and then we'll go back to,

7    I guess, Mr. Geisler, you're going to argue the post

8    September 30th as to Hurricanes Zeta and Delta?

9          MR. GEISLER:  Not only just those two

10   storms but generally.

11         THE COURT:  But just post?

12         MR. GEISLER:  Correct.

13         THE COURT:  Is that in search 3 here?  Is

14   that the October 1, 2020?

15         MS. GUNTNER:  Yes, Your Honor.  So that's

16   another issue is the word "Sally," that term in

17   particular right here.  So essentially the issues

18   with respect to post September 30th, I think we need

19   to determine first generally whether documents post

20   September 30th are going to be pulled into the

21   searches, number one, generally; number two, when

22   the cutoff date will be; and number three, how it

23   will be applied to those two storms in particular.

24         THE COURT:  And what is y'all's proposal on

25   when that cutoff date should be?

Judge Hope Thai Cannon
June 22, 2021

 1            MS. GUNTNER:  That is Mr. Geisler's area of

 2     expertise.

 3            MR. GEISLER:  Sure.  Well, it really -- at

 4     this point it's kind of difficult to decide when

 5     exactly it should because all of these

 6     communications are backward looking and looking at

 7     the events.  So it's not just an endless universe.

 8     These are very narrow -- if somebody now is talking

 9     about Sally and it's with a third party or if it's

10     with -- you know, it's a nonprivileged, nonwork

11     product term that wouldn't fall within the privilege

12     of the doctrine, that necessarily would be

13     responsive and relevant.  So it would be useful to

14     get, you know, an up-to-date search term report

15     perhaps to understand exactly how broad it is.

16            THE COURT:  But I think you would still

17     need an end date on that.  Are you asking that they

18     run that now to the present?  And I'm guessing you

19     guys haven't downloaded those custodians up through

20     present?

21            MS. BILLHIMER:  So you'd have to go back

22     and recollect on custodians, recollect on project

23     server.

24            THE COURT:  Because y'all collected in

25     April?

Judge Hope Thai Cannon
June 22, 2021

1              MS. BILLHIMER:  Some of the data was -- I

2    think there was a collection in December, April and

3    May, I believe, are the dates that we've been

4    provided.  You'd have to update the collection.

5              THE COURT:  So if they ran it now, you're

6    just talking about the term "Sally" against their

7    database up through May, I'm assuming that's already

8    been done.  Y'all haven't run Sally?  No, you

9    haven't because you stopped it in September.

10             MS. BILLHIMER:  Yes, 9/30.

11             THE COURT:  So if they ran Sally from

12   September 30th through the last pull of the

13   custodians in May, you want to know what that world

14   looks like?

15             MR. GEISLER:  That's right.

16             MS. BILLHIMER:  We provided that to them.

17   Without updating our custodial collections, so just

18   based on the data that we have, if you look at

19   search 3 of 3 --

20             THE COURT:  Right.

21             MS. BILLHIMER:  -- you'll see the numbers.

22   And the total with the families, it's almost 9,500

23   documents.

24             THE COURT:  The families are the

25   attachments that go with the e-mail?

Judge Hope Thai Cannon
June 22, 2021

Page 31

1          MS. BILLHIMER:  That's the e-mail with the

2     attachments.  The actual count is 6,034 documents.

3          THE COURT:  And then what about the -- you

4     couldn't do it on the unique terms?

5          MS. BILLHIMER:  No.

6          THE COURT:  Okay.

7          MS. BILLHIMER:  Your Honor, having looked

8     at a lot of documents, the term" "Sally, it comes up

9     a lot in just everyday correspondence in terms of

10    putting the bridge back together, so progress

11    reports.  It's a post-Sally update.  Those are all

12    in there.  That's information that was provided to

13    FDOT.  So you're dragging in a lot of documents that

14    are not relevant to the issues of what happened in

15    September of 2020.

16          So it's getting -- and that's really

17    putting a burden on Skanska to make us go and spend

18    all the attorney time to kind of, you know, ferret

19    out what doesn't relate to post-Sally

20    reconstruction.

21          MS. GUNTNER:  Your Honor, may I speak to

22    that as well?

23          THE COURT:  Uh-huh.

24          MS. GUNTNER:  First, we don't have the

25    total unique document hits on Sally.  That was not

Judge Hope Thai Cannon
June 22, 2021

Page 32

1    provided by Skanska.

2            THE COURT:  Right.  Sounds like Ms.

3    Billhimer doesn't have that information.

4            MS. BILLHIMER:  I do not have it as we sit

5    here today.

6            MS. GUNTNER:  So second, counsel also

7    indicated there is a woman named Sally, and that was

8    kind of pulling in, I believe, some irrelevant,

9    nonresponsive hits.  And we indicated to counsel we

10   were happy to work on something to exclude

11   irrelevant documents with this lady named Sally.

12   And that's something our vendors can come up with a

13   query to do that.

14           And third, post-September searches don't

15   only relate to the term "Sally."  Also, those

16   initial September 10th through 30th terms that we

17   agreed on, we have made it clear to Skanska from the

18   very beginning and in court as well that we were

19   only prioritizing the search for those dates, but we

20   would still want those searches run post Sally.

21           THE COURT:  Yeah, and I think that they --

22   it sounded to me that Skanska has an objection to

23   that generally, right, to going beyond?  So I think

24   that's one of the things we'll talk about today is

25   it sounds like for the post-September 30th we need

Judge Hope Thai Cannon
June 22, 2021

Page 33

1   to talk about the Zeta, Delta, and then we need to

2   talk about the search term "Sally," and then we need

3   to talk about these hurricane -- well, we talked

4   about the hurricane preparedness, but then the last

5   one would be running the entire search on everything

6   post September 30th, right?

7           MS. GUNTNER:  Right, those initial searches

8   that we ran from the very beginning.

9           THE COURT:  The step 1, step 2?

10          MS. GUNTNER:  Yes, Your Honor.

11          THE COURT:  Okay.  And then, Mr. Geisler,

12  so you said that you don't know exactly where you

13  want your cutoff to be right now unless you kind of

14  knew what the information was.  And we don't know

15  how many unique terms are being produced for

16  documents.  So let's just go with 6,034.  We don't

17  know what of the 6,034, how many of that only

18  contain Sally.

19          MR. GEISLER:  Sure.  Let me add just as a

20  pragmatic consideration getting ready for September,

21  if the custodial files have been collected up

22  through May, you know, we would not be advocating

23  for recollecting so that we could get post September

24  30th without some reason to do that.

25          THE COURT:  To know that I need to go to

Judge Hope Thai Cannon
June 22, 2021

Page 34

1    this particular custodian for X reason because you

2    depose them and you might find they had some

3    communications relevant to your negligence piece?

4              MR. GEISLER:  That's right.

5              THE COURT:  Okay.

6              MR. GEISLER:  We would be content with the

7    collection up to whatever the last date was.  If

8    it's May, then yes, let's -- that would be the

9    universe to run it against unless, as you indicate,

10   we had good cause and good reason to revisit, maybe

11   a specific custodian or some kind of limited --

12             THE COURT:  Or time period or something.

13             MR. GEISLER:  Time period, something like

14   that, Your Honor.

15             THE COURT:  So, Ms. Guntner, so just going

16   to your three, so we've got the second question you

17   had, which is when the cutoff is.  It sounds like

18   they are saying the cutoff just is to the May, and I

19   know y'all will have a response to that.  But then

20   the first question is what documents are going to be

21   pulled.  You are looking for just to run these

22   search terms, right?  It's the same database.  It's

23   just going to go from September 30th through May?

24             MS. GUNTNER:  Yes, Your Honor.  So the

25   initial searches that we did from the very beginning

Judge Hope Thai Cannon
June 22, 2021

Page 35

1    where we had a step 1 and step 2, I would request

2    that, you know, we do the same thing this time

3    around -- use those exact same terms, same search

4    methodology for September 30th through the May

5    cutoff.  And then, of course, we need to discuss

6    Sally.

7            THE COURT:  Okay.  So, Ms. Billhimer, let's

8    start then with the first thing that we addressed,

9    and I don't think I gave y'all an opportunity to

10   respond to, was the hurricane preparedness plan

11   going back.  They want to do this hurricane

12   preparedness term search from July 29th, 2016, the

13   contract date, up to June 10th, 2021 for these

14   specific hurricane preparedness plans.  And their

15   argument is that it's relevant to the notice and

16   knowledge of Skanska in drafting its current or the

17   plan that was in place for Sally.

18           MR. REMINGTON:  Your Honor, Scott

19   Remington.  I'm going to address these issues if

20   that's okay with the Court.

21           THE COURT:  Okay.

22           MR. REMINGTON:  Today I believe I heard for

23   the first time that they are alleging that there was

24   something negligent in the way Skanska prepared its

25   hurricane plan, and that's why these documents are

Page 36

1   relevant, to show how the plan was created.

2   However, that allegation is not contained in their

3   complaint.  The master complaint only states that

4   Skanska was negligent for failing to follow the

5   current hurricane plan.  Your Honor, that is not

6   only the only allegation regarding the hurricane

7   plan in the master pleading; there's no allegation

8   that the plan was negligently prepared.

9           In their motion to dismiss our complaint

10  for exoneration, they state, given Skanska's failure

11  to implement the hurricane preparedness plan, issues

12  such as how to properly secure, tie, spud and anchor

13  barges are not needed to understand Skanska's

14  liability.  Regardless of the manner in which

15  Skanska secured the barges, had Skanska implemented

16  its hurricane preparedness plan, the barges would

17  have been far removed from the bridge construction

18  site and would not have been a threat to the bridge.

19          This case, as Mr. Barr has said to the

20  Court, said to Judge Vinson in the first in-person

21  hearing we had, quote, this case is about, you had a

22  hurricane preparedness plan; you did not follow it.

23  That is what they have maintained from day one.

24  This is a new theory of liability that we

25  negligently prepared a hurricane plan, and it just

Judge Hope Thai Cannon
June 22, 2021

Page 37

1    simply is not relevant and certainly goes beyond the

2    scope of the limited nature of the trial we're

3    expecting in September, particularly in light of the

4    Court's ruling over the weekend that the only thing

5    that's relevant is Skanska's conduct in determining

6    Skanska's liability or exoneration.

7         So we have two things.  The claimants take

8    the position that the failure to follow the

9    hurricane plan is, per se, negligence, that that's

10   the negligence involved here, following the plan.

11   No allegation in any pleading that the plan was

12   negligently prepared.  And the only other issue that

13   the Court has sort of put us in a vacuum and said

14   the only conduct that's relevant is Skanska's

15   conduct in preparing for the storm, Sally.

16        And so we don't believe going backwards is

17   relevant and essentially the same argument going

18   forward.  What we may have done for Zeta or Delta is

19   not relevant to what we did for Sally or whether we

20   followed the plan that existed in connection with

21   Hurricane Sally.  Forcing us to query a database for

22   four years to try to go back and find every time a

23   hurricane plan was mentioned because the hurricane

24   plan, as they know because they have the iterations,

25   is a living document.  It's not as if there was one

Judge Hope Thai Cannon
June 22, 2021

Page 38

1   hurricane plan created on the first day of the

2   project when there was one barge on site or no

3   barges on the site is the same as the hurricane plan

4   that was in effect in 2020 when we had 55 barges.

5            As the project advances, the plan changes.

6   And the plan cannot keep up with a construction

7   project of this size and magnitude.  We update it

8   regularly, but the plan changes as the circumstances

9   on the ground change.  So the only thing relevant to

10  this breakaway is what the circumstances were with

11  regard to Sally.

12           THE COURT:  So I guess what Mr. Barr said,

13  just so the record is complete, is he does say we're

14  going to want discovery on that issue, why those

15  decisions were made and then to look at some past

16  incidences and how those decisions were made.  So

17  would their argument maybe not as to what went into

18  the hurricane plan necessarily but what Skanska did

19  and maybe why some of the -- why maybe it made some

20  of the changes it did in the later iteration,

21  doesn't that go somewhat to privity and knowledge,

22  which is that second piece of the limitation of

23  liability?

24           So the order I did, because y'all were

25  relying on exoneration cases, right, which I think,

Page 39

1    Mr. Remington, you kind of argued are almost two

2    separate things.  You've got the negligence piece.

3    And even if -- and I'm not saying whether I agree or

4    not because it's not my issue to deal with.  It's

5    obviously Judge Collier's.  But your argument is

6    that even if you're negligent, you can still be

7    exonerated under the Bunge and the other cases if

8    you can show that there was and in many ways a

9    superseding event, that there was nothing you could

10   do to have prevented those barges from coming

11   unmoored because of Hurricane Sally.

12            But in the limitation of liability piece

13   where they have to show negligence and then the

14   burden shifts back to y'all to show privity and

15   knowledge, doesn't some of that go to the privity

16   and knowledge in terms of what y'all did previously,

17   what y'all did to prepare, what y'all thought you

18   needed to do in those hurricane plans and why maybe

19   some of that has changed for Sally?

20            MR. REMINGTON:  Your Honor, I don't think

21   so because the hurricane plan for 2020 is

22   self-contained.  It discloses everyone who knew

23   about it.  And there are people who are involved in

24   the '16 plan or the '17 plan who weren't involved in

25   the '20 plan that were no longer with Skanska.

Judge Hope Thai Cannon
June 22, 2021

Page 40

1              THE COURT:  But does it show, for

2      example -- because I know their search terms are not

3      limited to just hurricane preparedness.  They want

4      communications about what went into those plans.

5      Does some of that not go to why you made some of the

6      changes?  So they may know who the parties were and

7      what the plan itself says but why, as you were

8      indicating, Mr. Remington, if the plan is changing

9      as the project progresses, as you get more barges,

10     for example, or as the construction is more

11     solidified, maybe you change some things.  Doesn't

12     that sort of path -- don't they need to know some of

13     that for the privity and knowledge argument and

14     going to the negligence versus the exoneration

15     piece?

16              MR. REMINGTON:  Your Honor, I don't believe

17     so based on the negligence piece because the

18     question of negligence is whether we acted

19     reasonably in the face of the storm.  The hurricane

20     preparedness plan doesn't necessarily answer that

21     question.  You could find -- a court could find that

22     we did everything required under the hurricane

23     preparedness plan but it wasn't reasonable because

24     FDOT didn't -- I don't think the evidence is going

25     to show that FDOT or anybody blessed this plan.

Page 41

1    Nobody said, if you follow this plan you're

2    exonerated.  Our common law duty is that we have to

3    prepare for the storm we know that's coming.

4              THE COURT:  So I guess taking that argument

5    then, Mr. Remington, it would seem that if they were

6    not -- so now you're saying that the negligence

7    piece isn't just as you read that they have alleged,

8    which is that you failed to follow the hurricane

9    plan.  You're saying whether you failed to follow

10   the hurricane plan or not may not even make a

11   difference because, one, even if you did it might

12   not be reasonable, and even if you didn't, maybe the

13   other conduct you took was reasonable.

14             So if that's the case and we're not limited

15   to just what's in the hurricane preparedness plan,

16   then wouldn't they need to kind of -- doesn't what

17   y'all did before and what you knew before and what

18   happened before, doesn't that then go to the privity

19   and knowledge and what you chose to do for Hurricane

20   Sally?

21             MR. REMINGTON:  I don't believe what we

22   knew in 2016 goes to the privity and knowledge of

23   who knew what in 2020.

24             THE COURT:  Why is that?

25             MR. REMINGTON:  Because the privity and

Judge Hope Thai Cannon
June 22, 2021

Page 42

1    knowledge is who knew what we were doing in 2020

2    with the barges.  So the 2020 plan, who was aware of

3    it --

4              THE COURT:  So it doesn't inform what the

5    conduct that occurred in -- you don't think what

6    happened in 2016, '17, '18, '19 with regard to any

7    of the other storms informs the knowledge of the

8    folks that made those decisions in 2020?

9              MR. REMINGTON:  Your Honor, I don't because

10   it's apples and oranges.  It's a completely -- in

11   2016 it was a design project.  I don't think there

12   were any barges on the water, so it was all

13   hypothetical.  So I don't think that informs what

14   the plan was in '20 based on the conditions on the

15   ground.  It's what the situation was on the ground,

16   who had privity and knowledge of that situation.

17   That's the issue, not who had privity and knowledge

18   of a prior situation.

19             THE COURT:  What if there had been some

20   barges that had some lines that broke or some issues

21   in some of the other hurricanes or -- you wouldn't

22   say that that would lead to maybe how you would need

23   to secure the barges at issue in Hurricane Sally?

24   That wouldn't have some relevance to the knowledge

25   that Skanska had for that?

Judge Hope Thai Cannon
June 22, 2021

Page 43

 1              MR. REMINGTON:  Your Honor, what we

 2    understand is there's never been another barge

 3    breakaway.  That's the discovery response that

 4    Skanska provided.  There's never been -- I mean,

 5    we've dealt with numerous storms.  There's never

 6    been another breakaway.  There's never been a storm

 7    like Sally that turned at the last minute, sped up

 8    to a category 2 and hit us out of the blue,

 9    surprised us.

10              THE COURT:  Okay.  So your argument on the

11    hurricane terms, plan terms for July -- going back

12    to July 29th, 2016 is really that it's irrelevant

13    and I think reading between the tea leaves that it's

14    also going to be burdensome for you?

15              MR. REMINGTON:  Without a doubt.  Your

16    Honor, this rubber band is stretched just about as

17    tight as it can go.

18              THE COURT:  Okay.  But y'all have at least

19    run the searches, and so this tells me what you were

20    able to find.  So in terms of documents, these total

21    docs is going to be the world of what y'all -- if

22    the Court said, no, you need to go do that, it would

23    be what you would have to review before production,

24    right?

25              MS. BILLHIMER:  Yeah.  Another 6,482 with

Judge Hope Thai Cannon
June 22, 2021

Page 44

 1    respect to the terms in search set No.2 and then --

 2              THE COURT:  Is that 6,482 total docs or --

 3              MS. BILLHIMER:  Yeah, yeah.  And then 9,477

 4    in search set No. 3.  And I wanted to correct the

 5    record with respect to May.  They said, you know,

 6    we'd be agreeable to May.  Not all of the collection

 7    is through May.

 8              THE COURT:  Right.  You said that you did

 9    separate, so it would be --

10              MS. BILLHIMER:  December, April and May.

11              THE COURT:  I'm going to -- Mr. Geisler may

12    disagree, but it would sound to me if you don't want

13    them going back and pulling that -- whoever they had

14    up through December is who they have up through

15    December.  Whoever they pulled up through April is

16    whoever they pulled up through April and the same

17    for May unless you say, okay, that custodian only

18    got pulled up through December, but we really need

19    him because he was very involved, whatever the case

20    might be.

21              MR. GEISLER:  Yeah.  To go to the other

22    extreme, sure.  If Tom Fulton's e-mails wasn't

23    collected after September, that would be one that,

24    yeah, that needs to be caught up.  I'm not saying

25    that that's the case, but it's all contextual.  And

Judge Hope Thai Cannon
June 22, 2021

Page 45

1    perhaps that's a meet and confer to engage in just,

2    okay, who are you collected up to; is that person

3    important enough that we need to catch that

4    production up to speed to the present?

5         THE COURT:  Were there any agreements about

6    who would -- why those productions were scattered

7    like that in terms of pulling in December for some

8    and then April or May?

9         MR. GEISLER:  We didn't have that.

10         THE COURT:  So how did y'all make that

11    determination?

12         MS. BILLHIMER:  I think some of the data

13    was collected, Your Honor -- and I will correct the

14    record if I'm incorrect, but I believe it was

15    collected for a different litigation, and so some of

16    it was already sucked into the system.  And then the

17    ones that were additional that needed to be

18    collected, they went out and did that.  That's why

19    it kind of happened in a phased approach.

20         THE COURT:  But am I right that for some

21    custodians you may only have it up through December

22    because you were collecting by custodians, right?

23         MS. BILLHIMER:  That's correct, that and --

24    I'm not sure what the cutoff date is for the project

25    server.  So there's two different buckets.  There's

Judge Hope Thai Cannon
June 22, 2021

Page 46

 1  custodial e-mails, and then there's the project

 2  server.

 3          THE COURT:  Okay.  So can we get the cutoff

 4  date for the project server?

 5          MS. BILLHIMER:  Sure.

 6          THE COURT:  And then have y'all provided

 7  for the custodians, like we pulled up through

 8  December or we pulled up through April?

 9          MS. BILLHIMER:  That's something we can

10  certainly look -- we've started looking into those.

11  That's how I know December, April and May.  But I

12  can look at the various custodians.

13          There is one other issue that I think is

14  really, really important post September 30th, and

15  it's work product and attorney-client privilege.

16          THE COURT:  Okay.  So before we get there,

17  though, are we done with the pre -- going back to

18  the 2016, we're done with that discussion?  Y'all

19  just want this search set to hurricane preparedness

20  terms run from July 29th to June 10th?

21          MS. GUNTNER:  Your Honor, so we proposed

22  June 10th because that was the day we sent that

23  over, but we would agree to May or December or

24  whatever that --

25          THE COURT:  Whatever.  Okay.  And then you

Judge Hope Thai Cannon
June 22, 2021

Page 47

 1  made your arguments then, Mr. Remington, as to why

 2  you think that second search set that they want is

 3  not relevant and also overly broad?

 4          MR. REMINGTON:  Yes.

 5          THE COURT:  Or burdensome?

 6          MR. REMINGTON:  Yes, Your Honor.

 7          THE COURT:  Okay.  So that issue --

 8          MR. HYDE:  Your Honor.

 9          MS. BILLHIMER:  If I could add, Your Honor,

10  the other -- on top of irrelevance and burden, it is

11  attorney-client privilege and work product.

12  Litigation commenced -- there were lawyers

13  advertising class action lawsuits on September

14  the -- either the 17th or the 18th.

15          THE COURT:  So we'll talk about that with

16  regard to everything that they want past September

17  30th.  I think that's how we'll talk about that.

18          And I don't know if it's Mr. Hyde or Mr.

19  Blanchard that's been trying to talk.

20          MR. HYDE:  I'm sorry, Your Honor.  As Your

21  Honor knows, we've been taking -- the United States

22  has been taking a relatively laissez-faire attitude

23  regarding ESI protocols because it's in very, very

24  capable hands of the claimants.  But a lot of this

25  is going to proportionality.  A lot of what we're

Page 48

1    talking about now is going to proportionality and

2    how deeply delved into Skanska's plans.  It really

3    hasn't been presented in a written format so that

4    the United States can understand what we are looking

5    at.  And if the other claimants or the limitation

6    petitioner has that, we would request that.

7           Additionally, we disagree with a lot of

8    things that are being said today with regard to

9    mobilization, demobilization, and we think that

10   privity and knowledge is -- or at least I think that

11   privity and knowledge is being bandied about in a

12   way that is not used within the limitation action,

13   within a common limitation action.

14          So what I would request, Your Honor, if

15   there is one, a comprehensive agreement between the

16   master claimant and Skanska regarding all of these

17   ESI protocols and the boundaries that they're

18   setting for the protocols.

19          THE COURT:  I may not be quite certain, Mr.

20   Hyde, what you're asking for, but what we're talking

21   about here with regard to the proposal that the

22   claimants' counsel here in the courtroom are making,

23   so dealing first with the hurricane preparedness

24   plan search, I think Ms. Guntner's letter where that

25   search criteria is laid out was sent to Mr. Kelly

Judge Hope Thai Cannon
June 22, 2021

Page 49

1    on -- what is the date here -- June 15th, and it's

2    the last page of that letter.

3            The whole thing is 93 pages, but the last

4    couple of pages on that lays out what we're talking

5    about here in terms of what the claimants are

6    proposing for the hurricane, they call it search set

7    No. 2, hurricane preparedness terms.  And it gives

8    you the date range, the date field, the custodians

9    they want searched and the key terms that they want

10   searched and also includes information from Skanska

11   about the world of documents that they found running

12   those.

13           I'm not sure if that answers your question

14   about having it laid out.  So that's the first issue

15   we're addressing now.

16           MR. HYDE:  It does, Your Honor.  I

17   apologize for my ignorance.  Maybe it just went to

18   Mr. Kelly, or maybe it went to me and I did not see

19   it.  I haven't seen anything come across my desk

20   like that.

21           THE COURT:  And I'm probably unlikely going

22   to issue a ruling from the bench because I want to

23   consider these.  I think these are important issues.

24   And as I did with the prior discovery order, you

25   know, I do want some time to think about it.

Judge Hope Thai Cannon
June 22, 2021

Page 50

1   Hopefully I'll have an answer for y'all tomorrow, if

2   not by the end of the week.

3           So, Mr. Hyde, if you want to look at that,

4   it was sent to Mr. Kelly, but I'm sure Ms. Guntner

5   will send it to you if you want to look at it.  And

6   then just let me know if the Government, you know,

7   has any disagreement as to this particular issue.

8   So, for example, if you think it should be -- the

9   search terms should be expanded, let me know that.

10  And then if that's the case, we can discuss it

11  tomorrow as well.

12          As to the demob and remob and the cost

13  code, that is also outlined in Ms. Guntner's letter,

14  but what's the Government's concern about that?

15          MR. HYDE:  That's an industry standard

16  term, Your Honor.  I don't want to take sides on

17  this because I'm clearly on the claimants' side.

18  It's an industry standard term that if we use it too

19  liberally is going to pull up too many documents for

20  the United States to handle in review.  Mob and

21  demob, every contractor mobs and demobs, especially

22  if they're doing it in a maritime sense.  They mob

23  and demob on every project that they're involved

24  with.  So I'm a little worried that we're going to

25  be overwhelmed with responses, irrelevant responses

Page 51

1    to that.

2            THE COURT:  Okay.  I'm sorry.  Go ahead.

3            MR. HYDE:  And I'll save my privity

4    arguments for a later date because I just don't

5    think that either party is using them correctly.

6            THE COURT:  And it might be, too -- I want

7    to make sure that the Court is using it correctly.

8    So how does the United States view that that term

9    should be applied because it does go, I think, to

10   the relevance argument here?  So Mr. Remington

11   argues that these prior hurricane events and prior

12   hurricane preparedness plans are irrelevant to

13   establishing privity and knowledge, Skanska's

14   privity and knowledge for Hurricane Sally.  How do

15   you see that as --

16           MR. HYDE:  As we understand, Your Honor, a

17   limitation action limits the value of the claim to

18   the post-collision value of the vessel and freight

19   on board.  This would be a collection of vessels.

20   But if you can prove that the on-shore owner had

21   privity and knowledge, i.e., there was some

22   negligent action on the part of the on-shore owner,

23   then you can break that limitation, and you can get

24   to the corporation itself, and the limitation is no

25   longer the total of what the claimants can collect.

Judge Hope Thai Cannon
June 22, 2021

Page 52

 1    As I heard it discussed today, it didn't seem like

 2    that's what everyone was agreed upon.

 3              THE COURT:  I'm not sure that there's a

 4    dispute as to that being the basis of a limitation

 5    action or the result of a limitation action.  Mr.

 6    Remington or Mr. Geisler?

 7              MR. REMINGTON:  I would concur with the

 8    Government's assessment.  Remember, the privity and

 9    knowledge question, I believe, is not determined

10    until after liability.  You determine liability

11    first, and if there's liability, then you determine

12    question of privity and knowledge.

13              THE COURT:  I think you mean after you

14    determine whether there's negligence.

15              MR. REMINGTON:  Negligence.  I'm sorry.

16    Forgive me, Your Honor.  There's a determination of

17    negligence, then the question of privity and

18    knowledge comes up.  I think Mr. Hyde stated the law

19    correctly.  It's whether on-shore owners were

20    negligent in Sally.

21              THE COURT:  You're limiting that privity

22    and knowledge, what did they know about Sally?

23              MR. REMINGTON:  Sally.

24              THE COURT:  And what did they know about

25    the barges involved in Sally versus that knowledge

Judge Hope Thai Cannon
June 22, 2021

Page 53

1  being informed by any prior events, and then we'll

2  get to the post events, but any prior events?

3          MR. REMINGTON:  Correct.

4          THE COURT:  Mr. Blanchard, was there

5  something you wanted to say before I go to Mr.

6  Geisler?

7          MR. BLANCHARD:  Yes.  One other thing, Your

8  Honor.  A lot of these searches, when we're coming

9  up with these numbers, that's the data set based on

10  e-mails in the project server.  For the period

11  September 10th through the 30th we're agreeing to

12  provide text messages that are responsive in

13  accordance with our agreements.  Some of these

14  numbers do not include text messages for other date

15  periods.

16          It's my understanding from Mr. Geisler

17  based on prior conversations is they're going to

18  want text messages for other periods as well.  So

19  this universe could grow drastically if we're going

20  to include text messages.  We don't think text

21  messages should be included beyond any time from

22  September 10th through the 30th.  If we go beyond

23  that in this case, the universe is going to grow.  I

24  can't tell you how big it's going to grow, but it's

25  going to grow and likely substantially.

Judge Hope Thai Cannon
June 22, 2021

1              THE COURT:  That's the cell phone data,

2    right?

3              MR. BLANCHARD:  Correct.

4              THE COURT:  That's separate from this ESI.

5    Okay.

6              MR. BLANCHARD:  Well, it's part of the ESI,

7    but it's a separate issue, but it's a big separate

8    issue because it takes a lot of time to review these

9    texts, collect the information, process it.  I mean,

10   we've been working very diligently with Servient to

11   get this done, and it takes a lot of time.  Again,

12   if we go beyond the databases and the e-mails and

13   the project servers to these other periods,

14   including now, from what I'm hearing just now, the

15   first group of search terms, very broad search

16   terms, they want to take that up from October 1st to

17   the present.  We have no idea how many documents

18   that's going to add, Your Honor, but it's going to

19   add a lot.

20             THE COURT:  And I guess the burdensome

21   argument may be different in terms of running these

22   searches and reviewing the documents on the project

23   server versus reviewing these documents -- versus

24   the burdensome of pulling the cell phone data.  But

25   in terms of the relevancy arguments, Mr. Geisler,

Judge Hope Thai Cannon
June 22, 2021

Page 55

1   the reason you would want the cell phone data past

2   September 30th is the same for the project server,

3   I'm assuming?

4           MR. GEISLER:  Absolutely.  ESI is ESI, and

5   on top of that, we've already got problems that are

6   still being investigated.  But, you know, this RFP

7   has been out for over two months now, and we don't

8   have a single text unless the most recent

9   production --

10          MS. BILLHIMER:  That's not true.

11          THE COURT:  Ms. Guntner just gave you a

12   look.

13          MR. GEISLER:  That's to my knowledge.  I

14   asked counsel before this hearing, and I may have

15   gotten the response wrong, so I apologize.

16          THE COURT:  Are we ready then to go to the

17   September 30th?

18          MR. GEISLER:  Sure.

19          THE COURT:  We talked about, again, the

20   hurricane preparedness plan July 29th of 2016 to

21   whatever we have currently in the database, and then

22   we talked about the demob, remob and the cost code,

23   running that against a project server.  Ms. Guntner,

24   you wanted that against the project server?

25          MS. GUNTNER:  Yes, Your Honor, project

Judge Hope Thai Cannon
June 22, 2021

Page 56

1    server and e-mails, communications.

2              THE COURT:  Okay.  Mr. Geisler, what do you

3    want with regard to post September 30th?  You want

4    to run the entire agreed-upon search terms and the

5    project-specific search terms over a September 30th

6    through whatever they have in the system as of

7    today; is that right?

8              MR. GEISLER:  Ms. Guntner will kind of

9    address as to term.  I'll address more broadly as to

10   relevance.

11             MS. GUNTNER:  Right.  As to the specific

12   terms, I think the way Your Honor articulated is

13   correct.  We would do those initial set of terms we

14   talked about for September 10th through 30th.  We

15   would request that.  We would also request the

16   search set No. 2 terms and some iteration of the

17   word "Sally" that the parties can agree upon will

18   not be overly inclusive.

19             THE COURT:  Okay.  Are you taking the

20   position then, Ms. Guntner, that the subset 2 search

21   terms, you would want those treated the same way,

22   that they really are going to be presumptively

23   relevant?

24             MS. GUNTNER:  No, Your Honor.

25             THE COURT:  Okay.  So, Mr. Geisler, how

Judge Hope Thai Cannon
June 22, 2021

Page 57

1    is -- let's start with that before we go to Sally.

2    So how just generally are -- is anything from

3    September 30th going to be relevant?

4              MR. GEISLER:  Sure.  I mean, just broadly

5    speaking, looking back, lessons learned,

6    understanding what happened, how half of 55 barges,

7    27 barges were allowed to break free is going to be

8    relevant to what happened just factually, a factual

9    account of what Skanska understood happened and

10   especially when we have problems understanding where

11   the status is with cell phones that may or may not

12   have been destroyed or wiped.

13             Setting all that aside, we don't have that

14   information.  It's all the more important and should

15   play in to contextualize any burdensome arguments

16   because they had the obligation, they had the

17   opportunity to preserve that communication.  We've

18   already heard that there were cell phones that were

19   lost.

20             Look, at the end of the day, if I would,

21   Your Honor, it's a relevance not only to a duty of

22   reasonable care to our -- in addition to our

23   intentional tort allegations, but also it's to

24   counter their defense.  As you stated in your order

25   from this weekend, relevance is determined not only

Judge Hope Thai Cannon
June 22, 2021

Page 58

1    by our claims; it's determined by Skanska's

2    defenses.

3            Skanska is going to come to the court and

4    say, you know, this is impossible.  We didn't know

5    what -- force majeure; there's nothing we could have

6    possibly done.  Well, if Skanska is internally

7    talking amongst itself, possibly talking to vendors,

8    third parties about what they could have done, what

9    they did wrong, what they got wrong, that certainly

10   is powerful evidence in our ability to rebut the

11   claims force majeure, an act of God.

12           What they could have done to prevent

13   100-foot barges breaking free, you know, early on in

14   the storm, too, on Tuesday is totally crucial and

15   critical to our ability to rebut the claims of force

16   majeure.

17           And I would say to the extent that there's

18   a concern of high probability of including

19   attorney-client communications, work product, I know

20   we're going to talk about that, but there's a really

21   easy fix that's been sitting out for weeks now.

22   It's what is that carve-out date going to be, beyond

23   which there's not an obligation to log

24   communications between client and attorney.  We've

25   already carved out attorney to attorney.  So that

Page 59

1    claim of burdensome really isn't ripe or can't

2    really be asserted yet until the parties come to an

3    agreement of that.

4              In our first hearing together, Your Honor,

5    you made clear that it's typically set at the filing

6    of the first case.  Well, that is a position that

7    we've taken, and that case, the first complaint was

8    filed in state court November 4th, 2020, after which

9    they would not have to log any communications

10   between client and attorney, so that reduces their

11   claim of burden tremendously.

12             THE COURT:  I'm sorry.  I didn't mean to

13   interrupt you.  The burden of logging it, whatever

14   date we set that to be, they may not have to log it,

15   but I don't think that that necessarily keeps the

16   burden from reviewing it and making sure that

17   there's not privileged communications.  So the real

18   question really is, are there really going to be

19   communications that you guys are looking for in

20   terms of what we should have done, assuming that

21   what we should have done is relevant.

22             That's kind of looking in hindsight what

23   they knew and did in September 2020 may be very

24   different from what they know now.  I mean, it's a

25   lesson learned, right?  They may take actions

Judge Hope Thai Cannon
June 22, 2021

Page 60

1    different now, but that doesn't mean that those were

2    actions that they knew should have been taken back

3    at the time of Hurricane Sally.  So the burden in

4    terms of what you think will be there and what might

5    be privileged, wouldn't you expect most of those

6    type of communications, if there are any, about what

7    should have been done to be privileged?

8            MR. GEISLER:  Not necessarily.  I mean,

9    there are certainly ways that their vendor can

10   include certain e-mail -- what am I trying to say?

11           THE COURT:  Like if they look for just

12   remove the GC as a person that they would be

13   communicating with or --

14           MR. GEISLER:  Sure, communications, yeah,

15   that's right.  So if there's communications with

16   certain people, maybe it's the GC, maybe it's an

17   external counsel like Chaffe, they can very easily

18   filter those out from the production that's being

19   made.  But it doesn't take a giant leap in

20   imagination to really think that you could see

21   Skanska superintendents, project leads and on down

22   talking about what they failed to do in preparing

23   for Hurricane Sally.  Establishing what happened in

24   Hurricane Sally is absolutely crucial to rebut and

25   to counter their claim that, well, nothing could

Page 61

1    have been done.

2         THE COURT:  Do you think, though, Mr.

3    Geisler, that the further out we go from the event

4    itself, the less likely there are going to be those

5    type of communications that are really going to be

6    relevant or bear on the negligence issues here?  I

7    mean --

8         MR. GEISLER:  Yeah, I think there's a way

9    to perhaps limit it somewhat.  With regards to the

10   two storms that came after Sally, I think it's much

11   more likely.  I think that's a target-rich

12   environment.  I think there's going to be a lot more

13   communications about lessons learned, not just

14   lessons learned but factually what was known at the

15   time of Hurricane Sally and how they're going to

16   change moving forward.

17        THE COURT:  So you think for Hurricanes

18   Zeta and Delta, for example, that were in October,

19   there could potentially be some e-mail communication

20   or document indicating, we didn't move -- let's just

21   say we didn't move the barge for Sally; we could

22   have done that; let's go ahead and do that in

23   advance now or something like that; is that how you

24   think that's going to be relevant?

25        MR. GEISLER:  Yeah.  For example, I mean,

Judge Hope Thai Cannon
June 22, 2021

Page 62

1    just in our first deposition, based on hearsay from

2    what I've heard from others as I was preparing, you

3    know, the fact that there wasn't enough hands on

4    deck in order to secure the barges.  I could see

5    communications after the fact where it says, well,

6    let's not do that again.  Let's certainly not send

7    home deckhands, or let's make sure that we have

8    deckhands available in order to tie these barges

9    down, or let's make sure that we have enough ropes

10    available because we didn't have those, and we

11    weren't ready for Hurricane Sally.  Certainly that

12    would go to our rebutting.

13            THE COURT:  So for those type of

14    communications, if there are any, that would relate

15    to what they should or shouldn't have done after the

16    fact, would just running the term "Sally" on a

17    specific time period after that, would that not

18    capture those type of communications?  I mean, why

19    do we need to run all of the project terms or all of

20    the agreed-upon terms through the whole database

21    post September 30th?

22            MR. GEISLER:  Well, first off, the

23    hurricane preparedness plan was actually revised a

24    month after Sally.

25            THE COURT:  Okay.

Judge Hope Thai Cannon
June 22, 2021

Page 63

1           MR. GEISLER:  That's important.  But, yes,

2    actually, there may be a way that we can limit some

3    terms as we get further out.  But that's our

4    concern.  We do not want to give up our opportunity

5    to establish the facts, state of mind that Skanska

6    had at the time that Sally struck, the lessons

7    learned, the understanding and knowledge of

8    negligence that they had, perhaps admissions.  And

9    there are ways programatically to exclude or to

10   carve out communications between counsel and client

11   so that those wouldn't have to be reviewed.

12           THE COURT:  Was a counsel or custodian,

13   your general counsel that was in the letter for the

14   lit hold letter, is he a custodian?  Y'all didn't

15   pull him, right?

16           MS. BILLHIMER:  He is not.  Your Honor,

17   just speaking just to that particular issue in terms

18   of there is a way to filter out names and addresses,

19   but people often have conversations -- they have a

20   conversation with the general counsel's office, and

21   they're directed to go do things.  You can't filter

22   those types out.  That's a call on what they're

23   discussing.  If they're talking about the litigation

24   that was filed, you know, they're collecting

25   information for the general counsel's office.  Those

Judge Hope Thai Cannon
June 22, 2021

Page 64

1    types of things would fall -- you know, work

2    product.  They're generating something for the

3    general counsel's office.  That's our concern.

4         You start weaving all of that in on top of

5    the number of documents that there likely are, and

6    the likelihood of something coming out of it, it's

7    just the burden is going to outweigh it.  I think

8    it's going back to really the relevance issue, too.

9    You know, if you're trying to just identify these

10    circumstances where it is just speculation that they

11    might have had a conversation, it's just the burden

12    of it just far outweighs any benefit that might come

13    from us having to do it.

14         I think you hit the nail on the head when

15    you said the logging part is one thing, but we still

16    have to review all of the documents, and it takes a

17    lot of time.  So I think that's the really important

18    part.  The further we go out, the less likely

19    there's going to be something that relates to what

20    happened in September, which is what's going to be

21    on trial.

22         THE COURT:  Is there a period of time, Ms.

23    Billhimer, that you would say, okay, given Mr.

24    Geisler's argument that there may be some

25    communications, you know, particularly post,

Judge Hope Thai Cannon
June 22, 2021

Page 65

1    particularly if the hurricane plan changed in

2    October that might have some bearing on, you know,

3    what Skanska could have done or maybe even what they

4    should have done with Hurricane Sally?  Granted

5    those communications are less likely, you know,

6    today, for example, others that aren't going to be

7    privileged.

8          Is there some period of time, you know,

9    October, November -- we've got the Delta, Zeta

10   issues in October.  You don't have a -- I mean,

11   depending on when you carve out the privilege stuff,

12   I mean, you've got, I guess, a representation that

13   at least the day after or sometime really soon after

14   Sally, the GC was already in place and working on

15   things.  Maybe y'all want to go back to that date.

16   But then we've got the lit hold not being placed

17   until October, at least formally placed until

18   October.  Is there a date y'all would --

19          MS. BILLHIMER:  Your Honor, we think we've

20   already -- 9/30 we think is sufficient to gather

21   enough after the storm happened and kind of looking

22   back and the facts coming out.  That is a sufficient

23   time period.

24          THE COURT:  Okay.  Anything else that you

25   want to say on that then, Ms. Billhimer, in terms of

Page 66

1    running all of the search terms post September 30th

2    through whatever you have in your database?

3              MS. BILLHIMER:  Yeah, Your Honor, I think

4    it really is the -- it's burden, it's

5    proportionality to the case.  I think I've made all

6    of the points to it.  And we do think 9/30 was -- it

7    returned quite a few documents, and we've produced

8    those.  We don't believe that there's going to be

9    any benefit of going beyond that.

10             THE COURT:  Okay.  And then is there

11   anything that -- we may have already addressed this,

12   but anything, Mr. Geisler and Ms. Guntner, that you

13   want to talk about with regard to Sally?  So I know

14   that you believe you can maybe do something in terms

15   of the query runs that would get rid of this person

16   that might have a name Sally or other people that

17   might be named Sally.  You know, Ms. Billhimer did

18   raise the issue about there may just be some

19   project-specific stuff that referenced Sally that

20   really just relate to the construction of the bridge

21   or the, you know, fixing of the bridge versus

22   anything to do with this and how do we not make them

23   review all of those documents?

24             MS. GUNTNER:  Yes, Your Honor.  That is a

25   very fair point.  There could be people.  There

Judge Hope Thai Cannon
June 22, 2021

Page 67

1  could also be potentially irrelevant, nonresponsive

2  documents.  Claimants' counsel is more than willing

3  to meet and confer on that particular term and maybe

4  not only exclude things but include other words that

5  have to be included with something.  We're willing

6  to work on that one.

7            THE COURT:  Okay.  So are those the ESI,

8  we'll call it all ESI items that we needed to

9  address?

10            MR. REMINGTON:  Your Honor, one

11  clarification with respect to the word "Sally."  The

12  ability to filter out communications with people

13  named Sally only applies if the person is in the

14  active e-mail.

15            THE COURT:  The to and from?

16            MR. REMINGTON:  The to or from.  After that

17  it just becomes a text search.

18            THE COURT:  I think that's what Ms. Guntner

19  is saying is that there may be some way you could

20  add a term to Sally that would keep the person Sally

21  out of it.  And maybe it also depends on, you know,

22  how far we go on that search.  I mean, obviously,

23  the further you go out, the more that becomes a

24  problem.  The closer in you are to that September 30

25  date, the less, you know, that becomes a problem.

Judge Hope Thai Cannon
June 22, 2021

Page 68

 1              MS. BILLHIMER:  Your Honor, it might be

 2    helpful if claimants, if they went through what

 3    we've provided to date and they went through there

 4    to see that period through September 30th.  They're

 5    going to see a lot of documents that relate to the

 6    ongoing construction, the reconstruction of the

 7    bridge, so not related to what happened during the

 8    storm or anything, but it's called post-Sally

 9    reconstruction, Sally -- it has a name, and those

10    types of documents are included in what we've given

11    them.

12              THE COURT:  Just to make sure I'm clear, is

13    it your suggestion, Ms. Billhimer, that if they --

14    and they may have already done this because I think

15    Ms. Guntner said they prioritized what they looked

16    at.  If they just reviewed all the documents from

17    September, what's the date, 11th?

18              MS. BILLHIMER:  10th.

19              THE COURT:  10th through -- actually, when

20    was the end day?

21              MS. BILLHIMER:  9/30.

22              THE COURT:  16th?

23              MS. BILLHIMER:  9/10 to 9/30.

24              THE COURT:  What's the hurricane week?

25              MR. GEISLER:  11th through 16th was

Judge Hope Thai Cannon
June 22, 2021

Page 69

1  landfall.

2           THE COURT:  11th through 16th.  So if we

3  look at the 20th through the 30th, you're saying

4  that there's going to be a lot less relevant data in

5  the communications they're getting between 9/20 and

6  9/30; is that right?

7           MS. BILLHIMER:  Uh-huh.

8           THE COURT:  Most of those are just going to

9  relate to the construction?

10          MS. BILLHIMER:  (Nods head affirmatively.)

11          THE COURT:  I don't know if y'all have

12  looked.  What is --

13          MR. GEISLER:  We have looked.  What stands

14  out to us is the remarkable absence of discussions

15  about implementing the hurricane preparedness plan,

16  getting ready.  I mean, maybe we'll get the texts

17  and everything will be hunky-dory and we'll get the

18  full story.  But as it stands right now, we have

19  meetings every day leading up to Hurricane Sally, no

20  minutes from those meetings.

21          THE COURT:  You're talking about the WebEx

22  meetings that are mentioned in your letter?

23          MR. GEISLER:  WebEx meetings, yes, Your

24  Honor.  We have no record of those.  We have records

25  of the meeting being set and perhaps occurring, but

Judge Hope Thai Cannon
June 22, 2021

Page 70

1    we don't have records of the notes.  We see pictures

2    with Skanska's -- this is getting anecdotal, I

3    understand, but that's what we have when there's an

4    absence of information.  But you see Skanska

5    custodians in pictures with these kind of notebooks,

6    and we see just partial production of some of the

7    notebooks whereas you would think there would be a

8    lot more.

9              But that's the concern is there is such a

10   remarkable absence of discussions about what was

11   being done leading up to the storm that makes us

12   very concerned to possibly have, you know, cell

13   phones not preserved.

14             THE COURT:  From the September 10th date to

15   the September 30th date is what you're talking

16   about?

17             MR. GEISLER:  That's right, but I mean

18   specifically September 11th to September 16th,

19   landfall.  It could be just that's just the way it

20   is.  But that's why we're really scrambling coming

21   into a September trial on our ability to really

22   understand what Skanska's state of mind was in order

23   to prove -- you know, meet our burden.

24             THE COURT:  And I may be messing up some of

25   the data, but I know, Ms. Guntner, you had provided

Judge Hope Thai Cannon
June 22, 2021

Page 71

1    the Court with the amount of the communications was

2    like 924?

3         MS. GUNTNER:  I don't recall the number

4    right now.  I don't have that with me.  But Mr.

5    Geisler and I prioritized review of e-mails during

6    that time period.

7         MR. GEISLER:  I'll just say it's the first

8    thing I do.  Every production comes in, I say, how

9    many e-mails are in here, how many texts?  The past

10   couple have been admittedly, as Skanska's counsel

11   has represented to this Court, it's been a lot of

12   pictures.  The 7 and 8 there may have been a handful

13   of messages, maybe like a screenshot of a meeting

14   invite, but it's very light on communications.

15   We're getting really nervous heading towards trial

16   in order to, you know, to be prepared for trial.

17        THE COURT:  So I don't know, though, that

18   going past September 30th is necessarily going to

19   alleviate the concerns that you have with that

20   missing time period.  I mean, I would expect to see

21   less relevant e-mails as we talked about as you go

22   out.  It may very well be the issue of some of the

23   cell phone data supplanting some of the missing

24   information.  Or I think, as y'all have highlighted

25   before, there may be some preservation or spoliation

Judge Hope Thai Cannon
June 22, 2021

Page 72

1    issues that have to be addressed.  I'm just not sure

2    September 30th through December, April or May is

3    going to fill in those pieces for you.  I don't know

4    that.

5             MR. GEISLER:  It very well could, Your

6    Honor.  On top of that, I mean, counsel has kind of

7    asserted, you know, that the burden -- well, that's

8    going to be burdensome, that's going to be

9    burdensome.  Burdensome and burden is contextualized

10   in the comments to the rules.  The importance of the

11   matter at controversy is certainly one of those

12   considerations.

13            And this was a massive catastrophe to this

14   region, and the losses sustained by these claimants

15   was massive.  That has to be balanced against their

16   burden as well.  Plus, you know, I don't think

17   either side needs to just take the other side's word

18   for it that that feels burdensome or that's going to

19   be burdensome.  We've got to dig deep and get into

20   the substance.  Perhaps there needs to be

21   affidavits.  You know, I think we're -- at least our

22   side is cautious about just using the term "burden"

23   without backing it up.

24            THE COURT:  Yeah, and I mean, I think, Mr.

25   Geisler, only to that point I would say that because

Page 73

1   we've been doing this and trying to -- you know,

2   y'all spend time drafting motions.  It takes time to

3   do that.  We've been trying to do it a little more

4   informally in terms of raising the issues and having

5   it here.  So some of those things that we would

6   typically require I'm willing to accept through

7   arguments of counsel and the representations that

8   y'all make, just as in the claimants' objection to

9   the Skanska discovery where there were allegations

10  of it being burdensome and not proportional.

11          MR. GEISLER:  Totally fair.

12          THE COURT:  We didn't get any affidavits on

13  that point either.  I think just generally, you

14  know, it will depend -- I mean, we're going to get

15  some information as to the specific numbers on some

16  of these from Ms. Billhimer, so I think that will

17  help us address what is or is not burdensome.  So

18  that's the ESI issues.  And then what were the other

19  ones?

20          MR. REMINGTON:  Your Honor, can I address

21  one thing that Mr. Geisler said?

22          THE COURT:  Yes.

23          MR. REMINGTON:  Because I think it leaves

24  an unfair perception with the Court to say we're

25  concerned because there's not data, we're concerned

Judge Hope Thai Cannon
June 22, 2021

Page 74

1    because there's not more e-mails.  I think we have

2    to remember, this is a construction job.  Most of

3    the people working on this job don't have computers.

4    They don't sit at desks all day under fluorescent

5    lights like most us.  This is not 3M where you have

6    armies of people in office buildings.  This is a

7    construction site.  People don't use e-mail as a

8    tool.  They use boats, and they use welders.

9    They're going to get text messages, absolutely.

10            MS. BILLHIMER:  They got.

11            MR. REMINGTON:  They got a lot of them

12    today.  But just to say, well, we don't have e-mails

13    and we're real concerned about that leaves a

14    perception that we've done something wrong here.

15            THE COURT:  I'm not suggesting that that

16    has occurred, Mr. Remington.  I think that all

17    they're suggesting is that there are information

18    that they feel are missing.  Whether it exists or

19    not, it may not, but I think they're just raising

20    that as an issue.  A lot of that stuff they're not

21    going to be able to really drill down on until they

22    do a 30(b)(6) of an ESI rep and more depositions to

23    figure out who was doing what communications.

24            I think the other concern they have that

25    they've already raised is the discrepancy between

Judge Hope Thai Cannon
June 22, 2021

Page 75

1   the October preservation letter and, of course, the

2   interrogatory responses about the September

3   anticipation of litigation.  So I don't think

4   they're necessarily saying Skanska has destroyed or

5   failed to preserve.  It's just something I think

6   that for them kind of justifies why they feel they

7   need additional discovery as well.  So I don't think

8   that that issue is ripe, and I haven't made any

9   judgments and obviously haven't -- aren't finding

10  that you guys haven't produced something or have

11  failed to preserve something.

12          On the discovery, and I'll just let you

13  know, if we're going to go to trial in September,

14  which still looks like what y'all are doing, then I

15  think on top of the burdensome on the

16  proportionality of the case, you know, just given

17  that kind of outside parameter and what was

18  discussed with Judge Vinson kind of going into the

19  case, I just have to balance that as well because at

20  some point we have to cut off the discovery.

21          I mean, y'all have to get ready for trial.

22  They can't be continuing to look at their database

23  for documents.  You know, at some point we've got to

24  just say we're done with the document production

25  absent something else that comes up that says, you

Judge Hope Thai Cannon
June 22, 2021

Page 76

 1    know, we need to have it.  And I just want to share

 2    that with you when I'm doing these orders and what

 3    I'm trying to balance in doing them.

 4            And then so I think for -- I know you

 5    mentioned there was an issue with DeMarco.  Is that

 6    something we can address tomorrow?

 7            MS. GUNTNER:  Yes, Your Honor, happy to

 8    address the DeMarco issue.  It's really not

 9    something that needs deciding right now.  I just

10    wanted to sort of preview what was coming.

11            THE COURT:  Okay.  And then the use of

12    iPads and the file path, is that also something we

13    can address tomorrow?

14            MS. GUNTNER:  Sure.  I e-mailed counsel

15    late last night.  I don't think they've had an

16    opportunity to get back to me.  So maybe if we

17    receive a response, that might cut down on the

18    issues.

19            MS. BILLHIMER:  We're prepared to respond.

20    Actually, any employee that uses an iPad on the

21    site, their e-mail is synced with the exchange

22    server.  So the collection was done from the server,

23    so there isn't anything sitting on the iPad.

24            THE COURT:  So no -- I mean, it would not

25    be similar to a phone, I guess, that there could be

Judge Hope Thai Cannon
June 22, 2021

Page 77

1   any data stored on the iPad?

2           MS. BILLHIMER:  So not the e-mail.  I'm not

3   sure about the other -- they were specifically, I

4   believe, asking about e-mail that was on there.  But

5   that is synced up.

6           THE COURT:  E-mail is collected?

7           MS. BILLHIMER:  That's synced up to the

8   server.

9           THE COURT:  Is there anything else that

10  y'all want from that other than e-mail?

11          MS. GUNTNER:  Yes, Your Honor.  For all the

12  custodians that are listed, we would also ask for

13  text messages, photos, things like that.  So

14  although text messages might be synced with the

15  phone, if they are connected to a phone number,

16  that's something we just kind of need to know more

17  information about.  This is particularly important

18  for the individuals for whom their cell phones are

19  missing or the cell phone information has been

20  destroyed, the texts and the photos on there.

21          So we essentially asked Skanska, number

22  one, whether they had collected ESI from the iPads

23  of the custodians for which they have agreed to

24  produce documents and, number two, whether they have

25  collected ESI from the iPads of those custodians for

Judge Hope Thai Cannon
June 22, 2021

Page 78

1    whom cell phone data has been destroyed or is

2    otherwise unavailable.  We also would like to know

3    whether Skanska employees used any other similar

4    type of tablets, laptops, things of that nature.

5            THE COURT:  So if you, Ms. Billhimer, if

6    you can respond to that.  I don't know if you can do

7    it before tomorrow.  And then if there are still

8    issues once you respond to that, then we can address

9    them tomorrow.

10            MS. BILLHIMER:  Okay.

11            THE COURT:  Were those the only two new

12    issues, Ms. Guntner?

13            MS. GUNTNER:  And the file path.

14            THE COURT:  The file path.

15            MS. GUNTNER:  Right.  So we located e-mails

16    indicating that a certain file path, section 38 in

17    the server, was set up specifically for Hurricane

18    Sally, and employees were directed to save all Sally

19    information in that location.  We did find the file

20    path name in the medidata of some documents, too, so

21    we've asked Skanska to confirm whether section 38

22    was produced in its entirety as known responsive

23    materials or whether it's part of the corpus for the

24    search terms.

25            MS. BILLHIMER:  We're verifying that, Your

Page 79

 1    Honor.

 2              THE COURT:  Okay.  That sounds like it

 3    might be the project database.

 4              MS. BILLHIMER:  So I think it's part of the

 5    project server.  And just to address the known

 6    responsive, we do not believe it's all known

 7    responsive because you get into this issue of

 8    there's daily reports to FDOT on post-Sally

 9    reconstruction.

10              THE COURT:  So it wasn't limited to dealing

11    with the hurricane file path; it was just Sally

12    period?

13              MS. GUNTNER:  So the file path -- I don't

14    know the answer to your question, but the file path

15    is a long series of numbers and letters/common/new

16    PBB shared folder/038 Hurricane Sally recovery.

17              MS. BILLHIMER:  So we're looking into if

18    that's already included in the project server and if

19    the search terms were run across that.

20              THE COURT:  Okay.  So when do you think

21    you'll have that answer, Ms. Billhimer?

22              MS. BILLHIMER:  I will endeavor to find out

23    before tomorrow's hearing.

24              THE COURT:  Okay.  Perfect.  So are those

25    all of the issues we need to address?

Judge Hope Thai Cannon
June 22, 2021

Page 80

1            MS. GUNTNER:  The final issue, just kind of

2    following up on that document preservation,

3    destruction 30(b)(6), we have a working draft.  We

4    plan to get that over to Skanska tomorrow of the

5    depo notice.

6            THE COURT:  Of the ESI depo notice?

7            MS. GUNTNER:  Yes.

8            THE COURT:  Do you have an idea about when

9    you plan to take that?  It would seem that you'd

10    want it pretty soon, right, because in terms of the

11    crux of your discovery, that at least has been

12    produced.

13            MS. GUNTNER:  I would propose no later than

14    July 9th.

15            THE COURT:  Okay.

16            MR. REMINGTON:  Your Honor, could we ask

17    how long they anticipate that deposition lasting?

18            THE COURT:  If they know.

19            MS. GUNTNER:  Consistent with the Federal

20    Rules of Civil Procedure, seven hours.

21            THE COURT:  No more than seven hours.

22            MR. REMINGTON:  We'd like to request it be

23    limited to four hours, Your Honor.

24            THE COURT:  Why?

25            MR. REMINGTON:  Your Honor, when --

Judge Hope Thai Cannon
June 22, 2021

Page 81

1    everybody we pull off this project to come sit all

2    day and give a deposition, we've got to prep a day,

3    and that's a day they're not working on this bridge,

4    which is still trying to be fully open for the

5    community.  We've got four lanes open.  And it's

6    becoming -- originally Judge Vinson said he thought

7    four hours would be enough to pull over a

8    superintendent and get a deposition.

9            You know, we were under the -- had we known

10   that every deposition was going to be seven hours

11   long, we would have gone back in our 26(f) and said

12   we've got to put a limit on this because our

13   personnel are too valuable working on this bridge to

14   spend an entire day on an ESI protocol.  I mean, we

15   had a roles and responsibilities deposition that

16   went seven hours.

17           THE COURT:  So that was Mr. DeMarco's

18   deposition?

19           MR. REMINGTON:  Correct.

20           THE COURT:  He was a 30(b)(6), though?

21           MR. REMINGTON:  Correct.

22           THE COURT:  I can see that one.  And I'm

23   sure there are going to be others that won't take as

24   long.  The ESI, I think before I can limit it, I

25   mean, it would really depend on what the topics are.

Page 82

1    I mean, in my experience, the ESI person typically

2    isn't going to be your person on the project out

3    there.  So I don't know that you're going to have

4    that same concern.  It's usually going to be

5    somebody more at the corporate level that is

6    knowledgeable about the actual ins and outs of the

7    project server and the ESI, not the people that are

8    just working on the bridge.  So they said that

9    they're working on the topics, right?

10           MR. GEISLER:  We are.

11           THE COURT:  So maybe once y'all get that

12   and then you look at the topics, if there are issues

13   about it being overly broad or if at that point you

14   see it, you may not even have an objection,

15   depending on who you end up identifying.  But if you

16   do because you're going to identify the guy that

17   needs to be out on that bridge, then you can just

18   let me know, and then we'll address that.

19           MR. GEISLER:  It is late.  I would just add

20   that during our meet and confer for the Rule 26(f),

21   that was a position that was advanced by Skanska,

22   and we said no.

23           THE COURT:  The four hours?

24           MR. GEISLER:  The four hours.  We declined

25   to do that, so there was an opportunity to raise it.

Judge Hope Thai Cannon
June 22, 2021

Page 83

1          THE COURT:  I think what Mr. Remington is

2    saying is just the comment from Judge Vinson in that

3    initial August discussion.  Or I don't remember when

4    it was.  April?

5          MR. REMINGTON:  Your Honor, we're speeding

6    towards September, and if every deposition is going

7    to be seven hours, I don't see how we can be

8    prepared to try the case.

9          THE COURT:  So I think one of the things

10   that will probably -- just so you guys know for your

11   respective teams is, do y'all think -- I know we had

12   talked about the deposition schedule and needing to

13   schedule those because I find that that oftentimes

14   is the reason why we get extensions.  So when do

15   y'all think you'll be ready to talk about, here's

16   the folks that we want and, again, how much time we

17   think we need to take with those folks and have

18   calendars open and say, we're going to block off

19   these two weeks or whatever it is that we need to

20   do?  Are y'all at that point?

21         MR. GEISLER:  We're close.  I'll just speak

22   for our side.  We're close.  Once we have our kind

23   of full team here tomorrow, we'll be prepared to

24   address that.

25         THE COURT:  Okay.

Judge Hope Thai Cannon
June 22, 2021

Page 84

 1              MR. GEISLER:  Maybe not dates on calendars
 2    tomorrow but how soon.
 3              THE COURT:  But people?
 4              MR. GEISLER:  People, yes, Your Honor.  We
 5    certainly have already started prioritizing who
 6    we're looking at.
 7              THE COURT:  Okay.  So maybe people and how
 8    long, like in terms of how many days you might need
 9    to do that because you're going to run into
10    September here soon.  And then will y'all also be
11    relatively ready to address that as well tomorrow?
12              MR. REMINGTON:  Yes, Your Honor.
13              THE COURT:  So for me to know about going
14    in tomorrow, the cell phone data, did we get the
15    production over?  Are we going to have something
16    from Servient?
17              MS. BILLHIMER:  No, I think we meet that.
18    We made production, so last week of cell phone
19    photos and videos.  And then 6/21, that was
20    production 9, there was another 1,403 photos and
21    videos.  And then earlier today there was 3,255 text
22    messages and then another production later tonight.
23              THE COURT:  Okay.  And you said No. 8 was
24    how many?
25              MS. BILLHIMER:  No. 8 was 726 photos and

Page 85

1    videos.

2              THE COURT:  Okay.  And so the No. 10 were

3    the only text messages so far out of those three?

4              MS. BILLHIMER:  Yes.

5              THE COURT:  And that was 3,055?

6              MS. BILLHIMER:  3,255.  And then there's

7    another group coming later today.

8              THE COURT:  And then we can talk tomorrow

9    then about -- I think y'all were going to give us

10   updates tomorrow about the status of the missing and

11   inaccessible and all of that, right, tomorrow?

12             MR. BLANCHARD:  Your Honor, I can do that

13   now if you'd like.

14             THE COURT:  Okay.

15             MR. BLANCHARD:  Okay.  You have five

16   questions in your order, Your Honor.  The first one

17   was the date Mr. Rubio's phone was lost overboard.

18   That was May 23rd, 2021.  The question of the date

19   that Sarah Stephens and William Bender ceased

20   employment with Skanska.  Skanska records that Sarah

21   Stephens was November 20th, 2020, and William Bender

22   December 29th, 2020.  Next question was when the

23   phones were cleaned.  Those would have been the same

24   day, according to Skanska, for both Sarah Stephens

25   and William Bender.  Four, were there any backups of

Judge Hope Thai Cannon
June 22, 2021

Page 86

1   Sarah Stephens' and William Bender's phones?  The

2   answer to that is no.

3            The next question, status of getting access

4   to cell phone data from Pat McGlynn and Nick

5   Johnson.  I'll first start with Pat McGlynn.  We

6   issued a subpoena to him for his password.  It was

7   served on him last night.  He contacted us and gave

8   us a number that he thought may be the pass code.

9   We passed that along to our forensic group Exact.

10  They tried that password.  It did not work.  We are

11  following up with Mr. McGlynn.  He said he's going

12  to look into it.  Maybe there's another password

13  that he can give us.  So that's where we are with

14  Mr. McGlynn.

15           Nick Johnson.  We sent his phone to Exact

16  Data, the forensic company.  They report that that

17  phone is disabled and that there is no way any data

18  can be obtained from that phone.  So that's where we

19  are on the five questions that Your Honor relayed to

20  us in the order last week.

21           THE COURT:  Okay.  Thank you, Mr.

22  Blanchard.  Y'all probably have some issues with

23  those responses, so think about that overnight, and

24  then if you want to raise it tomorrow, we can

25  address them tomorrow.  All right.  Anything else?

Judge Hope Thai Cannon
June 22, 2021

Page 87

1   All right.  Thank you, guys.

2            (Proceedings concluded at 5:15 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Judge Hope Thai Cannon
June 22, 2021

Page 88

1                    COURT CERTIFICATE

2

3

   STATE OF FLORIDA      )
4
   COUNTY OF ESCAMBIA   )
5

6

7              I, Connie L. Morse, Stenographic Reporter,

8    certify that I was authorized to and did stenographically

9    report the foregoing proceedings, and that the transcript is

10   a true and complete record of my stenographic notes.

11

12              Dated this 24th day of June, 2021.

13

14

15   _____
     CONNIE L. MORSE
16   Stenographic Reporter

17

18

19

20

21

22

23

24

25

**0**

**0174236**
  7:21

**1**

**1**
  28:14 33:9
  35:1
**1,403**
  84:20
**10**
  85:2
**100-foot**
  58:13
**10th**
  5:7,19 8:13
  9:13,16 32:16
  35:13 46:20,
  22 53:11,22
  56:14 68:18,
  19 70:14
**11,000**
  12:20
**11th**
  68:17,25 69:2
  70:18
**12**
  21:22
**13th**
  9:16
**15th**
  7:17 9:15
  49:1
**16**
  39:24
**16th**
  68:22,25 69:2

  70:18
**17**
  26:18 39:24
  42:6
**17th**
  9:7,9 47:14
**18**
  42:6
**18th**
  47:14
**19**
  42:6
**19th**
  9:18
**1st**
  9:17 54:16

**2**

**2**
  7:25 8:1
  16:17 23:2,5
  33:9 35:1
  43:8 49:7
  56:16,20
**2,000**
  12:22
**20**
  39:25 42:14
**2016**
  22:22 23:10,
  11 26:18 27:6
  35:12 41:22
  42:6,11 43:12
  46:18 55:20
**2017**
  9:7,9,10
**2018**
  9:12,13,14

**2019**
  9:15,16
**2020**
  9:17,18,22
  10:25 26:16,
  18 28:14
  31:15 38:4
  39:21 41:23
  42:1,2,8
  59:8,23
  85:21,22
**2021**
  7:17 35:13
  85:18
**20th**
  9:12 69:3
  85:21
**22nd**
  9:10
**23rd**
  85:18
**24th**
  9:14
**26(f)**
  81:11 82:20
**27**
  57:7
**27th**
  9:17
**28th**
  9:14
**29th**
  22:22 35:12
  43:12 46:20
  55:20 85:22
**2nd**
  9:18

**3**

**3**
  28:13 30:19
  44:4
**3,055**
  85:5
**3,255**
  84:21 85:6
**30**
  67:24
**30(b)(6)**
  74:22 80:3
  81:20
**30th**
  5:7,9,19 7:10
  8:13 9:13
  10:23 21:4,10
  22:10 28:8,
  18,20 30:12
  32:16,25
  33:6,24 34:23
  35:4 46:14
  47:17 53:11,
  22 55:2,17
  56:3,5,14
  57:3 62:21
  66:1 68:4
  69:3 70:15
  71:18 72:2
**38**
  78:16,21
**3:20-cv-5980/lc**
  4:8
**3:30**
  4:1
**3M**
  74:5

**4**

**4th**
  59:8

**5**

**55**
  38:4  57:6
**5:15**
  87:2

**6**

**6**
  6:10
**6,034**
  31:2  33:16,17
**6,482**
  43:25  44:2
**6,614**
  12:24  18:18
**6/21**
  84:19

**7**

**7**
  71:12
**726**
  84:25

**8**

**8**
  12:25  71:12
  84:23,25

**9**

**9**
  84:20
**9,477**
  44:3
**9,500**
  30:22
**9/10**
  68:23
**9/20**
  69:5
**9/30**
  30:10  65:20
  66:6  68:21,23
  69:6
**924**
  71:2
**93**
  49:3
**9th**
  80:14

**A**

**ability**
  58:10,15
  67:12  70:21
**absence**
  69:14  70:4,10
**absent**
  75:25
**absolutely**
  55:4  60:24
  74:9
**accept**
  73:6
**access**

  86:3
**accordance**
  53:13
**account**
  57:9
**accounts**
  12:24
**act**
  58:11
**acted**
  40:18
**action**
  47:13  48:12,
  13  51:17,22
  52:5
**actions**
  59:25  60:2
**active**
  67:14
**actual**
  31:2  82:6
**add**
  7:19,25  9:20
  10:4,19  11:18
  33:19  47:9
  54:18,19
  67:20  82:19
**added**
  10:16  14:19
**adding**
  10:13
**addition**
  5:21  57:22
**additional**
  5:15,16  12:1,
  16  13:1  14:24
  15:10  17:1
  45:17  75:7

**Additionally**
  48:7
**address**
  4:15,19  15:13
  18:15  22:16
  35:19  56:9
  67:9  73:17,20
  76:6,8,13
  78:8  79:5,25
  82:18  83:24
  84:11  86:25
**addressed**
  35:8  66:11
  72:1
**addresses**
  63:18
**addressing**
  49:15
**admissibility**
  11:3
**admissible**
  11:4
**admissions**
  63:8
**admittedly**
  71:10
**advance**
  61:23
**advanced**
  82:21
**advances**
  38:5
**advertising**
  47:13
**advocating**
  33:22
**affect**
  13:2

**affidavits**
72:21 73:12

**affirmatively**
69:10

**afternoon**
4:5 6:9

**agree**
6:23 7:4 39:3
46:23 56:17

**agreeable**
44:6

**agreed**
5:12 10:2,13
11:8 24:22
32:17 52:2
77:23

**agreed-upon**
9:6,19 16:23
56:4 62:20

**agreeing**
53:11

**agreement**
21:19 48:15
59:3

**agreements**
45:5 53:13

**ahead**
4:17 7:9 51:2
61:22

**allegation**
36:2,6,7
37:11

**allegations**
57:23 73:9

**allege**
22:3

**alleged**
41:7

**alleging**
35:23

**alleviate**
71:19

**allowed**
57:7

**amended**
22:5

**amount**
71:1

**anchor**
36:12

**and/or**
21:24

**anecdotal**
70:2

**answers**
49:13

**anticipate**
80:17

**anticipation**
75:3

**apologize**
49:17 55:15

**appears**
23:12

**apples**
42:10

**applied**
28:23 51:9

**applies**
67:13

**approach**
45:19

**approved**
24:16

**approximately**

12:19

**April**
29:25 30:2
44:10,15,16
45:8 46:8,11
72:2 83:4

**area**
29:1

**argue**
28:7

**argued**
23:19 39:1

**argues**
51:11

**arguing**
23:24

**argument**
12:14 13:23
17:9 21:9
35:15 37:17
38:17 39:5
40:13 41:4
43:10 51:10
54:21 64:24

**arguments**
22:9 47:1
51:4 54:25
57:15 73:7

**armies**
74:6

**arose**
24:12

**art**
13:10,19

**articulated**
56:12

**asserted**
59:2 72:7

**asserting**
25:7

**assessment**
52:8

**assigned**
7:21

**assume**
15:24

**assuming**
30:7 55:3
59:20

**assure**
19:6

**attached**
8:3,20 10:3

**attachments**
30:25 31:2

**attention**
22:7

**attitude**
47:22

**attorney**
31:18 58:24,
25 59:10

**attorney-client**
46:15 47:11
58:19

**August**
9:7,8,9,13,
14,18 83:3

**aware**
42:2

—————————

**B**

**back**
4:3 10:17
11:21 15:5,6,
14 22:13 25:1

27:6 28:1,6
29:21 31:10
35:11 37:22
39:14 43:11
44:13 46:17
57:5 60:2
64:8 65:15,22
76:16 81:11

**backing**
72:23

**backups**
85:25

**backward**
29:6

**backward-
looking**
10:12

**backwards**
37:16

**balance**
75:19 76:3

**balanced**
72:15

**band**
43:16

**bandied**
48:11

**barge**
38:2 43:2
61:21

**barges**
25:14 36:13,
15,16 38:3,4
39:10 40:9
42:2,12,20,23
52:25 57:6,7
58:13 62:4,8

**Barr**
36:19 38:12

**based**
19:24 21:14
30:18 40:17
42:14 53:9,17
62:1

**basis**
52:4

**bay**
21:25 25:15

**bear**
61:6

**bearing**
65:2

**began**
4:1

**beginning**
9:1,2 22:23
23:7 32:18
33:8 34:25

**bench**
49:22

**Bender**
85:19,21,25

**Bender's**
86:1

**beneficiary**
25:8

**benefit**
64:12 66:9

**big**
20:15 53:24
54:7

**biggest**
10:14,20

**Billhimer**
4:10 6:23
7:4,6,11
10:7,11

11:11,20
12:13 14:9,
14,18 15:3,
12,22 16:6,10
17:1,25
18:11,14
20:12,13
21:8,12 28:5
29:21 30:1,
10,16,21
31:1,5,7
32:3,4 35:7
43:25 44:3,10
45:12,23
46:5,9 47:9
55:10 63:16
64:23 65:19,
25 66:3,17
68:1,13,18,
21,23 69:7,10
73:16 74:10
76:19 77:2,7
78:5,10,25
79:4,17,21,22
84:17,25
85:4,6

**Billhimer's**
22:9

**bit**
6:18

**Blanchard**
4:9,21 47:19
53:4,7 54:3,6
85:12,15
86:22

**blessed**
40:25

**block**
83:18

**blue**

43:8

**board**
51:19

**boats**
74:8

**boundaries**
48:17

**break**
51:23 57:7

**breakaway**
38:10 43:3,6

**breaking**
58:13

**bridge**
21:25 31:10
36:17,18
66:20,21 68:7
81:3,13 82:8,
17

**bring**
15:13

**broad**
29:15 47:3
54:15 82:13

**broadly**
56:9 57:4

**broke**
42:20

**broken**
26:12

**buckets**
45:25

**build**
16:6

**buildings**
74:6

**Bunge**
39:7

**burden**
12:2 31:17
39:14 47:10
59:11,13,16
60:3 64:7,11
66:4 70:23
72:7,9,16,22

**burdensome**
43:14 47:5
54:20,24
57:15 59:1
72:8,9,18,19
73:10,17
75:15

**busy**
12:5

**button**
14:21

────────────
C
────────────

**calculations**
13:3

**calendars**
83:18 84:1

**call**
4:7 7:24
16:14 49:6
63:22 67:8

**called**
68:8

**capable**
47:24

**capture**
62:18

**care**
57:22

**carve**
63:10 65:11

**carve-out**
58:22

**carved**
58:25

**case**
4:8 11:17
19:17 36:19,
21 41:14
44:19,25
50:10 53:23
59:6,7 66:5
75:16,19 83:8

**cases**
38:25 39:7

**catastrophe**
72:13

**catch**
45:3

**category**
43:8

**caught**
44:24

**cautious**
72:22

**ceased**
85:19

**cell**
12:5 54:1,24
55:1 57:11,18
70:12 71:23
77:18,19 78:1
84:14,18 86:4

**Chaffe**
60:17

**chambers**
7:18

**chance**
17:6

**change**
38:9 40:11
61:16

**changed**
39:19 65:1

**changing**
40:8

**chose**
41:19

**circumstances**
38:8,10 64:10

**Civil**
80:20

**claim**
51:17 59:1,11
60:25

**claimant**
48:16

**claimants**
4:12 7:3,19
9:20 17:3
18:16,19
21:21,22
23:18 37:7
47:24 48:5
49:5 51:25
68:2 72:14

**claimants'**
20:19 48:22
50:17 67:2
73:8

**claims**
58:1,11,15

**clarification**
67:11

**class**
47:13

**cleaned**
85:23

**clear**
18:17 32:17
59:5 68:12

**client**
58:24 59:10
63:10

**close**
83:21,22

**closer**
67:24

**code**
7:20 10:21
11:12 50:13
55:22 86:8

**coded**
18:18 19:1,9

**coding**
19:5

**collect**
51:25 54:9

**collected**
29:24 33:21
44:23 45:2,
13,15,18
77:6,22,25

**collecting**
45:22 63:24

**collection**
30:2,4 34:7
44:6 51:19
76:22

**collections**
30:17

**Collier's**
39:5

**commenced**
47:12

**comment**

83:2

**comments**
72:10

**common**
41:2 48:13

**communicating**
60:13

**communication**
57:17 61:19

**communications**
23:16 26:3
29:6 34:3
40:4 56:1
58:19,24
59:9,17,19
60:6,14,15
61:5,13 62:5,
14,18 63:10
64:25 65:5
67:12 69:5
71:1,14 74:23

**community**
81:5

**community's**
25:12

**company**
10:25 86:16

**complaint**
36:3,9 59:7

**complete**
38:13

**completely**
42:10

**complexity**
14:22

**complicated**
15:12

**comprehensive**

48:15

**computers**
74:3

**concern**
10:14,20 15:4
50:14 58:18
63:4 64:3
70:9 74:24
82:4

**concerned**
17:3 70:12
73:25 74:13

**concerns**
71:19

**concluded**
87:2

**concur**
52:7

**conditions**
42:14

**conduct**
37:5,14,15
41:13 42:5

**confer**
6:3,25 45:1
67:3 82:20

**conference**
6:19

**conferred**
8:23

**confidentiality**
8:10 16:22

**confirm**
78:21

**connected**
77:15

**connection**
37:20

**consideration**
33:20

**considerations**
72:12

**Consistent**
80:19

**constantly**
19:7

**constructing**
26:1

**construction**
25:14 36:17
38:6 40:10
66:20 68:6
69:9 74:2,7

**contacted**
86:7

**contained**
17:7 36:2

**contemplated**
27:4

**contending**
11:14

**content**
34:6

**contextual**
44:25

**contextualize**
57:15

**contextualized**
72:9

**continue**
11:18

**continuing**
75:22

**contract**
22:14 24:23
25:5,19 26:14

27:1 28:1
35:13

**contractor**
50:21

**controversy**
72:11

**conversation**
63:20 64:11

**conversations**
53:17 63:19

**convincing**
12:14

**copy**
26:24

**corporate**
82:5

**corporation**
51:24

**corpus**
78:23

**correct**
28:12 44:4
45:13,23 53:3
54:3 56:13
81:19,21

**correctly**
51:5,7 52:19

**correspondence**
31:9

**cost**
7:20 10:21
11:12 50:12
55:22

**counsel**
13:15 14:20
32:6,9 48:22
55:14 60:17
63:10,12,13

67:2 71:10
72:6 73:7
76:14

**counsel's**
13:23 63:20,
25 64:3

**count**
31:2

**counter**
57:24 60:25

**couple**
6:7 49:4
71:10

**court**
4:2,3,5,21,25
5:4,10,20
6:4,15,22
7:1,5,15 8:5,
14,18 9:5,8,
11,23 10:7
11:6 12:11
14:7,11,24
15:9,14,21,24
16:9,16,25
18:12 19:7,
10,23 20:11,
14 21:8,13
22:12 23:1,4,
18 24:3,7,15
25:16 26:2,
13,23 27:9,
15,20,25
28:3,5,11,13,
24 29:16,24
30:5,11,20,24
31:3,6,23
32:2,18,21
33:9,11,25
34:5,12,15
35:7,20,21
36:20 37:13

38:12 40:1,21
41:4,24 42:4,
19 43:10,18,
22 44:2,8,11
45:5,10,20
46:3,6,16,25
47:5,7,15
48:19 49:21
51:2,6,7
52:3,13,21,24
53:4 54:1,4,
20 55:11,16,
19 56:2,19,25
58:3 59:8,12
60:11 61:2,17
62:13,25
63:12 64:22
65:24 66:10
67:7,15,18
68:12,19,22,
24 69:2,8,11,
21 70:14,24
71:1,11,17
72:24 73:12,
22,24 74:15
76:11,24
77:6,9 78:5,
11,14 79:2,
10,20,24
80:6,8,15,18,
21,24 81:17,
20,22 82:11,
23 83:1,9,25
84:3,7,13,23
85:2,5,8,14
86:21

**Court's**
37:4

**courtroom**
48:22

**cover**

9:24

**covers**
28:4

**create**
24:11

**created**
23:11 24:13
36:1 38:1

**credence**
20:19

**creep**
10:14

**criteria**
48:25

**critical**
17:5,6 58:15

**crucial**
58:14 60:24

**crux**
80:11

**current**
35:16 36:5

**custodial**
8:17 30:17
33:21 46:1

**custodian**
11:13 34:1,11
44:17 63:12,
14

**custodians**
15:5 29:19,22
30:13 45:21,
22 46:7,12
49:8 70:5
77:12,23,25

**cut**
75:20 76:17

**cutoff**

28:22,25
33:13 34:17,
18 35:5 45:24
46:3

**cuts**
10:16

---

**D**

**daily**
79:8

**data**
12:5,18 14:5
15:17 18:20
30:1,18 45:12
53:9 54:1,24
55:1 69:4
70:25 71:23
73:25 77:1
78:1 84:14
86:4,16,17

**database**
15:1 16:2
18:7 30:7
34:22 37:21
55:21 62:20
66:2 75:22
79:3

**databases**
11:14 54:12

**date**
5:17 8:11,23
9:20,25 11:8,
12 15:6,7
16:8 21:5,6
22:14,22,25
26:15 27:1
28:1,22,25
29:17 34:7
35:13 45:24
46:4 49:1,8

51:4 53:14
58:22 59:14
65:15,18
67:25 68:3,17
70:14,15
85:17,18

**dates**
8:25 9:7,19
18:21 21:19,
20 22:4 30:3
32:19 84:1

**day**
36:23 38:1
46:22 57:20
65:13 68:20
69:19 74:4
81:2,3,14
85:24

**days**
84:8

**deal**
39:4

**dealing**
21:10 48:23
79:10

**dealt**
43:5

**death**
10:15

**December**
30:2 44:10,
14,15,18
45:7,21 46:8,
11,23 72:2
85:22

**decide**
29:4

**deciding**
76:9

**decisions**
38:15,16 42:8

**deck**
62:4

**deckhands**
62:7,8

**declined**
82:24

**dedup**
14:13,14 15:8
18:7

**deduplicated**
14:1

**deduplication**
14:7

**dedupping**
18:8

**deep**
72:19

**deeply**
48:2

**defense**
57:24

**defenses**
58:2

**deficient**
24:1,5

**degree**
14:22

**Delta**
5:17 7:22
9:21,23,25
21:11,14 28:8
33:1 37:18
61:18 65:9

**delved**
48:2

**Demarco**
6:13 76:5,8

**Demarco's**
81:17

**demob**
7:20 10:4,21
11:12 13:9
16:13 19:20
22:3 50:12,
21,23 55:22

**demobilization**
13:9 48:9

**demobs**
50:21

**Department**
25:6

**depend**
73:14 81:25

**depending**
65:11 82:15

**depends**
6:17 67:21

**depo**
80:5,6

**depose**
34:2

**deposition**
6:14 62:1
80:17 81:2,8,
10,15,18
83:6,12

**depositions**
74:22

**design**
42:11

**desk**
49:19

**desks**

74:4

**destroyed**
57:12 75:4
77:20 78:1

**destruction**
80:3

**determination**
16:5 45:11
52:16

**determine**
14:16 17:12
28:19 52:10,
11,14

**determined**
7:2 13:5 52:9
57:25 58:1

**determining**
14:2 37:5

**development**
25:1

**difference**
41:11

**difficult**
29:4

**dig**
72:19

**diligently**
54:10

**directed**
63:21 78:18

**disabled**
86:17

**disagree**
6:24 44:12
48:7

**disagreeing**
20:21

**disagreement**
  50:7

**discloses**
  39:22

**discovery**
  38:14 43:3
  49:24 73:9
  75:7,12,20
  80:11

**discrepancy**
  74:25

**discuss**
  5:24,25 7:7
  22:10,24
  25:23 35:5
  50:10

**discussed**
  21:19 52:1
  75:18

**discussing**
  22:21 63:23

**discussion**
  46:18 83:3

**discussions**
  23:15 69:14
  70:10

**dismiss**
  36:9

**dispute**
  20:24 22:13
  52:4

**docs**
  43:21 44:2

**doctrine**
  25:8 29:12

**document**
  6:5 14:2
  15:23 19:9
  27:10,13

31:25 37:25
61:20 75:24
80:2

**documents**
  5:8 12:16,20,
  21 13:6,7,8,
  19,25 16:3,21
  17:5,6,7,20,
  22 18:4,21,24
  19:4,14,16,20
  20:3,16,17
  23:8,16 27:11
  28:19 30:23
  31:2,8,13
  32:11 33:16
  34:20 35:25
  43:20 49:11
  50:19 54:17,
  22,23 64:5,16
  66:7,23 67:2
  68:5,10,16
  75:23 77:24
  78:20

**door**
  10:18

**doubt**
  43:15

**downloaded**
  29:19

**draft**
  80:3

**drafted**
  26:19

**drafting**
  35:16 73:2

**dragging**
  31:13

**drastically**
  53:19

**drew**
  22:6

**drill**
  25:23 74:21

**duplicated**
  13:24

**duplication**
  13:24

**duplicative**
  11:22 12:8

**duties**
  26:10

**duty**
  24:11 41:2
  57:21

_____

         **E**
_____

**e-mail**
  30:25 31:1
  60:10 61:19
  67:14 74:7
  76:21 77:2,4,
  6,10

**e-mailed**
  76:14

**e-mails**
  18:21 44:22
  46:1 53:10
  54:12 56:1
  71:5,9,21
  74:1,12 78:15

**earlier**
  9:20 84:21

**earliest**
  18:24

**early**
  58:13

**easily**

60:17

**easy**
  58:21

**effect**
  38:4

**effort**
  11:24

**efforts**
  13:25

**employee**
  76:20

**employees**
  78:3,18

**employment**
  85:20

**end**
  8:3,25 9:1
  14:25 18:9
  20:10 22:25
  29:17 50:2
  57:20 68:20
  82:15

**endeavor**
  79:22

**endless**
  29:7

**ends**
  9:2

**engage**
  45:1

**ensure**
  19:8

**entire**
  14:25 16:1
  18:7 33:5
  56:4 81:14

**entirety**
  78:22

Judge Hope Thai Cannon
June 22, 2021

10

environment
  61:12

equipment
  21:24

ESI
  4:7 5:6,22
  7:1 14:1 20:4
  47:23 48:17
  54:4,6 55:4
  67:7,8 73:18
  74:22 77:22,
  25 80:6
  81:14,24
  82:1,7

essentially
  8:22 22:24
  28:17 37:17
  77:21

establish
  63:5

establishing
  51:13 60:23

evening
  6:9

event
  39:9 61:3

events
  21:23 24:24
  29:7 51:11
  53:1,2

everyday
  31:9

evidence
  11:5 40:24
  58:10

evidenced
  24:24

exact
  35:3 86:9,15

exchange
  76:21

exclude
  15:17 32:10
  63:9 67:4

Excuse
  4:20 10:6
  22:20

existed
  26:14 37:20

exists
  74:18

exonerated
  39:7 41:2

exoneration
  36:10 37:6
  38:25 40:14

expanded
  50:9

expect
  27:7 60:5
  71:20

expecting
  37:3

experience
  82:1

expertise
  29:2

explain
  15:16

explained
  13:16

explaining
  18:17

extensions
  83:14

extent
  58:17

external
  60:17

extra
  14:19,22

extract
  16:7

extreme
  44:22

extremely
  12:5

_____

F

face
  40:19

fact
  62:3,5,16

facts
  63:5 65:22

factual
  57:8

factually
  57:8 61:14

failed
  41:8,9 60:22
  75:5,11

failing
  36:4

failure
  36:10 37:8

fair
  66:25 73:11

fall
  29:11 64:1

families
  30:22,24

FDOT
  24:16 31:13

40:24,25 79:8

Federal
  80:19

feel
  18:23 74:18
  75:6

feels
  72:18

ferret
  31:18

field
  49:8

figure
  15:14 74:23

file
  6:11 76:12
  78:13,14,16,
  19 79:11,13,
  14

filed
  59:8 63:24

files
  33:21

filing
  59:5

fill
  72:3

filter
  60:18 63:18,
  21 67:12

final
  80:1

finally
  6:13

find
  34:2 37:22
  40:21 43:20
  78:19 79:22

83:13

**finding**
17:4 75:9

**fine**
7:12

**fix**
58:21

**fixing**
66:21

**Florida**
25:5

**fluorescent**
74:4

**folder/038**
79:16

**folks**
6:18 42:8
83:16,17

**follow**
36:4,22 37:8
41:1,8,9

**force**
58:5,11,15

**Forcing**
37:21

**forensic**
86:9,16

**Forgive**
52:16

**formally**
65:17

**format**
48:3

**forward**
10:23 37:18
61:16

**found**
23:11 26:17,

20 49:11

**frame**
7:10 23:5

**frankly**
13:20

**free**
57:7 58:13

**freight**
51:18

**full**
19:2 69:18
83:23

**fully**
8:9 16:22
19:1 81:4

**Fulton's**
44:22

---

**G**

**gather**
65:20

**gave**
35:9 55:11
86:7

**GC**
60:12,16
65:14

**Geisler**
4:12 5:9 19:3
22:7 24:14,
15,20 25:22
26:7 27:4
28:1,2,4,7,9,
12 29:3 30:15
33:11,19
34:4,6,13
44:11,21 45:9
52:6 53:6,16
54:25 55:4,

13,18 56:2,8,
25 57:4 60:8,
14 61:3,8,25
62:22 63:1
66:12 68:25
69:13,23
70:17 71:5,7
72:5,25
73:11,21
82:10,19,24
83:21 84:1,4

**Geisler's**
29:1 64:24

**general**
63:13,20,25
64:3

**generally**
28:10,19,21
32:23 57:2
73:13

**generating**
64:2

**giant**
60:19

**give**
19:18 26:24
63:4 81:2
85:9 86:13

**God**
58:11

**good**
4:5 19:5
34:10

**Government**
50:6

**Government's**
50:14 52:8

**Granted**
65:4

**great**
20:11

**greater**
17:22

**ground**
26:11 38:9
42:15

**group**
54:15 85:7
86:9

**grow**
53:19,23,24,
25

**guess**
4:6 6:17
7:19,24 10:8
12:17 16:16
19:11 21:4
26:15 28:7
38:12 41:4
54:20 65:12
76:25

**guessing**
29:18

**Guntner**
4:12,13,16
5:5,11,21
6:5,21,23
7:17 8:2,6,
16,19 9:6,9,
12 10:1,9
11:9 12:11,23
16:12,20 17:2
18:15 19:19
20:1 21:6,16
22:18 23:3,6
24:2,4,10
26:17 27:5,
10,12,17,24
28:15 29:1

31:21,24 32:6
33:7,10
34:15,24
46:21 50:4
55:11,23,25
56:8,11,20,24
66:12,24
67:18 68:15
70:25 71:3
76:7,14 77:11
78:12,13,15
79:13 80:1,7,
13,19

**Guntner's**
48:24 50:13

**guy**
82:16

**guys**
7:18 11:8
12:18 17:17
18:12 29:19
59:19 75:10
83:10 87:1

---

**H**

---

**half**
57:6

**hand**
22:8

**handful**
71:12

**handle**
50:20

**hands**
47:24 62:3

**happened**
31:14 41:18
42:6 45:19
57:6,8,9

60:23 64:20
65:21 68:7

**happy**
5:25 20:6
32:10 76:7

**hard**
19:11

**head**
64:14 69:10

**heading**
71:15

**hear**
17:2

**heard**
13:20 35:22
52:1 57:18
62:2

**hearing**
4:6 36:21
54:14 55:14
59:4 79:23

**hearsay**
62:1

**helpful**
16:25 19:11
68:2

**high**
58:18

**highlighted**
71:24

**highly**
13:7,18

**hindsight**
59:22

**hit**
27:12 43:8
64:14

**hits**

12:3 31:25
32:9

**hold**
63:14 65:16

**home**
62:7

**Honor**
4:16,20 5:5
7:4 8:2 10:1,
6,11,14,24
11:20 12:23
16:20 18:15
19:19 21:16
22:7,18 23:3,
6 24:2,10
26:17 27:17
28:15 31:7,21
33:10 34:14,
24 35:18 36:5
39:20 40:16
42:9 43:1,16
45:13 46:21
47:6,8,9,20,
21 48:14
49:16 50:16
51:16 52:16
53:8 54:18
55:25 56:12,
24 57:21 59:4
63:16 65:19
66:3,24 67:10
68:1 69:24
72:6 73:20
76:7 77:11
79:1 80:16,
23,25 83:5
84:4,12
85:12,16
86:19

**Honor's**
5:23

**honorable**
4:3

**hours**
80:20,21,23
81:7,10,16
82:23,24 83:7

**hunky-dory**
69:17

**hurricane**
6:12 22:1
23:9,10,13,
14,15,22,23,
25 24:1,4,8
25:2,17,18,20
26:5,8,14,15,
25 27:6 33:3,
4 35:10,11,
14,25 36:5,6,
11,16,22,25
37:9,21,23
38:1,3,18
39:11,18,21
40:3,19,22
41:8,10,15,19
42:23 43:11
46:19 48:23
49:6,7 51:11,
12,14 55:20
60:3,23,24
61:15 62:11,
23 65:1,4
68:24 69:15,
19 78:17
79:11,16

**hurricanes**
5:17 8:24
9:21 24:25
28:8 42:21
61:17

**Hyde**
4:20,22 5:1,3

47:8,18,20
48:20 49:16
50:3,15 51:3,
16 52:18

**hypothetical**
42:13

---

**I**

**i.e.**
51:21

**idea**
54:17 80:8

**identification**
10:4

**identified**
11:9

**identify**
12:12 16:2
21:23 64:9
82:16

**identifying**
82:15

**ignorance**
49:17

**imagination**
60:20

**implement**
36:11

**implemented**
36:15

**implementing**
69:15

**importance**
72:10

**important**
45:3 46:14
49:23 57:14
63:1 64:17

77:17

**impossible**
58:4

**in-person**
36:20

**inaccessible**
85:11

**inception**
27:1

**incidences**
38:16

**include**
5:16 13:8,21
15:1 20:2
53:14,20
60:10 67:4

**included**
19:20 53:21
67:5 68:10
79:18

**includes**
21:18 49:10

**including**
24:25 54:14
58:18

**inclusive**
56:18

**incorporated**
19:17

**incorrect**
45:14

**indicating**
40:8 61:20
78:16

**individuals**
77:18

**industry**
50:15,18

**inform**
42:4

**informally**
73:4

**information**
6:12 12:8
17:2,23 20:22
31:12 32:3
33:14 49:10
54:9 57:14
63:25 70:4
71:24 73:15
74:17 77:17,
19 78:19

**informed**
53:1

**informs**
42:7,13

**initial**
8:12 22:4
32:16 33:7
34:25 56:13
83:3

**initially**
22:2,6

**ins**
82:6

**instances**
20:8

**intentional**
57:23

**internally**
58:6

**interrogatories**
22:5

**interrogatory**
21:22 75:2

**interrupt**
4:23 5:3

59:13

**investigated**
55:6

**invite**
71:14

**involve**
13:24

**involved**
22:21 37:10
39:23,24
44:19 50:23
52:25

**involves**
5:8

**involving**
16:3

**ipad**
76:20,23 77:1

**ipads**
6:8,10 76:12
77:22,25

**irrelevance**
47:10

**irrelevant**
32:8,11 43:12
50:25 51:12
67:1

**issue**
5:18 6:6
10:22 16:11
20:15 22:7,16
24:11 28:16
37:12 38:14
39:4 42:17,23
46:13 47:7
49:14,22 50:7
54:7,8 63:17
64:8 66:18
71:22 74:20

75:8 76:5,8
79:7 80:1

**issued**
86:6

**issues**
4:7,14,17
5:6,13 11:1
28:17 31:14
35:19 36:11
42:20 49:23
61:6 65:10
72:1 73:4,18
76:18 78:8,12
79:25 82:12
86:22

**items**
67:8

**iteration**
38:20 56:16

**iterations**
37:24

———————

**J**

**job**
74:2,3

**Johnson**
86:5,15

**joining**
5:1

**Judge**
36:20 39:5
75:18 81:6
83:2

**judgments**
75:9

**July**
22:14,22
35:12 43:11,
12 46:20

55:20 80:14
**June**
7:17 9:13,17
22:23 35:13
46:20,22 49:1
**justifies**
75:6

———————

**K**

**Kelly**
48:25 49:18
50:4
**key**
18:24 49:9
**kind**
7:12 10:12
15:4,22 17:16
18:1 22:8
29:4 31:18
32:8 33:13
34:11 39:1
41:16 45:19
56:8 59:22
65:21 70:5
72:6 75:6,17,
18 77:16 80:1
83:22
**knew**
4:25 27:21
33:14 39:22
41:17,22,23
42:1 59:23
60:2
**knowledge**
25:9 26:5,10
35:16 38:21
39:15,16
40:13 41:19,
22 42:1,7,16,

17,24 48:10,
11 51:13,14,
21 52:9,12,
18,22,25
55:13 63:7
**knowledgeable**
82:6

———————

**L**

**lady**
32:11
**laid**
5:15 48:25
49:14
**laissez-faire**
47:22
**landfall**
69:1 70:19
**lanes**
81:5
**laptops**
78:4
**lasting**
80:17
**late**
76:15 82:19
**law**
41:2 52:18
**lawsuits**
47:13
**lawyers**
47:12
**layer**
14:22
**lays**
49:4
**lead**
42:22

**leading**
69:19 70:11
**leads**
19:14 60:21
**leap**
60:19
**learned**
13:11,17 57:5
59:25 61:13,
14 63:7
**leaves**
43:13 73:23
74:13
**lend**
20:18
**lesson**
59:25
**lessons**
57:5 61:13,14
63:6
**letter**
5:15 7:17
48:24 49:2
50:13 63:13,
14 69:22 75:1
**letters/common/
new**
79:15
**level**
82:5
**liability**
36:14,24 37:6
38:23 39:12
52:10,11
**liberally**
50:19
**light**
37:3 71:14

lights
  74:5

likelihood
  64:6

limit
  61:9 63:2
  81:12,24

limitation
  38:22 39:12
  48:5,12,13
  51:17,23,24
  52:4,5

limited
  34:11 37:2
  40:3 41:14
  79:10 80:23

limiting
  25:23 52:21

limits
  51:17

lines
  42:20

list
  4:17

listed
  77:12

lit
  63:14 65:16

litigation
  45:15 47:12
  63:23 75:3

living
  37:25

loaded
  13:1

locate
  23:13

located

6:11 78:15

location
  78:19

log
  58:23 59:9,14

logging
  59:13 64:15

long
  18:2,6 79:15
  80:17 81:11,
  24 84:8

longer
  39:25 51:25

looked
  31:7 68:15
  69:12,13

losses
  72:14

lost
  57:19 85:17

lot
  11:23 20:3
  31:8,9,13
  47:24,25 48:7
  53:8 54:8,11,
  19 61:12
  64:17 68:5
  69:4 70:8
  71:11 74:11,
  20

loud
  8:21

——————————

              M

——————————

made
  11:3 13:1
  16:8 24:9
  25:2 32:17
  38:15,16,19

40:5 42:8
47:1 59:5
60:19 66:5
75:8 84:18

magnitude
  38:7

maintained
  36:23

majeure
  58:5,11,16

make
  6:25 11:6
  18:17,22
  31:17 41:10
  45:10 51:7
  62:7,9 66:22
  68:12 73:8

makes
  7:13 17:24
  27:21 70:11

making
  12:5 48:22
  59:16

manage
  20:25

management
  24:24

manner
  15:23 36:14

manual
  14:4

manually
  19:4

maritime
  50:22

massive
  72:13,15

master

36:3,7 48:16

material
  11:25

materials
  20:5 78:23

matter
  16:4 20:25
  23:24 72:11

matters
  6:7,16 7:13

Mcglynn
  86:4,5,11,14

measures
  11:4

medidata
  78:20

meet
  6:3 45:1 67:3
  70:23 82:20
  84:17

meeting
  69:25 71:13

meetings
  69:19,20,22,
  23

mentioned
  9:19 22:15
  37:23 69:22
  76:5

messages
  53:12,14,18,
  20,21 71:13
  74:9 77:13,14
  84:22 85:3

messing
  70:24

met
  8:23

**methodology**
5:12 7:12
8:7,20 10:3
11:10 13:22
14:10 16:24
21:17 22:19,
20,21 35:4

**mind**
10:6 63:5
70:22

**minute**
43:7

**minutes**
69:20

**missing**
71:20,23
74:18 77:19
85:10

**mob**
50:20,22

**mobilization**
48:9

**mobs**
50:21

**month**
62:24

**months**
55:7

**MOORE**
14:16

**motion**
36:9

**motions**
73:2

**move**
61:20,21

**moving**
61:16

**multiple**
9:2

___

**N**

**nail**
64:14

**named**
32:7,11 66:17
67:13

**names**
63:18

**narrow**
29:8

**nature**
37:2 78:4

**necessarily**
14:4 15:18
17:21 20:21
29:12 38:18
40:20 59:15
60:8 71:18
75:4

**needed**
17:13 36:13
39:18 45:17
67:8

**needing**
83:12

**negative**
19:12

**negligence**
34:3 37:9,10
39:2,13
40:14,17,18
41:6 52:14,
15,17 61:6
63:8

**negligent**
23:21 35:24

36:4 39:6
51:22 52:20

**negligently**
36:8,25 37:12

**nervous**
71:15

**newer**
6:17

**Nick**
86:4,15

**night**
76:15 86:7

**No.2**
44:1

**nods**
69:10

**nonprivileged**
29:10

**nonresponsive**
16:11 20:4
32:9 67:1

**nonwork**
29:10

**notebooks**
70:5,7

**notes**
70:1

**notice**
19:21 25:9
35:15 80:5,6

**November**
9:16 59:8
65:9 85:21

**number**
5:14 10:5
13:25 15:15
17:22 18:25
23:8 28:21,22

64:5 71:3
77:15,21,24
86:8

**numbers**
12:3 27:18
30:21 53:9,14
73:15 79:15

**numerous**
43:5

___

**O**

**objection**
10:8 11:11
32:22 73:8
82:14

**obligation**
24:23 25:3,
10,13,25
57:16 58:23

**obligations**
26:9

**obtained**
86:18

**occurred**
9:21 21:15
26:19 42:5
74:16

**occurring**
69:25

**October**
9:10,15,22
10:25 21:15
27:6 28:14
54:16 61:18
65:2,9,10,17,
18 75:1

**office**
63:20,25 64:3
74:6

Judge Hope Thai Cannon
June 22, 2021

17

OFFICER
4:2

official
13:15

oftentimes
83:13

older
6:16

oldest
7:13

on-shore
51:20,22
52:19

ongoing
68:6

open
81:4,5 83:18

opening
10:18

operations
13:13

opportunity
35:9 57:17
63:4 76:16
82:25

oranges
42:10

order
4:18 5:22 6:2
7:1,7 38:24
49:24 57:24
62:4,8 70:22
71:16 85:16
86:20

orders
76:2

origin
23:14

original
12:21

originally
81:6

outlined
50:13

outs
82:6

outstanding
4:14

outweigh
64:7

outweighs
64:12

overboard
85:17

overly
47:3 56:18
82:13

overnight
86:23

overwhelmed
50:25

owed
25:4

owner
51:20,22

owners
52:19

---

**P**

p.m.
4:1 87:2

pages
49:3,4

papers
8:3

parameter
75:17

part
14:9 22:19
51:22 54:6
64:15,18
78:23 79:4

partial
70:6

parties
5:12 6:2 8:22
40:6 56:17
58:8 59:2

party
29:9 51:5

pass
86:8

passed
86:9

password
86:6,10,12

past
10:23 21:9,18
38:15 47:16
55:1 71:9,18

Pat
86:4,5

path
6:11 40:12
76:12 78:13,
14,16,20
79:11,13,14

PBB
79:16

Pensacola
21:25

people
39:23 60:16
63:19 66:16,

25 67:12
74:3,6,7 82:7
84:3,4,7

perception
73:24 74:14

Perfect
79:24

period
8:18,19
34:12,13
53:10 62:17
64:22 65:8,23
68:4 71:6,20
79:12

periods
10:22 21:15
53:15,18
54:13

person
45:2 60:12
66:15 67:13,
20 82:1,2

personnel
81:13

petitioner
48:6

phased
45:19

phone
4:9 12:5
54:1,24 55:1
71:23 76:25
77:15,19 78:1
84:14,18
85:17 86:4,
15,17,18

phones
57:11,18
70:13 77:18

85:23 86:1

**photos**
77:13,20
84:19,20,25

**physically**
19:9

**pick**
17:8

**picked**
19:23

**pictures**
70:1,5 71:12

**piece**
26:11 34:3
38:22 39:2,12
40:15,17 41:7

**pieces**
72:3

**place**
23:22,25
25:18,20
26:6,8,11,25
35:17 65:14

**plan**
23:10,13,14,
15,22 24:1,5,
6,12,13,16,
17,24 25:2,
20,25 26:1,5,
8 35:10,17,25
36:1,5,7,8,
11,16,22,25
37:9,10,11,
20,23,24
38:1,3,5,6,8,
18 39:21,24,
25 40:7,8,20,
23,25 41:1,9,
10,15 42:2,14
43:11 48:24

55:20 62:23
65:1 69:15
80:4,9

**plans**
23:24 24:8,19
25:17,18
26:3,14,17,25
27:6 35:14
39:18 40:4
48:2 51:12

**play**
57:15

**pleading**
36:7 37:11

**point**
11:17 21:3
29:4 66:25
72:25 73:13
75:20,23
82:13 83:20

**points**
66:6

**position**
10:24 20:19
23:19 24:17
37:8 56:20
59:6 82:21

**positions**
11:7

**possibly**
58:6,7 70:12

**post**
22:10 28:7,
11,18,19
32:20 33:6,23
46:14 53:2
56:3 62:21
64:25 66:1

**post-collision**

51:18

**post-sally**
31:11,19 68:8
79:8

**post-september**
32:14,25

**potentially**
15:3 61:19
67:1

**powerful**
58:10

**pragmatic**
33:20

**pre**
46:17

**prefer**
4:18

**prep**
81:2

**prepare**
39:17 41:3

**prepared**
5:9 22:8
35:24 36:8,25
37:12 71:16
76:19 83:8,23

**preparedness**
23:9 26:25
33:4 35:10,
12,14 36:11,
16,22 40:3,
20,23 41:15
46:19 48:23
49:7 51:12
55:20 62:23
69:15

**preparing**
14:5 37:15
60:22 62:2

**present**
22:23 29:18,
20 45:4 54:17

**presented**
48:3

**preservation**
6:5 71:25
75:1 80:2

**preserve**
57:17 75:5,11

**preserved**
70:13

**presumptively**
56:22

**pretty**
20:18 80:10

**prevent**
58:12

**prevented**
39:10

**preview**
76:10

**previously**
10:13 39:16

**prior**
6:1 8:24
10:21 14:7,8,
14 21:25
23:23 27:16
42:18 49:24
51:11 53:1,2,
17

**prioritize**
20:25

**prioritized**
68:15 71:5

**prioritizing**
18:20 32:19

84:5

**privilege**
8:10 16:19,22
29:11 46:15
47:11 65:11

**privileged**
59:17 60:5,7
65:7

**privity**
38:21 39:14,
15 40:13
41:18,22,25
42:16,17
48:10,11
51:3,13,14,21
52:8,12,17,21

**probability**
58:18

**problem**
67:24,25

**problems**
55:5 57:10

**Procedure**
80:20

**proceedings**
4:1 87:2

**process**
8:8,12 13:12
14:1,3,4,19,
23 15:16 54:9

**produce**
11:15 77:24

**produced**
14:3 15:2,8,
11,20 16:1,4,
14 18:4,8
27:2,7 33:15
66:7 75:10
78:22 80:12

**product**
29:11 46:15
47:11 58:19
64:2

**production**
5:6,8,18
12:24,25 14:6
18:13 19:6
20:4 21:1
23:11 26:21
27:16 43:23
45:4 55:9
60:18 70:6
71:8 75:24
84:15,18,20,
22

**productions**
13:1 14:15
16:7 19:4
45:6

**program**
16:5

**programatic**
14:3,21

**programatically**
63:9

**progress**
31:10

**progresses**
40:9

**project**
8:16 11:13
15:6 22:23
23:7 25:4,11
29:22 38:2,5,
7 40:9 42:11
45:24 46:1,4
50:23 53:10
54:13,22
55:2,23,24,25

60:21 62:19
79:3,5,18
81:1 82:2,7

**project-
specific**
7:24 56:5
66:19

**properly**
36:12

**properties**
25:12

**proportional**
11:16 12:2,10
73:10

**proportionality**
47:25 48:1
66:5 75:16

**proposal**
28:24 48:21

**propose**
9:20 10:4
21:16 80:13

**proposed**
22:22 27:14,
18 46:21

**proposing**
16:21 49:6

**protect**
25:11

**protocol**
7:1 14:1
81:14

**protocols**
47:23 48:17,
18

**prove**
19:11 51:20
70:23

**provide**
20:22 53:12

**provided**
12:19 30:4,16
31:12 32:1
43:4 46:6
68:3 70:25

**public**
20:5

**pull**
30:12 50:19
63:15 81:1,7

**pulled**
11:23 28:20
34:21 44:15,
16,18 46:7,8

**pulling**
32:8 44:13
45:7 54:24

**push**
14:20

**pushed**
12:6

**put**
37:13 81:12

**putting**
31:10,17

——————

**Q**

**queries**
21:14

**query**
16:6 32:13
37:21 66:15

**question**
13:4 26:22
34:16,20
40:18,21

Judge Hope Thai Cannon
June 22, 2021

20

49:13 52:9,
12,17 59:18
79:14 85:18,
22 86:3

**questions**
85:16 86:19

**quote**
36:21

**quoting**
13:15

---

R

---

**raise**
6:8 66:18
82:25 86:24

**raised**
74:25

**raising**
73:4 74:19

**ran**
14:24 16:1
19:25 30:5,11
33:8

**range**
22:22 49:8

**ranges**
5:17 8:11,23
9:21,25
10:12,19
11:8,9,12
15:6,7 21:6

**reach**
21:19

**read**
8:21 9:3 21:7
41:7

**reading**
43:13

**ready**
33:20 55:16
62:11 69:16
75:21 83:15
84:11

**real**
59:17 74:13

**reason**
21:21 23:6
33:24 34:1,10
55:1 83:14

**reasonable**
40:23 41:12,
13 57:22

**rebut**
58:10,15
60:24

**rebutting**
62:12

**recall**
71:3

**receive**
76:17

**recent**
55:8

**recently**
12:25

**recollect**
29:22

**recollecting**
33:23

**reconstruction**
31:20 68:6,9
79:9

**record**
9:4 21:7
38:13 44:5
45:14 69:24

**records**
20:5 69:24
70:1 85:20

**recovery**
79:16

**red-line**
5:25

**reduces**
59:10

**referenced**
21:9 66:19

**reflect**
19:2

**reflects**
19:1

**regard**
11:7 26:3
38:11 42:6
47:16 48:8,21
56:3 66:13

**region**
72:14

**regularly**
38:8

**relate**
31:19 32:15
62:14 66:20
68:5 69:9

**related**
6:12 23:8
68:7

**relates**
64:19

**relayed**
86:19

**relevance**
10:10 24:18
26:4 42:24

51:10 56:10
57:21,25 64:8

**relevancy**
20:24 54:25

**relevant**
7:2 8:17
11:1,13,15,16
13:5,8,18
20:22 22:11
23:16 29:13
31:14 34:3
35:15 36:1
37:1,5,14,17,
19 38:9 47:3
56:23 57:3,8
59:21 61:6,24
69:4 71:21

**relying**
38:25

**remain**
4:14 5:6,13

**remains**
6:6

**remarkable**
69:14 70:10

**remedial**
11:4

**remember**
52:8 74:2
83:3

**Remington**
4:10 6:24
28:6 35:18,
19,22 39:1,20
40:8,16 41:5,
21,25 42:9
43:1,15 47:1,
4,6 51:10
52:6,7,15,23
53:3 67:10,16

73:20,23
74:11,16
80:16,22,25
81:19,21
83:1,5 84:12

**remob**
7:20 10:4,21
11:12 13:9
19:21 22:3
50:12 55:22

**remobilization**
13:10

**remove**
60:12

**removed**
22:6 36:17

**rep**
74:22

**report**
20:7 29:14
86:16

**reports**
31:11 79:8

**representation**
65:12

**representations**
73:7

**represented**
71:11

**representing**
4:9,11

**request**
21:21 35:1
48:6,14 56:15
80:22

**requests**
20:5 27:5

**require**

73:6

**required**
21:23 24:21
40:22

**respect**
5:6,14,18
10:12 11:21
13:4,23 28:18
44:1,5 67:11

**respective**
11:7 83:11

**respond**
10:9 35:10
76:19 78:6,8

**response**
34:19 43:3
55:15 76:17

**responses**
50:25 75:2
86:23

**responsibilitie
s**
81:15

**responsive**
13:6,8,18
16:14,15
23:17 29:13
53:12 78:22
79:6,7

**responsiveness**
8:10 16:23

**result**
17:21 52:5

**results**
14:12

**resume**
13:13

**returned**
6:1 66:7

**review**
11:23 12:1
13:7,18 14:6,
17 16:21
17:18 18:16
19:2,4 24:22
43:23 50:20
54:8 64:16
66:23 71:5

**reviewed**
8:8,9 11:25
12:24 14:3
15:19 18:18,
19 63:11
68:16

**reviewers**
19:8

**reviewing**
12:18 16:18
18:23 54:22,
23 59:16

**revised**
26:20 62:23

**revisit**
34:10

**RFP**
55:6

**RFPS**
5:24

**rid**
66:15

**ripe**
59:1 75:8

**rise**
4:2

**Robb**
4:22

**roles**
81:15

**ropes**
62:9

**rubber**
43:16

**Rubio's**
85:17

**Rule**
82:20

**rules**
72:10 80:20

**ruling**
5:23 37:4
49:22

**run**
8:9,14 11:24
14:11,25
15:10,25
18:2,3,6
20:7,15,17
23:5 29:18
30:8 32:20
34:9,21 43:19
46:20 56:4
62:19 79:19
84:9

**running**
11:11 25:21
33:5 49:11
54:21 55:23
62:16 66:1

**runs**
66:15

---

**S**

---

**safety**
25:12

**Sally**
6:12 22:1
23:23,25

25:20 26:6,9,
15,20 28:16
29:9 30:6,8,
11 31:8,25
32:7,11,15,20
33:2,18 35:6,
17 37:15,19,
21 38:11
39:11,19
41:20 42:23
43:7 51:14
52:20,22,23,
25 56:17 57:1
60:3,23,24
61:10,15,21
62:11,16,24
63:6 65:4,14
66:13,16,17,
19 67:11,13,
20 68:9 69:19
78:18 79:11,
16

**Sarah**
85:19,20,24
86:1

**save**
51:3 78:18

**saved**
6:13

**scattered**
45:6

**schedule**
83:12,13

**scope**
5:13 19:2
37:2

**Scott**
35:18

**scrambling**
70:20

**screenshot**
71:13

**search**
5:11,13 7:8,
11,19,25 8:7,
14,20 9:24
10:2 11:10,19
13:21 14:9,
11,13 15:10
16:3,18,24
21:17 22:19,
20 23:1,4
25:21,23
27:18 28:13
29:14 30:19
32:19 33:2,5
34:22 35:3,12
40:2 44:1,4
46:19 47:2
48:24,25 49:6
50:9 54:15
56:4,5,16,20
66:1 67:17,22
78:24 79:19

**searched**
7:23 14:8
49:9,10

**searches**
28:21 32:14,
20 33:7 34:25
43:19 53:8
54:22

**searching**
12:7

**seated**
4:3

**second-to-last**
8:6,21

**section**
78:16,21

**secure**
13:12 21:24
36:12 42:23
62:4

**secured**
36:15

**SECURITY**
4:2

**segregated**
15:18

**self-contained**
39:22

**send**
50:5 62:6

**sense**
6:25 7:14
17:24 19:5
27:21 50:22

**separate**
8:11 10:22
39:2 44:9
54:4,7

**September**
5:7,8,19 7:10
9:14,15,18
10:23 11:2
21:2,4,10
22:10 26:16
28:8,18,20
30:9,12 31:15
32:16 33:6,
20,23 34:23
35:4 37:3
44:23 46:14
47:13,16
53:11,22
55:2,17 56:3,
5,14 57:3
59:23 62:21
64:20 66:1

67:24 68:4,17
70:14,15,18,
21 71:18 72:2
75:2,13 83:6
84:10

**series**
79:15

**served**
27:5 86:7

**server**
8:17 11:13
15:7 29:23
45:25 46:2,4
53:10 54:23
55:2,23,24
56:1 76:22
77:8 78:17
79:5,18 82:7

**servers**
54:13

**Servient**
15:13 18:10,
11 54:10
84:16

**session**
4:3

**set**
8:19,24 11:23
14:5 22:2
23:1,4,7
44:1,4 46:19
47:2 49:6
53:9 56:13,16
59:5,14 69:25
78:17

**setting**
48:18 57:13

**share**
76:1

shared
  79:16

shifts
  39:14

shorter
  7:9

show
  24:7 36:1
  39:8,13,14
  40:1,25

side
  50:17 72:17,
  22 83:22

side's
  72:17

sides
  50:16

signed
  24:21

significant
  20:18

significantly
  17:22

similar
  76:25 78:3

simply
  37:1

single
  55:8

sit
  32:4 74:4
  81:1

site
  13:12 25:11
  36:18 38:2,3
  74:7 76:21

sitting
  15:17 58:21

76:23

situation
  42:15,16,18

size
  38:7

Skanska
  4:7,9,11
  6:10,13 8:7
  12:20 13:1,
  11,15 16:21
  21:22,24 22:2
  23:21 25:10
  26:22 27:19
  31:17 32:1,
  17,22 35:16,
  24 36:4,15
  38:18 39:25
  42:25 43:4
  48:16 49:10
  57:9 58:3,6
  60:21 63:5
  65:3 70:4
  73:9 75:4
  77:21 78:3,21
  80:4 82:21
  85:20,24

Skanska's
  5:25 20:4
  24:5 25:24
  26:4 36:10,13
  37:5,6,14
  48:2 51:13
  58:1 70:2,22
  71:10

solidified
  40:11

sort
  8:11,25 11:24
  18:5 22:6
  37:13 40:12

76:10

sound
  20:20 44:12

sounded
  32:22

sounds
  17:3 32:2,25
  34:17 79:2

sources
  8:17

speak
  5:9 6:6 31:21
  83:21

speaking
  57:5 63:17

specific
  7:7 21:13,19
  26:8 34:11
  35:14 56:11
  62:17 73:15

specifically
  10:20 24:25
  70:18 77:3
  78:17

speculation
  64:10

sped
  43:7

speed
  18:16 45:4

speeding
  83:5

spend
  31:17 73:2
  81:14

spoliation
  71:25

spud

36:12

standard
  50:15,18

stands
  69:13,18

start
  4:13 5:22
  6:15,22 7:6,
  14 8:25 10:8
  12:18 22:25
  24:12 25:19
  35:8 57:1
  64:4 86:5

started
  46:10 84:5

state
  36:10 59:8
  63:5 70:22

stated
  12:14 52:18
  57:24

states
  5:2 36:3
  47:21 48:4
  50:20 51:8

status
  57:11 85:10
  86:3

step
  7:25 14:19
  16:17 33:9
  35:1

Stephens
  85:19,21,24

Stephens'
  86:1

stop
  11:18 12:7
  21:24

stopped
  30:9
stored
  77:1
storm
  5:11 7:8,11
  8:7,20 11:10
  13:13 16:23
  21:17 22:19,
  20 37:15
  40:19 41:3
  43:6 58:14
  65:21 68:8
  70:11
storms
  8:24 9:1,3,25
  10:25 21:7,
  11,18,20
  22:3,4 28:10,
  23 42:7 43:5
  61:10
story
  69:18
straight
  9:1
stretched
  43:16
struck
  63:6
stuff
  17:10 65:11
  66:19 74:20
submissions
  23:20
submitted
  8:4
subpoena
  86:6

subsequent
  11:4
subset
  56:20
subsets
  18:20
substance
  72:20
substantially
  53:25
sucked
  45:16
sufficient
  24:18 25:17
  65:20,22
suggesting
  16:12 74:15,
  17
suggestion
  68:13
suggests
  14:20
superintendent
  81:8
superintendents
  60:21
superseding
  39:9
supplanting
  71:23
surprised
  43:9
surrounding
  5:17 8:23,25
  9:2 21:7
  23:15 25:11
sustained
  72:14

synced
  76:21 77:5,7,
  14
system
  45:16 56:6

_____

_____
           T
_____

table
  7:5
tabled
  6:20
tablets
  78:4
tagged
  15:22,23
takes
  54:8,11 64:16
  73:2
taking
  7:16 23:18
  41:4 47:21,22
  56:19
talk
  5:22 6:18,25
  7:22 32:24
  33:1,2,3
  47:15,17,19
  58:20 66:13
  83:15 85:8
talked
  33:3 55:19,22
  56:14 71:21
  83:12
talking
  29:8 30:6
  48:1,20 49:4
  58:7 60:22
  63:23 69:21
  70:15

target-rich
  61:11
tea
  43:13
team
  83:23
teams
  83:11
telephone
  5:2
tells
  43:19
term
  13:10,19,21
  16:13 19:25
  20:2,9 27:11,
  12,13 28:16
  29:11,14 30:6
  31:8 32:15
  33:2 35:12
  50:16,18 51:8
  56:9 62:16
  67:3,20 72:22
terminology
  13:14
terms
  4:14 5:15
  7:8,19 8:15
  9:24 10:2,13,
  19 11:2,19,24
  12:3,12,16
  13:5,16
  14:12,13,25
  15:10 16:3
  17:4,5,7,21
  18:3,22 19:21
  20:22 23:9
  25:21,23
  27:14 31:4,9
  32:16 33:15

34:22 35:3
39:16 40:2
43:11,20 44:1
45:7 46:20
49:5,7,9 50:9
54:15,16,21,
25 56:4,5,12,
13,16,21
59:20 60:4
62:19,20
63:3,17 65:25
66:1,14 73:4
78:24 79:19
80:10 84:8

**text**
53:12,14,18,
20 55:8 67:17
74:9 77:13,14
84:21 85:3

**texts**
54:9 69:16
71:9 77:20

**theory**
36:24

**thing**
12:13 18:6
35:2,8 37:4
38:9 49:3
53:7 64:15
71:8 73:21

**things**
15:1 20:5
32:24 37:7
39:2 40:11
48:8 63:21
64:1 65:15
67:4 73:5
77:13 78:4
83:9

**third-party**

25:8

**thought**
39:17 81:6
86:8

**thousand**
10:15

**threat**
36:18

**tie**
36:12 62:8

**tight**
43:17

**time**
5:22 7:10
8:18,19 12:22
17:13 21:14
23:5 24:12
31:18 34:12,
13 35:2,23
37:22 49:25
53:21 54:8,11
60:3 61:15
62:17 63:6
64:17,22
65:8,23 71:6,
20 73:2 83:16

**times**
10:17

**timing**
13:11

**today**
4:15 6:1 13:2
22:17 32:5,24
35:22 48:8
52:1 56:7
65:6 74:12
84:21 85:7

**told**
27:2

**Tom**
44:22

**tomorrow**
6:20 50:1,11
76:6,13 78:7,
9 80:4 83:23
84:2,11,14
85:8,10,11
86:24,25

**tomorrow's**
6:19 79:23

**tonight**
84:22

**tool**
74:8

**top**
47:10 55:5
64:4 72:6
75:15

**topics**
81:25 82:9,12

**tort**
57:23

**total**
27:11 30:22
31:25 43:20
44:2 51:25

**totally**
58:14 73:11

**Transportation**
25:6

**treated**
56:21

**tremendously**
59:11

**trial**
21:2 37:2
64:21 70:21
71:15,16

75:13,21

**tropical**
8:24

**true**
55:10

**Tuesday**
58:14

**turned**
43:7

**two-step**
8:8,12

**type**
16:17 20:7
60:6 61:5
62:13,18 78:4

**types**
63:22 64:1
68:10

**typically**
59:5 73:6
82:1

---

**U**

**Uh-huh**
31:23 69:7

**unavailable**
78:2

**unclear**
24:20

**underlying**
24:23 25:5
26:9,10

**understand**
11:7 27:10
29:15 36:13
43:2 48:4
51:16 70:3,22

Judge Hope Thai Cannon
June 22, 2021

26

**understanding**
7:16 25:3,10,
24 53:16
57:6,10 63:7

**understood**
25:4 57:9

**unfair**
73:24

**unique**
27:11,12
31:4,25 33:15

**United**
5:2 47:21
48:4 50:20
51:8

**universe**
29:7 34:9
53:19,23

**unmoored**
39:11

**up-to-date**
29:14

**update**
30:4 31:11
38:7

**updates**
85:10

**updating**
30:17

---

**V**

**vacuum**
37:13

**valid**
17:9

**valuable**
81:13

**vendor**
12:4 14:4
20:6 60:9

**vendors**
32:12 58:7

**verifying**
78:25

**version**
23:12

**versus**
14:17 40:14
52:25 54:23
66:21

**vessel**
51:18

**vessels**
51:19

**videos**
84:19,21 85:1

**view**
51:8

**Vinson**
36:20 75:18
81:6 83:2

---

**W**

**wanted**
4:15,23 19:6
44:4 53:5
55:24 76:10

**wanting**
9:24

**water**
42:12

**ways**
39:8 60:9
63:9

**weather**
21:23

**weaving**
64:4

**Webex**
69:21,23

**week**
10:19 50:2
68:24 84:18
86:20

**weekend**
37:4 57:25

**weeks**
58:21 83:19

**weigh**
17:10

**welders**
74:8

**William**
85:19,21,25
86:1

**wiped**
57:12

**woman**
32:7

**wondering**
27:20

**word**
19:20 28:16
56:17 67:11
72:17

**words**
13:8 19:15
20:9 67:4

**work**
21:24 32:10
46:15 47:11
58:19 64:1

67:6 86:10

**working**
19:7,8 21:25
54:10 65:14
74:3 80:3
81:3,13 82:8,
9

**world**
17:14 20:16,
17 30:13
43:21 49:11

**worried**
50:24

**worth**
17:15

**written**
48:3

**wrong**
55:15 58:9
74:14

---

**Y**

**y'all**
4:15 6:24,25
7:23 12:11,21
18:9 21:1,3,
13 22:15
23:19 25:19
26:23 29:24
30:8 34:19
35:9 38:24
39:14,16,17
41:17 43:18,
21 45:10
46:6,18 50:1
63:14 65:15,
18 69:11
71:24 73:2,8
75:14,21

```
 77:10 82:11
 83:11,15,20
 84:10 85:9
 86:22
```

**y'all's**
  28:24

**years**
  37:22

**yesterday**
  6:9

**yielding**
  13:5

-----

**Z**

-----

**Zeta**
  5:17 7:22
  9:21,23,25
  21:10,14 28:8
  33:1 37:18
  61:18 65:9