UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN THE MATTER OF IN RE SKANSKA USA CIVIL SOUTHEAST INC. AND SKANSKA USA, INC. AS OWNERS OF THE BARGE KS 5531 PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § ADMIRALTY RULE 9(H) § § § § § § CIVIL ACTION NO. § 3:20-CV-05980-LC/HTC |

### ORDER ON CLAIMANTS' ORAL MOTION FOR SANCTIONS

This matter is before the Court on Claimants' oral motion for sanctions against Skanska. The Court gave Skanska an opportunity to file a written response, which it did. ECF Doc. 1214. And, the Claimants filed a written reply. ECF Doc. 1220. Additionally, the Court heard argument on the motion during the July 28, 2021 status conference.

The basis of Claimants' motion is two-fold.[1] First, Claimants argue Skanska misrepresented the importance of missing cell phone data from five of thirteen agreed

---

[1] Unlike Claimants' spoliation motion (ECF Doc. 1228), filed August 2, 2021, which seeks sanctions or dismissal of this limitations action based on the destruction of cell phone data, this motion seeks sanctions for Skanska's alleged misrepresentations regarding the availability of that data.

upon custodians.[2]  Second, Claimants argue Skanska should have known when it told the Court and the parties that Tugboat Captain R. Hill did not have a cell phone, that he did in fact have one.  As clarified by the Claimants in their reply and at the July 28, 2021 status conference, Claimants seek sanctions under Federal Rule of Civil Procedure 37 and the Court's inherent power.  Claimants are not seeking sanctions under Rule 11, 26(g), or 28 U.S.C. § 1927.

## I. COURT'S AUTHORITY TO ISSUE SANCTIONS

Federal Rule 37 authorizes a court to impose sanctions for discovery abuses. *E.E.O.C. v. Jacksonville Shipyards, Inc.*, 690 F. Supp. 995, 997 (S.D. Fla. 1988). Skanska argues Rule 37 is inapplicable because Claimants did not file a motion to compel.  Skanska's argument is disingenuous.  As Skanska is well aware, this Court streamlined discovery issues in this matter through the weekly status conferences, and regardless of whether Claimants submitted a written motion to compel, the Claimants clearly sought during those status conferences to compel Skanska to produce cell phone data from the agreed upon custodians.  Indeed, cell phone data was the subject of the Court's Discovery Order No. 1.  Thus, as an initial matter, the Court finds Rule 37 to be applicable here.  *See In re Seroquel Prods. Liab. Lit.*, 244 F.R.D. 650, 657 (M.D. Fla. 2007) (noting that a district court could impose discovery

---

[2] Cell phones were lost or data was wiped for the following custodians: McGlynn, Stevens, Johnson, Bender, and Rubio.

sanctions on drug manufacturer for its failure to meet its own commitments regarding electronic discovery in multi-district products liability suit regardless of whether court had granted motion to compel).

Regardless of Rule 37, a court may sanction litigation misconduct under its inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 2009 WL 613603, at *5 (11th Cir. Mar.12, 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)); *EEOC v. Jacksonville Shipyards, Inc.*, 690 F. Supp. 995, 997 (S.D. Fla. 1988) ("Conduct of the kind which ordinarily would be sanctionable under Rule 37, but falls outside the express terms of the rule, can be sanctioned by proper exercise of this Court's inherent powers."); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir.1993) (noting that courts have the inherent authority to control the proceedings before them, which includes the authority to impose "reasonable and appropriate" sanctions); *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1447 (11th Cir. 1985) (discussing court's inherent power to "impose sanctions for bad faith conduct during discovery").

Sanctionable conduct is not limited to what a party does or says in motions, papers, and other filings. Sanctionable conduct can and does include oral representations made directly to the court. *See In re Engle* Cases, 283 F. Supp. 3d 1174, 1183 (M.D. Fla. 2017) (finding counsel's misrepresentations at hearing were

in bad faith and appropriate for sanctions); *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 692 (N.D. Ga. May 27, 2009) (same).

Skanska argues that prior to issuing sanctions, the Court must first make a finding of bad faith. A finding of bad faith is required before a court imposes any sanctions under its inherent powers. *See Eagle Hosp. Physicians, LLC*, 2009 WL 613603, at *5 (determining evidence supported finding of bad faith). A party may demonstrate bad faith by showing the other's conduct disrupted litigation or hampered the enforcement of a court order. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). The Court, however, does not have to find that Skanska acted in bad faith to issue a sanction under Rule 37, unless the sanction is a dismissal of the action. *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985) (noting that dismissal as a sanction should be limited to a "willful or bad faith disregard of court orders").

## II.  ANALYSIS

Based on the information presented, the Court cannot say that Skanska made a willful misrepresentation regarding the availability of the missing cell phone data from other custodians. Nor can the Court say that Skanska's representation abused the discovery process. While Skanska may have been aggressive in their view of the availability of such information from other custodians, there is no evidence that Skanska's representations delayed discovery, was made to influence any favorable

ruling from this Court, or increased discovery costs. In other words, regardless of Skanska's representation regarding the missing cell phone data, Claimants would have reviewed the same information and pursued the same information.

Thus, the Court finds the facts here to be different from those in *Kipperman v. Onex Corp.*, where the court sanctioned counsel for "misrepresenting the scope and value of email discovery" to affect the Court's decision on whether discovery of backup tapes would be cumulative or duplicative and whether the burden or expense of the discovery outweighed its likely benefit. *Id.* at 692. Moreover, it is unclear whether there is a true difference in the number of text messages Skanska contends was available from other custodians. Regardless, whether there is, in fact, missing data that cannot be obtained from other custodians and whether Skanska failed to preserve such data is the subject of Claimant's recent spoliation motion (ECF Doc. 1228), and thus, will be addressed in a separate order.

The Court also does not find the requested sanction—that Skanska produce additional cell phone data from other custodians—to be appropriate at this time. There is insufficient information from which the Court can conclude that the cell phone data from these additional custodians will produce a significant number of new, rather than duplicative, messages, or that these additional cell phones will provide the Claimants with any texts or data that were contained in those phones that have been lost or wiped clean.

Whether Skanska should be sanctioned for misrepresenting that Hill did not have a cell phone is a closer call. While it is true that an attorney may rely on representations of their clients, attorneys cannot do so blindly. It is, after all, counsel's obligation to "take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). "[A]ttorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). Thus, counsel should proceed with caution when relying on representations made by clients.

Here, there is no indication counsel did any more than ask its client contacts whether Hill had a cell phone. There is no evidence, for example, that anyone asked Hill. Also, as the Claimants point out, a phone number was identified for Hill in Skanska's Hurricane Plan, and counsel admits that their review team identified fourteen (14) text messages to/from Hill from/to other custodians. Thus, it does appear counsel should have been more diligent in its inquiry. Lack of diligence, however, is not the equivalent of bad faith or the type of abusive conduct that the Court finds sanctionable.

Finally, regardless of any misconduct, there is no dispute Hill is one of the agreed upon custodians and that some information from Hill's cell phone is responsive. Thus, Claimants seek to have Skanska extract and search Hill's cell

phone data as it has done with the other agreed upon custodians. Since the parties filed their written submissions, Skanska has agreed to download, search, and produce relevant text messages from September 10 to September 30, 2020, located on Hill's cell phone.³ Skanska, however, objects to extracting and searching all cell phone data from Hill's cell phone, arguing the phone is Hill's private cell phone, over which they have no possession, custody, and control, and Hill has a privacy interest in his phone.

Federal Rule of Civil Procedure 34(a) requires a party to produce relevant documents and other physical items that are in the possession, custody, or control of the party upon whom the request is served. *See* Fed. R. Civ. P. 34(a). "Control is defined not only as possession, but as the legal right to obtain documents upon demand," and courts have construed it broadly. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1983). The burden of establishing control over the documents sought is on the party seeking production. *See Mamani v. De Lozada Sanchez Bustamante*, 2017 WL 3456327, at *2 (S.D. Fla. Aug. 11, 2017).

As an initial matter, an employer has "control" of a current employee and the legal right to obtain business communications from a current employee *regardless* of whether the communication is located on a personal cell phone. *See State Farm Mutual Automobile Ins. Co. v. Precious Physical Therapy*, 2020 WL 7056039, at * 5

---

³ *See* email from E. Billhimer, dated July 29, 2021.

(E. D. Mich. Dec. 2, 2020) (granting motion to compel production of emails from employees' personal email accounts). As the district court in *State Farm* stated:

> The fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment. As a practical matter, if an employer were able to avoid producing business documents by simply maintaining anything potentially discoverable in an employee's personal email account, this could have the potential to incentivize employers to require the use of personal accounts for business purposes or to store business documents in personal accounts. Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits.

*Id.* at *5, n.4; *see also Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, at *2 (N.D. Cal. July 12, 2017) ("Otto Trucking must produce responsive documents in the custody, control or possession of its officers. . . . It cannot hide responsive documents simply because these officers' work for Otto Trucking was done using their personal email accounts.").

Thus, Skanska cannot shuck its discovery obligations simply because it did not issue the cell phone to Hill. *See Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 2018 WL 6305665, at *3 (D. Or. Dec. 3, 2018) ("The Court acknowledges, however, that a company's officer or agent should not be able to avoid the rules of discovery by using personal email, which is in the custody and control of that officer or agent, for work purposes."). Regardless of whether responsive information is on Hill's personal cell phone, Skanska has an obligation to produce the information.

That obligation, however, does not extend to requiring Skanska to extract and review all the cell phone data on Hill's cell phone.  Instead, even in those cases where the court has found that an employer has "control" over an employee's personal device,[4] courts have only required the employer to ask the employee to search and produce the responsive information.  *See, e.g.*, *ID Ventures, LLC v. Chubb Custom Ins. Co.*, 2018 WL 8807125, at * 2 (E.D. Mich. Oct. 12, 2018) (requiring plaintiff to ask relevant employees to search their personal email accounts for responsive documents and to provide defendant with an affidavit from each employee attesting that a search was made and all relevant documents were provided to plaintiff's counsel); *Union Home Mortg. Corp. v. Jenkins*, 2021 WL 1110440, at *9–10 (N.D. Ohio Mar. 23, 2021) (directing employer to ask current employees to search for and provide for production of all relevant emails and text messages in their personal email and cell phone accounts that are responsive and, if no documents exist, to certify as

---

[4] Federal courts are divided on when an employer has "possession, custody, or control" of an employee's personal device.  *See Stinson v. City of New York*, 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016) (noting divide and citing cases); *Sriram*, 2021 WL 3129940, at *2 (denying motion to compel where employer did not issue the cell phone and there was no evidence the phone was used routinely for business purposes or to what extent); *Cotton v. Costco Wholesale Corp.*, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013) (finding it "likely" that Costco does not have possession, custody, or control of text messages employees' cell phones were plaintiff did not contend cell phones were used for work or were issued by Costco); *Sriram Krishnan v. Cambia Health Solutions, Inc. & Regence Bcbs Of Oregon*, 2021 WL 3129940, at *2 (W.D. Wash. July 23, 2021) (finding lack of control where employer did not issue cell phone and no evidence was presented showing cell phones were routinely used for business or to what extent); *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 2018 WL 6305665, at *7 (D. Or. Dec. 3, 2018) (finding lack of control of the requested cell records or calendars because there was no evidence members used their personal cell phones or calendars for more than *de minimis* work purposes).

much in writing); *Bank of Mongolia v. M&P Global Financial Services, Inc.*, 2009 WL 10682131, at *7 (S.D. Fla. Dec. 22, 2009) (directing defendants to "make all reasonable efforts to obtain responsive documents" from any officer or individual employed by defendants from personal computers); *Goolsby v. County of San Diego*, 2019 WL 3891128, at * 4 (S.D. Cal. August 19, 2019) (finding lack of control where plaintiff offered only speculation that personal devices were used by the deputies and noting that, regardless, county had already asked employees to search for and produce relevant information). The Court was unable to find any case where an employer was ordered to take possession of an employee's personal device for purposes of searching the entire data on the device.

Moreover, while there is evidence Hill sent or received work-related text messages on the phone, there is no evidence other cell phone data on Hill's phone would produce responsive information. Thus, the burden of requiring all the data to be extracted and reviewed outweighs any potential benefit. *See Shackleford v. Vivint Solar Dev., LLC*, 2020 WL 6273892, at *5 (D. Md. Oct. 26, 2020) ("Not only would this be a potential invasion of privacy to which the employees might lodge an objection or seek a protective order, but it would be expensive and time-consuming. And it is unclear whether it would yield any benefit to plaintiff. . . . To the extent a search of the phones did result in some relevant information, its likely benefit is outweighed by the burden and expense of obtaining it.").

Since Skanska has already agreed to review and produce responsive text messages from Hill's phone and Claimants have already deposed Hill, the Court does not find any additional orders to be necessary as it relates to the production of information from Hill's cell phone.

Accordingly, it is ORDERED:

Claimants' oral motion for sanctions is DENIED.

DONE and ORDERED this 5th day of August, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**