UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE SKANSKA USA CIVIL SOUTHEAST | : | In Admiralty |
| INC. AND SKANSKA USA, INC., AS OWNERS | : | |
| OF THE BARGE KS 6013, | : | Cases all |
| | : | consolidated with |
| PRAYING FOR EXONERATION FROM OR | : | 3:20-cv-5890-RV-MJF |
| LIMITATION OF LIABILITY | : | |

**UNITED STATES OF AMERICA'S
MOTION TO ENFORCE THE PROTECTIVE ORDER**

**INTRODUCTION**

The United States of America submits this Motion to Enforce the Protective Order which quashed the depositions of several government personnel. Despite that order Skanska recently noticed the depositions of the following Navy personnel, all of which were included in the Protective Order issued by the Court on July 30, *see* ECF 1226:

1. Burt Fenders (sic)
2. CAPT Timothy Kinsella
3. MA3 Russ Aguda
4. LCDR Stephen Pakola
5. Kimberly Tessier
6. MA1 Anthony Vazquez

In requesting these depositions, Skanska has not demonstrated a legitimate reason for deposing the witnesses separate from the reasons previously rejected by both Magistrate Judge Cannon and the District Court. Skanska's actions in, again, requesting these depositions are an abuse of discovery. The United States requests the Court grant this Motion to Enforce the Protective Order and quash these notices.

1

## FACTUAL BACKGROUND

As the Court is aware, Skanska has sought discovery from the United States and other claimants related to their own preparations for Hurricane Sally:

1. On June 19, 2021, the Court issued Discovery Order No. 2 defining the scope of discovery in this phase, focusing it on determining Skanska's liability, and whether there was privity and knowledge as defined in the Limitation of Liability Act. *See* ECF 1192.

2. While Discovery Order No. 2 was focused on written discovery, it stated "[i]t is not the Claimants' or the US Navy's conduct that are at issue; it is Skanska's, and nothing in the cases relied upon by Skanska changes that fact." *Id*. at 5. The Court stated that Skanska cannot use disparate examples, like what the Navy did or did not do in preparation for Hurricane Sally, as a test of reasonableness for Skanska's actions. *Id*. at 4. The Court ultimately found that Skanska's challenged written discovery was both irrelevant and disproportionate to the needs of the case. *Id*.

3. Skanska appealed that Order to the District Court which overruled Skanska's objection on July 13, 2021. *See* ECF 1205.

4. Subsequent to the issuance of the Order by the District Court, Skanska requested 21 depositions of United States government personnel. Those 21 depositions were the subject of an oral motion for a protective order made during the parties' regularly scheduled status conference on July 21 which was supported by a detailed letter from government counsel copied to Magistrate Judge Cannon. *See* Ex. 1. Those 21 depositions included the 6 individuals who have been noticed by Skanska here.

5. Prior to the July 21 status conference, Skanska, by email, requested Magistrate Judge Cannon order the United States to file a written motion for a protective order seeking to

quash the 21 depositions. Magistrate Judge Cannon, citing the practice of the case and the need for expediency given the approaching trial date denied Skanska's request and accepted the United States' oral motion along with its letter as laying out the United States' position. *See* ECF 1210 at 2.

6. After hearing argument, Magistrate Judge Cannon issued a Show Cause Order to Skanska on July 21 to demonstrate why the depositions did not violate Discovery Order No. 2. *See* ECF 1210. Skanska did not respond directly to the Show Cause Order but rather filed a pleading that appeared to ask the Court to reconsider Discovery Order No. 2. *See* ECF 1215. In that pleading Skanska reduced its 21 depositions to 2, which included CAPT Kinsella who is again named in the new deposition notices.

7. Magistrate Judge Cannon granted the United States' oral Motion for a Protective Order on July 30. *See* ECF 1226.

8. On August 4 Skanska, via email, delivered five notices of deposition with the following language:

"We are entitled to take depositions, subject to the magistrate's limitation. That limitation is not a bar to fact depositions. Accordingly, attached are notices for several witnesses. Please contact me if you wish to arrange different dates and times for zoom depositions. The depositions are not likely to go more than an hour and some might be shorter."

*See* Ex 2. No other information or justification was presented as to what subject matter would be addressed in the depositions, or how they did not violate Discovery Order No. 2, or the later protective order on depositions.[1]

9. On August 5 counsel for the United States responded to Skanska's request indicating that it appeared these deposition notices were in violation of the Court's ruling; but that if

---

[1] On August 2 Skanska also requested, from the other claimants, the depositions of 11 individuals.

Skanska could provide a written list of topics, per witness, that Skanska would inquire about in the depositions, and that were not in violation of the prior orders, that the United States would produce the witnesses. *See* Ex. 2.

10. Skanska then added a sixth witness to its request for depositions. *See* Ex. 2. This witness was also previously part of the Protective Order.

11. Skanska responded to the United States' email stating: "The magistrate's order does not require listing of topics, rather that my questions not delve into 'prohibited' areas, which I have advised we do not intend to do. However, to address your request, we intend to ask questions regarding observations and statements produced in discovery."

12. Following that email exchange counsel for both parties had two telephone calls to meet and confer per L.R. 7.1(B).

## LOCAL RULE 7.1(C) CERTIFICATION

Prior to filing this Motion, the undersigned counsel attempted to resolve this issue in good faith with Skanska's counsel. As outlined above, and in the attached exhibit, those efforts did not succeed. *See* Ex. 2.

## ARGUMENT

Skanska is seeking its fourth bite at the proverbial apple with these deposition notices. It has been decided that the actions of the United States Navy in preparing the facilities and personnel of Naval Air Station Pensacola for the impacts of Hurricane Sally are not relevant to the upcoming phase of trial. Yet Skanska persists in seeking discovery about these actions. Skanska's newest requests disregard the letter and spirit of the orders of this Court, and the Federal Rules of Civil Procedure, and do so without justification.

Fed. R. Civ. P. 26(c) allows a party from whom discovery is sought to seek a protective order. *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, No. 16-cv-62610, 2017WL4882511, at *2 (S.D. Fla. Oct. 30, 2017). "'The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' by, for example, forbidding or limiting the disclosure or discovery of a certain matter or specifying the terms of the discovery." *Id.* Good cause is a well-established legal term which "generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.* 820 F.2d 352, 356 (11th Cir. 1987). Courts have broad discretion in discovery to determine whether, and to what extent, a protective order is appropriate. *Lohr v. Zehner*, 2:12-cv-533-MHT, 2014WL12742197, at *1 (M.D. Ala. Mar. 6, 2014). Magistrate Judge Cannon granted the United States' Motion for a Protective Order to quash the depositions of government personnel on July 30. *See* ECF 1226 at 3. That Order was consistent with the prior Discovery Order No. 2 which limited the scope of discovery in this phase to determining whether Skanska was negligent in the release of its barges, and whether Skanska had privity and knowledge as is defined by the Limitation of Liability Act. *See* ECF 1192 at 5-6.

As mentioned above, Skanska had previously requested the depositions of these six witnesses. They were the subject of the United States' July 19 letter which was sent to Magistrate Judge Cannon so the issue might be discussed during the regularly scheduled status conference on July 21. Magistrate Judge Cannon's Show Cause Order that came out of that status conference explicitly incorporated that letter. *See* ECF 1210 at 1. In response to the Show Cause Order, Skanska stated that all but two of the depositions were likely unnecessary. *See* ECF 1215 at 7. That would have included five of the six depositions Skanska has now noticed. This

5

seems at odds with Skanska's present position that these depositions are legitimately sought for a relevant purpose.

As to the specific witnesses identified in the notices, none played a role in the events leading up to the breakaway of Skanska's barges:

- <u>CAPT Timothy Kinsella</u>: He was the commanding officer of Naval Air Station Pensacola. Operationally he served as a naval aviator and has no experience in barge operations and has not worked with construction barges. He does have second-hand information related to damages suffered by the allision of two Skanska barges with the Air Station; however, those issues are not at issue in this phase of the case. It is clear from other pleadings and discovery filed that Skanska wishes to depose CAPT Kinsella regarding an interview he allegedly gave to a local news outlet about the aftermath and severity of the storm. *See* ECF 1215 at 6. Questioning regarding that topic is in direct violation of the Court's orders.

- <u>LCDR Stephen Pakola, MA3 Russ Aguda, and MA1 Anthony Vazquez</u>: These are percipient witnesses who saw Skanska's barge strike the Sam Lovelace Bridge that serves as the main entrance to Naval Air Station Pensacola, and the golf cart/pedestrian bridge that runs underneath. Photographic evidence of those allisions have been provided to Skanska in discovery. None of these witnesses had any contact with Skanska employees prior to Hurricane Sally.[2]

- <u>Burt Fenters</u>: At the time of Hurricane Sally he was the Emergency Operations Center Director for Naval Air Station Pensacola and certainly did not have any role in the actions or

---

[2] In the United States' July 19 letter about the 21 depositions, counsel offered to draft a stipulation for Skanska about what the witnesses saw in connection with the barges striking Navy property and the foundation for the photographs showing it. This would have been the entire substance of their testimony. Skanska never accepted or responded to that offer.

decisions made by Skanska that lead to the release of the barges. In his position he would have been part of the team responsible for the preparation of the Air Station for Hurricane Sally and for assessing damages in the aftermath of the storm. Neither of those issues are important at this time.

- <u>Kimberly Tessier</u>: She was a civilian employee with Naval Air Station Pensacola's Morale, Welfare, and Recreation ("MWR") facilities which included marinas that had recreational vessels that could be rented by government personnel. Ms. Tessier had no involvement in Skanska's operations or in the events leading up to the release of the barges. Her sole role would have been in preparing the MWR facilities for the impacts of Hurricane Sally and then in recovery from the storm after it passed.

In short, none of the identified individuals played a role in the actions or decisions made by Skanska leading to the breakaway of the barges. Rather, each is sought for deposition to learn what decisions the Navy made to prepare for Hurricane Sally, presumably to see if the Navy's conduct was prudent.[3] These have no bearing on Skanska's defense. *See Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.,* 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) (a matter is deemed irrelevant if it does not pertain to a claim or defense).

---

[3] For further evidence of this intention please see the Requests for Admission Skanska recently served on the United States, the vast majority of which are specifically directed to the steps the Navy took in evaluating weather information and preparing Naval Air Station Pensacola prior to Hurricane Sally making landfall. *See* Ex. 3. The United States may file a subsequent motion to enforce the protective order regarding the Requests for Admission should negotiations with Skanska to limit them fail.

## CONCLUSION

It is dubious that Skanska legitimately believes these depositions fall outside of the Protective Order. It certainly has not offered any persuasive explanation. For the above-stated reasons, the United States requests the Court grant this Motion to Enforce the Protective Order and quash the deposition notices.

DATED: August 11, 2021

                            Respectfully submitted,

                            VARU CHILAKAMARRI
                            Assistant Attorney General
                            U.S. Department of Justice, Civil Division

                            JASON R. COODY
                            Acting United States Attorney
                            Northern District of Florida

                            /s/ Robert Kelly
                            THOMAS BRIGHT
                            ROBB HYDE
                            ROBERT KELLY
                            SAM ESCHER
                            Trial Attorneys
                            Torts Branch, Civil Division
                            U. S. Department of Justice
                            P.O. Box 14271
                            Washington, D.C. 20044-4271
                            (202) 616-4046
                            thomas.j.bright@usdoj.gov
                            robb.hyde@usdoj.gov
                            Robert.Kelly@usdoj.gov
                            Samuel.Escher@usdoj.gov
                            Attorneys for Claimant
                            UNITED STATES OF AMERICA

## CERTIFICATION

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System. Notice has been sent using that system to all counsel of record.

/s/ Robert Kelly