# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF IN RE | § | |
| SKANSKA USA CIVIL | § | |
| SOUTHEAST INC. AND | § | |
| SKANSKA USA, INC. AS | § | **ADMIRALTY RULE 9(H)** |
| OWNERS OF THE BARGE  KS | § | |
| 5531 PRAYING FOR | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **3:20-CV-05980-LC/HTC** |

---

## ORDER ON CLAIMANTS' SPOLIATION MOTION
## AND FOR SANCTIONS

This matter is before the Court on Claimants' spoliation motion, seeking sanctions against Skanska, including the ultimate sanction of a dismissal, for the destruction or loss of cell phone data and the deletion of text messages. The Court afforded both parties multiple opportunities to submit written argument and evidence, which they did. The Court has considered the Claimants' motion (ECF Doc. 1228), Skanska's opposition (ECF Doc. 1239), Claimants' reply (ECF Doc. 1240), Skanska's sur-reply (ECF Doc. 1256), all evidence attached to those submissions,

and the argument and evidence presented by counsel at the hearing, and subsequent

thereto.[1]  Upon consideration, the motion is GRANTED IN PART.

## I.      THE CELL PHONE DATA AT ISSUE

Since discovery began in this case, Claimants have sought the production of

certain electronic discovery from Skanska, including the production of cell phone

data.  The parties agreed to an ESI Protocol that included the production of text

messages and Claimants' first request for production of documents, issued in April

2021, included a request for relevant text messages.  In response, Skanska selected

thirteen (13) custodians for whom it would provide cell phone data.  After making

that selection, however, on June 16, 2021, Skanska informed Claimants and the Court

during a weekly status conference that cell phone data had either been wiped clean,

deleted, or lost for the following five (5) custodians:  S. Stephens, M. Bender, N.

Johnson, E. Rubio, and P. McGlynn.

S. Stephens was a field engineer for Skanska.  ECF Doc. 1228-3 at 9 (Interrog.

Resps.).  She drafted the Hurricane Plan in effect for Hurricane Sally, based on

information others provided to her, and submitted it for approval.  *Id.* at 22; ECF Doc.

---

[1] Claimants presented testimony from their ESI expert, M. Ciaramitaro, additional text messages to show the use of text messages by Skanska employees between September 11 and September 16, Claimants' Exhibits B-D, and a listing of 13 messages Ciaramitaro believes existed and were deleted, Claimants' Exhibit E.  Skanska objected on the grounds that the evidence had not been previously submitted.  Subsequent to the hearing, Skanska filed excerpts from the deposition transcripts for the custodians at issue, ECF Doc. 1260, and submitted via letter, evidence showing the receipt by the custodians of Skanska's October 14, 2021 litigation hold letter, E. Billhimer Ltr. 8/18/2021.

1228-3 at 9. She was issued a cell phone by Skanska. ECF Doc. 1260-4 at 12 (Depo. Tr.). Stephens used the cell phone to communicate with other Skanska employees about the Pensacola Bay Bridge Project (the "Project"). *Id.* at 16. Stephens' last day of employment with Skanska was November 20, 2020. *Id.* at 13. On that day, Stephens turned over her cell phone to Skanska's business manager, Chris Erwin. *Id.* Erwin said he needed to restore her phone to factory settings, asked Stephens for her passcode, and reset her phone. *Id.* at 14. There is no backup of any text messages from Stephens phone.[2] ECF Doc. 1260-4 at 14. Skanska reset Stephens' cell phone one week after the first suit had been filed by Claimants in state court. *See Bagelheads, Inc. v. Skanska, et al.,* 2020-CA-001461.

M. Bender was a superintendent on the Project who was responsible for being on the tug boats and securing equipment in advance of Hurricane Sally. ECF Doc. 1260-2 at 7 (Depo. Tr.); Claimants' Exh. 3, DeMarco Tr. 137:4-15; 152:14-23; 161:25-162:3. Bender participated in meetings between September 12 and 13, with other Skanska employees to discuss securing barges and equipment leading up to Hurricane Sally. ECF Doc. 1260-2 at 9. Skanska issued Bender a cell phone. *Id.* at 11. Bender texted Skanska employees in the days leading up to Hurricane Sally making landfall and he also participated in the planning meetings on September 12

---

[2] Stephens testified she also took photos of the barges on her phone, but those were preserved through email. ECF Doc. 1260-4 at 17-18.

and 13.  *Id.* at 17.  His last day of employment with Skanska was December 24, 2020. *Id.* at 12.  On that day, he turned his cell phone over to an administrative employee, who reported to Erwin.  *Id.*  Prior to doing so, Bender reset his phone because that was what he had done in the past with other company phones and because that was Skanska's procedure.  *Id.* at 13-14.  There is no backup of Bender's cell phone data. ECF Doc. 1260-2 at 15.  The first time anyone from Skanska asked Bender for the passcode to his phone was in July 2021.  *Id.* at 10.

N. Johnson was also a superintendent on the Project and was the immediate supervisor to the tugboat captains.  ECF Doc. 1228-3 at 5; Claimants' Exh. 6, R. Hill Tr., 54:14-22.  Johnson may have taken photos on his phone and "periodically" sent text messages to the superintendents, including McGlynn.  ECF Doc. 1260-1 at 10-11 (Depo. Tr.).  Johnson turned his cell phone in to Skanska on his last day of employment, on April 15, 2021.  *Id.* at 6.  He was not asked to reset it and did not reset it himself.  *Id.*  Johnson does not recall if anyone from Skanska asked him for his passcode before he left.  *Id.* at 7.  No one from Skanska, however, asked him for his passcode since he left.  *Id.*  Johnson's phone was disabled at some point and no data is available from the phone itself.  ECF Doc. 1260-1 at 8.

P. McGlynn was a general superintendent for the Project.  ECF Doc. 1228-3 at 3.  He was involved with planning and preparing for  Hurricane Sally and the use of marine equipment.  Claimants Exh. 3, DeMarco Tr. 77:19-22; 152:14-23.  Skanska

issued a cell phone to McGlynn.  ECF Doc. 1260-5 at 9 (Depo. Tr.).  McGlynn communicated with other Skanska employees via texts on that phone and could have communicated via texts with Tugboat Capt. R. Hill, Bender, and Stephens in the week leading up to Hurricane Sally.  *Id*. at 11-12,14-16.  McGlynn's last day of employment with Skanska was May 5, 2021, and he turned his cell phone in on that day. *Id.* at 7, 10.  May 5 was after Claimants issued their discovery request to Skanska in this litigation, seeking text messages.  Skanska has represented to Claimants the text messages on McGlynn's cell phone have been deleted.  *Id.* at 21.  McGlynn cannot say if he did or did not delete the messages.  *Id.*  There is no backup of McGlynn's phone.  ECF doc. 1260-5 at 17.

E. Rubio was the general superintendent for the project.  ECF Doc. 1228-3 at 4.  He was issued a cell phone by Skanska.  ECF Doc. 1260-3 at 9 (Depo. Tr.).  Rubio and Bender communicated via texts "once in a while".  *Id.* at 13.  Rubio also communicated with Johnson and McGlynn.  *Id.* at 13-14.  Rubio's phone fell into the water on May 23, 2021, while he was working on a project for Skanska in Maryland, and was never retrieved.  *Id.* at 11.  There is no backup available.  *Id.* at 12.

Also, Skanska reported that custodian Tugboat Captain R. Hill did not have a cell phone, a representation, which as discussed in the Court's prior order on Claimants' oral motion for sanctions (ECF Doc. 1235) was incorrect.  While Hill did not have a Skanska issued cell phone, he did have a personal cell phone.  Available

text messages from Hill's phone have been produced, but Hill may have deleted some text messages, which are no longer available.  Additionally, Claimants argue that, even as to the remaining seven (7) custodians whose cell phone data were produced, there is some evidence messages at least thirteen (13) messages were deleted at some point prior to production.

## II.    SPOLIATION

Spoliation is the "intentional destruction, mutilation, alteration, or concealment of evidence." *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at \*13 (S.D. Fla. Nov. 16, 2009) (emphasis added) (citing Black's Law Dictionary 1437 (8th ed. 1999)); *see Southeastern Mech. Servs., Inc. v. Brody*, 2009 WL 2242395, at \*2 (M.D. Fla. July 24, 2009) (spoliation is "the intentional destruction or concealment of evidence"); *cf. Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir.2003) (spoliation defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument, without reference to intentionality).

In an admiralty lawsuit, federal law governs the imposition of spoliation sanctions because spoliation sanctions constitute an evidentiary matter.  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir.2005).  When dealing with spoliation of electronically stored information ("ESI"), Federal Rule of Civil Procedure 37(e) governs.  *Wooden v. Barringer*, No. 3:16-CV-446-MCR-GRJ, 2017

WL 5140518, at *5 (N.D. Fla. Nov. 6, 2017).  Rule 37(e) sets forth a step-by-step analysis for determining whether sanctions are appropriate.  *Id.*  Here, that analysis is as follows:  First, did Skanska have a duty to preserve the data at issue.  If so, did Skanska take reasonable steps to avoid the loss of the data.  If not, can the lost data be restored or replaced through additional discovery.  If not, were the Claimants prejudiced by the loss of the data.  If so, the Court may impose "measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).

However, if data was lost "with the intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgement."  Fed. R. Civ. P. 37(e)(2).  This intent requirement is the equivalent of a finding of bad faith in non-ESI cases.  *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184-85 (11th Cir. 2020).

## III.   DISCUSSION

This is a text book case of spoliation.  It is undisputed Skanska anticipated litigation by, at least, September 16, 2020, when it designated inside counsel as a "triage center" for information relating to the investigation of the allisions at issue.[3]

---

[3] This date has been somewhat of a moving target.  On June 9, 2021, at a status conference, Skanska's counsel represented Skanska's general counsel began coordinating directly with people on the ground the morning of September 15.  ECF Doc. 1228-1 at 26.  In July 2021, Skanska's

*See* ECF Doc. 1228-3 at 6 (Skanska Interrog. Resp.). Despite anticipating litigation, despite issuing a written litigation hold on October 14, 2020, despite Claimants filing their first suit in November 2020, and despite receiving discovery requests in April 2021, Skanska failed to suspend its normal document destruction procedures, failed to collect cell phone data from key custodians, failed to ensure its employees understood the litigation hold, and failed to take any steps to prevent the destruction of cell phone data. Moreover, while some of the text messages were included in production of data from other custodians, there is no dispute there are text messages which are no longer available from any source.

Skanska does not deny it had an obligation to preserve the cell phone data, Skanska argues, however, that any loss of data was inadvertent, that Claimants have not been prejudice, and that it did not engage in conduct intentionally aimed at preventing Claimants from obtaining useful information. Instead, Skanska simply argues there were gaps in its procedures. While the Court may be able to tolerate a "gap" here or there, the Court cannot ignore Skanska's wholesale failure to take any steps to collect the cell phone data from these custodians or, at minimum, to ensure the custodians were aware of and understood the litigation hold that Skanska issued in October 2020. If the Court did not act to take some action in this case, it would,

---

counsel represented in a letter to the Court regarding the work product privilege, that Skanska anticipated litigation by September 18, when newspaper articles quoted Claimants' counsel as threatening litigation. ECF Doc. 1212 at 16, E. Billhimer Ltr., 7/8/2021.

in essence, be rewarding Skanska for ignoring its preservation and collection obligations. *See Tesoriero*, 965 F.3d at 1184-85 (identifying a factor for spoliation sanctions as "the potential for abuse if sanctions are not imposed").

A.    Duty to Preserve Evidence

The obligation to preserve evidence arises when a party has notice the evidence is relevant to litigation or when a party should have known the evidence may be relevant to future litigation. *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D. NY 2003) ("*Zubulake IV*"). "While a litigant is under no duty to keep or retain every document in its possession … it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* "The duty to preserve extends to those employees likely to have relevant information-the 'key players' in the case." *Id.* at 218.

As an initial matter, there is no dispute text messages existed on the cell phones at issue. The custodians testified they used the phones to send text messages and, possibly, take photos. Thus, while the number of relevant text messages on each

phone that existed is not known, it is clear had the phones been collected in September or, at least by October, they would have contained at least some relevant text messages. *See Southeastern Mechanical Servs., Inc.*, 657 F. Supp. 2d at 1299 (finding it clear that evidence existed where it is "undisputed that Individual Defendants used their laptops and BlackBerries and that no emails, call logs, or calendar items from these devices were produced").

Skanska had an obligation to preserve those text messages and other cell phone data, as early as September 16, when it designated its general counsel to work with management and outside counsel to respond to, investigate and inquire into the "circumstances surrounding the movement of the construction barges from their intended place during Hurricane Sally." ECF Doc. 1228-3 at 6. Indeed, although Skanska did not issue a written litigation hold until October 14, 2020, Skanska states in its interrogatory responses that "Skanska implemented an evidence retention and hold policy after Hurricane Sally which was communicated by in-house counsel to Skanska personnel verbally on September 16 & 17, 2020 – while Sally's winds were still blowing." ECF Doc. 1228-3 at 21.

Also, while the five (5) custodians at issue may not be the primary players, they were certainly key players with potentially relevant information. Notably, these custodians were selected by Skanska out of more than two dozen potential custodians. At the hearing, Skanska's counsel acknowledged these custodians were designated

because there was a possibility they could have relevant information.  Moreover, in Skanska's discovery responses, Skanska identified McGlynn and Rubio as persons for whom relevant emails and text messages exist relating "to the movement and condition of the barges from September 11-18, 2020".  ECF Doc. 1228-3 at 7.

      B.    Did Skanska Take Reasonable Steps To Preserve The Evidence

Skanska has provided evidence that the custodians at issue received the written litigation hold *albeit* almost a month after it had anticipated litigation.  Claimants, however, have provided evidence that Skanska took no other steps to (1) let these custodians know they had information which would need to be collected and preserved; (2) to collect these custodians' cell phones after the litigation hold was in place; (3) or to, at a minimum, explain to these custodians what a litigation hold means.  Thus, the Court finds that Skanska did not take reasonable steps to preserve the cell phone data for these custodians.

Five of thirteen cell phones were wiped, lost or otherwise made unavailable.  Since these phones were issued by Skanska, it is clear Skanska had possession, custody, or control of the phones.  S*ee Stinson v. City of New York*, 2016 WL 54684, at *5 (S.D NY Jan. 2, 2016).  Although the reason each phone is no longer available is different, one fact remains the same – had Skanska collected the data from these phones, it would not have mattered if the cell phones had been reset, disabled, or

fallen into the water.  Thus, the fact that Skanska may not have hit the "delete" button in each case does not insulate it from responsibility.

Claimants have presented evidence showing that the custodians, whose phones were lost or reset or who deleted their messages, were either unaware of or failed to understand the litigation hold.  *See Stinson*, 2016 WL 54684, at *2 (finding City's litigation hold was late and ineffective).  Thus, not only did Skanska fail to collect the cell phone data when the litigation hold was put in place, but Skanska failed to ensure its employees, particularly those who had any role to play with regard to securing the barges or preparing for Hurricane Sally, understood its litigation hold. *See Alter v. Rocky Point School Dist*., 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) (finding it "troubling" that the litigation hold was not communicated to key players and overwriting backup drives constitutes a breach of obligation").

Skanska also failed suspend its routine document destruction policies, which allowed employees to delete text messages, and did not require cell phone data to be backed up.  Because those polices were not suspended, cell phones were reset without backup and text messages were deleted.  As the court stated in *Zubulake IV*, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake IV*, 220 F.R.D. at 218.  Skanska did not meet that obligation.  *See Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D.

226, 235 (D. Minn. 2019) (finding spoliating party failed to take reasonable steps to preserve text messages from key custodians when it failed to suspend auto-delete function).

    C.    <u>Can the Text Messages be Restored or Replaced?</u>

Skanska argues the motion should be denied because the text messages can be restored or replaced through other discovery, namely, the text messages produced from the phones of other custodians and the depositions of the custodians at issue. The Court disagrees.

First, while the custodians were deposed, they were unable to recall all the employees they texted, the content of the text messages, or even, in some cases, whether any photos were taken. Thus, contrary to Skanska's position, the depositions of these custodians did not remedy the destruction of the cell phone data. The facts of this case are not like the facts in *Floeter v. City of Orlando*, where the court determined missing emails were not critical to plaintiff's case because "Plaintiff presented deposition testimony about the type and number of emails sent such that the trier of fact need not see the emails to understand their contents." *Floeter v. City of Orlando*, 2007 WL 486633, at *6 *(*M.D. Fla. Feb. 9, 2007).

At best, Skanska can merely represent that *some* of the text messages on those phones were produced from other custodians. Thus, "it will never be known whether such information would or would not have been cumulative because it is impossible

to know what it was or to whom it may have been communicated". *See Boxill,* 330 F.R.D. at 235. Moreover, because some of the custodians at issue sent text messages to each other, such as in the case of McGlynn and Bender, Johnson and McGlynn, Rubio and McGlynn; and Rubio and Johnson, those messages would not necessarily be available from the other seven (7) custodians.

### D. <u>Prejudice</u>

Rule 37(e)'s prejudice requirement mirrors the requirement in non-ESI spoliation cases that the evidence be "crucial" to the moving party's claims or defenses. *See Tesoriero*, 965 F.3d at 1184-85 (requiring moving party to show prejudice from the spoiled evidence and importance of the evidence). Of course, proving a negative can be difficult. *See Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *5 (M.D. Fla. Mar. 12, 2015) (establishing that destroyed evidence is crucial "can be a difficult issue upon which to present direct evidence because it concerns information that no longer exists.").

Therefore, "courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of the evidence." *Southeastern Mech. Servs., Inc.*, 657 F. Supp. 2d at 1300 (citing *Kronisch v. U.S.*, 150 F.3d 112, 128 (2d Cir.1998) ("[t]he substantial and complete nature of the destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a

plaintiff"); *see also Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 2012 WL 10817204, at *3 (M.D. Fla. Nov. 30, 2012). As the advisory notes to Rule 37(e) state, "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment. Thus, "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id.*

Also, courts have held that destroyed evidence may be deemed crucial if the information was destroyed in bad faith, such as where there has been a substantial and complete destruction of evidence by the spoliator. *See E\*Trade Sec., LLC v. Deutsche Bank AG,* 230 F.R.D. 582, 592 (D. Minn. 2005); *see also In re Krause,* 367 B.R. 740, 749 (Bankr. D. Kan. 2007) (spoliation found where debtor used security program to permanently wipe or purge files on hard drive after court ordered him to turn over computer).

Skanska argues Claimants have not been prejudiced because the extent these custodians used the phones to text was minimal, at best. Each of the custodians at issue, however, testified they sent text messages in or around the time leading up to and after Hurricane Sally to other Skanska employees. Thus, as the court in *Boxill* noted, "[n]either the Court nor Plaintiffs can know what ESI has been lost or how

significant that ESI was to this litigation." *See Boxill*, 330 F.R.D. at 226 (finding prejudice to moving party where text messages were deleted and phones wiped).

Skanska also argues the lack of these messages is not preventing Claimants from defending this action because in their motion for partial summary judgment, for example, Claimants rely solely on the conduct of other employees namely, DeMarco, Fulton, and Rodgers. ECF Doc. 1267 (motion for partial summary judgment). Skanska's arguments, however, are unavailing. The Court notes, however, that Skanska argues the opposite in its response to Claimants' motion for partial summary judgment.

There, Skanska downplayed the importance of DeMarco, Fulton, and Rodgers' roles, arguing instead, that summary judgment should be denied because "if, for example, the Court were to conclude that the decisions of top management were reasonable in view of the weather forecasts, but that Skanska failed to show that the individuals who actually secured the barges did this in a proper fashion, Skanska would be liable, but entitled to limit." ECF Doc. 1258 at 9. Thus, it appears Skanska intends to rely on the conduct of lower-level employees, such as the custodians at issue here. Finally, as discussed below, because the Court finds Skanska's spoliation of the cell phone data to constitute bad faith, the evidence is presumed to be prejudicial.

## IV.   INTENT TO DEPRIVE

Because Claimants seek dismissal or adverse instructions, the Court must consider whether Skanska acted with "the intent to deprive" Claimants of information. Fed. R. Civ. P. 37(e)(2). The intent to deprive standard is the equivalent of bad faith. Parties can establish the requisite bad faith through either direct or circumstantial evidence. *Calixto*, 2009 WL 3823390, at *16. The Court does not find any direct evidence of bad faith. Thus, the Court will consider whether Claimants established bad faith through circumstantial evidence.

To meet this burden, Claimants must establish the following four factors: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Id.* at *16; *see Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736 F.Supp.2d 1317, 1323 (S.D. Fla. 2010) (adopting four-factor test for circumstantial evidence of bad faith). Applying those factors here, the Court finds Claimants have shown bad faith.

For the reasons stated above, the Court finds the first element has been met. The cell phone data existed and its contents could have been relevant to Claimants'

claim that Skanska's negligent conduct caused the barges to go adrift or Skanska's privity and knowledge of the negligent conditions.  Likewise, also as discussed above, Skanska admits it had a duty to preserve the data while "Sally's winds were still blowing."  ECF Doc. 1228-3 at 21.  Skanska argues, however, that Claimants have not shown the existence of the remaining two elements – that Skanska affirmatively caused the data to be lost and that such affirmative conduct cannot be explained.  The Court disagrees.

Despite being given multiple opportunities to do so, Skanska has not explained why it took no action to ensure its employees understood the litigation hold.  Obviously that failure went beyond just these custodians because it was Skanska's business administrator who reset Stephens' cell phone.  Skanska has not explained why employees were not told to consult with counsel about what to do when these custodians left their employment with Skanska.  Skanska has not explained why Johnson was never asked for his passcode before or after he left; why none of these employees were even told they were custodians or that information in their possession would be needed at the time the hold was put in place; or why Rubio was not aware his phone was needed for this litigation until two months ago.

Also, although Skanska explained at the hearing that it collected the cell phone data on a rolling basis and it was not feasible to collect and image all of these cell phones at once; what is woefully missing from this explanation is the fact that

Skanska made no effort to collect the data until at least seven (7) months after Skanska anticipated litigation and a litigation hold was in place.

The Court finds the lack of any cogent explanation for these failures, other than "oops," points to one answer – Skanska acted in bad faith. *See In Matter Complaint of Boston Boat III, LLC*, 310 F.R.D. at 522; *see generally Swofford v. Eslinger,* 671 F.Supp.2d 1274, 1284 (M.D.Fla.2009) (imposing adverse inference against deputy in excessive force case for destruction of his laptop computer and finding that deputy offered "no cogent, benign explanation for the failure to exempt [the] computer from that routing purging of old computers in light of the preservation demand"). Indeed, it appears that when Skanska unequivocally stated in written discovery responses on June 10, 2021, that "[n]o documents relating to Skanska's storm preparations or efforts has been deleted or destroyed," Skanska had not even undertaken to determine if these custodians' cell phones were available. ECF Doc. 1228-3 at 21. Had it done so, it would have known none of these custodians' cell phones were available.

The Court also finds Skanska's reliance on *Living Color Enter., Inc. v. New Era Aquaculture, Ltd.* to be misplaced. While the court in that case found that defendant had merely acted negligently in failing to delete the auto-delete function on his cell phone, the court also noted "Defendant is an individual who appears to be a relatively unsophisticated litigant." *Living Color Enter., Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297 at *6 (S..D. Fla. Mar. 22, 2016). Skanska is

certainly far from being an unsophisticated litigant.  Instead, this case is more akin to *Boxill*, relied on by the Claimants, and *Southeastern Mech. Servs., Inc*.

In *Boxill*, the court found evidence sufficient to show the spoliating party acted with intent to deprive where they failed to disengage the auto-delete functions when they anticipated litigation and also wiped or discarded their phones after suit was filed.  *Boxill*, 330 F.R.D. at 236.  In *Southeastern Mech. Servs., Inc.*, the court found bad faith under similar circumstances.  For example, the court noted in that case that the "Individual Defendants had both the motive and the opportunity to wipe the BlackBerries of data."  *Southeastern Mech. Sevcs., Inc.*, 567 F. Supp. 2d at 1300.  The court also noted that the "wiping of all emails, calendar items, text messages, and telephone records from the BlackBerries further supports a finding that [plaintiff] was prejudiced by the destruction of evidence."  *Id.*

The same is true in this case.  Skanska had the motive and the opportunity to collect the cell phone data or allow it to be reset, disabled, lost or deleted, and the loss of this data after a litigation hold was in place, after suit had been filed, and after discovery had been issued.  While downplaying the importance of the cell phone data at issue, Skanska also notes Claimants rely heavily on text messages from other custodians sent between September 11 and September 16, in support of their motion for partial summary judgment.  Thus, if there is a smoking gun in the text messages at issue, that is certainly not something Claimants will ever know.  *See Pac. Coast*

*Marine Windshields Ltd. v. Malibu Boats, LLC*, 2012 WL 10817204, at \*10 (M.D. Fla. Nov. 30, 2012) (*citing Taylor v. Mitre Corp.* 2012 WL 5473715 (E.D. Va. Sept. 10, 2012) ("As a result of Plaintiff's intentional spoliation of relevant evidence, it would be impossible for this Court to ensure that the most relevant facts were being presented and for Defendant to be sure they were presenting their strongest defense. In fact, it would be impossible for this Court to conclude that the trier of fact were being presented the truth").

As the court in *Boxill* stated, intent is rarely proved by direct evidence and the court has substantial leeway to determine intent through consideration of circumstances evidence, credibility, motives and other factors.  *Boxill*, 330 F.R.D. at 236.  There must simply be evidence of a "serious and specific sort of culpability regarding the loss of relevant ESI.  *Id.*  For the reasons set forth above, the Court finds Skanska possessed that culpability with regard to the cell phone data at issue.

## V.   SANCTIONS

As discussed above, there are two types of sanctions available under Rule 37(e).  First, under Rule 37(e)(1), if the adverse party has suffered prejudice from the spoliation of evidence, the court may order whatever sanctions are necessary to cure the prejudice.  Second, under Rule 37(e)(2), if the Court finds the party "acted with the intent to deprive another party of the information's use in the litigation," the Court may order more severe sanctions, including a presumption that the lost information

was unfavorable to the party or an instruction to the jury that it "may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2). The court may also dismiss the action. *Id.*

In the instant case, Claimants seek (1) dismissal, (2) an adverse inference, or (3) monetary sanctions. "[T]he determination of an appropriate sanction ... is assessed on a case-by-case basis." *Optowave Co., Ltd. V. Nikitin,* 2006 WL 3231422, at *12 (M.D. Fla. Nov. 7, 2006); (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y.2004)). "Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *St. Cyr v. Flying J. Inc.*, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007) (finding less sanction of an adverse instruction sufficient to cure prejudice over destroyed van).

A. Dismissal

The severe sanction of dismissal or default judgment is appropriate only as a last resort and, because it is an extreme remedy, "should not be imposed if lesser sanctions will suffice." *Navarro v. Coha*n, 856 F.2d 141, 142 (11th Cir. 1988). A district court's power to impose sanctions for litigation misconduct is "not

unlimited," as courts must "wield it wisely and with restraint and discretion." *Ulysse v. Waste Mgmt., Inc. of Fla.*, 617 F. App'x 951, 953 (11th Cir. 2015). Dismissal of a complaint is appropriate only "when a plaintiff's recalcitrance is due to willfulness, bad faith or fault." *Rease v. MHM Corr. Servs., Inc.*, 568 F. App'x 666 (11th Cir. 2014). "The cases granting dismissal or default judgments against the spoliator uniformly involve actions by the actual party who intentionally sought to benefit directly from the destruction." *Pacific Coast Marine Windshields Ltd.*, 2012 WL 10817204, at *10 (collecting cases and striking affirmative defenses as sanction).

Despite finding bad faith, the Court does not find Skanska's conduct to warrant a dismissal of this action, even if Skanska could still defend Claimants' suits in state court.[4]   *See Optowave Co., Ltd.*, 2006 WL 3231422, at *12 ("While the undermining of the judicial integrity of the court by intentionally destroying evidence could subject the guilty party to the most severe sanction available, a finding on liability in favor of the non-spoliating party, so severe a sanction is inappropriate in the instant action."). The law of this circuit demands a greater record of intransigence to justify the default sanction. *See Ford v. Fogarty Van Lines, Inc.,* 780 F.2d 1582, 1583 (11th

---

[4] A federal magistrate judge has authority to enter an order, as opposed to a report and recommendation, denying a motion for sanctions or granting a motion with relief less drastic than dismissal or default. *See In Matter of Complaint of Boston Boat III,* LLC, 310 F.R.D at 513. Therefore, the mere fact that Claimants *requested* default judgment in their favor does not prohibit the Undersigned from entering an order, as opposed to a report and recommendation, imposing lesser, non-dispositive relief. *Id.*

Cir. 1986) (finding a "clear record of delay or contumacious conduct" by a party necessary to justify dismissal or default sanction); *see also Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1566 (11th Cir. 1986) (court must make finding of bad faith resistance to discovery orders and indicate on record that less severe sanctions than dismissal were considered and rejected), *cert. denied,* 479 U.S. 883 (1986).

Instead, the Court finds that the lesser sanctions of an adverse inference and monetary sanctions to be appropriate. *See In Matter of Complaint Boston Boat III, LLC*, 310 F.R.D. 510, 523 (11th Cir. 2015); *see also St. Cyr*, *St. Cyr v. Flying J. Inc.*, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007) (finding less sanction of an adverse instruction sufficient to cure prejudice over destroyed van); *Southeastern Mech. Servs., Inc.*, 657 F. Supp. 2d at 1293 (rejecting Defendants' denials that they deleted information, rejecting explanation that expert witness might have inadvertently deleted data as not plausible, and imposing adverse inference type of spoliation sanction because circumstances surrounding the destruction of data, emails, text messages and similar evidence indicated bad faith).

B. Adverse Inference

There are different types of adverse inferences, ranging in ever-increasing levels of harshness.  The harshest type results in a jury being instructed that certain facts are deemed admitted and must be accepted as true.  A second type results in the imposition of a mandatory, albeit rebuttable, presumption.  The least-harsh type of

adverse inference permits a jury to presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135 (2d Cir. 2012).

At the hearing, Claimants explained they sought two adverse inferences. First, they seek an inference the information contained in the cell phone data is relevant and favorable to Claimants. Second, Claimants seek an adverse inference it was not these custodians' conduct that caused the barges to go adrift. The Court finds both inferences to be justified in this case.

Of course, this case is an admiralty case that will not be tried before a jury. Thus, while the Undersigned finds these adverse inferences to be an appropriate sanction based on the present record, they are subject to the trial court's discretion and the trial court's determination of whether any rebuttal evidence will be allowed from Skanska. *See Southeastern Mech. Srvcs., Inc.*, 657 F. Supp. 2d at 1302; *Optowave Co., Ltd.,* 2006 WL 3231422, at * 12 (finding adverse inference on certain issues to be appropriate sanction for failing to preserve internal emails and leaving wording of the instruction to the discretion of the district judge).

C. Monetary Sanctions

In addition to an adverse inference, the Court also finds monetary sanctions are appropriate. The Court disagrees with Claimants, however, that those sanctions should equal the value of the Limitations Actions i.e., over $ 7 million.[5] Instead, the Court finds Claimants are entitled to the fees and costs they incurred in prosecuting the instant motion. *See Residential Funding Corp.,* 306 F.3d at 112; *see also Pension Comm.,* 685 F. Supp. 2d at 467 ("For less severe sanctions—such as fines and cost-shifting—the inquiry focuses more on the conduct of the spoliating party than on whether documents ... were relevant."); *Curcio v. Roosevelt Union Free Sch. Dist.,* 283 F.R.D. 102, 114 (E.D.N.Y. 2012) (finding monetary sanctions appropriate for failure to preserve evidence).

Accordingly, it is ORDERED:

1.     Claimants' spoliation motion (ECF Doc. 1228) is GRANTED to the extent set forth herein.

2.     Within seven (7) days of this Order, Claimants shall submit an affidavit and evidence of its reasonable fees and costs incurred in prosecuting the spoliation motion.

3.     Within seven (7) days of Claimants' submission, Skanska shall file a written opposition if it opposes the amount sought.

---

[5] *See* N. Guntner Ltr., August 17, 2021.

DONE and ORDERED this 23rd day of August, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**