UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE SKANSKA USA CIVIL SOUTHEAST INC. AND SKANSKA USA, INC. AS OWNERS OF THE BARGE KS 5331, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § § | ADMIRALTY RULE 9(H) <br><br> CIVIL ACTION NO. 3:20-CV-05980 – RV/MJF <br><br> SENIOR DISTRICT JUDGE LACEY A. COLLIER <br><br> MAGISTRATE JUDGE HOPE THAI CANNON |

**SKANSKA USA CIVIL SOUTHEAST INC. AND
SKANSKA USA, INC.'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF OTHER STORMS AND MEMORANDUM IN SUPPORT**

Skanska USA Civil Southeast Inc. and Skanska USA, Inc. (collectively, "Skanska") respectfully submit this motion in *limine* to exclude testimony and evidence pertaining to other hurricanes and/or tropical storms (collectively, "storms") prior to and following Hurricane Sally. The present limitation action relates solely to Skanska's alleged negligence in responding to and preparing for what became Hurricane Sally in September 2020. Skanska anticipates that Claimants will seek to introduce evidence relating to other storms, including Skanska's decisions regarding implementation of hurricane preparedness plans, demobilization of the project site, and additional precautions, in an attempt to show

1

that Skanska acted unreasonably in preparing for what became Hurricane Sally. Skanska submits that this Court should exclude all evidence and testimony pertaining to other storms absent a showing of substantial similarity of circumstances.

Skanska contends that evidence related to preparations for other storms in 2017, 2018, and 2019 is inadmissible under Federal Rule of Evidence ("FRE") 402 because the evidence is irrelevant pursuant to FRE 401.  To the extent Claimants assert that conduct in prior storms is admissible, Skanska contends that Claimants cannot meet their burden of showing substantial similarity as required by Eleventh Circuit precedent.  Evidence of storms after Hurricane Sally is also irrelevant, and is inadmissible as it constitutes subsequent remedial measures pursuant to FRE 407. Skanska also submits that absent a showing of substantial similarity, evidence regarding other storms will constitute a waste of time and lead to confusion of the issues, and should thus excluded pursuant to FRE 403.

## I.     FACTUAL BACKGROUND

This case involves a breakaway of barges during Hurricane Sally in Pensacola, Florida in September 2020.   Skanska's contract to construct a replacement for the existing Pensacola Bay Bridge required Skanska to work over a three mile length of Pensacola Bay, utilizing various barges, including crane barges,

material barges, demolition removal barges, man lift barges, and other special use barges. As of the second week of September 2020, Skanska had 55 barges deployed.

The first National Hurricane Center/National Weather Service ("NHC/NWS") advisory for Tropical Depression 19 was issued at 5:00 p.m. EDT on September 11, 2020 (Advisory 1). Tropical Depression 19 ultimately developed into Hurricane Sally and made landfall west of Pensacola on September 16, 2020. Hurricane Sally generated hurricane force winds, significant wave heights, and a devastating storm surge in Pensacola Bay that were not predicted by the NHC/NWS forecasts on September 11, 12, 13, or 14. Despite this, Skanska began securing the project site on September 12, 2020. Skanska moved and secured its barges at pilings and sea anchor locations on September 13, 2020. The NHC/NWS advisories did not predict waves in excess of two feet for Pensacola Bay until 10:00 a.m. on Monday, September 14, by which time most of the barges had already been secured. When Skanska decided to move and secure its barge fleet on September 13, 2020, the NOAA Marine text forecast predicted winds up to 23 mph and maximum waves of two feet for September 14-15 in Pensacola Bay.

During the pendency of Skanska's work on the Pensacola Bridge project, multiple tropical storms and hurricanes were forecast and/or impacted the project site. For each of these unique storms, Skanska faced different circumstances, risks, threats, and hazards. Claimants have not asserted that Skanska suffered barge

breakaways during prior storms and have not suggested that Skanska acted negligently in preparing for prior or subsequent storms. However, Claimants have attempted to submit evidence and testimony pertaining to Skanska's actions and activities related to prior storms in the 2017, 2018, 2019, and 2020 hurricane seasons.[1] Further, Claimants attempt to submit evidence and testimony pertaining to Skanska's post-Sally tropical weather preparations and activities.[2] For example, Claimants have cited Skanska's actions for Tropical Storm Fred in August, 2021.[3]

This Court should not admit evidence and testimony pertaining to Skanska's activities and actions for a prior storm unless Claimants show that the storm was substantially similar to the weather for which Skanska prepared and a substantially similar condition of the project, including, stage of construction of the project and number and location of barges and the locations to which the barges were moved. Evidence and testimony related to preparations for other storms, without a showing of substantial similarity, is not relevant to the actions taken by Skanska in preparation for the forecasted weather. This Court should preclude Claimants from relying on false equivalency to obscure the reasonableness of the actions taken by Skanska in preparation for Hurricane Sally.

---

[1] *See* Proposed Pretrial Order by Claimants, Rec. Doc. 1296, p. 16 – 24.
[2] *See* Proposed Pretrial Order by Claimants, Rec. Doc. 1296, p. 41-42.
[3] *Id.*

4

## II.     PRIOR RULINGS ON OTHER STORMS

On June 24, 2021, Magistrate Judge Cannon issued Discovery Order No. 3 regarding the scope of discovery into prior storm preparations and additional search terms for ESI discovery.[4] Magistrate Judge Cannon reasoned "[a]s an initial matter, the Court agrees with the Claimants that *some* information relating to Skanska's conduct concerning prior storms … is relevant."[5]   For the reasons set forth in Discovery Order No. 3, Magistrate Judge Cannon permitted discovery into Skanska's actions for prior storms.  Discovery Order No. 3 did not pertain to subsequent storms.

Discovery Order No. 3 set the broadest parameters of *discovery* into Skanska's actions for prior storms but does not establish admissibility and did not define "*some*".  Skanska acknowledges the Court's broad discretion in handling discovery matters.[6]  The Supreme Court has stated that the discovery rules "are to be accorded a broad and liberal treatment."[7]  However, "information within [the] scope of discovery need not be admissible into evidence to be discoverable,"[8] and a

---

[4] *See* Discovery order No. 3, Rec. Doc. 1197.
[5] *Id.* at p. 3 (emphasis in original).
[6] See *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013).
[7] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); s*ee also Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases regarding the scope of discovery).
[8] Fed. R. Civ. P. 26(b)(1).

ruling on discoverability does not address whether that evidence is admissible at trial.

### III. LAW AND ANALYSIS

Skanska submits this motion to give the Court notice of its intent to seek exclusion of other storm evidence in order to avoid the introduction of damaging evidence, which could affect the fairness of the trial.[9] Skanska submits that this Court should exercise the "broad discretion" afforded to it by FRE 403 to exclude evidence for the reasons set forth below.[10]

**1.** ***The Court should exclude evidence of prior storms in 2017, 2018, and 2019 as irrelevant.***

Evidence of Skanska's storm preparations during the 2017, 2018, and 2019 hurricane seasons is irrelevant to whether Skanska properly prepared for what eventually became Hurricane Sally in September 2020. Pursuant to FRE 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As each prior storm presented unique considerations and forecast, track, wave height, wind, duration, direction, severity etc., for the project at that time, the actions taken by Skanska for other storms do not make a fact at issue

---

[9] *Smith v. Royal Caribbean Cruises, Ltd.*, No. 13-20697-CIV, 2014 U.S. Dist. LEXIS 151212, 2014 WL 5312534, at * 1 (S.D. Fla. Oct. 10, 2014).
[10] *Stallworth v. Ill. Cent. Gulf R.R.*, 690 F.2d 858, 868-69 (11th Cir. 1982).

6

more or less probable or relevant to Skanska's actions in September 2020. Because this evidence is not relevant, it is inadmissible under FRE 402.

### 2. *The Court should exclude evidence of prior storms absent a showing of substantial similarity*.

The Eleventh Circuit has developed limitations governing the admissibility of similar incidents "because of the potential prejudicial impact" of such evidence.[11] The Eleventh Circuit reasoned, "[f]irst, conditions substantially similar to the occurrence in question must have caused the prior [incident]. Second, the prior [incident] must not have occurred too remote in time. Determining the remoteness of evidence is within the trial judge's discretion." [12] "For evidence of prior incidents to be admissible, the conditions substantially similar to the occurrence in question must have caused the prior accident, and the prior accident must not have occurred too remote in time."[13] The substantial similarity "doctrine applies to protect parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury."[14] Importantly, Claimants bear the burden regarding admission of other incident evidence.[15]

---

[11] *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)
[12] *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)
[13] *Acevedo v. NCL (Bahamas) Ltd.*, 317 F. Supp. 3d 1188, 1193 (S.D. Fla. 2017).
[14] *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997).
[15] *Stern v. NCL Bah. Ltd.*, 2020 U.S. Dist. LEXIS 225043 (S.D. Fla. Sept. 23, 2020); *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 n.12 (11th Cir. 1997).

Claimants cannot meet their burden without showing that the prior storms were substantially similar, and that the conditions at the project were similar. Each storm presented a unique risk with different forecast parameters and different factors. Claimants must establish, for each prior storm, that the storm path, sea state, development, conditions, forecasts, and characteristics, and the conditions of the project site, were substantially similar to the circumstances presented by what became Hurricane Sally.

Claimants must also establish that Skanska's project considerations and limitations were substantially similar. For example, to meet their burden, Claimants must demonstrate substantial similarity in the number, location, and type of barges and tugs on site, equipment on the barges, mooring arrangements and locations, logistical considerations, and nature of demobilization. The latter is key- demobilization is the step required to prepare each barge for movement. The equipment and condition of each barge differs from day to day and week to week, and certainly from storm to storm, making any similarity, unlikely if not impossible.

Claimants do not allege that Skanska acted unreasonably or negligently in preparing for the prior storms. Moreover, there is no claim of a barge breakaway during prior storms. To the extent the Court permits admission of evidence related

to prior storms, such evidence should only be offered to show Skanska's notice of a particular danger or defect.[16]

At a minimum, substantial similarity requires that the prior storm had a similar forecasted severity and path as was forecast for Hurricane Sally between September 12 and 14, 2020. For example, a prior storm with a more severe forecast wind impact would not be substantially similar to the NHC/NWS forecasts for Hurricane Sally. Similarly, a prior storm that provided a week of advance warning ahead of landfall would not be substantially similar to the forecast for Hurricane Sally. The only storms with sufficient similarity are Hurricane Laura and Hurricane Marco in August 2020.

### 3. *The Court should exclude evidence and testimony related to prior storms under FRE 403*.

If the Court finds that Skanska's prior storm preparations were relevant, Skanska requests that the Court exclude such evidence pursuant to FRE 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

---

[16] *See Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990).

9

Absent a showing of substantial similarity, evidence regarding other storms will constitute a waste of time and lead to confusion of the issues.

### 4. *Evidence of Preparations of Subsequent storms is inadmissible*

Claimants may seek to introduce evidence of subsequent storm preparations or demobilization.[17]  This Court should exclude such evidence as subsequent remedial measures. FRE 407 of the Federal Rules of Evidence precludes introduction of subsequent remedial measures "to prove negligence or culpable conduct" on the part of the defendant in connection with an accident.  "The use of the phrase 'remedial measures' is designed to bring within the scope of the rule any post-accident change, repair or precaution."[18]  Evidence of subsequent remedial measure is only admissible for "impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures."  The rationale underlying the exclusionary rule is to encourage persons to take remedial steps to prevent and/or reduce the likelihood of future accidents.[19]

The Court should preclude Claimants from introducing evidence or testimony related to Skanska's preparations for subsequent storms, where such evidence is offered to suggest that Skanska's earlier injury would have been more or less likely

---

[17] *See Proposed Pretrial Order by Claimants, Rec. Doc. 1296, p. 41-42.*
[18] *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1567 n.14 (11th Cir. 1991) (citation omitted)
[19] *See Flaminio v. Honda Motor Co.*, 722 F.2d 463, 469, 472 (7th Cir. 1984).

to occur had the subsequent measures been taken in preparation for Hurricane Sally. To the extent Claimants may contend that such evidence goes to feasibility of preparations, Skanska avers that the Court should exclude such evidence under FRE 403. The subsequent storms are not substantially similar to Hurricane Sally, the conditions surrounding the project were never the same, and Skanska's ability to prepare for subsequent storms was not the same.

### III.  CONCLUSION

Skanska respectfully submits that this Court exclude evidence of prior storms absent a showing of substantial similarity. Evidence related to storm preparations in 2017, 2018, and 2019 is irrelevant and inadmissible. Lastly, evidence related to subsequent storm preparations is inadmissible as subsequent remedial measures.

Respectfully submitted,

*/s/ Harold K. Watson*
Harold. K. Watson, Esq.
Derek A. Walker, Esq.
Charles P. Blanchard, Esq.
Jon W. Wise, Esq.
**CHAFFE MCCALL, LLP**
801 Travis, Suite 1910
Houston, Texas 77002
Telephone:  (713) 546-9800
Facsimile:    (713) 546-9806

and

**SCOTT A. REMINGTON**
Florida Bar No. 122483
**JEREMY C. BRANNING**
Florida Bar No. 507016
**CLARK PARTINGTON**
P.O. Box 13010
Pensacola, FL  32591-3010
Telephone: (850) 434-9200
Facsimile: (850) 432-7340

***Attorneys for Skanska USA Civil Southeast Inc. and Skanska USA, Inc.***

## CERTIFICATE OF COUNSEL CONFERENCE

I certify that I conferred with counsel for Claimants, Brian Barr, Esquire, in a good faith effort to resolve the issues raised in this Motion as required by N.D. Fla. Loc. R. 7.1(B). Claimants oppose this Motion.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

## CERTIFICATE OF COMPLIANCE AS TO WORD COUNT

I hereby certify that, as required by Local Rule 7.1(F), this Motion in Limine and Memorandum in Support contains 2,271 words, counted as provided in Local Rule 7.1(F).

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the Clerk of Court and furnished to all counsel of record through the Court's CM/ECF electronic filing system on this 14th day of October, 2021:

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**