UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE SKANSKA USA CIVIL SOUTHEAST INC. AND SKANSKA USA, INC. AS OWNERS OF THE BARGE KS 5331, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § § | ADMIRALTY RULE 9(H)<br><br>CIVIL ACTION NO.<br>3:20-CV-05980 – RV/MJF<br><br>SENIOR DISTRICT JUDGE<br>LACEY A. COLLIER<br><br>MAGISTRATE JUDGE<br>HOPE THAI CANNON |

**PETITIONERS' MOTION FOR REINSTATEMENT
AND CONTINUATION OF INJUNCTION PENDING
APPEAL OR, ALTERNATIVELY, TEMPORARY STAY OF ORDER
LIFTING INJUNCTION PENDING APPELLATE CONSIDERATION**

Skanska USA Civil Southeast Inc. and Skanska USA, Inc. (collectively "Skanska") moves this Court pursuant to Fed. R. Civ. P. 62(d) to reinstate and continue the injunction against prosecution of the state court lawsuits pending the outcome of Skanska's appeal of this Court's decision now pending in the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit"). Alternatively, should the Court deny reinstatement of the injunction, Skanska moves the Court pursuant to Fed. R. Civ. P. 65(a) to grant a temporary injunction against prosecution of state court lawsuits pending consideration of a motion for

1

stay to be filed in the Eleventh Circuit under Fed. R. App. P. 8(a). In support of its motion, Skanska states as follows:

## I.
## Background

1.  Prior to and shortly after Skanska filed the initial suits for exoneration from or limitation of liability on December 9, 2020, approximately 100 state court actions were filed claiming damages resulting from the breakaway of Skanska's barges during Hurricane Sally. Approximately 85 of those state court actions are for economic loss allegedly resulting from the damage to the Pensacola Bay Bridge. All but six of the plaintiffs in these 85 state court actions have filed claims in Cases Nos. 3:20-CV-5980, 3:20-CV-5981 3:20-CV-5982, and 3:20-CV-5983. In addition, claims for economic loss allegedly resulting from damage to the Pensacola Bay Bridge were filed in Case No. 3:21-CV-00056 and Case No. 3:21-CV-00526.

2.  Title 46 U.S.C. § 30511(c) provides that when an action for limitation is filed then "all claims and proceedings against the owner related to the matter in question shall cease."

3.  Simultaneously with filing its complaints seeking exoneration or limitation, Skanska moved this court to enjoin the prosecution of claims in any other court. ECF No. 3. The motion for injunction was based on Supplemental

Rule F(3), Supplemental Rules for Admiralty or Maritime Claims, which provides in pertinent part:

> Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

4. Skanska's motion to enjoin prosecution of actions in other courts was granted. ECF No. 6 at 2.

5. Following the liability trial in October, the Court ruled that Skanska was not entitled either to exoneration, ECF No. 1352 at 38, or limitation, ECF No. 1352 at 40, dismissed Skanska's Complaint for Exoneration from or Limitation of Liability, and dissolved the injunction. ECF No. 1352 at 40.

6. Skanska has filed a Notice of Appeal of this Court's decision. ECF No. 1357.

7. Skanska seeks to maintain the status quo as to the state law actions by continuation of the injunction entered by this Court until the conclusion of the appellate proceedings now pending in the Eleventh Circuit. The order that Skanska seeks would continue the scope and effect of the injunction, previously in place as set forth in ECF No. 6, *supra,* until the conclusion of those appellate proceedings.

## II.
## Standard for Restoring or Granting an Injunction Pending Appeal

8. The relief sought by Skanska, to restore or grant an injunction pending appeal, is authorized by Fed. R. Civ. P. 62(d), which provides in part:

> **(d) Injunction Pending an Appeal.** While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, *dissolves*, or refuses to dissolve or modify an injunction, the court may suspend, modify, *restore*, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. . . .

(Emphasis added).

9. In *Hilton v. Braunskill*, 481 U.S. 770, 776, the Supreme Court stated the four generic requirements for granting a stay pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

"The first two factors are the 'most critical.'" *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

10. "Where the 'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Garcia–Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir. 1986).

4

## III.
## Likelihood of Success on the Merits

*A.  It is essentially certain that Skanska will prevail on the merits with respect to the economic loss claims.*

11. Skanska's appeal of this Court's order finding Skanska liable to the economic loss claimants does not merely have a substantial likelihood of success on the merits, but is essentially certain to succeed.

12. This Court denied Claimants' Motion to Dismiss for lack of subject matter jurisdiction, holding that it had admiralty jurisdiction. "With admiralty jurisdiction comes the application of substantive admiralty law." *Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837-838 (11th Cir. ), *cert. den.*, 130 S.Ct. 3503 (2010) (quoting *East River S.S. Co. v. TransAmerica DeLeval, Inc.*, 476 U.S. 858, 864) (1986). As will be discussed below, there is a long line of maritime cases applying substantive maritime law to determine the question of whether an alleged tortfeasor who damages property owes a duty to persons who claim economic loss but do not have a proprietary interest in the damaged property. Accordingly, federal admiralty law governs whether the economic loss claimants have a viable claim.

13. Under *Robins Dry Dock v. Flint*, 275 U.S. 303 (1927), only persons who have a proprietary interest in property that has been damaged can recover economic loss resulting from the damage to that property. *Robins Dry Dock* has

been consistently followed by the Eleventh Circuit. *Kingston Shipping Co. v. Roberts*, 667 F.2d 34 (11th Cir. 1982); *In re Hercules Carriers, Inc.*, 720 F.2d 1201 (11th Cir. 1983). The Eleventh Circuit panel that hears this case will be bound by the prior decisions of the Eleventh Circuit. Accordingly, Skanska's chances of success on the merits of the economic loss claims are essentially certain.

**B.    *Skanska has a substantial likelihood that it will prevail on the merits with respect to this Court's order prohibiting Skanska from conducting discovery with regard to how other sophisticated entities evaluated the likely impact of Sally.***

13.    Skanska also has a strong case that it will succeed on the merits with regard to this Court's orders prohibiting Skanska from obtaining discovery with respect to how other sophisticated entities evaluated the likely impact of what eventually became Hurricane Sally. If Skanska succeeds on appeal on this argument, it will be entitled to a new trial on the entire case, including the property damage claims.

14.    Under the rule of *The Louisiana*, 70 U.S. (3 Wall.) 164 (1865), when a vessel breaks her moorings and strikes a fixed object or stationary vessel, the moving vessel is presumed to be at fault. The moving vessel can overcome this presumption by proving either that "[1] that the allision was the fault of the stationary object[;] [2] that the moving vessel acted with reasonable care[;] or [3] that the allision was an unavoidable accident." *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 923 (11th Cir. 2001).

6

15. The test for whether the moving vessel acted with reasonable care is accurately set forth in the 1970 case of *Petition of the United States of America*, 425 F.2d. 991 (5th Cir. 1970):

> The test for determining whether [Skanska] is free from fault is whether [it] took reasonable precautions ***under the circumstances as known or reasonably anticipated.*** If those responsible for [Skanska's] barges were ***reasonable in their anticipation of the severity of the impending storm*** and undertook reasonable preparations in light of such anticipation, then they are relieved of liability. The standard of reasonableness is that of a prudent man familiar with the ways and vagaries of the sea.

*Id.* at 995. (Emphasis added). Accordingly, this defense has two components: (1) Was Skanska "reasonable in [its] anticipation of the severity of the impending storm"? and (2) did Skanska undertake reasonable precautions in light of the reasonably anticipated conditions?

16. In analyzing whether a vessel owner has acted reasonably, the courts have consistently considered evidence of how similarly situated entities have acted. In *The T.J. Hooper*, 60 F.2d 737 (2d Cir. 1932), defendant's tugs lost two barges en route from Norfolk to New York City when caught in a gale. Another tow proceeding on the same route put into a port of refuge before the storm struck, and three other tows followed suit. In determining whether the defendant had acted negligently in continuing with the voyage, the court, speaking through Judge Learned Hand, stated "Courts have not often such evidence of the opinion of

impartial experts, formed in the very circumstances and confirmed by their own conduct at the time." *Id.* at 739.

17.     Similarly, in *Buntin v. Fletchas*, 257 F.2d 512 (5th Cir. 1958), the court looked to actions of third parties to determine whether the defendant had acted reasonably, stating that "The houseboat was secured in the same manner as other boats that survived the hurricane at the shipyard." *Id.* at 514. *See also Hatt 65, LLC v. Kreitzberg*, 2009 U.S. Dist. LEXIS 95332 at *7, Case No. 3:06cv332-MCR/EMT (N.D. Fla., Sept. 30, 2009), *affirmed*, 658 F.3d 1243 (11th Cir. 2011) ("[M]ost, if not all, persons in the area were still expecting the storm to make landfall near Mobile Bay to the west in accordance with the NHC's 4:00 forecast.").

18.     Skanska had indications from newspaper reports that the United States Navy and Escambia County, both sophisticated entities with a duty to the public to monitor Sally, had similarly concluded that Sally was unlikely to have a significant impact on Pensacola.  *See* **Exhibits A and B**.

19.     Accordingly, Skanska propounded the following interrogatories to the United States:

> INTERROGATORY NO. 15: DIRECTED TO THE UNITED STATES OF AMERICA
>
> Please identify each and every log, record, report, planning document, after-action reporting document, or data compilation of any kind, including text messages, Naval messages, or emails, kept

8

> or maintained by NASP, other Independent Commands, Sub-Regional Command Centers, and Regional Commanders for September 10-30, 2020, whether handwritten or recorded by electronic or mechanical equipment, and which relates to the preparations for and responses to Hurricane Sally.
>
> INTERROGATORY NO. 16: DIRECTED TO THE UNITED STATES OF AMERICA
>
> Describe in detail and particularity the meteorological data and interpretation of the same that NASP, other Independent Commands, Sub-Regional Command Centers, and Regional Commanders utilized and relied on in order to make decisions to protect property and personnel from the impacts of Hurricane Sally.

Interrogatory No. 16 inquired directly into the U.S. government's interpretation of meteorological data, and thus was likely to elicit information relevant to whether Skanska's interpretation of that data was reasonable. Interrogatory No. 15 inquired into communications about hurricane preparations, which would likely include communications relating to the expected weather conditions.

20. In Discovery Order No. 2, ECF No. 1192, Magistrate Judge Cannon held that what the Navy had done to prepare for Sally was irrelevant, in that the Navy did not have any barges.

21. Skanska filed an objection to Magistrate Judge Cannon's ruling, pointing out that while what the Navy did to physically prepare for Sally might not be relevant with regard to the manner in which Skanska had secured its barges, evidence of what sources the Navy relied upon to evaluate the potential impact of

Sally and how it had evaluated that information was relevant to whether Skanska was reasonable in relying on the sources it relied upon, and whether Skanska's evaluation of the information obtained from those sources was reasonable. ECF No. 1201. This Court denied the objection. ECF No. 1205. Magistrate Judge Cannon then also granted the United States a protective order prohibiting Skanska from taking depositions of Navy personnel. ECF No. 1226.

22. A denial of discovery is based on an abuse of discretion standard, but "[a] district court by definition abuses its discretion when it makes an error of law." *Arthur v. Allen*, 452 F.3d 1234, 1243, *modified on rehearing on other grounds*, 459 F.3d 1310 (11th Cir. 2006), *cert. den.* 127 S. Ct. 2003 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996). The Court's ruling that evidence of how sophisticated entities evaluated the potential impact of Sally was irrelevant is in conflict with the cases cited above, including *Buntin v. Fletchas*, 257 F.2d 512 (5th Cir. 1958), an "old Fifth Circuit" case binding in the Eleventh Circuit. Accordingly, denial of discovery was an error of law and an abuse of discretion.

23. "Erroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing that it is harmless." *Weahkee v. Norton*, 621 F.2d 1080, 1083 (10th Cir. 1980); *Shaklee Corp. v. Gunnell*, 748 F.2d 548, 550 (10th Cir.

10

1984).  Accordingly, Skanska has a substantial likelihood that the Eleventh Circuit will reverse and remand for a new trial.

## IV.
## Irreparable Injury to Skanska

24. Skanska will suffer irreparable injury if the relief is not granted.  "An injury is irreparable 'if it cannot be undone through monetary remedies.'" *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987).  If the injunction is not reinstated, Skanska will incur significant expenses that as a matter of law "cannot be undone through monetary remedies."

25. If the injunction is not restored, Skanska will be forced to defend the separate lawsuits now pending, and many more lawsuits will probably be filed by claimants who had not filed state court lawsuits prior to the Court's issuance of an injunction.  Even if the economic damage lawsuits are consolidated for the purpose of deciding the question of liability, Skanska will spend at least hundreds of thousands dollars defending these claims.  Moreover, each of the property damage claims will have to be tried separately, since the issues of whether a Skanska barge damaged a particular piece of property and the amount of damages are unique to each case.  Defending the approximately 15 property damage claims will probably cost Skanska millions of dollars.

26. "The prevailing party in an admiralty case is not entitled to recover its

attorneys' fees as a matter of course." *Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir.), *cert. den.*, 130 S.Ct. 3503 (2010). Accordingly, Skanska will be unable to recover its attorney's fees incurred in defending these cases, and will thus suffer an injury that "cannot be undone through monetary remedies."

27. Skanska's irreparable injury is exacerbated by the fact that a class action lawsuit on behalf of the economic loss claimants has been filed.[1] *See Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 873 (S.D. Ohio 2005) (granting stay pending appeal where defendant would incur substantial costs in litigating class certification issues).

## V.
## Lack of Substantial Harm to Economic Loss Claimants

**A.**  *The economic loss claimants will suffer no harm, since their claims will be dismissed if they go forward in state court.*

28. No substantial harm will result to the economic loss claimants if the injunction is restored. "[B]ecause this is a maritime case, this Court and the Florida district courts of appeal must adhere to the federal principles of harmony and uniformity when applying federal maritime law." *Carnival Corp. v. Carlisle*, 953 So.2d 461, 470 (Fla. 2007). *Robins Dry Dock* has been followed by every federal appellate court that has considered the issue. *Kingston Shipping Co. v.*

---

[1] A true and accurate copy of the class action complaint is attached as **Exhibit C.**

12

*Roberts*, 667 F.2d 34 (11th Cir. 1982); *In re Hercules Carriers, Inc.*, 720 F.2d 1201 (11th Cir. 1983); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*); *Barber Lines A/S v. M/V DONAU MARU*, 764 F.2d 50 (1st Cir. 1985); *American Petroleum & Transport, Inc. v. City of New York*, 737 F.3d 185 (2d Cir. 2013); *Channel Star Excursions v. Southern Pacific Transportation Co.*, 77 F.3d 1135 (9th Cir. 1996); *Getty Refining & Marketing Co. v. MT FADI B*, 766 F.2d 829 (3d Cir. 1985). Accordingly, there is a well-settled uniform rule of federal maritime law that the Florida state courts would be obligated to follow.

29. If the economic loss claims are allowed to go forward in state court, the state court will be obliged to apply federal maritime law and dismiss these claims under *Robins Dry Dock* and the result in state court will ultimately be the same as in the Eleventh Circuit. However, Skanska will be forced to incur at least hundreds of thousands of dollars of additional expense that will not be incurred if prosecution of the state court cases is enjoined until the Eleventh Circuit rules.

**B.   *None of the claimants will suffer substantial harm, because any successful claimants will be entitled to pre-judgment interest.***

30. The only conceivable prejudice to the Claimants asserting claims for property damage would be a delay, and given the backlog of cases due to the Covid-19 pandemic, the appeal in the Eleventh Circuit will almost certainly be resolved long before any case in state court could get to trial. Moreover, under maritime law, as a general rule, a successful claimant in a maritime case is entitled

13

to pre-judgment interest. *City of Milwaukee v. Cement Div., National Gypsum Co.*, 515 U.S. 189, 195 (1995); *Assurance General de France v. Cathcart*, 756 So.2d 1055, 1058 (Fla. App.—4th Cir. 2000) (applying rule that prejudgment interest is to be awarded in admiralty cases in Saving to Suitors clause case filed in state court). Accordingly, any successful Claimant will probably suffer no economic harm, whereas Skanska will suffer irreparable economic harm by incurring substantial defense costs that it will not be able to recover as a matter of law.

## VI.
## Public Interest

31. The fourth consideration is "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. at 776. The reinstatement of the injunction under Rule 62(d) will advance the public interest, in that it will serve the purpose of judicial economy, which is a matter obviously in the public's interest. If the injunction is not reinstated, what will ultimately be hundreds of cases filed in the state court will be unleashed on the state court system. If the injunction is reinstated, on the other hand, the issue of whether Skanska owed a duty to the economic loss claimants can be resolved easily and expeditiously by the Eleventh Circuit, a court that is intimately familiar with the issue involved, having previously addressed it on at least two prior occasions.

32. The public interest will also be served with respect to the property damage claimants, since if the entire case is reversed because of the denial of

discovery, the state courts will not have to deal with these claims if Skanska is exonerated after remand.

## VII.
## The balance of factors weighs in favor of reinstating the injunction.

33. As noted above, the Supreme Court has held that the first two factors, the likelihood of success on the merits and the prejudice to the appellant if the injunction is not granted, are the most important.  With respect to the economic loss claims, these two factors could scarcely be stronger: Skanska is virtually certain to prevail on the merits, and will suffer at least hundreds of thousands of dollars of unrecoverable defense costs if the injunction is not granted.

34 With respect to the property damage claims, the likelihood of success on the merits, while strong, is admittedly not certain, but "[w]here the 'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Garcia–Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir.1986).  As discussed above, the prejudice to Skanska is even greater with respect to the property damage claims, since none of these claims has anything in common with any other property damage claim with respect to causation or damages, so these cases are not susceptible of being consolidated. Accordingly, Skanska will incur millions of dollars of unrecoverable defense costs defending these cases.  Skanska's argument that evidence of how other sophisticated entities evaluated the impact of Sally is relevant is supported by the

way similar evidence has been treated by other courts, and Skanska clearly has a "substantial case on the merits."

35. Moreover, both of the other two factors, the absence of any prejudice to the property damage Claimants and the public interest in not burdening the state courts with cases when there is a substantial likelihood that this Court's ruling on liability will be reversed and remanded for a new trial, weigh in favor of reinstating the injunction.

36. Finally, the injunction with respect to the economic loss claims will almost certainly be reinstated by the Eleventh Circuit if this Court does not reinstate it. Accordingly, interests of judicial economy support reinstating the injunction in all the cases.

## VIII.
## Alternatively, the Court should enjoin state court proceedings pending ruling by the Eleventh Circuit on a Motion to Stay pursuant to Fed. R. App. P. 8

37. Should the Court deny reinstatement of the injunction under Rule 62(d), Skanska alternatively seeks an injunction pursuant to Fed. R. Civ. P. Rule 65(d) enjoining the economic loss Claimants and any other persons claiming economic loss allegedly resulting from damage to the Pensacola Bay Bridge from proceeding in any other forum until the Eleventh Circuit has ruled on Skanska's motion for stay pursuant to Fed. R. App. P. 8.

38. Fed. R. App. P. 8(a) provides that a party must ordinarily move first in the district court for an order restoring an injunction while an appeal is pending, but once this is done, can move for relief in the Court of Appeals if the motion is denied by the district court. Should this Court deny Skanska's motion to restore the injunction, Skanska will immediately file a motion in the Eleventh Circuit seeking this relief.

39. Rule 65 requires every order of injunction to state the reason the injunction is being issued. Here that reason is to preserve the status quo as to state court actions to allow the Eleventh Circuit to determine whether a stay pending appeal is warranted.

40. Pursuant to Rule 65(d), every order of injunction must state the specific terms of the injunction and the specific actions subject to the injunction. Here, the terms of the injunction, and the actions enjoined are an extension of the injunction established by this Court at the outset of this case, *i.e.*, "The filing or prosecution of any and all claims and proceedings asserting claims that could have been asserted in these consolidated proceedings, other than in this Court, is hereby enjoined." (ECF No. 6, p. 2.)

41. This alternative relief procedure is common. *See, e.g., In re Albicocco,* No. 06–CV–3409 (JFB), 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (denying a stay pending appeal under Rule 62, but granting a temporary stay

17

so that a party could apply to the Court of Appeals for a stay); *Motorola Credit Corp. v. Uzan,* 275 F.Supp.2d 519, 525 (S.D.N.Y.2003) (same); *Paris v. (1) Dep't of Nat'l Store Branch 1 (Vietnam),* No. 99–CV–8607 (NRB), 2000 WL 777904, at *5 (S.D.N.Y. June 15, 2000) (same); *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 196 (S.D.N.Y. 2007) (denying injunctive relief, but granting "temporary stay [to] remain in effect until the stay motion before the Second Circuit is decided.").

WHEREFORE, PREMISES CONSIDERED, Skanska respectfully moves this Court, pursuant to Rule 62(d) to restore or grant a continuing injunction enjoining all Claimants in these consolidated cases and all other persons from instituting or prosecuting any claims in any other forum pending the conclusion of the appeal of this matter.  Alternatively, Skanska respectfully moves this Court to issue a temporary injunction pursuant to Rule 65(a) enjoining all Claimants in these consolidated cases and all other persons from instituting or prosecuting any claims in any other forum until the United States Court of Appeals for the Eleventh Circuit has ruled on Skanska's motion for a stay pursuant to Fed. R. App. P. 8.

Respectfully submitted,

*/s/ Harold K. Watson*
**DEREK A. WALKER**
Admitted *Pro Hac Vice*
**KENNETH H. TRIBUCH**
Florida Bar No. 986887
Harold K. Watson, Esq.
Derek A. Walker, Esq.
Charles P. Blanchard, Esq.
Jon W. Wise, Esq.
**CHAFFE MCCALL, LLP**
801 Travis, Suite 1910
Houston, Texas 77002
Telephone:  (713) 546-9800
Facsimile:   (713) 546-9806

**SCOTT A. REMINGTON**
Florida Bar  No. 122483
**JEREMY C. BRANNING**
Florida Bar No. 507016
**ANDREW M. SPENCER**
Florida Bar No. 0119966
**CLARK PARTINGTON**
P.O. Box 13010
Pensacola, FL  32591-3010
Telephone: (850) 434-92000
Facsimile: 9850) 432-7340

**ANTHONY J. RUSSO, ESQ.**
Florida Bar No.: 508608
arusso@butler.legal
**MIHAELA CABULEA, ESQ.**
Florida Bar No.: 71586
mcabulea@butler.legal
rburnison@butler.legal
**BUTLER WEIHMULLER KATZ CRAIG LLP**
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (713) 546-9800
Facsimile: (713) 546-9806

*Attorneys for Skanska USA Civil Southeast, Inc. and Skanska USA, Inc.*

## CERTIFICATE OF COMPLIANCE AS TO WORD COUNT

I hereby certify that, as required by Local Rule 7.1(F), this Motion contains 4,104 words, counted as provided in Local Rule 7.1(F).

/s/ Andrew M. Spencer
**ANDREW M. SPENCER**

## CERTIFICATE OF COUNSEL CONFERENCE

I hereby certify that in a good faith effort to resolve the issues raised in this Motion as required by N.D. Fla. Loc. R. 7.1(B), undersigned counsel for Skanska conferred with counsel for Claimants by telephone and email. Counsel for Claimants represented to undersigned counsel that Claimants object to the relief requested in this Motion.

/s/ Jeremy C. Branning
**JEREMY C. BRANNIN**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the Clerk of Court and furnished to all counsel of record through the Court's CM/ECF electronic filing system on this 18th day of January, 2022:

/s/ Andrew M. Spencer
**ANDREW M. SPENCER**